UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

### Dallas Division

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:22-cv-00706 (C) |
| | * | |
| DEPARTMENT OF DEFENSE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S UNOPPOSED MOTION FOR STATUS CONFERENCE

NOW COMES Plaintiff Robert Hopkins ("Hopkins") to move this Court to order a status conference to resolve several issues regarding the Court's scheduling order and Defendant's refusal to timely engage in mediation as directed by the Court.

To provide the factual context for this Motion, Hopkins provides the following—unfortunately lengthy—recitation of the relevant history of this case:

1. This case involves the prepublication review of seven manuscripts by the Defense Office of Prepublication and Security Review ("DOPSR").

2. On 13 June 2022, the Court ordered the parties to take the case to mediation, which the Court stated must be completed by 15 June 2023.

3. On 11 July 2022, Defendant's counsel emailed the undersigned, proposing two potential mediators and stating, "Defendants would like to complete mediation as soon as practicable."

4. On 15 July 2022, the undersigned emailed Defendant's counsel, proposing a well-respected prepublication review specialist as a mediator, since neither of

|     | |
| --- | --- |
|     | Defendant's proposed mediators appeared to have any relevant experience in this area of the law. |
| 5.  | On 18 July 2022, Defendant's counsel emailed the undersigned, declining to accept the undersigned's proposed mediator on the grounds that he was not a practicing mediator and stating that Defendant preferred a retired judge. |
| 6.  | On 20 July 2022, Defendant's counsel emailed the undersigned, stating that DOPSR would contact Hopkins directly regarding any allegedly classified information identified in his manuscripts, adding, "[I]f DoD identifies any unclassified information that can be discussed with you present, we will let you know." |
| 7.  | On 21 July 2022, the undersigned emailed Defendant's counsel, proposing a retired judge who practices as a mediator and who has extensive national security experience. |
| 8.  | On 16 August 2022, Defendant's counsel emailed the undersigned, stating that Defendant "ha[s] no objection if [he] want[s] to try and obtain [the proposed mediator's] services for mediation." |
| 9.  | On 16 August 2022, the undersigned emailed Defendant's counsel, "Would you mind making the initial approach? He might respond better to a request coming from the DOJ than from a random private litigator." |
| 10. | On 16 August 2022, Defendant's counsel emailed the undersigned, reversing course and stating, "Since the parties are working well together now to get Dr. Hopkins' manuscripts reviewed, I think it might make sense to hold off a little on |

mediation. Let's revisit after DOPSR has had a chance to work through the proposed publications they're reviewing."

11. On 16 August 2022, the undersigned emailed Defendant's counsel, "I'm open to the idea of holding off but I'd feel much more comfortable if we asked the court to clarify whether we have to go to mediation now or if we can wait a couple months to see what shakes out."

12. On 19 August 2022, Defendant's counsel emailed the undersigned, "I'm just suggesting that the parties work out what they can on their own first. The Court's order only said that mediation 'must be completed by 3 PM on June 15, 2023.' Since that's almost a year away, my suggestion is to wait and schedule mediation when the parties feel it would be most beneficial."

13. On 30 September 2022, Defendant's counsel emailed the undersigned, stating that DOPSR was sending a redacted copy of the manuscript entitled *Klaxon!* with suggested amendments directly to Hopkins along with a letter stating, in pertinent part, "The amendments protect from release 'non-public information,' which can include classified national security information, controlled unclassified information, operational security information, export-controlled information, and unclassified information that may individually or in aggregate lead to the compromise of classified information." All of the redacted text was unclassified information sourced from officially released records.

14. On 30 September 2022, the undersigned emailed Defendant's counsel, stating, "Since this is by DOPSR's own admission a cleared manuscript there is literally

zero reason that it cannot be sent to me, since everything in it has been approved for publication."

15. On 6 October 2022, the undersigned emailed Defendant's counsel, stating, "[P]lease advise DOPSR that they need to send me a copy of this manuscript with the classified redactions clearly identified. How they choose to do this is up to their discretion, but at the end of the day I need something that shows which parts of the manuscript they are redacting because the information is allegedly classified and which parts they are redacting for other reasons."

16. On 7 October 2022, Defendant's counsel emailed the undersigned, stating, "DOPSR has informed me that all redactions to the *Klaxon!* manuscript are for classified information. Because you already possess an unredacted copy of the manuscript, DOPSR cannot share the redacted version with you as it would have the effect of specifically revealing classified information to you."

17. On 7 October 2022, the undersigned emailed Defendant's counsel, stating, "OK we're going to need to start mediation then. Because there's no way most, let alone all, of this information is properly classified, and if they're going to so blatantly misrepresent the situation to us informally there is zero chance we can trust them to engage in a good faith process without a mediator watching over their shoulder."

18. On 31 January 2023, having received no response to his 7 October 2022 email, the undersigned emailed Defendant's counsel, stating, "It has been almost 4 months since I sent this email, and you have not responded. Are your clients ready to begin the mediation, or have they reconsidered their hardline position?"

