IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT HOPKINS, III, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, <br><br> Defendants. | CASE NO.: 3:22-CV-00706-C |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR STATUS CONFERENCE, ECF NO. 13**

Introduction

Plaintiff's counsel has filed an unopposed motion for a status conference, which includes an eleven-page narrative as to why he believes one is necessary, and concludes with the suggestion that Defendants not be allowed to respond before any such conference. Defendants hereby respond to Plaintiff's motion. As set forth herein, Defendants do not oppose a status conference, nor have they opposed mediation in this case. Defendants have from the outset worked to resolve this dispute, as explained further below. Defendants are happy to address these issues further with the Court, if it believes a status conference is necessary.

Discussion

Plaintiff is a former Air Force Captain who held a Top Secret security clearance with access to Sensitive Compartmented Information ("TS/SCI clearance") at the time of his discharge in 1991. Plaintiff also signed a non-disclosure agreement (NDA) regarding classified information. This case arose from the Plaintiff's submission of two book manuscripts and five articles for pre-

1

publication review.[1] The Defense Office of Prepublication and Security Review ("DOPSR") has cleared as amended, i.e. cleared with redactions of classified information, the two book manuscripts and four of the five articles Plaintiff submitted for review. DOPSR also cleared one article with no redactions. DOPSR has now completed review of all the materials that Plaintiff had submitted for review at the time this Complaint was filed.[2] With each response to the submission of manuscript or article that contained classified information, DOPSR sent a cover letter to the Plaintiff stating describing the conditions of DOPSR's clearance, along with the manuscript containing DOPSR's redactions and, in some cases, proposed alternative text. Undersigned counsel also sent a copy of each cover letter to Plaintiff's counsel before it was released to Plaintiff, along with an offer to "reach out to [undersigned counsel] directly to coordinate discussion of the redactions between Dr. Hopkins and DOPSR, if needed."

Typically, the agency seeks to resolve disputed classification decisions with the author who signed the non-disclosure agreement and had access to classified information. If the author continues to challenge such decisions in litigation, then the process for judicial review involves the court's review of the matter on summary judgment, along with the manuscript at issue and, as needed, *ex parte*, *in camera* affidavits submitted by the Government agency explaining and justifying the redactions as classified. *See, e.g., Stillman v. CIA*, 517 F. Supp. 2d 32, 39 (D.D.C. 2007).

Contrary to Plaintiff's assertions, the Government has made extensive efforts to resolve this litigation, or at least narrow any dispute before the need for judicial review.

---

[1] Prepublication review allows agencies to review "certain materials that [current and former employees] intend to publish" so that the agencies can "redact information that is classified or otherwise sensitive to the national security." *Edgar v. Haines*, 2 F.4th 298, 303 (4th Cir. 2021); *see also, generally Snepp v. U.S.*, 444 U.S. 507, 507 (1980) (per curiam).

[2] Plaintiff later submitted photos and captions for his two book manuscripts in February 2023 and a rebuttal to certain redactions in one of the manuscripts in April 2023. DOPSR is still processing these later submissions.

At the outset of the case, Defendants sought to complete review of the materials that Dr. Hopkins submitted for prepublication review to determine what, if any, information remained in dispute for any further litigation. At that time, Defendants did not have Dr. Hopkins' contact information, as Plaintiff's counsel had submitted the materials to DOSPR on his client's behalf. On June 8, 2023, Defendants requested that Plaintiff's counsel provide Plaintiff's contact information so that DOPSR could send redactions to the Plaintiff and confer with him about any issues. Defendants received Plaintiff's contact information just over a month later, on July 11, 2023. In the process of conferring about a proposed publication, identifying redactions requested by the Government would have the effect of highlighting any classified information in the draft manuscript, and this could be discussed only with the NDA holder who has a clearance.

Accordingly, DOPSR sent its completed reviews directly to Plaintiff, Dr. Hopkins. DOPSR has now completed review of the materials submitted by Plaintiff at the time the Complaint was filed and, in an effort to resolve or narrow the litigation, has offered to discuss the redactions directly with Dr. Hopkins. If all disputes were resolved in this fashion, there would be no need for further litigation or mediation, and in any event such a process should identify which, if any, redactions remain in dispute for subsequent judicial review.

In short, Defendants have been working since the outset of the lawsuit to resolve any disputed redactions in Plaintiffs' publications and potentially to obviate the need for mediation before June 15 or further litigation. Defendants never stated, however, that they were unwilling to engage in mediation. Indeed, on April 24, 2023, undersigned counsel represented Defendants' position to Plaintiff's counsel as follows:

> Defendants also do not oppose mediation, as it is required by the Court, though Defendants continue to view mediation as premature given that DOPSR is still processing the remaining article and the recently submitted photos and captions for the two manuscripts. Defendants do not object if you want to contact [Plaintiff's

3

proposed mediator] regarding mediation, but we would explain to him our position regarding the prematurity of mediation and as to whether the issues are suitable for mediation. We think there is still time to get any mediation completed before the June 15 deadline, and we reserve the right to advise the Court of our views on whether mediation is necessary and appropriate. However, in no event will DOJ agree to pay more than 50% of any mediation. Mediation has been ordered by the court, and there is no basis for DOJ to pay 90% of the mediation fee, as you previously suggested.

Defendants note, however, that the nature of the issues presented in a prepublication review case like this one are not appropriate or well-suited for mediation. For example, to the extent disputes remain as to whether particular information in the draft publications is properly classified, that issue would be presented to the Court on summary judgment. *See, e.g. Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003); *McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983); *Berntsen v. CIA*, 618 F. Supp. 2d 27 (D.D.C. 2009). Under applicable case law, any issue as to whether particular information is properly classified is one for the Court's consideration, through *ex parte* submissions as needed, and is not appropriate for discussion in a mediation setting. In addition, Plaintiff's counsel does not have a right to a security clearance to review information that DOPSR considers classified in a mediation, or during the litigation. *See Stillman,* 319 F.3d at 548-49. If Plaintiffs' counsel disagrees and believes that he should be granted a security clearance for access to classified information, then that issue also is not appropriate for mediation, as the granting of a security clearance for access to classified information is within the discretion of the Executive Branch. *See Dep't of Navy v. Egan,* 484 U.S. 518, 528 (1988) ("It should be obvious that no one has a 'right' to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official.").

For these reasons, Defendants have regarded the question of mediation as premature until after DOSPR completed its review of Dr. Hopkins to determine if any disputes remain or whether the case was appropriate for summary judgment. In these circumstances, Defendants request that

the Court waive or postpone the mediation requirement in this case. If any disputes remain over classified information the Court should direct that the case proceed directly to summary judgment, where the parties can brief the legal issues and the Government can submit any *ex parte, in camera* justifications for the redaction of classified information, if needed.

Otherwise, Defendants have never indicated they would not comply with the Court's existing mediation requirement by June 15. However, if mediation proceeds, Defendants cannot agree to bear nearly all the costs of a mediation, and are aware of no law under which the Government could be compelled to do so. As in any case, should mediation proceed, the costs should be shared equally by the parties.

## Conclusion

The undersigned counsel is willing to appear at a status conference to further discuss these issues. Undersigned counsel lives in Washington, D.C. and is also unable to travel to Texas for personal health reasons, and requests that any status conference be set by video or teleconference.

Dated: May 12, 2023          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

 */s/ Rachael L. Westmoreland*
RACHAEL WESTMORELAND (GA Bar No. 539498)
JOHN T. LEWIS (TX Bar No. 24095074)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW

              Washington, D.C. 20001
              Tel: (202) 514-1280
             E-mail: rachael.westmoreland@usdoj.gov