# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

## Dallas Division

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:22-cv-00706 (C) |
| | * | |
| DEPARTMENT OF DEFENSE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION TO STAY FUTURE DEADLINES AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION TO AMEND SCHEDULING ORDER**

On 18 May 2023, Plaintiff Robert Hopkins ("Hopkins") filed a routine motion to stay all future deadlines in this case pending resolution of his Motion for Status Conference, Dkt. #13 (filed May 9, 2023), and a forthcoming motion to compel Defendant to process his undersigned counsel for temporary access to classified information. He did so to avoid overlapping and confusing briefing and to give the parties time to engage in the mediation ordered by the Court over a year ago, which Defendant has steadfastly refused to commence. He also did so because it serves judicial economy for the Court to resolve the question of whether Hopkins is entitled to have competent assistance of informed counsel who can review Defendant's evidence and participate in the administrative process *before* discovery is completed. Defendant now attempts to use its own delays and obstructions to bootstrap itself into an order not only negating the Court's previous mediation order but also removing any ability for Hopkins to engage in discovery—or even argue that he is entitled to informed counsel—until after a round of summary judgment briefing in which the undersigned can see neither the Government's evidence *nor his*

*own client's*. The Court should grant Hopkins's reasonable Motion and soundly reject

Defendant's attempt to avoid all meaningful judicial review.

Defendant's argument leans heavily on its assertion that its proposed process "has been

uniformly applied in prepublication review challenges" (Def.'s Part. Opp'n Pl.'s Mot. Stay,

Opposed Cross-Mot. Amend Sched. Order, & Unopposed Req. Expedited Consideration, Dkt.

#17, at 5 (filed May 24, 2023) [hereinafter Def.'s Opp'n]), which, in addition to being an

exaggerated reading of its previous statements (*see id.* at 2 (describing process as "*routinely*

adopted by courts" (emphasis added)), 4 ("[C]ourts have *generally* followed" process (emphasis

added))), is transparently false according to the very cases cited by Defendant for this

proposition. In *McGehee v. Casey*, the plaintiff *and his counsel* were allowed to review both of

the Central Intelligence Agency's ("CIA") classified *in camera* affidavits and draft and file

classified *in camera* affidavits in response. Br. for Appellants at 6-7, *McGehee v. Casey*, No. 81-

2233 (D.C. Cir.) (excerpt attached as Ex. A). McGehee's attorney explained the procedure

thusly:

> [I]n McGehee the way that worked I had access to the manuscript that was in
> dispute. I went out to the CIA with my client, I read the affidavits that the CIA filed.
> My client and I drafted counter-affidavits. A secretary at the CIA typed them up. I
> delivered them to somebody in the General Counsel's office, and after that, the
> lawyer got them filed with the court. Our notes and everything were kept out there.

Tr. of 4/26/02 Mot. Hrg. at 105:25-106:8, *Stillman v. DOD*, No. 01-1342 (D.D.C.) (excerpt

attached as Ex. B).[1]

*McGehee* was not the only such case where a comparable process was followed. In *Alfred*

*A. Knopf, Inc. v. Colby*, the author *and his counsel* directly participated in negotiations with the

agency, after which the agency reversed its position on 114 out of 339 items. 509 F.2d 1362,

---

[1] The line preceding this quote contains a scrivener's error when it states, "I wasn't the attorney in McGehee." *Id.* at 105:24. Mr. Lynch was clearly the attorney in that case. *See*, *e.g.*, Ex. A at 1.

1365 (4ᵗʰ Cir. 1975). Moreover, regarding the question of whether discovery should be stayed

pending the Court's resolution of Hopkins's forthcoming motion to compel—let alone

Defendant's intended motion for summary judgment—it should be noted that unclassified

discovery was conducted without objection in the *Stillman* case on which Defendant so heavily

relies *while the plaintiff's motion to compel was being briefed*. *See* Pl.'s 1ˢᵗ Req. Upon Defs.

CIA, DIA & DOD for Prod. of Docs., Dkt. #28-1 (filed Dec. 7, 2001), *Stillman v. Dep't of*

*Energy*, No. 01-1342 (D.D.C.); Defs.' Resp. Pl.'s 1ˢᵗ Req. for Prod. of Docs., Dkt. #35-1 (filed

Feb. 22, 2002), *Stillman v. Dep't of Energy*, No. 01-1342 (D.D.C.) (collectively attached as Ex.

C). Moreover, both the discovery and the motion to compel were addressed before the

Government's motion for summary judgment *at the Government's request*. *See* Not. of Filing,

Dkt. #24, at 1 (filed Oct. 23, 2001) ("Defendants believe . . . deferring the filing of defendants'

motion for summary judgment until after a ruling on Plaintiff's Motion to Compel Defendants to

Permit His Attorney's Access to Classified Manuscript and Pleadings (filed Oct. 19, 2001) . . . is

necessary in order to allow defendants a reasonable time to reassess their litigation strategy."),

*Stillman v. Dep't of Energy*, No. 01-1342 (D.D.C.) (attached as Ex. D).