19. On 1 February 2023, Defendant's counsel emailed the undersigned, stating, "As for mediation, we never agreed on a mediator, and we think it makes sense to hold off until review of all publications is complete."

20. On 1 February 2023, the undersigned emailed Defendant's counsel, stating, "We do not agree to wait to mediate until the review is over. You have already indicated that DOPSR will not engage in a good faith discussion with us about *Klaxon!* because they insist that every redaction is classified (when it is clearly not) and so will not allow me to be in the room for the discussion. Before you proposed holding off on mediation we had tentatively agreed on [the retired judge], and I had suggested that you should approach him instead of me. So that seems to be the next logical step. If you do not agree to begin mediation as soon as we can agree on a mediator, then I will ask the judge to order mediation to commence, since we have to complete it 4 months from now. There is no point in waiting to even start discussing his first book while they work on his second one. In the alternative, we will agree to continue to hold off on mediation if DOD processes me for an LS[A][1] so that I can participate in the discussions with my client. I have held LS[A]s several times in the past, most recently with CIA and ODNI, and getting that handled should be relatively quick on their end. If they do that, then we can start the discussions about the redactions within a couple of

---

[1] An LSA, alternatively known as Limited Security Access or Limited Security Approval, is a determination commonly made in the Intelligence Community to allow a private attorney to access and review specific classified information necessary to represent a particular client. An LSA is not a full—or even an interim—security clearance, and each LSA is specific to a particular client and a particular case, only allowing the private attorney to review the classified information relevant to that particular matter. The corrections in brackets were due to a scrivener's error in which the undersigned mistakenly wrote "LSI" instead of LSA.

weeks, but as long as they insist that I cannot participate in any discussions, we have no reason to wait for mediation."

21. On 16 February 2023, having received no response to his 1 February 2023 email, the undersigned emailed Defendant's counsel to inquire as to whether Defendant would process him for an LSA and to inform her that his proposed mediator was not available but that another equally qualified retired judge was, asking if the second judge was an acceptable candidate.

22. On 21 February 2023, Defendant's counsel emailed the undersigned, advising him that Defendant would not process him for an LSA and adding that Defendant was "not ready to proceed to mediation while DOPSR is so close to completing review of Dr. Hopkins' drafts."

23. On 21 February 2023, the undersigned emailed Defendant's counsel to seek clarity on the meaning of "so close to completing review" and to propose that the parties divide the mediation fees 90/10 to roughly approximate a *pro rata* accounting of the respective resources of the parties.

24. On 21 February 2023, Defendant's counsel emailed the undersigned, stating that DOPSR expected to complete its review of the manuscript entitled *Crowded Skies* "within the next couple of weeks" and that Defendant insisted on an even 50/50 split of all mediation fees.

25. On 27 March 2023, the undersigned emailed Defendant's counsel, "[T]he entire month of March came and went and no *Crowded Skies*. I think you can agree that my client has been extraordinarily patient with DOPSR, but our patience is at an end. If we do not have a release by COB on 31 March, I will be filing a motion to

compel both immediate mediation and immediate processing of me for an LSA to participate in the mediation."

26. On 27 March 2023, Defendant's counsel emailed the undersigned, stating that DOPSR was sending redacted copies of three of the five articles in controversy with suggested amendments directly to Hopkins along with four letters stating, in pertinent part, that one article was fully cleared for release and three articles were cleared as amended, with no explanation given for any of the redactions. All of the redacted text was unclassified information sourced from officially released records.

27. On 27 March 2023, the undersigned emailed Defendant's counsel, "As before, please clearly identify which redactions are classified and which redactions are unclassified and send the correspondence to me for documents where there are no classified redactions."

28. On 29 March 2023, Defendant's counsel emailed the undersigned, stating that DOPSR was sending a redacted copy of the manuscript entitled *Crowded Skies* with suggested amendments directly to Hopkins along with a letter stating, in pertinent part, "The amendments protect from release 'non-public information,' which can include classified national security information, controlled unclassified information, operational security information, export-controlled information, and unclassified information that may individually or in aggregate lead to the compromise of classified information." All of the redacted text was unclassified information sourced from officially released records.

29. On 30 March 2023, the undersigned emailed Defendant's counsel, stating, "My client accepts most of the amendments [to *Crowded Skies*] but contests that the information on pp. 16-17 is properly redacted. Please provide us with a redacted copy of those two pages with the redactions identified as either classified or unclassified information so that we can begin the discussion."

30. On 30 March 2023, Defendant's counsel emailed the undersigned, stating that she refused to discuss the redactions.

31. On 30 March 2023, the undersigned emailed Defendant's counsel, again asking, "Please ask your client to specify which redactions are allegedly classified information and which redactions are not. As before, if this is something they are unwilling to do, the next step is mediation, because they cannot legally exclude me from negotiations over unclassified material."