At this point, Hopkins will digress, since, despite Defendant's efforts to the contrary, the

parties are not briefing the question of whether or not Hopkins's counsel should be processed for

access to classified information; they are briefing the question of whether the Court should allow

mediation and discovery to continue while *that* briefing takes place, as well as whether

Defendants should be allowed to refuse to brief that question until after the Court has adjudicated

a motion for summary judgment. The above examples simply serve to show that the matter is far

more complex than Defendant lets on, and its claim that its preferred course of litigation is

ubiquitous is a transparent attempt to mislead the Court about the actual history of the cases it

3

cites. It should suffice to say that the line quoted by Defendant from *McGehee* that "[w]e

anticipate that *in camera* review of affidavits, followed if necessary by further judicial inquiry,

will be the norm" (Def.'s Opp'n at 5 (quoting 718 F.2d 1137, 1149 (D.C. Cir. 1983))), does not

mean what Defendant makes it out to mean. In light of the factual history of that case, it is clear

that the D.C. Circuit chose its words carefully, pointedly *not* including "*ex parte*" in the

sentence. That court knew that the adversarial process was key to resolving the important

questions at issue and was referring to a process wherein *both* parties submitted *in camera*

affidavits after the participation of *both* parties' counsel, *just as had been done in that case*.

Whether this Court agrees with this conclusion is a question for another day, but it cannot

conclude that the answer is so obvious that Hopkins should not even be allowed to make the

argument in a timely fashion.[2]

Hopkins will briefly respond to two of Defendant's other arguments before concluding

this brief, in roughly the order in which they are presented, so as to give the Court a more

accurate picture of the matter in controversy. The first such argument is the subtle conflation of

"classified [and] sensitive information" (*id.* at 3), where Defendant cites case after case in which

a court discussed the publication of classified information in support of its argument that it

should be allowed to prevent the undersigned from learning "sensitive" information as well. The

Court should take careful note of the fact that one of the key issues which gave rise to Hopkins's

original motion for a status conference is the fact that Defendant refuses to identify for the

---

[2] Furthermore, it is uncontroverted that if Defendant claims that a piece of information is classified, Hopkins cannot provide his countervailing evidence that it is not—which would necessitate identifying the allegedly classified information—to his undersigned counsel without Defendant complaining that he is revealing classified information to someone not entitled to receive it. By Defendant's own argument, the undersigned would therefore be unable to read *his own client's* declaration refuting the Government's claims, grossly impairing Hopkins's First Amendment right to be represented by competent counsel. This is the cost of following Defendant's proposed course of litigation.

undersigned the unclassified, "sensitive" information that it redacted from five of Hopkins's

seven manuscripts and continues to insist that he cannot participate in discussions about *those*

redactions either. (Pl.'s Unopposed Mot. Stat. Conf., Dkt. #13, at 7-10 (filed May 9, 2023).) The

Court should not presume that all—or even *most*—of the information being redacted by

Defendant is in fact alleged to be classified unless Defendant proves otherwise, and until then, it

cannot presume that *any* of the cited case law—none of which originated in this Circuit, it should

be further noted—is at all applicable to the question before it.

Secondly, Defendant makes the inexplicable claim, "By setting the deadline for motions

for summary judgment before the deadline for completing discovery, the Court's order appears

to contemplate deciding the motions for summary judgment before the parties engage in

discovery." (*Id.* at 7 n.1.) This is a nonsensical statement. As this Court has previously held, "a

motion for summary judgment may be filed at any time after an 'adequate time for discovery.'"

*Simpson v. Panhandle S. Plains Fair. Ass'n*, No. 00-377, 2001 U.S. Dist. LEXIS 15080, at *4

(N.D. Tex. Aug. 9, 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The

Court simply stated that summary judgment motions must be filed before discovery is *completed*,

not before it is *commenced*. This conclusion is supported by the basic fact that the standard for a

"good cause" extension of the end of discovery under Federal Rule of Civil Procedure 16(b)(4) is

*diligence*, *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 237 (5th Cir. 2015), and courts have held

that failing to conduct discovery until the end of the discovery period demonstrates a lack of

diligence on a party's part. *See*, *e.g.*, *Neighborhood Networks Pub., Inc. v. Lyles*, No. 19-89,

2021 U.S. Dist. LEXIS 18445, at *20-21 (E.D.N.C. Jan. 31, 2021). It does not require a great

deal of imagination to predict what Defendant's response would have been if Hopkins had

waited until August—after the parties had completed summary judgment briefing—to begin

discovery, let alone requested an extension of the 11 September 2023 deadline simply because the summary judgment motion was pending. Its argument, then, that the Court *intended* for such an outcome while also pointedly stating that "[d]eadlines will not be extended except upon good cause shown and by order of the Court" (Sched. Order, Dkt. #12, at 1 (filed June 13, 2022) (quotation marks omitted)) defies credulity and further demonstrates the lack of good faith Defendant has exercised throughout this case.

The Court should grant Hopkins's Motion, deny Defendant's cross-motion, and stay all future deadlines, *without* affecting the current course of mediation or discovery or tolling the briefing of Hopkins's forthcoming motion to compel.

Date:   June 1, 2023

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
N.D. Tex. Bar #984704DC
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

6