32. On 20 April 2023, having received no response to his 30 March 2023 email, the undersigned emailed Defendant's counsel to seek Defendant's position on this Motion.

33. On 24 April 2023, Defendant's counsel emailed the undersigned, stating, in pertinent part, "Defendants also do not oppose mediation, as it is required by the Court, though Defendants continue to view mediation as premature given that DOPSR is still processing the remaining article and the recently-submitted photos and captions for the two manuscripts.[2] Defendants do not object if you want to contact [the second retired judge] regarding mediation, but we would explain to

---

[2] The original *Klaxon!* and *Crowded Skies* manuscripts included only text. Hopkins, through undersigned counsel, submitted photos and the accompanying captions for these manuscripts in January and February 2023, respectively.

him our position regarding the prematurity of mediation and as to whether the issues are suitable for mediation. We think there is still time to get any mediation completed before the June 15 deadline, and we reserve the right to advise the Court of our views on whether mediation is necessary and appropriate. However, in no event will DOJ agree to pay more than 50% of any mediation. Mediation has been ordered by the court, and there is no basis for DOJ to pay 90% of the mediation fee, as you previously suggested."

34. On 26 April 2023, the undersigned emailed Defendant's counsel a document demonstrating that pages 16-17 of the *Crowded Skies* manuscript were exclusively sourced from publicly available official releases. In this email, the undersigned also stated that Hopkins's publisher had insisted that the final *Crowded Skies* manuscript be delivered no later than 1 May. As a good faith gesture to allow DOPSR time to complete its review by this deadline without distractions, the undersigned agreed to delay filing this Motion—and any discovery requests—until after 1 May.

35. On 3 May 2023, Defendant's counsel emailed the undersigned, stating that DOPSR was sending a redacted copy of the fifth article in controversy with suggested amendments directly to Hopkins along with a letter dated 27 April 2023 stating, in pertinent part, that the article was cleared as amended, with no explanation given for any of the redactions. All of the redacted text was unclassified information sourced from officially released records. This email also stated that the *Crowded Skies* manuscript and Hopkins's rebuttal document were still being reviewed due to the alleged need to consult with another agency.

9

As of this writing, Defendant has claimed that all of its redactions in one manuscript are classified despite all evidence to the contrary, refused to confirm if *any* redactions in three other manuscripts are classified, refused to allow Hopkins's undersigned counsel to participate in any discussions regarding the redactions, and refused to enter into mediation, even though the Court has ordered it to be *completed* approximately one month from now. Defendant appears to maintain that mediation may not be necessary or "appropriate," even though the undersigned put Defendant's counsel on notice in *October* that mediation would be necessary due to Defendant's meritless assertion that all of the redacted information in the *Klaxon!* manuscript was properly classified. After insisting that it was eager to complete mediation "as soon as practicable" last July if Hopkins agreed to one of its preferred mediators, Defendant abruptly reversed course as soon as Hopkins proposed a mediator who would have experience in matters involving classified information, and it has continued to stymie Hopkins's efforts to begin the mediation the Court ordered almost a year ago, all the while falsely claiming that it is not "refusing" to begin mediation while actually refusing to begin mediation.

Because of Defendant's continued dilatory conduct in this case and the fact that DOPSR has *still* not completed its review of his manuscripts, Hopkins regretfully requests this Court's intervention to compel Defendant to begin mediation in enough time to minimize the effect on the schedule established by the Court eleven months ago. Accordingly, Hopkins asks the Court to convene a status conference, in which he will ask not only for mediation to commence immediately, but also for an order directing Defendant to process the undersigned for an LSA to allow him to represent his client in both the mediation and the litigation (which, had Defendant agreed to enter into mediation earlier, would have been the first topic of discussion). Hopkins will also ask the Court to order Defendant to pay 90% of the mediation fees, out of recognition

of both Defendant's obdurate refusal to engage in timely mediation and the fact that a *pro rata* division of fees is appropriate in a case involving such an imbalance in resources as is present here.[3]

    Defendant's counsel has instructed the undersigned to state the following as Defendant's position on this Motion: "Defendants do not oppose Plaintiff's motion for a status conference. Defendants intend to file a status report setting forth their views before appearing at any such conference." Hopkins opposes Defendant's request to submit arguments masquerading as a status report in advance of the status conference and maintains that any arguments can and should be made during the conference or in briefing afterwards; it is why this Motion has not included a discussion, for instance, of the case law supporting his request that the undersigned be processed for an LSA. Accordingly, Hopkins asks this Court to simply order the parties to appear at a status conference on a given date and explicitly not authorize either party to submit written materials in advance of that conference.

    Because both Defendant's counsel and the undersigned live and work in the Washington, DC, area, Hopkins respectfully requests that this status conference be held as a videoconference or teleconference.

---

[3] Hopkins will likely also ask the Court to amend the remainder of the schedule, including the discovery period and the deadlines for motions and trial.

Date:   May 9, 2023

                                                Respectfully submitted,

                                                /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
N.D. Tex. Bar #984704DC
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*