# Unclassified Appendix

# TABLE OF CONTENTS

**Page**

Classified Information Nondisclosure Agreement (SF 189) ....................................1

E-mail from Rachael Westmoreland to Kel McClanahan, Esq. (June 8, 2022)........2

Unclassified Declaration of George R. Sturgis Jr. ..................................................3

    Exhibit 1 – Dep't of Def. Instruction 5230.29 .............................................15

    Exhibit 2 – Dep't of Def. Instruction 5230.09 ............................................27

    Exhibit 3 – *DOPSR*, Wash. Headquarters Services,
    https://perma.cc/XT4W-EWLR ..................................................................38

    Exhibit 4 – Air Force Instruction 35-101 ...................................................48

    Exhibit 5 – Air Force Manual 35-101 ......................................................216

    Exhibit 6 – E-mail from Paul J. Jacobsmeyer to Kel McClanahan, Esq.
    (Oct. 18, 2021)..........................................................................................296

    Exhibit 7 – E-mail from Paul J. Jacobsmeyer to Kel McClanahan, Esq.
    (Nov. 23, 2021).........................................................................................298

    Exhibit 8 – E-mail from Kel McClanahan, Esq. to WHS Pentagon ESD
    Mailbox SECREV (Jan. 14, 2022) ...........................................................300

    Exhibit 9 – E-mail from George R. ("Frosty") Sturgis to Kel McClanahan,
    Esq. (Feb. 28, 2022)..................................................................................303

Declaration of Andrew T. Walter,
    Deputy Assistant Secretary of Defense for Nuclear Matters (redacted)..........306

Declaration of Douglas A. Sims II,
    Joint Staff Director for Operations (redacted) ...............................................323

*\* One additional declaration is classified in full and has not been included in redacted form in this Unclassified Appendix*

ILt / 70 AREFS / DCO

# CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement Between ___HOPKINS, ROBERT S. III___ and the United States
                            *(Name - Printed or Typed)*

1.  Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is information that is either classified or classifiable under the standards of Executive Order 12356, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2.  I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3.  I have been advised and am aware that direct or indirect unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge such information unless I have officially verified that the recipient has been properly authorized by the United States Government to receive it or I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) last granting me a security clearance that such disclosure is permitted. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4.  I have been advised and am aware that any breach of this Agreement may result in the termination of any security clearances I hold, removal from any position of special confidence and trust requiring such clearances, and the termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised and am aware that any unauthorized disclosure of classified information by me may constitute a violation or violations of United States criminal laws, including the provisions of Sections 641, 793, 794, 798, and 952, Title 18, United States Code, the provisions of Section 783(b), Title 50, United States Code, and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5.  I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

6.  I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7.  I understand that all information to which I may obtain access by signing this Agreement is now and will forever remain the property of the United States Government. I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials which have, or may have, come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance. If I do not return such materials upon request, I understand that this may be a violation of Section 793, Title 18, United States Code, a United States criminal law.

8.  Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9.  Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10.  I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available to me Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, Section 783(b) of Title 50, United States Code, the Intelligence Identities Protection Act of 1982, and Executive Order 12356, so that I may read them at this time, if I so choose.

11.  I make this Agreement without mental reservation or purpose of evasion.

| SIGNATURE | DATE | SOCIAL SECURITY NO. *(See notice below)* |
|---|---|---|
| *[signature]* | 12 DEC 86 | ████████ |

ORGANIZATION
    70 AREFS / DOO

The execution of this Agreement was witnessed by the undersigned, who, on behalf of the United States Government, agreed to its terms and accepted it as a prior condition of authorizing access to classified information.

WITNESS AND ACCEPTANCE:

| SIGNATURE | DATE |
|---|---|
| *[signature]* | 12 Dec 86 |

ORGANIZATION
    70 AREFS

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above or 2) determine that your access to the information indicated has terminated. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

NSN 7540-01-161-1869                    189-101                    STANDARD FORM 189 (9-83)
                                                                   Prescribed by GSA
* GPO : 1985 0 - 495-693                                           32CFR 2003, E.O. 12356

**App. 001**

| | |
|---|---|
| **From:** | Westmoreland, Rachael (CIV) |
| **To:** | Kel McClanahan, Esq. |
| **Subject:** | Review of Dr. Hopkins" Manuscripts |
| **Date:** | Wednesday, June 8, 2022 3:59:00 PM |

Counsel,

DoD would like to try to resolve the dispute underlying this matter without engaging in protracted and time-consuming litigation. Toward that end, DoD is willing to revoke the withdrawal of Dr. Hopkins' draft publications from the pre-publication review queue and begin reviewing them immediately. However, DoD will only do so if you are willing to provide contact information for Dr. Hopkins in order to facilitate direct communications with the author and agree that any substantive communications concerning Dr. Hopkins' manuscripts and articles will occur between Dr. Hopkins himself and the appropriate DoD action officer. As I am sure you are aware, nondisclosure agreements are between the author and DoD. DoD has a strong interest in preventing unauthorized disclosure of classified information, and its communicating about the content of proposed publications with the author themselves is designed to ensure that any information that may be subject to nondisclosure obligations is discussed solely with the author and not with those without proper clearance, including their attorneys. DoD would agree to copy you on all non-substantive (procedural) communications with Mr. Hopkins so that you can remain aware of the status of Dr. Hopkins' proposed publications.

With respect to the timing of review, DoD is prepared to issue its determination on the *Klaxon!* manuscript no later than thirty days after receiving Dr. Hopkins' contact information and your agreement to the proposal set forth in this email. With respect to the other proposed publications, DoD will return the publications to their original place in the queue for review. While DoD cannot provide the exact date that it will complete review, DoD is open to proposing some target dates for a status report to the court.

Finally, DoD wants to make clear that Dr. Hopkins, and not his attorney or any other third-party, may submit future publications directly to SAF/PA pursuant to AFI35-101, but that SAF/PA may refer such publications to DOPSR if the publications concern DoD entities that are not under Air Force control, or if any of the criteria in DoDI 5230.29, Enclosure 3, Section 1 are satisfied.

I look forward to your thoughts.

All the best,
Rachael

**Rachael Westmoreland**
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice
202-514-1280
rachael.westmoreland@usdoj.gov

**App. 002**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

|  |  |
|---|---|
| ROBERT HOPKINS, III,<br><br>*Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF DEFENSE,<br><br>*Defendant.* | No. 3:22-CV-00706-E |

## UNCLASSIFIED DECLARATION OF GEORGE R. STURGIS JR.

I, George R. Sturgis Jr., declare under penalty of perjury that the following is true and correct:

## I.   Introduction

1.      I am currently the Chief of the Defense Office of Prepublication and Security Review ("DOPSR"), a part of Washington Headquarters Services of the Department of Defense. DOPSR provides certain administrative support services to the Office of the Secretary of Defense and various Department components in the National Capital Region.

2.      In my current position, I am responsible for oversight of DOPSR. DOPSR manages the Department's prepublication review program, which has primary responsibility for reviewing official government and defense industry

1

work products for public or other release, as well as materials submitted by individuals who have a security clearance, or were formerly cleared, pursuant to their voluntary non-disclosure agreement obligations and the legal prohibition that prevents them from publishing information prohibited from disclosure.

3.      DOPSR acts as a clearing house and liaison for the various defense-related agencies, activities, and components to coordinate prepublication review. DOPSR is not responsible for the substantive review of each submission. It receives submissions from authors and conducts a preliminary review to identify the Department component responsible for conducting a substantive review of the submission for information prohibited from disclosure to the public. The individual agency component then redacts all information prohibited from disclosure. The individual agency component is also home to the original classification authority responsible for the relevant national security information. Once a component completes its review, all redacted information is sent to DOPSR to be consolidated into a final redacted submission to be returned to the author. DOPSR also works to consolidate and deconflict redactions when multiple components review a single submission. DOPSR is not an original classification authority.

4.      DOPSR generally reviews the following types of materials:

      a.      Manuscripts, Articles, Theses

      b.      Conference Papers, Briefings, Brochures

**App. 004**

    c.       International Traffic in Arms Regulations technical data

    d.       Reprogramming Actions, Reports to Congress

    e.       Questions / Inserts for the Record, Advanced Policy Questions

    f.       Congressional Hearing Statements

    g.       Selected Acquisition Reports; and

    h.       Defense exhibits included in the President's Budget Request.

5.       Annually, DOPSR receives approximately 4,600 requests for security review, including approximately 200 requests to review manuscripts.

6.       As the senior official responsible for the Department's prepublication review process, I am also aware of the nondisclosure agreements that employees must sign, which require them to submit documents for review before they may be published.

7.       Through the exercise of my official duties, I have become familiar with the facts of this civil action. I understand that Plaintiff Dr. Robert Hopkins, III has filed this suit alleging that the Department has improperly prevented him from publishing certain information through the prepublication review process.

8.       The information provided in this declaration is based on my personal knowledge or information provided to me in the course of my official duties.

9.       The purpose of this declaration is to explain that Dr. Hopkins is subject to a non-disclosure agreement requiring prepublication review of all

3

**App. 005**

documents containing Department information prior to public release, and that the manuscripts submitted by Dr. Hopkins for prepublication review were subject to that agreement and properly processed.

## II.    The Department's Prepublication Review Process

10.    To protect the security and confidentiality of classified information and information prohibited from disclosure, the Department's prepublication review process gives the Department the opportunity to determine whether material contemplated for public disclosure contains protected information before publication.

11.    The Department's prepublication review process is guided by two sets of Department of Defense Instructions ("DoDI"): DoDI 5230.29 (attached as Exhibit 1) and DoDI 5230.09 (attached as Exhibit 2). DOPSR also maintains a website that explains the prepublication review process and provides examples of what types of information must be submitted, submission and review guidelines, contact information, and hyperlinks to the applicable DoD instructions. *See DOPSR*, Wash. Headquarters Services, https://perma.cc/XT4W-EWLR (last visited 28, 2023) (attached as Exhibit 3).

12.    The United States Secretary of the Air Force Office of Public Affairs ("SAF/PA") also maintains a prepublication review process, although SAF/PA occasionally must refer publications to DOPSR for further review. SAF/PA's

**App. 006**

process is guided by Chapter 9 of Air Force Instruction 35-101 ("AFI 35-101") (attached as Exhibit 4) and Chapter 8 of Air Force Manual 35-101 ("AFMAN 35-101") (attached as Exhibit 5).

## III.    Robert Hopkins, III, His Service with the Air Force, and his Non-Disclosure Agreement

13.    Plaintiff Dr. Robert Hopkins, III alleges that he served in the Air Force from 1983-1991 and that, at the time of his discharge, he had a Top Secret security clearance with access to Sensitive Compartmented Information ("TS/SCI"). Compl. ¶ 25.

14.    Dr. Hopkins was required to sign a non-disclosure agreement as a condition of his access to classified information. *See* App. 1.

15.    As acknowledged in the agreement, Dr. Hopkins was given a position of special trust and confidence involving the national security during his time with the Air Force. Dr. Hopkins thereby assumed a lifelong duty to ensure that he never discloses national security information in an unauthorized manner, whether intentionally, through gross negligence, or by failing to report an unauthorized release. That duty is also reflected in 18 U.S.C. § 793, which imposes criminal penalties for the unauthorized disclosure of national security information.

16.    By signing the agreement, Dr. Hopkins accepted a lifelong fiduciary and contractual obligation to protect the Department's information from unauthorized disclosure and expressly acknowledged that all Department

**App. 007**

information that he acquired during the course of his service is the property of the United States Government. Further, Dr. Hopkins agreed to consent to prepublication review and approval of certain Department-related material that he wished to publish or orally disclose.

17.     This prepublication review requirement is further defined and set forth in the Department regulations and policies referenced above. The prepublication review requirement extends to any information and/or materials which contain or purport to contain, refer to, or are based upon information that was obtained through a Department employee's association with the Department, regardless of whether the publication or disclosure in question actually contains Department protected information.

## IV.    Dr. Hopkins's Prepublication Review Requests

18.     As is relevant to this case, Dr. Hopkins submitted seven manuscripts to SAF/PA and/or DOPSR for review: two books, *Klaxon! Strategic Air Command Alert During the Cold War;* and *Crowded Skies*, and five articles, *Searching for Mobile ICBMs*; *Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts*; *Effectiveness of the Alert Force*; *Why 15 Minutes Is Irrelevant*; and *DoD Prepublication Review: A Broken, Arbitrary System Predisposed to Rejection*.

6

**App. 008**

19.    Dr. Hopkins claims to have submitted *Klaxon!* to SAF/PA for review on December 14, 2020.

20.    On July 26, 2021, SAF/PA completed its review of *Klaxon!* and referred the manuscript to DOPSR. DOPSR subsequently referred *Klaxon!* to three additional Department components for review.

21.    On October 6, 2021, Dr. Hopkins's counsel submitted *Crowded Skies* to DOPSR for review on behalf of Dr. Hopkins.

22.    On October 18, 2021, DOPSR official Paul Jacobsmeyer responded to counsel, acknowledging receipt of the submission (email attached as Exhibit 6). Jacobsmeyer informed counsel that "DOPSR does not work with, or accommodate, publishers' timelines," and asked counsel to "[p]lease have the author contact us directly with appropriate contact information." He also advised that "[f]ailure to provide this information will result in the denial of Security Review of this manuscript and administrative closure of this case." I have reviewed the aforementioned exhibit and can attest to the fact that it is a true and correct copy of the email.

23.    On November 23, 2021, Jacobsmeyer emailed counsel to inform him that "[a]s we have received no response to our request below soliciting contact information with the author of the subject manuscript, DOPSR is closing the case and taking no further action. Subsequent re-submission of the case will result in a

7

**App. 009**

new case number and position in the queue for the author" (email attached as Exhibit 7). I have reviewed the aforementioned exhibit and can attest to the fact that it is a true and correct copy of the email.

24.     On January 6, 2022, Dr. Hopkins's counsel submitted *Searching for Mobile ICBMs* to SAF/PA for review on behalf of Dr. Hopkins.

25.     On January 14, 2022, Dr. Hopkins's counsel submitted *Bring Back the Looking Glass*; *Effectiveness of the Alert Force*; *Why 15 Minutes Is Irrelevant*; *and DoD Prepublication Review* to DOPSR for review on behalf of Dr. Hopkins. In his email (attached as Exhibit 8), counsel also advised that "all correspondence regarding these submissions must be directed to me." I have reviewed the aforementioned exhibit and can attest to the fact that it is a true and correct copy of the email.

26.     On January 21, 2022, SAF/PA referred *Searching for Mobile ICBMs* to DOPSR for processing, which referred it to other Department components for review. I understand that SAF/PA also instructed Dr. Hopkins's counsel to refer requests of similar subject matter to DOPSR in the future.

27.     On February 28, 2022, I responded to Dr. Hopkins's counsel to explain DOPSR's significant concerns with the fact that he had repeatedly submitted manuscripts on behalf of Dr. Hopkins that reviewers had determined

**App. 010**

contained non-public information (email attached as Exhibit 9). In relevant part, I

explained that

> We note that you have submitted several prepublication review
> requests on behalf of your client, Dr. Hopkins, most recently on
> January 14, 2022. An Action Officer emailed you last fall regarding
> Dr. Hopkins' second book submission informing you that DOPSR
> needed the author's contact info, and that DOPSR could not start the
> review without his information. As you did not respond to multiple
> requests, DOPSR closed Dr. Hopkins' book submission on November
> 24, 2021.

> You have indicated that you are the sole correspondent for Dr.
> Hopkins' submissions, and that DOPSR is not right to
> administratively close any of the submissions. This is incorrect. As
> Dr. Hopkins is the author, held a security clearance, and has the
> prepublication obligation, he has the institutional responsibility and
> legal requirement to ensure that there is no non-public DoD
> information in the submissions. DoD's relationship is with the author,
> not his legal representative. Failure of the author to correspond with
> the DoD evades the intent of the prepublication review process to not
> disclose non-public DoD information.

> Our insistence on this process is standard DoD policy. To underscore
> the seriousness of this matter, reviewing components have identified
> instances of non-public information in Dr. Hopkins' first book
> submission, and based on the subject of the submissions, there is a
> likelihood that the second book and articles contain non-public DoD
> information. Providing this material to you is a violation of Dr.
> Hopkins' non-disclosure agreement. This violation could result in an
> Unauthorized Disclosure investigation by the Defense
> Counterintelligence and Security Agency. DoD's continued
> engagement with you perpetuates and endorses this unauthorized
> disclosure of DoD information by sanctioning your unauthorized
> access to the author's submissions. Hence, we are closing all of Dr.
> Hopkins' requests until he contacts our office.

I have reviewed the aforementioned exhibit and can attest to the fact that it is a true and correct copy of the email.

28.     As I explained to counsel in my email, DOPSR administratively closed all of Dr. Hopkins's submissions because counsel refused to provide contact information for Dr. Hopkins. DOPSR does not discuss classified information with individuals who are not cleared to receive it. Dr. Hopkins's counsel, Kel McClanahan, is not cleared to receive the national security information contained in the various manuscripts he submitted on behalf of Dr. Hopkins. Without Dr. Hopkins's contact information, DOPSR could not meaningfully correspond with Dr. Hopkins concerning its review of his manuscripts.

29.     DOPSR does not, as a general matter, administratively close all requests for review submitted by an attorney on behalf of a client author. However, DOPSR will not communicate about sensitive national security information with an uncleared representative of an author due to the risk of unauthorized disclosure. Nor did SAF/PA or DOPSR refer, or administratively close, Dr. Hopkins's submissions in retaliation for his criticism of the prepublication review process, his attempts to protect his First Amendment rights, or any other reason.

30.     Once DOPSR obtained contact information for Dr. Hopkins, it continued its review of his manuscripts, and recently completed its review of all of them.

10

**App. 012**

31.     Over a year after the submission of the original manuscripts for *Crowded Skies* and *Klaxon!*, in Spring 2023, Dr. Hopkins submitted photographs and captions for those manuscripts to DOPSR for the first time. DOPSR and the various Department components reviewed those photographs and captions on an expedited basis.

32.     DOPSR has also not attempted to impede Dr. Hopkins's ability to submit publications in the future. As I understand that the Department's counsel has informed Dr. Hopkins, he remains free to submit future publications directly to SAF/PA, although SAF/PA will refer such publications to DOPSR if the publications concern Department equities that are not under Air Force control in appropriate circumstances. *See* App. 2.

33.     In sum, the Department's processing of Dr. Hopkins's manuscripts complied with all applicable Department regulations and policies.

11

**App. 013**

Executed this __ day of October 2023 pursuant to 28 U.S.C. § 1746.

STURGIS.GEOR  Digitally signed by
GE.R.JR.10452  STURGIS.GEORGE.R JR.10
                45275236
75236          Date: 2023.10.02
                15:55:54 -04'00'

George R. Sturgis Jr.
Chief
Defense Office of Prepublication and
Security Review
Washington Headquarters Services

12

**App. 014**

# Exhibit 1



# Department of Defense
# INSTRUCTION

**NUMBER** 5230.29
August 13, 2014
Incorporating Change 2, February 8, 2022

DA&M

SUBJECT:    Security and Policy Review of DoD Information for Public Release

References:   See Enclosure 1

1. <u>PURPOSE</u>.  In accordance with the authority in DoD Directive (DoDD) 5105.53 (Reference (a)) and the January 11, 2021 Deputy Secretary of Defense Memorandum (Reference (b)), this instruction reissues DoD Instruction (DoDI) 5230.29 (Reference (c)) to implement policy established in DoDI 5230.09 (Reference (d)), assigns responsibilities, and prescribes procedures to carry out security and policy review of DoD information for public release.

2. <u>APPLICABILITY</u>.  This instruction:

   a.  Applies to OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (referred to collectively in this instruction as the "DoD Components").

   b.  Does not apply to the Office of Inspector General of the Department of Defense.  The Inspector General of the Department of Defense, as an independent and objective officer in the DoD, is exempt from the policy review provisions of this instruction.  As necessary, information may be submitted for security review before public release.

3. <u>POLICY</u>.  In accordance with Reference (d), it is DoD policy that a security and policy review will be performed on all official DoD information intended for public release that pertains to military matters, national security issues, or subjects of significant concern to the DoD.

4. <u>RESPONSIBILITIES</u>.  See Enclosure 2.

5. <u>PROCEDURES</u>.  Enclosure 3 contains clearance requirements, submission procedures, time limits, information concerning review determinations, and appeals.

**App. 016**

*DoDI 5230.29, August 13, 2014*

6.  <u>RELEASABILITY</u>.  **Cleared for public release**.  This instruction is available on the DoD Issuances Website at https://www.esd.whs.mil/DD/.


7.  <u>SUMMARY OF CHANGE 2</u>.  This change is administrative and, in accordance with the February 1, 2022 Washington Headquarters Services Memorandum (Reference (e)):

   a.  Reassigns the Director of Administration, Office of the Deputy Chief Management Officer of the Department of Defense responsibilities and duties to the Director of Administration and Management (DA&M) in accordance with Section 901 of Public Law 116-283 (Reference (f)), which eliminated the position of the Deputy Chief Management Officer of the Department of Defense effective January 1, 2021, and Reference (b) and the January 11, 2021 Deputy Secretary of Defense Memorandum (Reference (g)), which implemented Reference (f) and reestablished the DA&M.

   b.  Updates organizational titles and references for accuracy.


8.  <u>EFFECTIVE DATE</u>.  This instruction is effective August 13, 2014.




David Tillotson III
Assistant Deputy Chief Management Officer


Enclosures
   1.  References
   2.  Responsibilities
   3.  Procedures
Glossary

2

**App. 017**

*DoDI 5230.29, August 13, 2014*

ENCLOSURE 1

REFERENCES

(a)   DoD Directive 5105.53, "Director of Administration and Management (DA&M)," February 26, 2008
(b)   Deputy Secretary of Defense Memorandum, "Re-establishment of the Assistant to the Secretary of Defense for Intelligence Oversight and the Director of Administration and Management," January 11, 2021
(c)   DoD Instruction 5230.29, "Security and Policy Review of DoD Information for Public Release," January 8, 2009 (hereby cancelled)
(d)   DoD Instruction 5230.09, "Clearance of DoD Information for Public Release," January 25, 2019
(e)   Washington Headquarters Services Memorandum, "Approval of Administrative Changes to ODA&M DoD Issuances," February 1, 2022
(f)   Public Law 116-283, "William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021," January 1, 2021
(g)   Deputy Secretary of Defense Memorandum, "Disestablishment of the Chief Management Officer of the DoD and Realignment of Functions and Responsibilities," January 11, 2021
(h)   DoD Instruction 5400.04, "Provision of Information to Congress," March 17, 2009
(i)   DoD Instruction 5230.24, "Distribution Statements on Technical Documents," August 23, 2012, as amended
(j)   DoD Directive 5230.25, "Withholding of Unclassified Technical Data from Public Disclosure," November 6, 1984, as amended
(k)   Parts 120–130 of Title 22, Code of Federal Regulations (also known as the "International Traffic in Arms Regulations (ITAR)")
(l)   DoD Directive 5205.02E, "DoD Operations Security (OPSEC) Program," June 20, 2012, as amended
(m)   DoD Manual 5200.01, "DoD Information Security Program," February 24, 2012, as amended
(n)   Deputy Secretary of Defense Memorandum, "Congressional Testimony Coordination and Clearance Procedures," January 17, 2012
(o)   DoD Instruction 2205.02, "Humanitarian and Civic Assistance (HCA) Activities," June 23, 2014
(p)   DoD Directive 3000.05, "Stabilization," December 13, 2018
(q)   DoD Directive 5122.05, "Assistant to the Secretary of Defense for Public Affairs (ATSD(PA))," August 7, 2017
(r)   DoD Instruction 8170.01, "Online Information Management and Electronic Messaging," January 2, 2019, as amended
(s)   DoD Instruction 5230.27, "Presentation of DoD-Related Scientific and Technical Papers at Meetings," November 18, 2016, as amended
(t)   DoD Instruction 3200.12, "DoD Scientific and Technical Information Program (STIP)," August 22, 2013, as amended

3

**App. 018**

*DoDI 5230.29, August 13, 2014*

(u)   DoD Manual 3200.14, Volume 1, "Principles and Operational Parameters of the DoD Scientific and Technical Information Program (STIP):  General Processes," March 14, 2014, as amended

ENCLOSURE 1

**App. 019**

*DoDI 5230.29, August 13, 2014*

ENCLOSURE 2

RESPONSIBILITIES

1. <u>DA&M</u>.  The DA&M acts as the appellate authority for the DoD security and policy review process.

2. <u>DIRECTOR, WASHINGTON HEADQUARTERS SERVICES</u>.  Under the authority, direction, and control of the DA&M, the Director, Washington Headquarters Services:

   a.  Monitors compliance with the procedures established in Enclosure 3 of this instruction for the security and policy review of official DoD information.

   b.  Provides for the timely security and policy review of official DoD information proposed for public release that is originated by, in, or for the DoD, including statements intended for open presentation before the Congress and other material submitted to the Congress in accordance with DoDI 5400.04 (Reference (h)).

   c.  Provides for the timely policy review of official DoD information that is originated by the DoD for presentation before a closed session of the Congress and other classified material submitted to the Congress in accordance with Reference (h).

   d.  Coordinates, as necessary, with the DoD Component staffs when reviewing official DoD information for public release clearance to ensure accuracy and currency of existing policy and security guidance.

   e.  Responds to requests for review of information submitted by DoD personnel acting in a private capacity or submitted voluntarily by non-DoD sources to ensure that classified information is not disclosed.  This review will also address technology transfer and public releasability of technical data in accordance with DoDI 5230.24, DoDD 5230.25, and parts 120 through 130 of Title 22, Code of Federal Regulations (References (i), (j), and (k)).

   f.  Supports other Executive Department and non-DoD agency security review programs in the release of information to the public that may contain DoD equities.

3. <u>OSD AND DOD COMPONENT HEADS</u>.  The OSD and DoD Component heads:

   a.  Ensure Component compliance with this instruction and issue any guidance necessary for the internal administration of the requirements prescribed in Enclosure 3 of this instruction.

   b.  Ensure prompt Component guidance and assistance to the Chief, Defense Office of Prepublication and Security Review (DOPSR), when requested, on any information proposed for public release.

**App. 020**

*DoDI 5230.29, August 13, 2014*

c.  Exercise Component clearance authority for information not specified in section 1 of Enclosure 3 of this instruction.  This authority may be delegated to the lowest level competent to evaluate the content and implications of public release of the information.

d.  Ensure that Component-specific documents, including official correspondence, are reviewed internally and that information not specified in Enclosure 3 of this instruction is reviewed for operations security and information security in accordance with DoDD 5205.02E and DoD Manual 5200.01 (References (l) and (m)) before public release.  This review will also address technology transfer and public releasability of technical data in accordance with References (i), (j), and (k).

e.  Ensure Component compliance with the guidelines of the January 17, 2012 Deputy Secretary of Defense Memorandum (Reference (n)) concerning the coordination and clearance process of Congressional testimony to facilitate timely security and policy review.

f.  Ensure effective information sharing between the Component and designated mission partners in accordance with DoDI 2205.02 and DoDD 3000.05 (References (o) and (p)).

g.  Ensure that Component release of DoD information to news media representatives is in accordance with DoDD 5122.05 (Reference (q)).

**App. 021**

*DoDI 5230.29, August 13, 2014*

ENCLOSURE 3

PROCEDURES

1. <u>CLEARANCE REQUIREMENTS</u>.  The security review protects classified information, controlled unclassified information, or unclassified information that may individually or in aggregate lead to the compromise of classified information or disclosure of operations security. The policy review ensures that no conflict exists with established policies or programs of the DoD or the U.S. Government.  Official DoD information that is prepared by or for DoD personnel and is proposed for public release will be submitted for review and clearance if the information:

   a.  Originates or is proposed for release in the National Capital Region by senior personnel (e.g., general or flag officers and Senior Executive Service) on sensitive political or military topics;

   b.  Is or has the potential to become an item of national or international interest;

   c.  Affects national security policy, foreign relations, or ongoing negotiations;

   d.  Concerns a subject of potential controversy among the DoD Components or with other federal agencies;

   e.  Is presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson; or

   f.  Contains technical data, including data developed under contract or independently developed and subject to potential control in accordance with Reference (k), that may be militarily critical (as defined in the Glossary) and subject to limited distribution but on which a distribution determination has not been made.

2. <u>SUBMISSION PROCEDURES</u>

   a.  <u>Detailed Procedures</u>.  These procedures apply to all information required to be submitted to DOPSR for clearance:

      (1)  A minimum of three hard copies of material, in its final form, will be submitted, together with a signed DD Form 1910, "Clearance Request for Public Release of Department of Defense Information," located at the DoD Forms Management Program website athttps://www.esd.whs.mil/Portals/54/Documents/DOPSR/Docs/dd1910.pdf, to:

         Chief, Defense Office of Prepublication and Security Review
         1155 Defense Pentagon
         Washington, D.C. 20301-1155

7

**App. 022**

*DoDI 5230.29, August 13, 2014*

(2)  If the material is fewer than 100 pages long, one soft copy of the unclassified material and the DD Form 1910 may be submitted by e-mail to whs.pentagon.esd.mbx.secrev@mail.mil instead of the requirements of paragraph 2a(1) of this enclosure.

(3)  Any material submitted for review will be approved by an authorized government representative of the submitting office to indicate that office's approval of the material for public release.  Contractors may not sign the DD Form 1910.

(4)  All information submitted for clearance to DOPSR must first be coordinated within the originating DoD Component to ensure that it:

(a)  Reflects the organization's policy position.

(b)  Does not contain classified, controlled unclassified, or critical information requiring withholding.

(c)  Is reviewed for operations security in accordance with References (m) and (n).

(d)  Is reviewed to ensure there is no risk of releasing classified, controlled unclassified, operations security, or critical information if the information is aggregated with other publicly available data and information in accordance with References (l) and (m).

(5)  Only the full and final text of material proposed for release will be submitted for review.  Drafts, notes, outlines, briefing charts, etc., may not be submitted as a substitute for a complete text.  DOPSR reserves the right to return draft or incomplete documents without action.

(6)  Abstracts to be published in advance of a complete paper, manuscript, etc., require clearance.  Clearance of an abstract does not fulfill the requirement to submit the full text for clearance before its publication.  If an abstract is cleared in advance, that fact, and the DOPSR case number assigned to the abstract, will be noted on the DD Form 1910 or other transmittal when the full text is submitted.

b.  Other Requirements.  The requirements of References (h) and (n) will apply to the processing of information proposed for submission to Congress.

c.  Website Publication.  Information intended for placement on websites or other publicly accessible computer servers that are available to anyone requires review and clearance for public release if it meets the requirements of section 1 of this enclosure and DoDI 8170.01 (Reference (r)).  Website clearance questions should be directed to the Component's website manager.  Review and clearance for public release is not required for information to be placed on DoD controlled websites or computer servers that restrict access to authorized users.

d.  Basic Research.  Submitters will comply with the DoD guidance on basic scientific and technical research review in DoDI 5230.27 (Reference (s)).

**App. 023**

e. <u>Federally Funded Research and Engineering</u>.  Submitters will comply with the DoD guidance in federally funded research and engineering in DoDI 3200.12 and Volume 1 of DoDI 3200.14 (References (t) and (u)), which require submitters to send the final published document or final author's referenced manuscript to the Defense Technical Information Center.

3.  <u>TIMELINES FOR SUBMISSION</u>

a.  <u>Prepublication Security and Policy Review Requests</u>

(1)  Submit speeches and briefings to DOPSR at least 5 working days before the event at which they are to be presented.  Additional time may be needed for complex or potentially controversial speeches due to coordination requirements.

(2)  Other material (e.g., papers and articles) will be submitted to DOPSR at least 10 working days before the date needed.  The length, complexity, and content will determine the number of agencies required to review the document and, consequently, the time required for the complete review process.

(3)  Technical papers will be submitted to DOPSR at least 15 working days before the date needed.  More time may be needed if DOPSR determines that the material is complex or requires review by agencies outside of the DoD.

(4)  Manuscripts and books will be submitted to DOPSR at least 30 working days before the date needed and before submission to a publisher.  More time may be needed if DOPSR determines that the material is complex or requires review by agencies outside of the DoD.

(5)  DOPSR reserves the right to return documents without action if insufficient time is allowed for prepublication review.

b.  <u>Congressional Security and Policy Review Requests</u>.  Security and policy review of material submitted by the DoD to Congress will be provided to DOPSR in these timeframes to allow for a thorough review for DoD to comply with the congressional committee or subcommittee mandates:

(1)  Statements:  5 days before submission to the DoD Office of Legislative Counsel in accordance with References (h) and (n).

(2)  A minimum of 5 working days for these requests:

(a)  Questions for the Record.

(b)  Inserts for the Record.

(c)  Advance Policy Questions.

*DoDI 5230.29, August 13, 2014*

    (d)  Selected Acquisition Reports.

    (e)  Budget documents (in accordance with Reference (h)).

    (f)  Classified transcripts only (in accordance with Reference (h)).

    (g)  Reprogramming actions.

    (h)  Congressional reports.


4.  <u>REVIEW DETERMINATIONS AND APPEALS</u>

  a.  <u>General</u>.  Information reviewed for release to the public will result in one of these determinations:

    (1)  <u>Cleared for Public Release</u>.  The information may be released without restriction by the originating DoD Component or its authorized official.  DOPSR may require a disclaimer to accompany the information, as follows: "The views expressed are those of the author and do not reflect the official policy or position of the Department of Defense or the U.S. Government."

    (2)  <u>Cleared "With Recommendations" for Public Release</u>.  Optional corrections, deletions, or additions are included.  Although DOPSR has no responsibility for correcting errors of fact or making editorial changes, obvious errors may be identified in the text and noted as "recommended."  These corrections are not binding on the author or submitter.

    (3)  <u>Cleared "As Amended" for Public Release</u>.  Amendments, made in red, are binding on the submitter.  Red brackets identify information that must be deleted.  If the amendments are not adopted, then the DoD clearance is void.  When possible, alternative wording is provided to substitute for the deleted material.  Occasionally, wording will be included that must be added to the text before public release.  A disclaimer, as shown in paragraph a(1) of this section, may also be required.

    (4)  <u>Not Cleared for Public Release</u>.  The information submitted for review may not be released.

  b.  <u>Appeals</u>.  All amendments or "not cleared" determinations may be appealed in writing by the requester within 60 days to DOPSR.  The appeal must contain the basis for release of information denied during the initial determination.  All appeals will be resolved at the lowest practical level and as quickly as possible.  In accordance with Reference (a), the DA&M serves as the appellate authority for any denials or redactions that may be contested.  When the appellate authority makes a final determination, a written response will be promptly forwarded to the requester.

                                                                         

**App. 025**

*DoDI 5230.29, August 13, 2014*

## GLOSSARY

### PART I. ABBREVIATIONS AND ACRONYMS

DA&M      Director of Administration and Management
DoDD      DoD directive
DoDI      DoD instruction
DOPSR     Defense Office of Prepublication and Security Review

e-mail    electronic mail

### PART II. DEFINITIONS

These terms and their definitions are for the purpose of this instruction.

<u>authorized government representative</u>.  A government employee  who possesses the authority to communicate a particular component's policies and recommendation for public release.

<u>militarily critical</u>.  Information will be considered militarily critical if it addresses any of these subjects or affects the operations security thereof:

New weapons or weapons systems or significant modifications or improvements to existing weapons or weapons systems, equipment, or techniques.

Military operations and significant exercises of national or international significance.

Command, control, communications, computers, intelligence, surveillance, and reconnaissance; information operations and cyberspace; weapons of mass destruction; improvised explosive devices; and computer security.

Military activities or application in space; nuclear weapons, including nuclear weapons effects research; defense from chemical and biological warfare and threats; initial fixed weapons basing; and arms control treaty implementation.

Any other contemporary topic that is designated by the DoD Component head.

<u>public release</u>.  The act of making information available to the public with no restrictions on access to or use of the information.  Authorization and release of information to the public, cleared by DOPSR, is the responsibility of the originating office.

# Exhibit 2



# DoD Instruction 5230.09

## Clearance of DoD Information for Public Release

---

| | |
|---|---|
| **Originating Component:** | Office of the Director of Administration and Management |
| **Effective:** | January 25, 2019 |
| **Change 1 Effective:** | February 9, 2022 |
| **Releasability:** | Cleared for public release.  Available on the Directives Division Website at https://www.esd.whs.mil/DD/. |
| **Reissues and Cancels:** | DoD Directive 5230.09, "Clearance of DoD Information for Public Release," August 22, 2008, as amended |
| **Approved by:** | Lisa W. Hershman, Acting Chief Management Officer |
| **Change 1 (Administrative) Approved by:** | Christopher R. Choate, Chief, Directives Division |

---

**Purpose:**  This issuance reissues the 2008 directive as a DoD instruction (DoDI) in accordance with the authority in DoD Directive (DoDD) 5105.53 and the January 11, 2021 Deputy Secretary of Defense Memorandum to establish policy and assign responsibilities for the security and policy review process for the clearance of official DoD information proposed for official public release by the DoD and its employee.

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

# TABLE OF CONTENTS

SECTION 1: GENERAL ISSUANCE INFORMATION ............................................................... 3
    1.1. Applicability. ................................................................................................................ 3
    1.2. Policy. ........................................................................................................................... 3
    1.3. Summary of Change 1. ................................................................................................. 4
SECTION 2: RESPONSIBILITIES ................................................................................................ 6
    2.1. DA&M. .......................................................................................................................... 6
    2.2. Director, WHS. ............................................................................................................. 6
    2.3. DoD Component Heads. ............................................................................................... 6
GLOSSARY ............................................................................................................................... 7
    G.1. Acronyms. .................................................................................................................... 7
    G.2. Definitions.................................................................................................................... 7
REFERENCES .............................................................................................................................. 9

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

# SECTION 1:  GENERAL ISSUANCE INFORMATION

## 1.1.  APPLICABILITY.

a.  This issuance applies to OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (referred to collectively in this issuance as the "DoD Components").

b.  This issuance does not apply for provisions governing review of:

(1)  Prepared statements, transcripts of testimony, questions for the record, inserts for the record, budget documents, and other material provided to congressional committees that may be included in the published records in accordance with DoDI 5400.04.

(2)  Information before publication or disclosure by DoD contractors in accordance with Part 117 of Title 32, Code of Federal Regulations, Volumes 1-3 of DoD Manual (DoDM) 5200.01, and DoDI 5200.48.

(3)  Official information in litigation in accordance with DoDD 5405.2.

(4)  Release of official DoD information to media organizations in accordance with DoDD 5122.05.

(5)  Release of visual imagery, captured by DoD personnel on personal equipment, to media organizations in accordance with DoDI 5040.02.

(6)  Release of information requested pursuant to Section 552 of Title 10, United States Code (U.S.C.), also known as the "Freedom of Information Act," and Section 552a of Title 10, U.S.C., also known as the "Privacy Act."

## 1.2.  POLICY.  It is DoD policy that:

a.  Accurate and timely information is made available to the public and the Congress to help with analysis and understanding of defense strategy, defense policy, and national security issues.

b.  Any official DoD information intended for public release that pertains to military matters, national security issues, or subjects of significant concern to the DoD will undergo a prepublication review before release.

c.  The Office of Inspector General of the Department of Defense, as an independent and objective component in the DoD, is exempt from the policy review provisions of this issuance. As necessary, information may be submitted for prepublication review before public release.

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

d.  The public release of official DoD information is limited only as necessary to safeguard information requiring protection in the interest of national security or other legitimate governmental interest, as authorized by DoDDs 5122.05, 5205.02E, 5230.25, 5400.07, 5405.2, and 5500.07; DoDIs 5200.01, 5230.24, 5400.11, and 5230.27; Volumes 1-4 of DoDM 5200.01 and DoDM 5400.07; DoD 5400.11-R; DoD 5500.07-R; Chapter I, Subchapter M, Parts 120 through 130 of Title 22, Code of Federal Regulations; Executive Orders 13526 and 13556; and Section 4353 of Title 22, U.S.C.

e.  Information released officially is consistent with established national and DoD policies and programs.

f.  To ensure a climate of academic freedom and to encourage intellectual expression, DoD personnel who are students or faculty members of an academy, college, university, or DoD school:

    (1)  Are not required to submit for prepublication review papers or materials prepared in response to academic requirements when they are not intended for release outside the academic institution.  However, these individuals remain obligated to ensure their work contains no classified, sensitive or controlled unclassified sources consistent with their nondisclosure agreements.

    (2)  Will submit materials for prepublication review if they are intended for public release or will be made available in public libraries.  Clearance will be granted if classified information is not disclosed, controlled unclassified information is not disclosed, DoD interests are not jeopardized, and the author accurately portrays official policy, even if the author takes issue with that policy.

g.  Retired and separated Service members, former DoD employees and contractors, and non-active duty members of the Reserve Components will use the DoD prepublication review process to ensure that information they intend to release to the public does not compromise national security as required by their nondisclosure agreements.  Those who forgo the prepublication review process and inadvertently, negligently, or willfully disclose classified information may be subject to an unauthorized disclosure investigation and legal action.

h.  DoD personnel, while acting in a private capacity and not in connection with their official duties, may prepare information for public release through non-DoD venues or media.  This information must undergo a prepublication review if it meets the criteria in DoDI 5230.29.  Such activity must comply with ethical standards in DoDD 5500.07 and DoD 5500.07-R and may not have an adverse effect on duty performance or the authorized functions of the DoD.

## 1.3. SUMMARY OF CHANGE 1.  The changes to this issuance are administrative and, in accordance with the February 1, 2022 Washington Headquarters Services (WHS) Memorandum:

a.  Reassign the Director of Administration, Office of the Deputy Chief Management Officer of the Department of Defense responsibilities and duties to the Director of Administration and Management (DA&M) in accordance with Section 901 of Public Law 116-283, which eliminated the position of the Deputy Chief Management Officer of the Department of Defense effective

January 1, 2021, and DoDD 5105.82 and the January 11, 2021 Deputy Secretary of Defense Memorandum, which implemented the February 1, 2022 WHS Memorandum and reestablished the DA&M.

   b.  Update references and organizational symbols for currency and accuracy.

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

# SECTION 2: RESPONSIBILITIES

**2.1. DA&M.** The DA&M acts as the appellate authority for the DoD security and policy review process.

**2.2. DIRECTOR, WHS.** Under the authority, direction, and control of the DA&M, the Director, WHS:

a. Monitors compliance with this issuance.

b. Develops procedures and reviews guidelines for the security and policy review of information intended for public release in coordination with offices of the OSD Principal Staff Assistants.

c. Implements the DoD prepublication review process through the Defense Office of Prepublication and Security Review in accordance with DoDD 5110.04.

**2.3. DOD COMPONENT HEADS.** The DoD Component heads:

a. Provide prompt guidance and assistance to the Director, WHS, when requested, for the security or policy implications of information proposed for public release.

b. Establish policies and procedures to implement this issuance in their Components. Designate the DoD Component office and point of contact for implementation of this issuance and provide this information to the Defense Office of Prepublication and Security Review.

c. Forward official DoD information proposed for public release to the Director, WHS, for review, including a recommendation on the releasability of the information in accordance with DoDI 5230.29.

# GLOSSARY

## G.1. ACRONYMS.

| | |
|---|---|
| DA&M | Director of Administration and Management |
| DoDD | DoD directive |
| DoDI | DoD instruction |
| DoDM | DoD manual |
| | |
| U.S.C. | United States Code |
| WHS | Washington Headquarters Services |

## G.2. DEFINITIONS. These terms and their definitions are for the purpose of this issuance.

**DoD personnel.**

Any DoD civilian officer or employee (including special government employees) of any DoD Component (including any nonappropriated fund activity).

Any individual hired by or for any DoD Component through a contractual arrangement.

Any active duty Regular or Reserve military officer, warrant officer, and active duty enlisted member of the Military Services.

Any Reserve or National Guard member on active duty under orders issued pursuant to Title 10, U.S.C.

Any Reserve or National Guard member performing official duties, including while on inactive duty for training or while earning retirement points, pursuant to Title 10, U.S.C., or while engaged in any activity related to the performance of a federal duty or function.

Any faculty member in a civil service position or hired pursuant to Title 10, U.S.C. and any student (including a cadet or midshipman) of an academy, college, university, or school of the DoD.

Any foreign national working for a DoD Component consistent with labor agreements, international treaties and agreements, and host-country laws.

**information.** Any communication or representation of knowledge such as facts, data, or opinions in any medium or form.

**official DoD information.** All information that is in the custody and control of the DoD, relates to information in the custody and control of the DoD, or was acquired by DoD personnel as part of their official duties or because of their official status within DoD.

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

**prepublication review.**  The process by which information that is proposed for public release is examined by the Defense Office of Prepublication and Security Review for compliance with established national and DoD policies and to determine whether it contains any classified, export-controlled or other protected information.  It is the responsibility of the originating office to ensure that this prepublication review is followed and that clearance is granted prior to the release of the information to the public.

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

# REFERENCES

Code of Federal Regulations, Title 22, Chapter I, Subchapter M, Parts 120 through 130

Code of Federal Regulations, Title 32, Part 117

Deputy Secretary of Defense Memorandum, "Re-establishment of the Assistant to the Secretary of Defense for Intelligence Oversight and the Director of Administration and Management," January 11, 2021

DoD 5400.11-R, "Department of Defense Privacy Program," May 14, 2007

DoD 5500.07-R, "Joint Ethics Regulation (JER)," August 30, 1993, as amended

DoD Directive 5105.53, "Director of Administration and Management (DA&M)," February 26, 2008

DoD Directive 5110.04, "Washington Headquarters Services (WHS)," March 27, 2013

DoD Directive 5122.05, "Assistant To the Secretary of Defense for Public Affairs (ATSD(PA))," August 7, 2017

DoD Directive 5205.02E, "DoD Operations Security (OPSEC) Program," June 20, 2012, as amended

DoD Directive 5230.25, "Withholding of Unclassified Technical Data from Public Disclosure," November 6, 1984, as amended

DoD Directive 5400.07, "DoD Freedom of Information Act (FOIA) Program," January 2, 2008

DoD Directive 5405.2, "Release of Official Information in Litigation and Testimony by DoD Personnel as Witnesses," July 23, 1985

DoD Directive 5500.07, "Standards of Conduct," November 29, 2007

DoD Instruction 5040.02, "Visual Information (VI)," October 27, 2011, as amended

DoD Instruction 5200.01, "DoD Information Security Program and Protection of Sensitive Compartmented Information (SCI)," April 21, 2016, as amended

DoD Instruction 5200.48, "Controlled Unclassified Information (CUI)," March 6, 2020

DoD Instruction 5230.24, "Distribution Statements on Technical Documents," August 23, 2012, as amended

DoD Instruction 5230.27, "Presentation of DoD-Related Scientific and Technical Papers at Meetings," November 18, 2016, as amended

DoD Instruction 5230.29, "Security and Policy Review of DoD Information for Public Release," August 13, 2014, as amended

DoD Instruction 5400.04, "Provision of Information to Congress," March 17, 2009

DoD Instruction 5000.11, "DoD Privacy and Civil Liberties Programs," January 29, 2019, as amended

DoD Manual 5200.01, Volume 1, "DoD Information Security Program:  Overview, Classification, and Declassification," February 24, 2012, as amended

DoD Manual 5200.01, Volume 2, "DoD Information Security Program:  DoD Information Security Program:  Marking of Information," February 24, 2012, as amended

*DoDI 5230.09, January 25, 2019*
*Change 1, February 9, 2022*

DoD Manual 5200.01, Volume 3, "DoD Information Security Program:  Protection of Classified Information," February 24, 2012, as amended

DoD Manual 5400.07, "DoD Freedom of Information Act (FOIA) Program," January 25, 2017

Executive Order 13526, "Classified National Security Information," December 29, 2009

Executive Order 13556, "Controlled Unclassified Information," November 4, 2010

Public Law 116-283, "William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021," January 1, 2021

United States Code, Title 10

United States Code, Title22, Section 4353

Washington Headquarters Services Memorandum, "Approval of Administrative Changes to ODA&M DoD Issuances," February 1, 2022

# Exhibit 3



WASHINGTON HEADQUARTERS SERVICES



# Defense Office of Prepublication and Security Review

**For questions or inquiries, please call our Customer Support line at: 703-614-5001. Email is the preferred method of receiving requests. Please email requests to the DOPSR office inbox at: whs.pentagon.esd.mbx.secrev@mail.mil.**

## Areas of support

Select one to learn more and find additional resources

| DoD Member Submissions |
| --- |
| Legislative Branch |
| Executive Branch |
| Military Industrial Base |
| Frequently Asked Questions |

| DOPSR Contact Information |
| --- |

| Click here to learn more about DOPSR History |
| --- |

## Mission

Manages the Department of Defense security review program,

reviewing written materials both for public and controlled release. This includes official government and defense industry work products, as well as materials submitted by cleared or formerly cleared individuals pursuant to their voluntary non-disclosure agreement obligations. DOPSR also coordinates official work products with Defense enterprise stakeholders to ensure that information being released is both accurate and represents the Department's official position.

DOPSR derives its authority from DoD Instruction 5230.09 Clearance of DoD Information for Public Release and DoD Instruction 5230.29 Security and Policy Review of DoD Information for Public Release

The types of materials DOPSR reviews include:

- Manuscripts, Articles, Theses
- Conference Papers, Briefings, Brochures
- International Traffic in Arms Regulations technical data
- Reprogramming Actions, Reports to Congress
- Questions/Inserts for the Record, Advanced Policy Questions
- Congressional Hearing Statements
- Selected Acquisition Reports
- Defense exhibits included in the President's Budget Request

## Submission Guidelines and Required Forms

**Please note:** Due to an increased number of submissions, book-length manuscript reviews are currently taking several months. We apologize for this inconvenience. Please ensure adequate time for a prepublication security and policy review prior to committing to any publishing deadlines or sending the manuscript to a person or organization for endorsement.

Please note that this office can only accept submissions via email, paper copy, or on CD/DVD. Flash, thumb, and jump drives are not accepted and documents submitted on these devices will not be processed.

Please note that email submissions have an attachment limit of 25 MB. If your electronic submission exceeds 25 MB, please submit your documents in paper copy or on CD/DVD.

**App. 041**

**CLEARANCE REQUEST FOR PUBLIC RELEASE OF DEPARTMENT OF DEFENSE INFORMATION**

*(See Instructions on back.)*

*(This form is to be used in requesting review and clearance of DoD information proposed for public release in accordance with DoDD 5230.09.)*

**TO:** *(See Note)* **Chief, Defense Office of Prepublication and Security Review, 1155 Defense Pentagon, Washington, DC 20301-1155**

**Note:** Regular mail address shown above. For drop-off/next day delivery, use:
Room 2A534, 1155 Defense Pentagon, Washington, DC 20301-1155

**1. DOCUMENT DESCRIPTION**

| a. TYPE | b. TITLE |
|---|---|
| c. PAGE COUNT | d. SUBJECT AREA |

**2. AUTHOR/SPEAKER**

| a. NAME *(Last, First, Middle Initial)* | b. RANK | c. TITLE |
|---|---|---|
| d. OFFICE | | e. AGENCY |

**3. PRESENTATION/PUBLICATION DATA** *(Date, Place, Event)*

**4. POINT OF CONTACT**

| a. NAME *(Last, First, Middle Initial)* | b. TELEPHONE NO. *(Include Area Code)* |
|---|---|

**5. PRIOR COORDINATION**

| a. NAME *(Last, First, Middle Initial)* | b. OFFICE/AGENCY | c. TELEPHONE NO. *(Include Area Code)* |
|---|---|---|

**6. REMARKS**

**7. RECOMMENDATION OF SUBMITTING OFFICE/AGENCY**

a. THE ATTACHED MATERIAL HAS DEPARTMENT/OFFICE/AGENCY APPROVAL FOR PUBLIC RELEASE *(qualifications, if any, are indicated in Remarks section)* AND CLEARANCE FOR OPEN PUBLICATION IS RECOMMENDED UNDER PROVISIONS OF DODD 5230.09. I AM A GOVERNMENT EMPLOYEE *(civilian or military)*, AND NOT A CONTRACTOR, AUTHORIZED TO MAKE THIS RECOMMENDATION FOR RELEASE ON BEHALF OF:

b. CLEARANCE IS REQUESTED BY _____ *(YYYYMMDD)*.

| c. NAME *(Last, First, Middle Initial)* | d. TITLE |
|---|---|
| e. OFFICE | f. AGENCY |
| g. SIGNATURE | h. DATE SIGNED *(YYYYMMDD)* |

**DD FORM 1910, APR 2016**          PREVIOUS EDITION IS OBSOLETE.                    Adobe Professional XI

DD Form 1910

Open PDF

**App. 042**

## RECORD OF CONGRESSIONAL REVIEW

| 1. ACTION MONITOR | | | 2. DATE RECEIVED FROM CONGRESS (YYYYMMDD) |
|---|---|---|---|
| a. NAME (Last, First, Middle Initial) | b. AGENCY | c. TELEPHONE (Incl. Area Code) | |

| 3. TO: (In Turn) | 4. DATE ACTION MUST BE COMPLETED (YYYYMMDD) |
|---|---|
| a. | a. |
| b. | b. |
| c. CHIEF, DEFENSE OFFICE OF PREPUBLICATION AND SECURITY REVIEW | c. |

| 5. DESCRIPTION OF DOCUMENT COMMITTEE/SUBCOMMITTEE | 6. HEARING DATE AND SUBJECT | 7. PAGES _____ THRU _____ |
|---|---|---|
| | | 8. HEARING: CLOSED ☐   OPEN ☐ |
| | | 9. CLASSIFICATION |

The attached information to Congress is forwarded for policy and security review in accordance with DoD Instruction 5400.04. To meet committee requirements and allow time for final review by the Defense Office of Prepublication and Security Review, your action must be completed as indicated. Each element in the review process must give cooperative consideration to the time requirements of all elements in meeting due out dates. An advance copy of this DD Form has been sent to DOPSR. Only government employees (civilian or military) are authorized to make this recommendation for release; contractors cannot make this recommendation for release.

**I. SECURITY**

A. GENERAL. Review must be accomplished by officials competent to judge the security aspects of the subjects involved and to provide a consistent and defensible security position.

B. MARKING
  1. Use black lead pencil.
  2. Inclose with brackets [   ] information to be deleted.
  3. Make deletions as limited as possible, considering whether the total context may contain clues to the information deleted.

**II. POLICY**

A. GENERAL. Review to ensure the information agrees with current policy guidance as of the hearing date.

B. MARKING
  1. Use black lead pencil.
  2. Line through all words or figures for which substitute language or figures are entered. Do not use brackets.
  3. Print or write all entries legibly.
  4. Use standard proofreaders markings.
  5. Do not change statements by committee members. Note inaccuracies in the margin.

**10. REMARKS**

**11.**             **FORWARDING CERTIFICATE**

TO: Chief, Defense Office of Prepublication and Security Review        Date: _____

Portions of the attached information to Congress which require deletion in the interests of national security before publication have been bracketed. This action represents the considered judgment of this department/agency that the information so marked warrants protection for national security reasons.

| a. SIGNATURE | b. OFFICE |
|---|---|
| | |

**DD FORM 1587, APR 2016**        PREVIOUS EDITION IS OBSOLETE.        Adobe Professional XI

## DD Form 1587

**App. 043**

# CONGRESSIONAL REVIEW

| 1. TO: | 2. DATE |
|---|---|
| **CHIEF, DEFENSE OFFICE OF PREPUBLICATION AND SECURITY REVIEW** | |

The attached Budget Justification Book, Reprogramming Action, Selected Acquisition Report, Statement(s), and/or Reports to Congress are forwarded for review in accordance with DoD Instruction 5400.04.

**3. DESCRIPTION OF DOCUMENT**

**4. WITNESS**

**5. COMMITTEE/SUBCOMMITTEE**

**6. HEARING DATE AND SUBJECT**

| 7. PAGE COUNT | 8. THIS DOCUMENT IS FOR *(X applicable term)* | |
|---|---|---|
| | ☐ CLASSIFIED | ☐ UNCLASSIFIED PRESENTATION |

**9. PRIOR COORDINATION**

| a. NAME *(Last, First, Middle Initial)* | b. AGENCY | c. TELEPHONE *(Include Area Code)* |
|---|---|---|

**10. UPON COMPLETION NOTIFY**

| a. NAME *(Last, First, Middle Initial)* | b. AGENCY | c. TELEPHONE *(Include Area Code)* |
|---|---|---|

**11. DIRECT QUESTIONS TO**

| a. NAME *(Last, First, Middle Initial)* | b. AGENCY | c. TELEPHONE *(Include Area Code)* |
|---|---|---|

**12. REQUEST CLEARANCE NO LATER THAN** *(YYYYMMDD)*

The attached material has department/agency approval for the purpose specified. Any portions requiring security protection have been appropriately marked. I am a government employee (civilian or military), and not a contractor, authorized to make this recommendation for release.

| 13. ATTACHMENT | 14. SIGNATURE |
|---|---|

**DD FORM 1790, APR 2016**     PREVIOUS EDITION IS OBSOLETE.     Adobe Professional XI

DD Form 1790

**App. 044**

Open PDF

*All official DoD information prepared by or for DoD personnel and intended for official public release must be submitted for security/policy review.[1]*

## HOW TO SUBMIT A DOCUMENT

When submitting, please include the following:

**1.** All documents submitted by **DoD components** must be accompanied by a signed DD Form 1910. **Other U.S. Government agencies, Government employees/contractors and former Government employees/contractors** should use a cover letter in lieu of the DD Form 1910.

**2.** It's preferred you submit your request via **email**.

**3.** Documents regarding **sensitive topics** may be submitted on SIPRNET or JWICS. Please notify DOPSR when sending to ensure that they have been received for processing.

---

[1] DoD Instruction 5230.29, pg. 3

## SUBMISSION METHODS

**Standard mail:**
Department of Defense
Defense Office of Prepublication and
Security Review
1155 Defense Pentagon
Washington, DC 20301-1155

**Express mail:** (UPS, FEDEX, DHL accepted)
Department of Defense
Defense Office of Prepublication and
Security Review
Rm. 2A534 Pentagon
Washington, DC 20301-1155

**Email:**
Niprnet:
whs.pentagon.esd.mbx.secrev@mail.mil
Siprnet:
whs.pentagon.esd.mbx.DOPSR@mail.smil.mil
JWICS: OfficeofSecurity@osdj.ic.gov

## Contact Information/Queries
**DOPSR Help Desk:**

Tel: 703-614-5001

DOPSR Website:
http://www.esd.whs.mil/DOPSR/

### Defense Office of Prepublication and Security Review

---

### YOUR GUIDE TO SUBMITTING DOCUMENTS FOR A DOD SECURITY AND POLICY REVIEW



Department of Defense
Defense Office of Prepublication and
Security Review
1155 Defense Pentagon
Washington, DC 20301-1155

### Customer Questions:

### Tel: 703-614-5001

How to submit brochure

Open PDF



**App. 045**

9/29/23, 11:55 AM
Defense Office of Prepublication and Security Review
Case 3:22-cv-00706-E Document 32-3 Filed 10/04/23 Page 48 of 344 PageID 600



## DOPSR Definitions of Authority

Open PDF

Contact Us With Any Questions, Comments, or Concerns

**DOPSR Customer Support:**

Phone: 703-614-5001

**Email:**

**Unclassified:** whs.pentagon.esd.mbx.secrev@mail.mil
**Secret:** whs.pentagon.esd.mbx.dopsr@mail.smil.mil
**Top Secret:** officeofsecurity@osdj.ic.gov

**Fax:**

Unclassified: 703-614-4956

**Standard Mail:**

Department of Defense

**App. 046**

Defense Office of Prepublication and Security Review
1155 Defense Pentagon Washington, DC 20301-1155

---

**Express Mail: (UPS, FEDEX, DHL accepted)**

Department of Defense
Defense Office of Prepublication and Security Review
Rm. 2A534 Pentagon Washington, DC 20301-1155

---

Hosted by Defense Media Activity - WEB.mil

**App. 047**

# Exhibit 4

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**

**DEPARTMENT OF THE AIR FORCE**
**INSTRUCTION**

**35-101**

**20 NOVEMBER 2020**

**Public Affairs**

**PUBLIC AFFAIRS OPERATIONS**

## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

---

**ACCESSIBILITY:** Publications and forms are available on the e-Publishing web site at **https://www.e-publishing.af.mil/** for downloading or ordering.

**RELEASABILITY:** There are no releasability restrictions on this publication.

---

OPR:  SAF/PAR

Certified by: SAF/PA
(Col Mark Sotallaro)

Supersedes:    AFI 35-101, 12 January
 2016; AFI 35-102, 4 May 2016; AFI 35-
104, 22 May 2017;AFI 35-105, 23 June
2017; AFI 35-107, 15 March 2017; AFI 35-
108, 14 July 2015; AFI 35-109, 01 June
2017; AFI 35-113, 30 July 2018;

Pages: 167

---

This instruction implements the Department of the Air Force Policy Directive (DAFPD) 35-1, *Public Affairs Management*, and provides guidance for conducting public affairs activities pertaining to general Public Affairs (PA) duties, responsibilities, and organization. This publication applies to all civilian employees, and uniformed members of the Regular Air Force, Air Force Reserve (AFR) and Air National Guard (ANG).  Ensure that all records created as a result of processes prescribed in this publication are maintained in accordance with AFI 33-322, *Records Management and Information Governance Program*, and disposed of in accordance with the Air Force Records Disposition Schedule, which is located in the Air Force Records Information Management System.   Refer recommended changes and questions about this publication to the Office of Primary Responsibility (OPR) using the AF Form 847, *Recommendation for Change of Publication*; route AF Forms 847 from the field through the appropriate functional chain of command. This publication may be supplemented at any level, but all supplements must be routed to the OPR of this publication for coordination prior to certification and approval. The authorities to waive wing/unit level requirements in this publication are identified with a Tier number ("T-0, T-1, T-2, T-3") number following the compliance statement. See Department of the Air Force Instruction (DAFI) 33-360, *Publications and Forms Management*, for a description of the authorities associated with Tier numbers.

Submit requests for waivers through the chain of command to the appropriate Tier waiver approval authority, or alternately, to the requestor's commander for non-tiered compliance items. This instruction requires the collection and or maintenance of information protected by the Title 10 United States Code (USC), § 9013, *Secretary of the Air Force*.  The applicable System of Records Notices F035 AF AFNEWS A, *Hometown News Release Background Data File* and F035 AF SAFPA C, *Official Biographies* are available at **https://dpcld.defense.gov/privacy/SORNs.aspx**. The use of the name or mark of any specific manufacturer, commercial product, commodity, or service in this publication does not imply endorsement by the Department of the Air Force.

## SUMMARY OF CHANGES

This instruction has been substantially revised and needs to be completely reviewed. Major changes include consolidation of previous separated Public Affairs AFIs. It also eliminates previous procedural guidance that can now be found in AFMAN 35-101, *Public Affairs Procedures*. The activities not included in this instruction are discussed in AFI 35-110, *U.S. Air Force Bands*; AFI 35-114, *Department of the Air Force Branding and Trademark Licensing Program*; and Department of the Air Force Handbook (AFH) 35-115, *Visual Information*.

**Chapter 1—PUBLIC AFFAIRS ROLES AND RESPONSIBILITIES**                    **12**

Section 1A—General Guidelines and Background                                    12

    1.1.    Public Affairs Purpose ................................................................    12

    1.2.    Public Affairs Objectives............................................................    12

    1.3.    Public Affairs Core Competencies..............................................    12

    1.4.    Public Affairs Core Processes.....................................................    14

    1.5.    Department of the Air Force Public Affairs Programs. ...........................    15

    1.6.    Public Affairs Activities. ................................................................    15

    1.7.    Public Affairs Policy...................................................................    17

    1.8.    Communication Strategy Development and Execution. .........................    17

    1.9.    Coordination Within and Outside of the Department of Defense............................    18

    1.10.   Legal and Ethical Considerations. ............................................    18

    1.11.   Public Affairs Awards. ................................................................    18

Section 1B—Roles and Responsibilities                                           19

    1.12.   Commanders. ................................................................................    19

    1.13.   Headquarters United States Department of the Air Force Responsibilities.............    20

    1.14.   Air Force Wing and Space Force Garrison-level Responsibilities. ........................    26

**App. 050**

Table   1.1.   Unit Type Codes (UTCs) for Public Affairs ............................................... 27

1.15.   Department of the Air Force Member and Employee Responsibilities. .................. 29

Section 1C—Organization and Duty Titles 30

1.16.   Public Affairs Organization. .................................................................... 30

Figure   1.1.   Wing or Garrison PA Organization Chart. .................................................. 31

Figure   1.2.   Wing or Garrison PA Organization Chart (Mission Partner Support version) ........ 32

1.17.   Installation Host Wing or Garrison Standardized Duty Titles. ............................... 32

1.18.   Tenant Units. ....................................................................................... 34

1.19.   Public Affairs Standardized Duty Descriptions. .............................................. 34

1.20.   Public Affairs Standardized Terminology. .................................................... 36

**Chapter 2—MEDIA OPERATIONS** **37**

Section 2A—Purpose and Mission/Objectives of Media Operations 37

2.1.   Media Operations Purpose. ....................................................................... 37

2.2.   Media Operations Objectives. .................................................................... 37

Section 2B—General Release of Information 37

2.3.   Media Operations Responsibilities. .............................................................. 37

2.4.   Freedom of Information Act, 5 U.S.C. § 552 – FOIA; and Privacy Act, 5 USC § 552a................................................................................................... 39

2.5.   Published, Released or Cleared Information................................................... 40

2.6.   Department of the Air Force Personnel. ....................................................... 40

2.7.   Accidents/Incidents and Safety Investigations. .............................................. 43

2.8.   Military Justice Publicity. ........................................................................ 43

2.9.   Dissident and Protest Activities.................................................................. 44

2.10.   Investigations or Reports by Air Force Office of Special Investigations. ............... 44

2.11.   Civil Law Issues, Lawsuits, and Other Litigation............................................ 44

2.12.   Force Structure Announcements................................................................. 44

2.13.   Reduction in Force................................................................................. 44

2.14.   Scientists, Engineers, and Technical Documents............................................. 44

2.15.   Contracts and Contractors' Releases. .......................................................... 44

Section 2C—Release of Information on Operational Subjects                              45

    2.16.    Alert Status. ...................................................................................................   45

    2.17.    Operations and Exercises. ................................................................................   45

    2.18.    Access to Sensitive Information. ......................................................................   48

    2.19.    Intelligence, Surveillance, or Reconnaissance Activities. ...............................   48

    2.20.    Chemical, Biological and Radiological Warfare. ............................................   48

    2.21.    Simulated Employment of Nuclear Weapons on Maneuvers and Training
               Exercises. .......................................................................................................   48

    2.22.    Personnel Wounded in Combat. .......................................................................   48

    2.23.    Casualties. .......................................................................................................   48

    2.24.    Casualty Notification to Next of Kin. ..............................................................   49

    2.25.    Unit Activations, Inactivations, Phasedowns, or Movements. ........................   50

    2.26.    Weapon Systems. ............................................................................................   50

Section 2D—Guidelines for Other Published Information                                 50

    2.27.    Books. .............................................................................................................   50

    2.28.    National Magazine Story Ideas ........................................................................   51

    2.29.    Payment and Honoraria for Writing. ...............................................................   51

    2.30.    Commercial Use of Published Official Department of the Air Force Material. ......   52

    2.31.    Academic Institutions. ....................................................................................   52

Section 2E—Support for Non-Government, Non-Entertainment Visual Information Productions   52

    2.32.    General. ...........................................................................................................   52

    2.33.    Visual Information Guidance ...........................................................................   52

    2.34.    Responsibilities ...............................................................................................   52

    2.35.    Support Procedures. ........................................................................................   53

    2.36.    Contractor Visual Information (VI) Productions. ............................................   53

    2.37.    Commercial Advertisements. ...........................................................................   53

**Chapter 3—CRISIS COMMUNICATION**                                                    **55**

Section 3A—Purpose, Objectives, and Planning                                          55

    3.1.    Crisis Communication Purpose. ......................................................................   55

3.2.    Crisis Communication Objectives. ................................................................    55

3.3.    Crisis Communication Planning and Preparation. ...........................................    55

3.4.    Considerations. ................................................................................................    56

Section 3B—General Release of Information during Crisis                                   57

3.5.    Release of Personal Information ....................................................................    57

Section 3C—Aircraft, Missile and Space Accidents (Non-nuclear)                           60

3.6.    Initial News Release. .......................................................................................    60

3.7.    Accident Investigations....................................................................................    60

Section 3D—Incidents                                                                      61

3.8.    On-Base or Off-Base Disturbances..................................................................    61

3.9.    Chemical or Biological Material .....................................................................    61

3.10.   Terrorism. .........................................................................................................    61

3.11.   Near Mid-Air Collision....................................................................................    61

Section 3E—Nuclear Weapons                                                                61

3.12.   Policy for Information Releases After Nuclear Accidents and Incidents ............    61

3.13.   Initial Public Affairs Responsibility. ...............................................................    61

3.14.   Neither Confirm Nor Deny. ............................................................................    62

3.15.   Release of Information......................................................................................    62

**Chapter 4—COMMUNITY ENGAGEMENT**                                                         **65**

Section 4A—Purpose and Objectives of Community Engagement                                65

4.1.    Community Engagement Purpose.....................................................................    65

4.2.    Community Engagement Objectives. ...............................................................    65

Section 4B—Program Approvals and Participation                                            65

4.3.    Approval Levels for Programs..........................................................................    65

4.4.    General Guidelines for Participation in Public Events. ....................................    67

4.5.    Participation Criteria........................................................................................    68

4.6.    Funding Requirements......................................................................................    72

Section 4C—Use of Aerial Assets, Parachute Teams, Static Displays and Other Equipment    73

4.7.    General Guidance for On- and Off-Base Public Event Support. ............................    73

4.8.     On-Base Public Events. ................................................................... 74

4.9.     Military Flyovers ............................................................................. 74

4.10.    Aerial Review. ................................................................................. 77

4.11.    Aerial Demonstrations ..................................................................... 78

4.12.    Thunderbirds. ................................................................................... 78

4.13.    Single-Ship Demonstration Teams. ................................................ 79

4.14.    Foreign Demonstration Teams. ....................................................... 79

4.15.    Parachute Demonstrations. .............................................................. 79

4.16.    Aircraft Static Displays. .................................................................. 79

4.17.    Jump Platforms. ............................................................................... 80

4.18.    On-Base Civilian Aerial Demonstrations. ...................................... 80

4.19.    Supporting Special Events .............................................................. 81

4.20.    Sports Outreach ............................................................................... 81

Section 4D—Interagency Programs                                                       82

4.21.    Department of the Air Force Participation in Interagency Programs. .................... 82

Section 4E—Speeches, Public Appearances, Messages and Official Functions           82

4.22.    Acceptance Criteria. ........................................................................ 82

4.23.    Security and Policy Review. ............................................................ 83

4.24.    Payment and Honoraria. .................................................................. 83

4.25.    U.S. Air Force Representation at Events in the National Capital Region and New
         York City. ........................................................................................ 83

4.26.    Inviting Distinguished Visitors. ...................................................... 84

Section 4F—Department of the Air Force Tours, Programs and Open Houses            85

4.27.    General Guidelines. ......................................................................... 85

4.28.    National Civic Leader Tours. .......................................................... 86

4.29.    Civic Leader Tours. ......................................................................... 87

4.30.    Base Tours. ...................................................................................... 88

4.31.    Base Open Houses. .......................................................................... 88

Section 4G—Requests for Information (Non-Media) and General Inquiries                          89

    4.32.   Information Requests General Guidelines. ................................................   89

Section 4H—Community Involvement, Participation and Programs                                   89

    4.33.   General Guidelines. .........................................................................   89

    4.34.   General Responsibilities. ..................................................................   90

    4.35.   Managing Community Leader Meeting or Visit Requests. ....................................   90

    4.36.   Civic Leader Programs. ....................................................................   91

    4.37.   Think Tank and Academia Engagement. ....................................................   92

Section 4I—Special Events, Observances and Joint Councils                                      92

    4.38.   Inter-Service Support for Events. ...........................................................   92

    4.39.   Observances. ..............................................................................   93

    4.40.   Joint Councils. ............................................................................   94

Section 4J—Musical Support                                                                     94

    4.41.   Musical Support at Public and Ceremonial Events.............................................   94

Section 4K—Support for Non-Government Entertainment Productions                                95

    4.42.   Television, Motion Picture, Documentary, Unscripted and Other Entertainment
            Production Guidance.........................................................................   95

    4.43.   Production Companies. .....................................................................   96

Section 4L—Use of Department of the Air Force Members as Extras, in Game Shows or
           Entertainment Productions                                                             96

    4.44.   Use of Department of the Air Force Personnel in Non-Department of Defense-
            Supported Entertainment Programs. .........................................................   96

    4.45.   Use of Airmen and Space Professionals as Extras in Approved Department of
            Defense Entertainment Productions...........................................................   97

    4.46.   Member Participation in Game and Talk Shows. ...........................................   97

    4.47.   Participation in Commercials.................................................................   98

**Chapter 5—COMMAND INFORMATION AND DISTRIBUTION**                                             **99**

Section 5A—General Guidelines and Background                                                   99

    5.1.    Command Information Overview ............................................................   99

    5.2.    Command Information Purpose...............................................................   99

5.3.    Command Information Objectives..............................................................    99

5.4.    Command Information Policy..................................................................    99

Section 5B—Content for Command Digital and Printed Information Distribution.    102

5.5.    Content Requirements........................................................................    102

Section 5C—Digital Platform Management    103

5.6.    Website Management. ........................................................................    103

5.7.    Multidisciplinary Review Board-Quality Assurance (MDRB-QA) Program..........    103

5.8.    Website Content...............................................................................    104

Figure  5.1.    USAF Comment Policy ..................................................................    105

5.9.    Usability Requirements: Section 508........................................................    108

5.10.    Collection of Information. ..................................................................    109

5.11.    Public Website Policies. ....................................................................    109

Section 5D—Organizational Social Media Guidance    109

5.12.    Department of the Air Force Social Media Purpose. ...................................    109

5.13.    Organizational Identification. .............................................................    109

5.14.    Disclaimers. ..................................................................................    109

5.15.    Comment Policies ...........................................................................    109

5.16.    Anonymous Posts. ...........................................................................    109

5.17.    External Links.................................................................................    109

5.18.    Social Media Prohibitions...................................................................    110

5.19.    Transparency..................................................................................    110

5.20.    Terms of Service (ToS).......................................................................    110

5.21.    Live Streaming.................................................................................    110

5.22.    Web Records Management. .................................................................    110

**Chapter 6—ENVIRONMENTAL PUBLIC AFFAIRS**    **111**

6.1.    Environmental Public Affairs Purpose. ...................................................    111

6.2.    Environmental Programs. ...................................................................    111

**Chapter 7—VISUAL INFORMATION (VI)**    **115**

7.1.    Visual Information Purpose. ................................................................    115

7.2.     The overall management of the Department of the Air Force VI mission is
performed at four primary levels: ...................................................................     115

7.3.     Visual Information Activity Management and Resource Management...................     117

7.4.     Requesting Visual Information Support. ...................................................     118

7.5.     Visual Information Products and Services Management. ..........................     118

7.6.     Defense Visual Information Activity Number (DVIAN) Mandates, Definition
and Responsibilities. ...............................................................................     118

7.7.     Authorized Use of Department of the Air Force Visual Information Resources.....     119

7.8.     Quality Control. .....................................................................................     120

7.9.     Medical. .................................................................................................     120

7.10.    Visual Information Contract Support.......................................................     121

7.11.    Classified and or Sensitive Imagery Requirements. ...............................     122

7.12.    Alteration of Official Air Force and Space Force Imagery. ....................     122

7.13.    Imagery Release.....................................................................................     123

7.14.    Photography and or Television and Video Studio. ..................................     124

7.15.    Alert Procedures. ...................................................................................     124

7.16.    Visual Information Equipment Management for Installations.................     125

7.17.    Inventories. ............................................................................................     125

7.18.    Visual Information Production Management............................................     125

7.19.    Visual Information Records and Life-Cycle Management. .....................     129

7.20.    Managing Contracted Visual Information Facilities................................     131

7.21.    Combat Camera. .....................................................................................     131

7.22.    Aerial Photographic and Video Documentation Operations...................     134

7.23.    Small Unmanned Aircraft Systems.........................................................     135

**Chapter 8—TRAVEL FOR PUBLIC AFFAIRS PURPOSES**                             **136**

Section 8A—General Guidelines                                               136

8.1.     Purpose of Public Affairs Travel. ...........................................................     136

8.2.     Eligibility. ..............................................................................................     136

8.3.     Public Affairs Travel General Approval Authority. ...............................     137

8.4.      Tactical Waiver.......................................................................................... 138

Section 8B—Community Engagement Public Affairs Travel                           138

8.5.      Public Affairs Flights................................................................................. 138

8.6.      Community Engagement Travel Approval Authority. ................................ 139

Table   8.1.     Specific Approval Authority for Civilian Non-Media Travel in Support of PA
Programs. ................................................................................................. 139

8.7.      Civilian Travel Procedures and Guidelines. ............................................. 140

8.8.      Non-Local PA Travel Funding. ................................................................. 140

8.9.      Airlift Request Requirements. .................................................................. 140

Section 8C—Media Operations Public Affairs Travel                              141

8.10.     Media Travel Objectives............................................................................ 141

8.11.     Media Operations Travel Approval Authority............................................ 141

Table   8.2.     Specific Approval Authority for Media Travel........................................... 141

8.12.     Submission Guidelines. ............................................................................ 143

8.13.     Special Considerations for Media Travel................................................... 143

**Chapter 9—SECURITY AND POLICY REVIEW PROCESS                                 144**

9.1.      Purpose of Security and Policy Review...................................................... 144

9.2.      General Guidelines. ................................................................................... 144

9.3.      Air Force Installation and Mission Support Center. ................................... 145

9.4.      Material that Requires Submission. ........................................................... 146

9.5.      Secretary of the Air Force Office of Public Affairs (SAF/PA) and/or Defense
Office of Prepublication and Security Review (DOPSR) Clearances. .................... 146

9.6.      Information Not Requiring Review. ........................................................... 147

9.7.      Content Restrictions................................................................................... 147

9.8.      Submission of Material............................................................................... 148

9.9.      Recommended Program Guidelines. .......................................................... 148

9.10.     Security and Policy Review Process Requirements.................................... 148

9.11.     Appeal Procedures. ................................................................................... 148

**Attachment 1—GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION             149**

**Attachment 2—MULTIDISCIPLINARY REVIEW BOARD QUALITY ASSURANCE
          CHECKLIST                                               161**

**Attachment 3—TRIGGERS FOR POTENTIAL ELEVATION OF SECURITY AND
          REVIEW CASES                                             166**

**App. 059**

## Chapter 1

## PUBLIC AFFAIRS ROLES AND RESPONSIBILITIES

*Section 1A—General Guidelines and Background*

**1.1. Public Affairs Purpose** . This instruction provides guidance for conducting public affairs activities in support of commander's objectives. It requires commanders and Public Affairs professionals to engage with various publics to deliver truthful, credible, accurate, and timely information. In so doing, PA activities enhance awareness, understanding, and support for the Department of the Air Force mission, the Airmen and Space professionals who carry it out, and the service's contributions to national security. Supporting Department of Defense (DoD) and joint publications, this document describes Department of the Air Force PA, its functional organization, and its capabilities at all levels. It provides guidelines for all Department of the Air Force military and civilian personnel, regardless of rank or functional area, including ANG and AFR personnel. While this instruction summarizes other Air Force and DoD issuances as indicated in **Attachment 1**, personnel should review source documents for more detailed guidance.

1.1.1.  In joint and combined operations, joint and DoD guidance takes precedence over this instruction. **(T-0).**

1.1.2.  Communication is a leadership and command responsibility at all levels. All Airmen and Space professionals, regardless of specialty, should understand and be able to explain how they contribute to accomplishing the Department of the Air Force mission. Whether representing their installation at a community function or representing the United States (U.S.) in a crisis or contingency operation, all Airmen and Space professionals are front-line ambassadors for the Department of the Air Force and DoD. Telling the Department of the Air Force story contributes to mission accomplishment; aids in public understanding, trust, and support; and contributes to U.S. national security by leveraging the power of information, particularly through the demonstration of our resolve and capability.

**1.2. Public Affairs Objectives.** Department of the Air Force PA advances the service's priorities and achieves mission objectives through integrated research, planning, execution, and assessment of communication capabilities. Through strategic engagement with key internal, domestic, and international publics, supported by the use of information, imagery, and musical products, PA contextualizes military actions, operations and capabilities; shapes accurate perceptions of military operations; counters competitors' and adversaries' misinformation, disinformation and propaganda efforts; and contributes to the achievement of operational objectives and enduring strategic outcomes.

**1.3. Public Affairs Core Competencies.** The primary PA capabilities that contribute to mission accomplishment are described as core competencies.

1.3.1.  Trusted Counsel to Leaders. PA delivers candid communication counsel and guidance to commanders and other leaders to directly support their decision-making.

1.3.1.1.  PA analyzes unit activities from the perspective of specific key publics, relevant actors, the commander's objectives, higher headquarters (HHQ) guidance, policy, and

**App. 060**

law. Based on this analysis, PA provides recommendations for courses of action or policy decisions while offering an analysis of the potential intended and unintended consequences.

1.3.1.2. PA participates in communication and operational planning; continually monitors the information environment to identify key issues, publics, and relevant actors; develops messages aligned with higher headquarters guidance and commander's intent; conducts media engagement training; ensures legally mandated public involvement requirements are met; recommends specific PA capabilities and tactics to achieve the commander's objectives; and measures and evaluates the effectiveness of PA activities to inform future resourcing and execution.

1.3.2. Airman Morale and Readiness. PA activities contribute to Airman morale and readiness—the foundation of all Department of the Air Force core competencies—by enabling Airmen and Space professionals and their family members to better understand their roles and how policies, programs, and operations affect them.

1.3.2.1. The Department of the Air Force cannot accomplish its mission without well-trained, well-informed, and highly motivated people. Timely, relevant, and accurate information is a force multiplier that enhances Airman morale and readiness, and increases Airmen and Space professionals' effectiveness as ambassadors of the organization.

1.3.2.2. PA provides leaders with effective and efficient two-way communication tools to build, maintain, and strengthen morale and readiness.

1.3.3. Public Trust and Support. PA strengthens the bonds between the Air Force, Space Force and the public through open and honest dialogue and programs that communicate with key publics including local communities, opinion leaders, decision makers, and the media.

1.3.3.1. Public trust and support are essential to ensuring a highly trained and well-equipped Air and Space Forces. PA assists leaders in developing themes and messages, identifying stakeholders, selecting appropriate communication capabilities and tactics, and ultimately cultivating relationships and two-way communication that ensure the Department of the Air Force, Congress, media, and public understand how Air and Space Forces personnel and programs contribute to national security.

1.3.3.2. PA builds trust and support through engagements that showcase the Department of the Air Force as a community partner and responsible steward of public resources. Community engagement provides firsthand opportunities for local public audiences to learn about the quality and capability of our Airmen and Space professionals, weapons systems, and the important missions they carry out. PA Airmen and Space professionals and initiatives have a key role in the development of mutually beneficial relationships with community members and the media.

1.3.4. Global Influence and Deterrence. PA achieves operational effects in support of commander's objectives by leveraging the power of information, alone or in conjunction with the use of physical power, while at the same time defending our own informational centers of gravity.

1.3.4.1. During military operations, commanders leverage information to affect the perceptions, attitudes and other drivers of behaviors of relevant actors. PA supports that effort by participating in the joint planning process to develop communication strategies that truthfully inform key publics and relevant actors about military capabilities, intent and resolve. Those strategies can assure allies and partners as well as deter and or advantageously influence adversaries. Public opinion and reactions from world leaders and other relevant actors are driven by their perceptions of military activities, and demonstrate how the power of information can impact the effectiveness of military operations.

1.3.4.2. PA achieves operational objectives through global influence and deterrence, which requires continual analysis of the information environment, to include identification of key issues and publics and the development of strategies for engaging those publics in a way that helps achieve commander's objectives.

1.3.4.3. PA consistently communicates how the Department of the Air Force core missions are indispensable to our nation's ability to conduct successful military operations. The Department of the Air Force core missions are: air and space superiority, intelligence, surveillance, and reconnaissance, rapid global mobility, global strike, and command and control.

**1.4. Public Affairs Core Processes.** PA core competencies are supported by core processes that yield measurable impacts in the achievement of the Department of the Air Force's goals and objectives. These core processes apply to all levels and should be implemented to the maximum extent possible.

1.4.1. Advise commanders on the information environment and how to effectively leverage PA capabilities, solely or in concert with other capabilities, to achieve desired effects.

1.4.2. Provide expert counsel to assist leaders in making and communicating decisions affecting mission accomplishment.

1.4.3. Research, plan, execute, and assess toward a desired objective, adjusting efforts as necessary.

1.4.4. Synchronize communication activities to ensure consistency of themes, messages, images, actions, and operations.

1.4.5. Participate in all phases of installation, operational, and exercise planning and execution to ensure PA capabilities are appropriately integrated.

1.4.6. Employ communication tools to link Airmen and Space professionals and their leaders, educate and inform, and recognize excellence.

1.4.7. Promote public understanding and support by linking the Department of the Air Force to communities, opinion leaders, decision makers, and the news media.

1.4.8. Inform key publics about Air Force and Space Force requirements, capabilities, actions, and achievements.

1.4.9. Ensure the readiness of PA Airmen and Space professionals.

1.4.10. Provide PA training to PA personnel and to non-PA personnel, as needed.

**1.5. Department of the Air Force Public Affairs Programs.** The Department of the Air Force conducts comprehensive, active PA programs at all levels of command to provide service members, the public, Congress, community leaders, and the media accurate and official information contributing to awareness and understanding of the Air Force and Space Force missions.

1.5.1. In accordance with the DoD Principles of Information, codified at Department of Defense Directive (DoDD) 5122.05, *Assistant to the Secretary of Defense for Public Affairs,* **Section 5** – *Principles of Information,* commanders at all levels ensure a free flow of information in a timely, responsive manner, consistent with operational security and public law and policy governing privacy. PA practitioners will not engage in disinformation, activities to misinform, mislead, cover up, or deny otherwise releasable information. **(T-0).**

1.5.2. PA programs are designed to increase public awareness and understanding concerning:

1.5.2.1. Threats to the U.S., its interests, and the need for Air and Space Forces capable of deterring, responding to, and prevailing against those threats.

1.5.2.2. The relationship of the Department of the Air Force to the other military services of the U.S. and its allies.

1.5.2.3. The day-to-day activities of the Air Force and Space Force and the capabilities they provide to support the instruments of national power.

1.5.2.4. The need for continual research, development, and modernization of the Department of the Air Force's air, space, and cyberspace systems.

1.5.2.5. The need to attract, train, and retain the highest quality people for service in the Air Force and Space Force.

1.5.2.6. The essential and unique capabilities of air, space, and cyberspace power and the Department of the Air Force's role in providing for America's defense.

**1.6. Public Affairs Activities.** PA activities include functional management, communication planning and analysis, security and policy review, media operations, command information, community engagement, band operations, environmental communication, and visual information (VI).

1.6.1. PA Functional Management. PA functional management ensures the PA office, bands, and assigned personnel are resourced, trained, equipped, and ready to accomplish the mission in garrison or deployed.

1.6.1.1. Resource Management. PA leadership at all levels must play an active role in managing and advocating with the unit resource advisor, if applicable, for funding of PA activities in execution and budgeting. **(T-1).** Responsibilities include monitoring execution year expenditures, planning for known requirements in the next fiscal year, and projecting requirements for future years. See AFMAN 35-101, *Public Affairs Procedures,* **Chapter 1,** for specific guidance on how to plan for and execute a PA budget. PA resource managers must provide inputs to the wing comptroller during periodic budget reviews and any funding data calls for end-of-year requirements. **(T-3).**

1.6.1.2.  Manpower Management. Manpower influences the amount and type of people assigned to an office to accomplish its mission; therefore, understanding and monitoring manpower is a primary management responsibility and should be done in accordance with AFI 38-101, *Manpower and Organization*. See AFMAN 35-101, **Chapter 1**, for specific guidance on how to manage PA manpower within a given unit.  PA offices requesting changes to manpower authorizations, such as Department of the Air Force Specialty Code (AFSC), civilian occupational series, or grade or skill level adjustments, must coordinate with the local manpower office, Department of the Air Force Installation and Mission Support Center (AFIMSC), and Major Command (MAJCOM) PA offices, where applicable (**T-1**).

1.6.2.  Communication Planning. Communication planning is important to link PA activities to commander's priorities and or objectives, and ensure they are aligned with MAJCOM, combatant command, Department of the Air Force, and DoD guidance, plans, and strategies. At a minimum, units will maintain a current communication plan that details how PA personnel and resources are integrated into unit and HHQ objectives and how communication support of those objectives will be planned, executed and assessed until objectives change. (**T-3**). Units are encouraged to create supporting campaign plans as needed to guide complex communication efforts that require the synchronization of multiple activities over a shorter period of time. For detailed information on communication planning and analysis, see AFMAN 35-101, **Chapter 2**.

1.6.3.  Security and Policy Review. While adhering to the policy of "maximum disclosure, minimum delay," PA ensures information intended for public release neither adversely affects national security nor threatens the safety, security, or privacy of Department of the Air Force personnel. Information is not withheld from release merely to protect the Department of the Air Force from criticism or embarrassment. (**T-0**). Refer to **Chapter 9**, *Security and Policy Review Process*, and Department of Defense Instruction (DoDI) 5230.29, *Security and Policy Review of DOD Information for Public Release* for additional information.

1.6.4.  Media Operations. Proactive and continual media engagement based on transparency, honesty, and accessibility provides one of the most rapid and credible means of communicating with broad audiences and key publics. Such engagement typically results in greater accuracy, context, and timeliness. PA personnel must notify and coordinate with higher headquarter PA offices prior to communication on local issues that are expected to generate national or international media interest. (**T-1**). Refer to **Chapter 2**, *Media Operations*, for more information.

1.6.5.  Community Engagement. Community engagement encompasses activities supporting or in collaboration with the general public, businesses, academia, veterans, service organizations, military-related associations, and other community entities. Working with and through these various groups enhances mutual understanding, cooperation, and the support necessary for effective Department of the Air Force operations, recruitment and retention. See **Chapter 4**, *Community Engagement*, for more information.

1.6.6.  Command Information. PA provides communication tools and capabilities to link Airmen and Space professionals with their leaders. Command information helps Airmen and Space professionals and their families understand their purpose, role, and value to the Air

Force and Space Force. A free flow of information to Airmen and Space professionals and their families also creates awareness of and support for the mission, increases their effectiveness as Air Force and Space Force ambassadors, reduces the spread of rumors and misinformation, and provides avenues for constructive feedback. Effective communication also helps link Airmen and Space professionals and families to one another and available resources to build the resiliency necessary for military service. See **Chapter 5**, *Command Information and Distribution*, for more information.

1.6.7. Band Operations. Air Force bands provide a wide spectrum of musical support for events that enhance the morale, motivation, and esprit de corps of our Airmen and Space professionals, foster public trust and support, aid recruiting initiatives, and promote our national interests at home and abroad. See **Chapter 4**, *Community Engagement*, for strategies for effectively using band operations, and AFI 35-110, for additional information on band operations at large.

1.6.8. Environmental Communication. PA supports environmental program objectives and requirements by facilitating public notification and involvement and communicating the Department of the Air Force's commitment to environmental excellence. Refer to **Chapter 6**, *Environmental Public Affairs*, and the environmental PA page under the Community Engagement tab of the Department of the Air Force PA SharePoint ™ site, for additional information.

1.6.9. VI. Visual products, such as photographs, videos, and graphics are critical elements of effective communication and can directly contribute to meeting commander's objectives. In addition, they meet the DoD and federal law requirements for formal documentation of significant Air Force and Space Force operations and activities through the accessioning process. See **Chapter 7**, *Visual Information*, for more information.

**1.7. Public Affairs Policy** . The development of PA policy at all levels is an inherently governmental function that must only be exercised by Department of the Air Force military or civilian personnel, not contractors. Similarly, Department of the Air Force military or civilian personnel are the only ones authorized to act in the capacity of an official Air Force or Space Force spokesperson, PA release authority or subject matter expert for interviews. Only commanders, and PA personnel as delegated by commanders, shall release information such as press releases, articles, imagery, or any content published on a publicly available website, mobile app, or social media. **(T-0).**

1.7.1. Contracted capabilities that seek to replicate or supplement PA and or similar communication-related functions are coordinated with the PA office that would normally provide PA support, as well as the appropriate MAJCOM or equivalent HHQ PA office.

1.7.2. Government contracts for PA or similar-communication functions shall require that contractors comply with all 35-series AFIs and AFMANs.  Therefore, contracts for such services and communication-related functions should include language requiring contractor compliance with all 35-series AFIs and AFMANs.

**1.8. Communication Strategy Development and Execution.** PA's direct involvement throughout the operational planning process is critical and allows commanders to effectively leverage informational power as well as the inherent informational aspects of all Air and Space Forces operations and actions. This involvement also ensures synchronization of operations and

actions with themes, messages, images, and actions to achieve specific effects. Inconsistencies between what Airmen and Space professionals say and what they do damage Air Force and Space Force credibility and can negatively affect current and future missions.

1.8.1. PA provides options for leveraging information to accomplish desired objectives and helps to create, strengthen, or preserve conditions favorable to accomplishing those objectives. Both of these actions are based on the capability to provide timely, factual, and accurate information, while mitigating the impact of misinformation, disinformation, and propaganda.

1.8.2. PA analyzes and assesses communication effects and progress toward mission accomplishment. This assists commanders with decision making and informs the adjustment of communication strategy when necessary. Based on these capabilities, PA should lead organizational communication synchronization efforts. See Joint Doctrine Note (JDN) 2-13, *Commander's Communication Synchronization*, for more information.

**1.9. Coordination Within and Outside of the Department of Defense.** Effective communication planning may require PA to coordinate with intra- and interagency offices, allies, partners, nongovernmental organizations, and other stakeholders to ensure communication efforts are aligned with the broader strategic narrative.

1.9.1. Department of the Air Force units assigned as component forces to a combatant command are under operational control of the combatant commander. These units may receive operational tasks and guidance from the combatant command PA office in coordination with the Office of the Assistant to the Secretary of Defense for Public Affairs (OSD/PA).

1.9.2. Overseas PA activities are carried out in coordination with the applicable combatant command PA office and the appropriate representative of the Department of State. Typically, Department of Defense Public Affairs (DoD/PA) representatives work with State Department counterparts in the U.S. embassy in order to ensure communication efforts remain aligned with the broader national strategic narrative. PA ensures Office of the Secretary of Defense (OSD)/PA is aware of any U.S. government interagency coordination.

**1.10. Legal and Ethical Considerations.** PA activities must be conducted within the constraints and restraints established by public law, departmental and service policy, and ethical considerations. **(T-0).** Public Affairs Officers work cooperatively with Staff Judge Advocates (SJAs) to present commanders with balanced risk assessments of PA activities. For more information on ethical considerations, such as gifts, conflicts of interest, fundraising, and use of federal government resources, refer to DoD 5500.07-R, *Joint Ethics Regulation.*

**1.11. Public Affairs Awards.** The Secretary of the Air Force Office of Public Affairs (SAF/PA) oversees major functional awards programs. Submission guidelines, timelines, and categories are announced annually through PA channels. For detailed information on a specific PA award, see **https://access.afpc.af.mil/Trophies/searchtrophies.aspx** and select "Secretary of the Air Force LEVEL" for the sponsor and "Secretary of the Air Force PA" for the level. Additionally, PA professionals and units are encouraged to compete for other professional communication awards and may contact sponsoring organizations for details. Some examples include: Public Relations Society of America Silver Anvil Awards ™ and Department of the Air Force Association National Aerospace Awards ™.

*Section 1B—Roles and Responsibilities*

**1.12. Commanders.** The PA program is the responsibility of the commander. In accordance with AFI 1-2, *Commander's Responsibilities*, commanders transmit goals, priorities, values, and expectations, while encouraging feedback, in order to develop understanding, intent, and trust within the unit. Commanders employ PA personnel capabilities strategically to help build unit cohesion; increase mission effectiveness, morale, and retention; and enhance confidence, while reducing distractions, rumors, and uncertainty. Commanders and PA personnel are the primary spokespersons for their units. Commanders will:

1.12.1.  Conduct a PA program, delegating duties to the Chief, PA, if assigned. **(T-1).**

1.12.2.  Ensure PA personnel have direct, unimpeded access to the commander and senior staff. **(T-2).**

1.12.3.  Provide PA personnel with sufficient resources to ensure mission accomplishment. **(T-2).**

1.12.4.  Integrate PA into all phases of installation, operational, and exercise planning, execution, and assessment. **(T-2).**

1.12.5.  Ensure PA personnel are not given collateral duties such as honor guard, protocol, historian, investigating officer, or special event project officer. **(T-2).** Such duties interfere with PA responsibilities, which often require immediate response to fast-breaking events.

1.12.6.  Advise PA of anticipated or actual incidents or situations that could cause adverse or unfavorable media coverage or community reaction to the unit or Department of the Air Force. **(T-1).**

1.12.7.  Ensure unit communication activities are synchronized and integrated across the unit functions and aligned to HHQ communication strategies, plans and activities. **(T-1).**

1.12.8.  Maximize opportunities for interaction between Airmen and Space professionals and their surrounding communities through active community engagement programs. **(T-1).**

1.12.9.  Maximize media engagement opportunities to educate audiences about the Department of the Air Force mission and the role Airmen and Space professionals play in national security. **(T-1).**

1.12.10.  Support a command information program that keeps Airmen and Space professionals, their family members, and civilian employees well-informed and motivated. **(T-1).**

1.12.11.  Ensure VI activities and requirements are in accordance with DoDI 5040.02, *Visual Information (VI).* **(T-0).**

1.12.12.  Conduct a command information program that serves the installation's audience, to include Airmen and Space professionals and their families, and tenant units**. (T-1).** PA provides leaders with a wide range of effective and efficient communication tools to build, maintain and strengthen morale and readiness. Ensure conformity with all laws and regulations regarding the public distribution of information on all platforms. **(T-0).**

1.12.13.  Ensure all public distribution platforms receive initial security review for content prior to site launch. **(T-0).** Ensure the designated representative reviews and approves

**App. 067**

updates or new material prior to publication to meet all security considerations. **(T-0).** Additionally, the designated representative must assess the need, requirement and suitability for release of information. **(T-0).**

1.12.14.  Ensure all official websites are registered on **https://www.af.mil/AFSites.aspx** by completing the online form at **https://www.af.mil/AFSites/SiteRegistration.aspx**. **(T-1).** Ensure all social media sites are properly registered as official U.S. Department of the Air Force sites to comply with Terms of Service agreements. **(T-1).**  All mobile apps or other technology must be labeled as official. **(T-0).**

**1.13.  Headquarters United States Department of the Air Force Responsibilities.**

1.13.1.  Director, Secretary of the Air Force Office of Public Affairs (SAF/PA). The Department of the Air Force Director of PA is the principal official of the Secretary of the Air Force Office of Public Affairs (SAF/PA) and responsible for providing guidance, direction and oversight on the formulation, review and execution of PA plans, policies, programs and budgets. SAF/PA serves as the functional authority and career field manager for Department of the Air Force PA professionals. The Director responsibilities include:

1.13.1.1.  Advising the Secretary of the Air Force, Chief of Staff of the Air Force, Chief of Space Operations, Secretariat, and Air and Space Staffs on all matters relating to Department of the Air Force communication strategies and programs.

1.13.1.2.  Planning, supervising, organizing, synchronizing, conducting, evaluating and assessing the impact of Headquarters Department of the Air Force (HAF) and enterprise PA operations.

1.13.1.3.  Monitoring and supporting all Department of the Air Force content distributed in Defense Media Activity (DMA)-produced Department of the Air Force products, ensuring it meets the needs and standards of Department of the Air Force leaders and audiences.

1.13.1.4.  Ensuring Combat Camera (COMCAM) policy is provided and coordinated with Air Force training and readiness offices to establish aerial program policies and aerial photography/videographer positions, as well as revalidation existing aircrew positions is completed annually.

1.13.1.5.  Ensuring internet-based communication platforms for Department of the Air Force use. Coordinate Terms of Service agreements for these platforms on behalf of Department of the Air Force.

1.13.1.6.  Ensuring Department of the Air Force-level policy and guidance that is consistent with existing laws, Department of the Air Force and DoD regulations, and leadership direction is developed.

1.13.1.7.  Managing and assessing Department of the Air Force-level programs to educate publics about the inherent capabilities of air, space, and cyberspace power and the core values of Air Force and Space Force members.

1.13.1.8.  Exercising supervisory responsibilities over the Air Force Public Affairs Agency (AFPAA) and two field offices. See **paragraph 1.13.5** for more information.

1.13.1.8.1.  AFPAA. SAF/PA field operating agency in Los Angeles See **paragraph 1.13.5** for more information.

1.13.1.8.2. Secretary of the Air Force National Media Engagement Office (SAF/PAON), located in New York City, is the focal point for regional, national, and international media outreach. It is also the Department of the Air Force liaison office for corporate, community, and government officials in the region. Coordinates Air Force band performances in the area.

1.13.1.8.3. Secretary of the Air Force Entertainment Liaison Office (SAF/PAYL). Projects and protects the Air Force and Space Force image by serving as liaison between the Department of the Air Force and the motion picture and entertainment industries.

1.13.1.9. Refer to Headquarters Department of the Air Force Mission Directive 1-28, *Director of Public Affairs*, for more information on SAF/PA responsibilities, authorities, and organization.

1.13.2. The Secretary of the Air Force Office of Legislative Liaison Programs and Legislation Division (SAF/LLP) will participate in preparation of materials for Congress and will handle congressional distribution.

1.13.3. Director, National Guard Bureau Office of Public Affairs. Serves as the PA advisor to the Chief, National Guard Bureau (a member of the Joint Chiefs of Staff) and, as such, the official channel of communication among DoD, the Departments of the Army and the Air Force, and the Army and ANG of the 50 states, District of Columbia, Guam, Puerto Rico, and the Virgin Islands. Serves as the spokesperson for the National Guard Bureau and develops PA programs and guidance for use by Air and Army National Guard organizations in cooperation with Department of the Air Force (SAF/PA), Army (OCPA) and DoD PA offices. Enhances public trust and support of the National Guard to conduct its state and federal missions.

1.13.4. Director, AFR Command Office of Public Affairs. Serves as the principal communication advisor to AFR senior leaders and staff, providing functional oversight of PA activities and personnel within their area of responsibility (AOR). The Director, AFR Command Office of Public Affairs will:

1.13.4.1.  Serve as the Career Field Manager for all AFR PA personnel.

1.13.4.2. Provide PA capabilities in support of AFR mobilizations, operations, and exercises.

1.13.4.3.  Coordinate formal and informal training requirements for AFR PA personnel as appropriate.

1.13.5. Director, MAJCOM or Field Command Office of Public Affairs. Serves as the principal communication advisor to MAJCOM or Field Command senior leaders and staff, providing functional oversight of PA activities and personnel within his or her AOR. The MAJCOM/PA or Field Command PA Director will:

1.13.5.1. Plan, coordinate, integrate, synchronize, execute, and assess PA programs and activities to support the commander's objectives and to support enterprise PA efforts.

1.13.5.2.  Assist in preparing MAJCOM senior leaders for Congressional testimonies as well as civic and media engagements.

1.13.5.3.  Develop, coordinate, and implement PA Guidance.

1.13.5.4.  Provide PA capabilities in support of operations, exercises, contingencies, and crises.

1.13.5.5.  Establish and oversee processes to assess, enhance, and monitor the availability of PA forces and equipment within their commands to satisfy Air and Space Forces expeditionary and home station requirements. Plan, execute, and assess theater engagements and communication strategies, as necessary, in support of Commander Air Force Forces intent and concept of operations. See AFI 13-103, *AFFOR Staff Operations, Readiness and Structures*, for more information on Department of the Air Force Forces duties.

1.13.5.6.  Manage the command's communication planning and synchronization process.

1.13.5.7.  Organize, train, and equip PA forces to achieve global influence and deterrence by employing PA capabilities in support of Air and Space Forces component and joint force commanders.

1.13.5.8.  Provide security and policy review of the headquarters' information and imagery proposed for public release.

1.13.5.9.  Coordinate training requirements for PA personnel.

1.13.5.10.  Ensure site and content managers, as well as content providers, are trained to use American Forces Public Information Management System (AFPIMS). **(T-1).** All PA personnel are required to take the advanced distributed learning service-based Operations Security (OPSEC) Fundamentals Course (OPSE 1301) and the Joint Knowledge Online-based Department of the Air Force Identity Management Course (J3O P-US1322) in accordance with AFI 10-701, *Operations Security (OPSEC)*, Table 4.1.

1.13.5.11.  Update biographies and fact sheets for submission to **https://www.af.mil** via the organizational email: **AFBiographies.DMA@mail.mil**.

1.13.5.12.  Ensure social media sites within their command are in legal and regulatory compliance, as outlined in this instruction.

1.13.5.13.  Review the information and links on their social media account(s) or profile information to ensure the most up-to-date information is available to the public.

1.13.5.14.  Maintain a contact roster of social media administrators for approved MAJCOM or Field Command accounts.

1.13.5.15.  Ensure social media accounts are registered and approved in the Department of the Air Force Social Media Directory at **http://www.af.mil/AFSites/SocialMediaSites.aspx** and in the U.S. Digital Registry at **https://usdigitalregistry.digitalgov.gov**.

1.13.5.16.  Establish and create procedures for a VI life-cycle management program. **(T-1).**

**App. 070**

1.13.5.17. When applicable, oversee regional Air Force band operations, to include providing direction, oversight, guidance, and administration for Airmen and Space professionals assigned.

1.13.5.18. When applicable, provide and coordinate DMA communication opportunities.

1.13.5.19. When applicable, ensure PA support, direction and guidance to Air Force demonstration teams.

1.13.5.20. Manage assigned individual mobilization augmentee. See AFI 36-2629, *Individual Reservist (IR) Management*, for more information on individual mobilization augmentee management duties.

1.13.5.21. Plan, budget, advocate, and defend PA and regional band program requirements.

1.13.5.22. Keep SAF/PA advised of significant community engagement programs, challenges, and needs. **(T-).**

1.13.5.23. Maintain records of community engagement programs and activities. **(T-1).** Records require sufficient detail to provide a basis for evaluating program effectiveness, answering inquiries from Congress, the media, and the general public; providing recognition of outstanding command or individual accomplishments; and ensuring proper national-level planning and coordination of programs involving other activities of the U.S. government and foreign governments.

1.13.5.24. Coordinate with installation level PA offices on community engagement activities or issues, as required. **(T-0).**

1.13.6. The Commander, AFPAA reports directly to SAF/PA and leads Department of the Air Force-level PA missions supporting Department of the Air Force senior leaders, SAF/PA, and the PA functional community. The Commander will:

1.13.6.1. Exercise administrative control and coordinate logistics, over three squadrons: 1st Combat Camera Squadron, Joint Base Charleston, S.C.; 2nd Audiovisual Squadron, Hill Department of the Air Force Base, Utah; and the 3rd Audiovisual Squadron, Joint Base San Antonio-Lackland, Texas. **(T-1).**

1.13.6.2. Provide administrative and logistics support to SAF/PA activities, as directed. **(T-1).**

1.13.6.3. Employ video production capability to support Department of the Air Force enterprise communication efforts. **(T-1).**

1.13.6.4. Oversee Department of the Air Force public website operations and management. **(T-1).**

1.13.6.5. Oversee Department of the Air Force imagery acquisition for distribution and or release and records management. **(T-1).**

1.13.6.6. Serve as executive agent for the Department of the Air Force Aerial Photography Program for all aerial documentation issues, ensuring availability of non-rated, non-career enlisted aircrew qualified (9D) COMCAM Airmen and Space

professionals to support operational requirements. **(T-1).** See **paragraph 7.22** for more information.

1.13.6.7. Act in conjunction with SAF/PA Requirements & Development (PAR), Manpower and Equipment Force Packaging manager for all PA Unit Type Codes (UTCs). **(T-1).**

1.13.6.8. Execute and operate the Public Digital Publishing Program. **(T-1).** This includes ensuring public websites, mobile apps and other public information distribution methods comply with U.S. law and operational and financial planning.

1.13.6.9. Facilitate registration of all public websites on **www.af.mil** and **www.spaceforce.mil**. **(T-1).**

1.13.6.10. Protect and manage Department of the Air Force intellectual property, including Department of the Air Force branding and trademark licensing. **(T-1).** See AFI 35-114, for more information.

1.13.6.11. Manage the Department of the Air Force Video Production program and the Defense VI Activity Number programs. **(T-1).**

1.13.6.12. Manage the PA production and equipment database program and the investment equipment budget. **(T-1).**

1.13.6.13. Air Force Mission Directive 28, *Air Force Public Affairs Agency*, contains more information on AFPAA responsibilities, authorities, and organization.

1.13.7. Air Force Installation and Mission Support Center Public Affairs Division (AFIMSC/PA) has primary PA responsibility for Department of the Air Force environmental programs managed by the Air Force Civil Engineer Center, including restoration, air installation compatible use zones, programmatic National Environmental Policy Act, emerging contaminants, wildland fire, natural resources, tribal relations, and waste management. The Chief, AFIMSC/PA serves as the principal communication advisor to AFIMSC senior leaders and staff. AFIMSC/PA provides support to the PA functional community and will:

1.13.7.1. Plan, coordinate, integrate, synchronize, execute, and assess PA programs and activities to achieve mission objectives. **(T-1).**

1.13.7.2. Oversee the centralized security and policy review and coordination of information originating with active duty units at the installation level that requires higher-level review. **(T-1).**

1.13.7.3. Monitor and assess Department of the Air Force Common Output Level Standards of performance and effectiveness and provide feedback to Secretary of the Air Force Public Affairs Requirements and Development Division (SAF/PAR) and MAJCOM/PA and Field Command PA offices, as required. **(T-1).**

1.13.7.4. Manage Department of the Air Force Inspection System Continual Evaluation program in support of SAF Inspector General (IG) and MAJCOM/PA and Field Command PA offices. Coordinates closely with MAJCOM/PA and Field Command PA. **(T-1).**

1.13.7.5. Provide expertise and reach-back support to PA offices for all issues concerning AFIMSC executed programs in these mission areas: base communications, civil engineering, environmental restoration and Department of the Air Force environmental programmatic operations, financial management, installation ministry programs, logistics readiness, operational contracting, Security Forces, and services. **(T-1).**

1.13.7.6. Provide technical assistance, guidance, products and resources, including the in-person support of AFIMSC/PA personnel, depending on the scope and duration of the requirement. **(T-1).**

1.13.7.7. Support installation, MAJCOM and Field Command environmental PA programs with training, guidance, tools, risk communication strategy, coordinating subject matter experts, and, depending on duration and scope of effort, resources to support environmental initiatives. **(T-1).**

1.13.7.8. Coordinate Department of the Air Force programmatic environmental restoration communication strategies with HHQ, installations, SAF/PA and support agencies, as appropriate. **(T-1).**

1.13.8. Director, Field Operating Agency (FOA) and Direct Reporting Unit (DRU) Offices of Public Affairs. Directors of Public Affairs at a DRU and or FOA will conduct PA programs to provide Airmen and Space professionals, the public, and media timely, accurate, and official DoD and Department of the Air Force information contributing to awareness and understanding of the organization's mission. **(T-1).**

1.13.9. Director, Numbered Air Force Office of Public Affairs (NAF/PA). Serves as the principal communication advisor to Numbered Air Force (NAF) senior leaders and staff. Provides PA contingency planner support for theater operations plans and is integrated within the NAF and Air Operations Center, where applicable, to support global influence and deterrence through proactive theater engagement. Coordinates with Combatant commanders, Joint Task Force (JTF) commanders, and Joint Forces Air Component Commanders to identify requirements for PA capabilities. For additional information related to PA's role in the overall NAF/Air Operations Center planning and execution effort, see AFI 13-1AOC, Volume 3, *Operational Procedures-Air Operations Center (AOC)*.

1.13.9.1. The Director and PA staff generally act as the Joint Forces Air Component Commanders' core PA support for initial NAF deployments, but are augmented for contingencies, as necessary. In some cases, component functions are performed at the MAJCOM headquarters level instead of at the NAF. In those cases where PA has Air Force forces (AFFOR) staff responsibilities, those responsibilities should be conducted in accordance with AFI 13-103.

1.13.9.2. In any case, the component PA Director is responsible for:

1.13.9.2.1. Establishing combatant command requirements for PA support.

1.13.9.2.2. Planning VI documentation of wartime, contingency, and humanitarian operations in support of PA activities and operational documentation.

1.13.9.2.3.  Reviewing and updating PA annexes and contributing to the development of component operational plans. PA uses joint and Department of the Air Force mission task lists to inform requirements development.

1.13.9.2.3.1. Coordinate with SAF/PAR Force Management, supported combatant command, MAJCOM/PA planners and AFPAA Readiness Branch to plan and source COMCAM forces for the full spectrum of military operations. Assist in coordinating facilities, transportation, communication, and logistical assets to support and sustain deployed COMCAM forces.

1.13.9.2.3.2. Coordinate with AFPAA Operations Division (**afpaa.aox@us.af.mil**) as required to develop the annual COMCAM Exercise Support Plan. Include requirements to exercise COMCAM forces to refine operational procedures and meet defined objectives.

1.13.9.2.4.  Providing SAF/PA with relevant PA lessons learned.

1.13.9.2.5.  Provide counsel on community engagement issues for senior leaders.

1.13.9.2.6.  Coordinate with wing-level PA offices on community engagement activities or issues, as required.

## 1.14. Air Force Wing and Space Force Garrison-level Responsibilities.

1.14.1.  Chief of Public Affairs. Organizes, leads, and operates the host wing or garrison PA program in accordance with applicable public law, DoD and service policy, and current guidance.

1.14.2.  The PA chief reports directly to the Wing Commander or Garrison Commander in accordance with AFI 38-101, paragraph 26.4.1., and must have direct access to commanders and senior staff. **(T-1).** Direct access enables proper coordination of communication activities, timely release of information, and successful employment of PA capabilities in support of the commander's objectives. The PA Chief will:

1.14.2.1.  Provide trusted counsel and communication advice and support to commanders and staff. **(T-1).** This includes educating unit leaders on the information environment, developing and recommending courses of action, aligning local and HHQ messages and communication activities, and evaluating the potential impact of proposed actions on key publics, to include intended and unintended consequences and secondary and tertiary effects.

1.14.2.2. Develop a wing or garrison communication strategy to support the commander's priorities and objectives, nested within the MAJCOM, Field Command and Department of the Air Force communication strategy. **(T-1).** The strategy should be approved by the commander within 90 days following a change in organizational leadership (such as, change of command), as well as when factors such as mission and commander's objectives and or priorities drive a change. **(T-1).** The PA program should be based on research, planning, execution, assessment, and resourcing of activities against that strategy. **(T-1).**

1.14.2.3. Develop an employment and prioritization plan to prioritize office communication activities and workflow focusing on the commander's priorities, operational core tasks, urgency, mission impact, agencies supported, and resources

available. **(T-2).** See **AFMAN 35-101**, **Chapter 1**, for details on how to develop an employment and prioritization plan.

1.14.2.4. Prepare Airmen and Space professionals to be credible, informed, and articulate spokespersons for Air and Space Forces and joint missions. **(T-1).** This includes providing information to Air Force and Space Force members; preparing Airmen and Space professionals for engagements with the media and the community; and pre-briefing deploying service members on guidelines for interacting with the media, proper use of social media, and personal collection and use of imagery (photo and video).

1.14.2.5. Manage and understand PA readiness and the UTC posturing process. **(T-1).**

1.14.2.5.1. Ensure all PA members are aligned to their host installation's vulnerability period with a UTC or Associated UTC as directed by AFI 10-403, *Deployment Planning and Execution*. See **Table 1.1**

1.14.2.5.2. Ensure UTC readiness is accurately reported in the Air Expeditionary Force UTC Reporting Tool every 31 days or when changes arise in readiness. The Air Expeditionary Force UTC Reporting Tool is a command and control system designed to give commanders readiness information on standard and associated UTCs postured in the UTC Availability application of deliberate and crisis action planning and execution segments and applies to all Airmen and Space professionals in the readily available (rotational and warfighting) force.

**Table 1.1. Unit Type Codes (UTCs) for Public Affairs**

| UTC | Positions |
|-----|-----------|
|     |           |
| XFFGW | PA Team (4-passengers) – 1 Company grade officer/Senior noncommissioned officer (SNCO)/Civilian, 1 NCO (noncommissioned officer), 2 Enlisted |
| XFFGT | Combat Camera (6-passengers) – 1 Company grade officer/SNCO, 2 aerial, 2 ground, 1 maintainer |
| XFFG1 | PA Company Grade Offier (Capt) |
| XFFG2 | PA Field Grade Officer (Maj) |
| XFFG3 | PA Senior Officer (Lt Col/Col) |
| XFFG5 | PA Senior NCO (MSgt/SMSgt) |
| XFFG6 | Chief (CMSgt) |
| XFFG7 | PA Specialist (SrA-TSgt) |

| XFFGZ | Capability Pool of Alternates |
|-------|-------------------------------|
| LBFA*2/3/4* | Band UTCs |

1.14.2.6.  Develop and manage mutually beneficial relationships between the Air Force, Space Force and key publics. **(T-1).** This largely depends on establishing and maintaining a continual two-way dialogue, promoting positive relations with the media and community, and providing security and policy review of the installation's information and imagery proposed for public release.

1.14.2.7.  Ensure PA office organization structure and duty titles adhere to **Section 1C**, *Organization and Duty Titles*. **(T-1).**

1.14.2.8.  Ensure the use of standard core personnel documents for all PA civilian positions unless waived by the PA career field team at the Air Force Personnel Center. **(T-1).** See AFMAN 35-101, for more information.

1.14.2.9.  Ensure the PA office provides on-call coverage after hours for emerging issues, mishaps, and incidents requiring alert and or documentation or other support. **(T-1).** The qualified PA representative(s) must be available and responsive 24 hours a day through the command post. **(T-1).** This requirement is in addition to the requirement for an on-call alert photographer. **(T-1).**

1.14.2.10.  Oversee the overall readiness, training, and equipping of assigned Airmen and Space professionals. **(T-1).** Ensure officers, enlisted, and civilian PALACE ACQUIRE PA Airmen and Space professionals use the approved system to record, track, and monitor Career Field Education and Training Plan (CFETP) progress. **(T-1).**

1.14.2.11.  Oversee the office's self-assessment program in accordance with AFI 90-201, *Air Force Inspection System*. **(T-1).** This includes the demonstration and communication of key PA programs and activities through current and continual self-assessments in the Management Internal Control Toolset. Conduct self-assessments in the Management Internal Control Toolset to demonstrate and communicate compliance on key PA programs and activities.

1.14.2.12.  Provide legislative liaison support and or coordination, as required, for visits, notifications, inquiries, and requests for information by members of Congress, their staffs, and other elected officials. **(T-3).**

1.14.2.13.  Manage collection, evaluation, and reporting of PA workload and production metrics using the approved PA management tool in accordance with current guidance. **(T-1).** Refer to **Chapter 7**, *Visual Information*, for information on VI-specific monthly production report requirements.

1.14.2.14.  Communicate with other PA personnel and organizations for coordination or mutual assistance, as needed, ensuring that relevant offices at other levels are notified, as appropriate.  Direct communication cannot interfere with the responsibility and authority of commanders. **(T-3).**

1.14.2.15.  Approve appointment letters for each approved unit's social media site manager(s). **(T-3).**

**App. 076**

1.14.2.16.  Manage VI activities, resources, and equipment on the installation, except for those specifically exempted by DoDI Instruction 5040.02, Enclosure 4. **(T-3).** Refer to **Chapter 7**, *Visual Information* for information on additional requirements.

1.14.2.17.  Manage and establish accountability for PA equipment and supplies, according to AFI 23-111*, Management of Government Property in Possession of the Department of the Air Force*. **(T-1).** This includes maintaining a list of highly pilferable equipment such as camera bodies, lenses, accessories, storage material (compact flash cards), lighting kits, flash units, tripods, etc.

1.14.2.18.  Manage, plan, execute and analyze the effectiveness of wing community engagement programs and activities. **(T-3).** Results from analyses should be used to develop future plan and strategy development.

1.14.2.19.  Identify and foster engagement opportunities and activities with community, civic, business, and governmental leaders and organizations to enhance the understanding and support for military operations and its role in national defense. **(T-3).**

**1.15.  Department of the Air Force Member and Employee Responsibilities.**

1.15.1.  All Air and Space Forces members and employees of the Department of the Air Force, ANG, and AFR have responsibility for the success of the Department of the Air Force PA program. As representatives of the Department of the Air Force in official and unofficial contact with the public, they contribute to public opinions of the Air Force or Space Force and should strive to demonstrate the highest standards of conduct and reflect the Department of the Air Force's core values of integrity first, service before self, and excellence in all we do.

1.15.1.1.  Airmen and Space professionals are encouraged to use social media, interpersonal communication, community engagements, and other methods to share experiences with the public and tell the Air Force and Space Force story while maintaining operational security and the distinction between release of official information and one's own personal opinion or story as an Airman or Space Professional. See AFI 1-1, *Department of the Air Force Standards*, for more information on social media considerations.

1.15.1.2.  Airmen and Space professionals must obtain necessary security and policy review before releasing official imagery, documents, information, or proposed statements outside the Department of the Air Force. **(T-0).** See **Chapter 9**, *Security and Policy Review Process*, for detailed information on the Department of the Air Force security and policy review program. All government employees, to include uniformed personnel, must obtain PA coordination prior to engaging with the media in an official capacity or solely based on their government affiliation (for example, the media wants an "Airman's perspective"). **(T-1).**

1.15.2.  Prohibitions. Regular Air Force and Space Force personnel, ANG, AFR members, and civilian employees must not:

1.15.2.1.  Use their Air Force or Space Force association, official title, or position to promote, endorse, or benefit any one's own or another's commercial interests, or non-profit groups based solely on religious or political affiliations, in accordance with the

*Joint Ethics Regulation*, and AFI 1-1. **(T-0).** This includes appearing in, or preparing statements for inclusion in, advertisements designed for use by electronic or print media. **Exception:** This does not prohibit most Air Force or Space Force members from appearing in commercial advertisements in their personal capacities during non-duty hours. Personnel contemplating participating in a commercial should get advice from their servicing legal office before agreeing to do so.  In such cases:

1.15.2.1.1.  Members may not wear Air Force or Space Force uniforms or permit their Air Force or Space Force titles or positions to be used in advertisements in any manner. **(T-0).**

1.15.2.1.2.  Members will not use their title, position, or Air Force or Space Force organization in a way that might suggest Department of the Air Force endorsement of private non-profit or professional organizations.  **(T-0).**

1.15.2.2.  Make any commitment to provide official Air Force or Space Force information to any non-DoD member or agency, including news media, without first coordinating with PA. **(T-1).**

1.15.2.3.  Member will not cast discredit on the Department of the Air Force or DoD or improperly imply that the Department of the Air Force or DoD sponsors, sanctions or endorses a person, organization, or policy. **(T-0).**

## Section 1C—Organization and Duty Titles

## 1.16.  Public Affairs Organization.

1.16.1.  Installation Host Wings or Garrisons. As an operating principle, unless specifically exempted by SAF/PA, installations will have a consolidated PA office, usually belonging to the host wing or garrison, but occasionally aligned under another major mission element, that services all mission areas on the installation (for example, one base, one PA office), including tenant units. **(T-1).** A single, consolidated PA office synchronizes communication efforts and maximizes PA resources. PA offices with host unit responsibility will provide support and guidance to tenant and subordinate organizations via the Mission Partner Support structure, and/or according to host-tenant support agreements. **(T-2).** PA positions may not be established outside the consolidated, installation-level (normally host wing or garrison) PA office without a specific exemption from the SAF/PA Director. **(T-1).** See AFI 25-201, *Intra-Service, Intra-Agency, And Inter-Agency Support Agreements Procedures*, for more information on support agreements.

1.16.1.1.  Reserve Component tenant PA offices will not consolidate into Regular Component (active-duty) host wing PA offices. **(T-1).**

1.16.1.2.  Installations in close proximity to one another may be supported by a consolidated PA office. These host-tenant or community partnership arrangements require special integration efforts to ensure proper PA support. Tenant units or community partner installations should coordinate with the host unit PA office to ensure adequate support and prevent duplication or conflict.

1.16.1.3.  In instances where a second PA office exists on an installation (for example, FOA, DRU, MAJCOM, Component-Numbered Air Force, etc.), the host unit PA will be

the lead for activities of overlapping or mutual interest, including those with local or regional media or community leaders. **(T-3).**

1.16.1.4.  Airmen and Space professionals assigned to the host wing or garrison PA office will not be permanently reassigned (such as, permanent change of assignment) to another organization on the installation without concurrence from the MAJCOM/PA or Field Command PA Director. **(T-1).**

1.16.2. Organization Structure. Standardized structures with simple and straightforward designs facilitate communication integration and organization effectiveness.

1.16.2.1.  Installation host wing and garrison PA offices. Host wing and garrison PA offices, except where forward deployed, will use the standard organization structure depicted in **Figure 1.1 (T-1).** Department of the Air Force-led joint installation and host wing and garrison PA offices that provide full-time support to large tenant units (group level or above) will use the organization structure depicted in **Figure 1.2 (T-1).**

1.16.2.2.  The host wing or garrison PA office shall be prohibited from using all other organization structures. **(T-1).**

1.16.2.2.1.  Host wing PA offices at ANG bases and wing PA offices at AFR units will organize under the same organizational structure as Regular Component wing PA offices, in accordance with AFI 38-101. **(T-1).**

1.16.2.2.2.  Although not considered host wings, installation PA offices at Andersen, and Hanscom Air Force Bases will also use the standardized organization structure. **(T-1).**

1.16.2.2.3.  Distribution of manning among the sections is determined by mission needs. Rotational utilization of personnel among sections is encouraged and enhances training and development.

**Figure 1.1.  Wing or Garrison PA Organization Chart.**



**Figure 1.2.  Wing or Garrison PA Organization Chart (Mission Partner Support version)**



**1.17.  Installation Host Wing or Garrison Standardized Duty Titles.**  Standardization of duty titles supports career progression, communication integration, and assimilation when moving from installation to installation. PA members at the wing or garrison level will only use the duty titles found in **paragraph 1.17.1 – paragraph 1.17.21 (T-1).**

1.17.1. Chief, Public Affairs. An officer or civilian responsible for all PA operations, personnel, and resources supporting the host wing or garrison mission and/or installation. There is only one Chief, Public Affairs per installation. The Chief of Public Affairs reports directly to the commander. "Director" duty titles are not authorized for PA offices at wing or garrison level or below. **(T-1).**

1.17.2. Public Affairs Officer (PAO). An officer not assigned to lead a section. All second lieutenants and cross flow officer's use this title until fully qualified as 35P3s.

1.17.2.1. Officers may be awarded the 35P3 primary AFSC upon completion of the following:

1.17.2.1.1. All core tasks in the 35P CFETP; and

1.17.2.1.2. Initial qualification training for officers, as provided by the Defense Information School (Reserve Component officers may complete via distance learning); and

1.17.2.1.3. 18 months of on-the-job experience in a PA office.

1.17.2.2. Refer to the 35P **CFETP** (**https://static.e-publishing.af.mil/production/1/saf_pa/publication/cfetp35p/cfetp35p.pdf**) for more information on PA officer qualifications.

1.17.3. Chief Enlisted Manager. A chief master sergeant responsible for managing PA programs. This title is authorized only at installations with an E-9 authorization.

1.17.4. Superintendent or Operations Chief. A senior noncommissioned officer (SNCO) (superintendent) or civilian (operations chief) responsible for managing PA programs. In offices where a SNCO is authorized and assigned, the SNCO serves as the superintendent. Offices will not have a superintendent and operations chief at the same time. **(T-1).**

1.17.5.  NCOIC (noncommissioned officer in charge), Public Affairs. A noncommissioned officer (NCO) responsible for managing PA programs. This temporary title is reserved for offices without a SNCO assigned to the superintendent position or a civilian assigned to the operations chief position. If a superintendent or operations chief is assigned, the Non-Commissioned Officer in charge NCOIC, Public Affairs title is not used.

1.17.6.  Command Information Section Chief. An officer, SNCO, or civilian responsible for the command information program and typically supervising one or more military or civilian subordinates.

1.17.7.  NCOIC, Command Information. An NCO subordinate to the command information section chief who performs assigned functions within the PA program. This title is also used when an NCO serves as the section chief (if there is no officer, SNCO, or civilian with the section chief title).

1.17.8.  Community Engagement Section Chief. An officer, SNCO, or civilian responsible for the community engagement program and typically supervising one or more military or civilian subordinates.

1.17.9.  NCOIC, Community Engagement. An NCO subordinate to the community engagement section chief who performs assigned functions within the PA program. This title is also used when an NCO serves as the section chief (if there is no officer, SNCO, or civilian with the section chief title).

1.17.10.  Media Operations Section Chief. An officer, SNCO, or civilian responsible for the media operations program and typically supervising one or more military or civilian subordinates.

1.17.11.  NCOIC, Media Operations. An NCO subordinate to the media operations section chief who performs assigned functions within the PA program. This title is also used when an NCO serves as the section chief (if there is no officer, SNCO, or civilian with the section chief title).

1.17.12.  Mission Partner Support Section Chief. An officer, SNCO, or civilian responsible for supporting one or more mission partners and also supervising one or more military or civilian subordinates.

1.17.13.  NCOIC, Mission Partner Support. An NCO subordinate to the mission partner support section chief who performs assigned functions within the PA program. This title is also used when an NCO serves as the section chief (if there is no officer, SNCO, or civilian with the section chief title).

1.17.14.  Public Affairs Helper (for 1 skill level), Public Affairs Apprentice (for 3 skill level), Public Affairs Journeyman (for 5 skill level), or Public Affairs Craftsman (for 7 skill level). An Airman or NCO with expertise in photography and journalism, who plans, organizes, coordinates and conducts documentation, command information, community engagement and media operations activities.

1.17.15.  Broadcast Journalist Helper (for 1 skill level), Broadcast Journalist Apprentice (for 3 skill level), Broadcast Journalist Journeyman (for 5 skill level), or Broadcast Journalist Craftsman (for 7 skill level). An Airman or NCO with expertise in broadcasting and video

production, who plans, organizes, coordinates and conducts documentation, command information, community engagement and media operations activities.

1.17.16.  Duty titles for General Schedule (GS)-1001 civilians are determined locally. Use of the 1001 occupational classification code is discouraged as the Office of Personnel Management has not designated a specific title for GS-1001s since it is a miscellaneous occupational classification with no defined developmental path.

1.17.17.  Illustrator (GS-1020). A civilian with artistic knowledge and ability to create original art and illustrations by hand and with computer graphics systems.

1.17.18.  Public Affairs Specialist (GS-1035). A civilian with skills in written and oral communication, interpersonal relations, and analytics, responsible for carrying out a wide range of communication assignments to protect and project the image of the Department of the Air Force.

1.17.19.  Photographer (GS-1060). A civilian knowledgeable of still and video camera equipment, computer software, accessories, lighting, and composition, responsible for capturing accurate and comprehensive imagery of events and individuals for documentation and information use.

1.17.20.  Audiovisual Production Specialist (GS-1071). A civilian skilled in audiovisual technology, production, direction and editing, responsible for providing a full range of technical and administrative expertise to audiovisual products and productions and broadcasts.

1.17.21.  VI Specialist (GS-1084). A civilian skilled in visual design, responsible for planning, organizing, and developing visual material on a variety of projects for print, exhibits, and briefings. These capabilities relate to product content, not the technical support for presentation services such as video teleconferences.

1.17.22.  Duty titles for host nation or local national employees at overseas bases are determined locally in accordance with local or host nation agreements and to the extent possible consistent with the guidance above.

**1.18.  Tenant Units.** Public Affairs Advisor is the standardized duty title for an officer, SNCO, or civilian responsible for supporting one or more mission partners (that is, other than the installation host unit).

**1.19.  Public Affairs Standardized Duty Descriptions.** The following descriptions are not comprehensive, but are intended to give an understanding of wing- or garrison-level activities and responsibilities assigned to the individual serving in the position. Refer to the officer and enlisted classification directories located on the myPers website for a full description of each AFSC. See AFMAN 35-101, for more information on manpower management.

1.19.1.  Chief, Public Affairs. Serves as the principal PA advisor to the commander and senior staff on all matters relating to communication, including policy formulation and course of action development as well as assessment of the potential public reaction to proposed policies, activities, and operations. Develops communication strategy and plans based on wing or garrison and HHQ priorities. Plans, organizes, directs, and assesses the execution of a comprehensive PA program integrating all communication activities and PA resource management elements in support of commanders' priorities, unit mission, and

organizational objectives. Plans, directs, organizes, develops, and exercises control over assigned personnel. Supervises the execution of the office's self-assessment program. Advocates for funds, manpower, training, and equipment to effectively execute PA operations to support the mission. Ensures activities and operations meet customer needs and comply with all directives and legal requirements.

1.19.2. Superintendent (SNCO). Assists the PA chief in managing PA programs and provides oversight of functions within PA. Participates in the development of plans, policies, and programs and advises commanders and their staffs on their communication implications. Inspects and evaluates PA activities and programs. Oversees procedures used in monitoring the information environment, collecting, evaluating, and disseminating relevant news and information. Ensures PA compliance with applicable DoD, Department of the Air Force, MAJCOM, Field Command, and local policy and guidance. Ensures compliance with law, established policies, directives, and practices. Serves as the quality assurance representative for PA contracts. Manages security and policy review and ensures proper coordination and clearance procedures. Identifies personnel developmental needs and provides or arranges for training (formal and or on-the-job) to maintain and improve job performance and readiness. Ensures personnel adhere to standards. Maintains emergency response and deployment kits. Manages funds, manpower, training, and equipment to effectively execute PA operations to support the mission. Writes, coordinates, and maintains PA plans, annexes, and operating instructions. Manages host-tenant support agreements.

1.19.3. Operations Chief (civilian). Duty description is identical to superintendent described in **paragraph 1.19.2**

1.19.4. NCOIC, Public Affairs. Duty description is identical to superintendent described in **paragraph 1.19.2**

1.19.5. Media Operations Section Chief. Plans and executes the commander's media operations activities and engagements. Advises the PA chief and wing or garrison leaders on media issues. Establishes and maintains effective and cooperative working relationships with news media representatives, facilitates access, responds to queries, prepares Air Force and/or Space Force subject matter experts and installation leadership for interviews, and evaluates coverage. Serves as installation spokesperson, as appropriate. Provides advice on the content, propriety, timing, and relative importance of information for public release through available means. Researches, drafts, coordinates, and reviews plans and talking points. Develops written materials conveying complex information for dissemination through the media. Performs other duties as required.

1.19.6. Command Information Section Chief. Plans and executes the commander's command information activities serving the installation, including host and tenant units, Department of the Air Force retirees, and families. Advises the PA chief and wing or garrison leadership of command issues affecting members of the base community. Researches, drafts, coordinates, produces, and reviews PA products such as talking points, fact sheets, news and feature articles, web-based content, briefings, speeches and scripts, newsletters, photographs, videos, and other materials to link Airmen and Space professionals and their leaders. Provides advice on the content, propriety, timing, and relative importance of information for internal release through available means. Plans for and manages visual documentation requirements and directs the centralized collection, management, accession,

and distribution of imagery for planning, operational, documentation, PA, and historical use. Manages studio operations. Performs other duties as required.

1.19.7. Community Engagement Section Chief. Plans and executes the commander's community engagement activities and events. Advises the PA chief and wing or garrison leaders on community issues. Manages environmental PA issues and events and ensures legal compliance. Develops effective working relationships with community leaders and fosters coordination, cooperation, and mutual appreciation between the Air Force and/or Space Force, communities, state and federal agencies, DoD and interagency components. Collects and analyzes public feedback about the installation and its activities and develops recommendations for program changes. Evaluates requests for Air Force and/or Space Force support to public events and coordinates appropriate participation to achieve the commander's communication objectives. Responds to public requests for information and materials to promote public knowledge and understanding of Air and Space Forces missions, organizations, and capabilities. Performs other duties as required.

1.19.8. Mission Partner Support Section Chief. Serves as the principal PA advisor to tenant unit commanders and senior staff on matters relating to communication, including policy formulation and the potential reaction of key publics to proposed policy, activities, and operations. Plans, organizes, directs, and evaluates the execution of PA activities in support of the tenant unit's mission, command priorities, and organizational objectives. Ensures activities and operations meet customer needs and comply with all directives, legal requirements, and support agreements. Coordinates plans and activities with the host wing or garrison PA. Requests support from the host wing PA and tenant unit's HHQ PA office, as needed. Performs other duties as required and is responsible for supervising one or more military or civilian subordinates.

1.19.9. Public Affairs Advisor. Duty description is nearly identical to the mission partner support section chief described in **paragraph 1.19.8**; the distinction is that a 'Public Affairs Advisor' directly supports a tenant unit (for example, other than the installation host wing or garrison).

**1.20. Public Affairs Standardized Terminology.** All PA offices will use consistent terminology when advertising or describing PA capabilities. **(T-1).**

1.20.1. PA offices will use only "Public Affairs" on unit websites, business cards, memoranda, etc., when referring to services and activities provided or performed by the PA office. **(T-1).** For example, signs, flyers, etc., cannot refer to offices as the "strategic communication office," "base photo lab" or "base multimedia center." PA office signs will read "Public Affairs Studio" or similar. **(T-1).**

1.20.2. Office Symbol Code. An office symbol code identifies the internal organization structure and functional responsibilities of a unit. The only approved office symbol for PA offices below MAJCOM or Field Command level is the two-letter PA. With the exception of the Air Force Academy and AFPAA, only MAJCOM and Field Command level and higher PA offices are authorized to add a third letter, such as PAO, PAR, PAX, or PAY, to denote a specific sub-section. See AFMAN 35-101, for more information.

## Chapter 2

## MEDIA OPERATIONS

*Section 2A—Purpose and Mission/Objectives of Media Operations*

**2.1. Media Operations Purpose.** Media operations are essential for achieving the PA core competencies of trusted counsel to leaders, Airman and Space Professional morale and readiness, public trust and support, and global influence and deterrence. Engaging with the media is often one of the most rapid and credible means of delivering the commander's message to a desired audience. Experience shows that working proactively with the media increases trust and two-way communication with both the media and the public. Remaining transparent, honest, and accessible normally results in greater accuracy, context, and timeliness in the information communicated to internal and external audiences. Releasing official information through the media can create effects that that can help create, strengthen, or preserve conditions favorable for the advancement of national interest and policies, support the achievement of commander's objectives, and counter the effects of misinformation, disinformation, or propaganda.

**2.2. Media Operations Objectives.**

2.2.1. Exercise the Department of the Air Force's responsibility of "maximum disclosure, minimum delay."

2.2.2. Establish and maintain relationships and dialogue with key publics through continual proactive media engagement.

2.2.3. Build public understanding, trust, and support for Air and Space Forces operations, programs, and initiatives.

2.2.4. Protect information involving OPSEC, Privacy Act, critical technology, and sensitive acquisition information from release. Provide context and rationale to media representatives when appropriate.

*Section 2B—General Release of Information*

**2.3. Media Operations Responsibilities.** The Department of the Air Force Director of Public Affairs is the coordination authority for all Department of the Air Force media activities and issues that have national or international implications, except those performed in support of joint or combined operations and under the authority of joint or combined commanders. Senior commanders are responsible for releasing information within their purview. Even though material is unclassified or has been cleared through security and policy review channels, do not publicly release unless the commander (or the commander's authorized PA representative) approves it for that purpose.

2.3.1. All military and civilian personnel must comply with the DoD's Principles of Information, which mandate "maximum disclosure, minimum delay." **(T-0).** These principles ensure the military exercises its obligations and responsibility to the American people by providing a rapid, accurate, and continuous flow of information to the public.  See DoDD 5122.05, for more information. For guidelines military members and PA units can use to implement this mandate, see **AFMAN 35-101**, **Chapter 3**.

**App. 085**

2.3.2.  Spokesperson Requirements. Formulation and promulgation of Department of the Air Force policy is an official responsibility and must be performed only by military or civilian officials of the Air Force and Space Force. In accordance with DoDD 5122.05, PA is the commander's sole release authority to the media for official information and serves as the principal spokesperson on behalf of the commander. **(T-0).** Contract PA and non-government employees are NOT authorized to:

2.3.2.1.  Act as official Air Force or Space Force spokespersons, including being interviewed as subject matter experts **(T-0)**; or

2.3.2.2.  Serve as approval authorities for the release of information such as press releases, articles, imagery, or any content published to a publicly available website. **(T-0).** Only a government employee can be the approval authority for public release of information. **(T-0).**

2.3.3.  Classified Information. Do not release classified information. **(T-0).** See **paragraph 2.19** for circumstances when exposure to sensitive or classified information is allowed. For more information, consult AFI 16-1404, *Department of the Air Force Information Security Program*; and **Chapter 9**.

2.3.3.1.  Commanders will ensure PA's involvement in, and awareness of, all significant operational, programmatic, and administrative issues affecting the organization, including any classified aspects, at the earliest possible opportunity. **(T-1).**

2.3.3.2.  Commanders must ensure unfavorable information is not classified or withheld simply to avoid criticism of the Department of the Air Force. **(T-0).**

2.3.4.  Proposed PA Guidance. In accordance with DoDI 5405.03, *Development, Submission, and Approval of Proposed Public Affairs Guidance (PPAG)*, the Office of the Assistant to the Secretary of Defense for Public Affairs (OSD/PA) requires units to submit PPAG for military operations, exercises and events that have the potential to attract national and international media attention due to their size, importance or political sensitivities, or for PA guidance that requires department-to-department level interagency coordination.

2.3.4.1.  The Air Force or Space Force unit responsible for the operation, exercise or event will draft the PPAG and forward to their MAJCOM or Field Command, or direct to SAF/PA with MAJCOM and/or Field Command included if timing is critical. **(T-1).**

2.3.4.1.1.  SAF/PA will facilitate coordination with OSD/PA and other involved agencies, as appropriate.

2.3.4.1.2.  Units should coordinate PPAG through the appropriate combatant command, for further coordination with OSD/PA.

2.3.4.2.  See DoDI 5405.03 for format guidelines.

2.3.4.3.  The format for Department of the Air Force-level PA guidance may be modified as prescribed by SAF/PA.

2.3.5.  Working with the Media. The media's need for rapid, accurate information requires immediate response by Air Force and Space Force officials. This response is required because it maintains the Department of the Air Force's ability to communicate effectively and credibly with key publics. It is important to understand media capabilities, organization,

technology, and deadlines. For specific guidelines and further instructions on how to effectively work with the media, see AFMAN 35-101, **Chapter 3**.

2.3.5.1.  Access to Installations. Credentialed and or authenticated media representatives, bloggers, freelance writers, and photographers may visit Department of the Air Force installations. PA must notify Security Forces at the main gate or visitor center in advance of an anticipated media visit and escort media at all times when they are on a military installation. **(T-2).**

2.3.5.2.  When adverse news occurs, release it quickly and candidly.

2.3.5.3.  Airmen and Space professionals contacted directly by media representatives, bloggers, freelance writers, and photographers should contact their local PA office for guidance prior to responding to the request.

**2.4.  Freedom of Information Act, 5 U.S.C. § 552 – FOIA; and Privacy Act, 5 USC § 552a** . Air and Space Forces commanders must ensure prompt disclosure of the maximum amount of accurate information to the public upon request in accordance with public law, DoD and service FOIA policies. **(T-0).**  To the maximum extent possible, and in consultation with PA and the Staff Judge Advocate, commanders should seek to release information without forcing requestors to use the formal FOIA process. Importantly, since the FOIA policy is subject to frequent updates, Airmen and Space professionals should always consult the local SJA, Privacy Act office, and current DoD policy prior to making a determination regarding what information to release, and whether or not to require the formal FOIA process. For more information about FOIA and Privacy Act as it relates to the DoD and the Department of the Air Force, see DoDM 5400.07_AFMAN      33-302,      *Freedom      of      Information      Act      Program*; **https://www.compliance.af.mil/**; DoD 5400.11-R, *Department of Defense Privacy Program*; and AFI 33-332, *Air Force Privacy and Civil Liberties Program*.

2.4.1.  IG Cases. News media requests for IG records are processed through the FOIA office in accordance with AFI 90-301, *Inspector General Complaints Resolution*. PA is responsible for informing requestors of the proper procedures for obtaining IG records through FOIA channels.

2.4.2.  Withholding of Personally Identifiable Information. Release of lists of DoD personnel is limited to the names, official titles, organizations, and work telephone numbers for personnel serving at the director level or above, provided a determination is made that disclosure does not raise security or privacy concerns. **(T-0).**  If a particular request does raise security or privacy concerns, only names may be released. See OSD memo 17746-05, *Withholding of Information that Personally Identifies DoD Personnel*, for more information.

2.4.2.1.  News media representatives can request information under FOIA without PA involvement. However, FOIA channels often take longer than PA, and the FOIA office does not provide context or answer subsequent questions relevant to the released information.

2.4.2.2.  In cases where PA can provide additional information or context relative to a proposed FOIA release, the FOIA and PA offices should coordinate responses.

2.4.3. Rights of living relatives and associates of deceased Air Force and Space Force personnel should be considered. 5 USC § 552a and the privacy exemptions of FOIA do not

**App. 087**

protect the personal privacy of deceased persons. Records about the deceased may be withheld under FOIA exemptions or Privacy Act to protect the privacy of living relatives and associates of the deceased. In such cases, determinations to withhold information are based on whether the records contain private or personal information that would adversely affect a recognized privacy right of living individuals.

2.4.4.  5 USC § 552a was designed to protect individuals. It may prevent the Department of the Air Force from disclosing information to the news media even though an individual may have already chosen to voluntarily discuss Privacy Act matters with reporters. If individuals want the Department of the Air Force to assist the news media with a particular matter, they can waive their rights under the Privacy Act by signing a Privacy Act release. On a case-by-case basis, PA should consider the option of contacting the individual to offer a Privacy Act release. This release document must be signed and dated by the individual waiving his or her rights. **(T-0).** PA should work with SJA to develop an appropriate Privacy Act release, and coordinate the release with the SJA prior to signature.  PA should advise individuals that they may choose to consult an attorney before signing the release.

**2.5. Published, Released or Cleared Information.**  Do not assume information about the Air Force or Space Force has been officially released simply because it appears in the media. Likewise, do not assume a member's personal information, such as home of record or marital status, is releasable because it is posted on the member's social media page. Neither does the appearance of classified information in the public realm mean it is now unclassified, nor can it be used or referred to by Air Force or Space Force spokespersons. **(T-0).**  Operational or technical information combined for re-release must meet the same release standards as the original information. Before releasing any information, determine the appropriate release authority. **(T-0).**

**2.6. Department of the Air Force Personnel.**  This section provides guidelines for the release of personal information about Department of the Air Force personnel. Occasions may arise when special directives control releasable information about individuals under certain conditions. For additional guidance on the release of information during a crisis, see **Chapter 3**.

2.6.1.  Address. Home of record, home address and home telephone number are generally not releasable. **(T-0).** It is permissible to release the home of record (city, state, and country only) of deceased Airmen and Space professionals, once next of kin notification is completed.

2.6.2.  Administrative Actions. Administrative discharge boards or aviator flight boards generally are not releasable, nor are selective early retirement boards and reduction in force boards. **(T-0).**

2.6.3.  Age and Date of Birth. This information is not releasable without consent of the member. **(T-0).**  It is permissible to release age and date of birth of deceased Airmen and Space professionals.

2.6.4.  Biographies and Photographs of Key Persons. Official photographs and biographies of general officers and key military and civilians maintained according to official biography requirements are releasable. For personnel other than these individuals, official photographs and biographies generally are not releasable, unless advance written approval from the individual is given. In the event of death, family permission shall be obtained if photographs and biographies are desired for release. **(T-0).**

**App. 088**

2.6.5.  Death of Civilian Employee or Military Personnel. The apparent cause of death (such as homicide, suicide) generally is not releasable until the investigation is completed and after consultation with the investigative agency. Any news releases and interviews cannot include tentative or speculative conclusions or use terms such as "homicide," "suicide," or "self-inflicted." Comments concerning the death should be limited to, "The cause of death is under investigation (or undetermined)." See AFI 36-809, *Civilian Survivor Assistance*, for more details on civilian employees. Release cannot be made until 24 hours after final next-of-kin (NOK) notification. **(T-0).** See **paragraph 2.24 and paragraph 3.5** for guidance on casualty information release.

2.6.5.1.  If the situation warrants (for example, public attention, media queries, etc.), units can confirm that a death has occurred, provided that the confirmation and any other information released would not identify the individual or violate the next-of-kin's right to privacy.

2.6.5.2.  In the case of a suspected or confirmed suicide, coordinate with SAF/PA to ensure the release of information aligns with the most current guidance.

2.6.5.3.  For deaths occurring in an AOR for which OSD/PA requires a casualty identification news release from the Air Force, the release will briefly reference the circumstances of death, such as "aircraft crash," "non-combat-related incident" or "enemy attack." **(T-0).** The AOR casualty identification news release and required PA Casualty Worksheet will be forwarded from the Department of the Air Force Personnel Center PA to OSD/PA via SAF/PA, and will include name, age, rank, home of record, unit of assignment, location of incident (if releasable), unit PA contact and a specified release time 24 hours after final NOK notification. **(T-0).**

2.6.6.  Discharges. Information regarding discharge status generally is not releasable. Do not release information about honorable, under honorable conditions (general), or under other than honorable conditions unless the affected person gives written consent. **(T-0).**  If the discharge results from a court-martial, the record of trial is a public document. The sentence and subsequent clemency action, if any, are releasable. **Note**:  If a case has received extensive publicity, this information may be releasable. Consult the local SJA or SAF/PA for guidance in this situation. PA offices should establish and maintain a professional working relationship with the installation SJA office to maintain situational awareness on court-martial issues that may prove to have significant media visibility. **(T-0).**

2.6.7.  Duty Location. Current, past, and future continental United States (CONUS) and overseas assignments are generally releasable except: sensitive assignments data masked in personnel records; locations where disclosure is prohibited or discouraged by host-nation agreement; and for routinely deployable units conducting sensitive operations. **(T-0).**

2.6.8.  Duty Status. Active-duty, retired, Reserve, etc., status is releasable. The following information concerning duty status is also releasable: military grade and rank, civilian grade, military basic pay, civilian gross salary, and all allowances except basic allowance for housing. Also releasable: duty telephone number, date of rank, entered active duty date, pay date, source of commission and promotion sequence number, Department of the Air Force specialty code (unless operational security considerations warrant withholding a specific duty description), position title, office, unit address, and professional military education. See AFI

33-332, for other items that are releasable, not requiring consent under the Privacy Act Program. **(T-0).**

2.6.9. Education. Information concerning civilian educational degrees and major areas of study, school and year of graduation generally is not releasable without written consent of the member. **(T-0).**

2.6.10.  Employers of AFR or ANG members. Not releasable without the consent of the AFR or ANG member. **(T-0).**

2.6.11. Family Members. Family member information, including number, age, gender, or names of family members, is not releasable. **(T-0).**

2.6.12.  Gender. Releasable. **(T-0).**

2.6.13.  General Officer Assignments. general officer assignments are announced by Office of the Assistant to the Secretary of Defense for Public Affairs (OSD/PA) in coordination with the White House and other agencies or departments. **Note**:  An assignment within a MAJCOM, Field Command or FOA may be announced by the MAJCOM, Field Command or FOA commander after Headquarters (HQ) United States Air Force (USAF) has published orders on the assignment.

2.6.14.  Marital Status. Marital status (single, divorced, married, widowed, etc.) is generally not releasable. **(T-0).**

2.6.15.  Military Awards and Decorations or Citations. Releasable. **(T-0).**

2.6.16.  Military Personnel Records. See AFI 36-2608, *Military Personnel Records System*. Promotion boards and augmentation boards are shall be releasable. **(T-0).**

2.6.17.  Name. Releasable within guidelines described within this AFI and AFI 33-332. **(T-0).**

2.6.18.  Names of Department of the Air Force aircrew members involved in incidents under investigation by the Federal Aviation Administration (FAA) or National Transportation and Safety Board are generally not releasable during the investigation. **(T-0).** Department of the Air Force policy is for crewmembers to assist FAA by using their assigned radio call signs. See **Chapter 2**, *Crisis Communication*, AFI 91-204, *Safety Investigation and Hazard Reporting*, and AFI 51-307, *Aerospace and Ground Accident Investigations*, for more information.

2.6.19. Prisoners. Base releases about stockade or guardhouse prisoner escapes, unusual incidents, or disturbances in local confinement facilities are important for on-going relationships with the general public and the news media. Limit release to information on the DD Form 553, *Deserter/Absentee Wanted by the Armed Forces*, except for those blocks specifically prohibited [such as blocks 5n (social security number) and 16 (Relatives and/or Persons Known)]. **(T-0).**

2.6.20.  Prisoner of War and or Missing in Action (POW/MIA). OSD/PA regulates information release for POW/MIA situations. **(T-0).**

2.6.21.  Race or National Origin. Generally releasable.

**2.7.  Accidents/Incidents and Safety Investigations.**  See **Chapter 3**, *Crisis Communication*; AFI 91-204; and AFI 51-307.

**2.8.  Military Justice Publicity.**  In all cases, closely coordinate with the installation SJA before releasing information. Serious charges are newsworthy, especially those that directly or indirectly concern the public. These may include flying violations, aircraft accidents, and nonmilitary offenses such as larcenies and assaults allegedly committed by Air Force and/or Space Force personnel in the community. Installation PAs should routinely review the Judge Advocate General's Corps AF Docket at **https://www.afjag.af.mil/** for pending cases as well as trial results. Department of the Air Force guidance for releasing information on criminal proceedings is that:

2.8.1.  News media representatives, as members of the public, may attend open sessions of Department of the Air Force courts.

2.8.2.  Video and audio recording and the taking of photographs-except for the purpose of preparing the record of trial-in the courtroom during the proceedings and radio or television broadcasting of proceedings from the courtroom shall not be permitted. However, under certain circumstances, the military judge may, as a matter of discretion permit contemporaneous closed-circuit video or audio transmission. (see The Manual for Courts-Martial for more guidance).

2.8.3.  News releases should convey that military and civilian courts are similar, based on the principle that the accused is presumed innocent unless proven guilty beyond a reasonable doubt.

2.8.4.  Releasable material may include:

2.8.4.1.  Names of persons charged with crimes, unless the person is a minor.

2.8.4.2.  Date and nature of the alleged offense, Statement of Trial Results, or Entry of Judgment.

2.8.4.3.  Sentence.

2.8.4.4.  Type of punitive discharge (if any) from the Department of the Air Force, and whether it was executed, suspended, or remitted.

2.8.4.5.  Confinement circumstances or date of release from confinement.

2.8.4.6.  Previous convictions or absence of them.

2.8.4.7.  Findings of guilty or not guilty.

2.8.5.  Avoid sensationalism, exaggeration, and use of the term "criminal." Do not use editorial words prejudicial to the accused before trial, such as hit-and-run driver, deserter, or murderer. Before the court enters findings, releases may say the accused is charged with the crime or alleged to have committed it. Avoid military terms, jargon, clichés, or slang unless in a direct quote.

2.8.6.  Media interviews and telephonic communication between media and military detainees and or inmates in confinement are authorized in accordance with DoDI 1325.07, *Administration of Military Correctional Facilities and Clemency and Parole Authority*, and AFMAN 31-115, *Air Force Corrections System*, if a determination is made that such

interview or communication serves a legitimate public interest or is in the best interest of the military.

2.8.7.  Do not release the names of minor children or victims. **(T-0)**

**2.9. Dissident and Protest Activities.** Dissident and protest activities are rare in the Department of the Air Force. Generally, protests arise from local grievances, and problem resolution should stay at that level to be effective. Consult with installation experts, such as security forces, SJA, labor relations office or other support agencies. See **Chapter 3**, *Crisis Communication*, for more information.

**2.10. Investigations or Reports by Air Force Office of Special Investigations.** See Department of the Air Force Policy Directive 71-1, *Criminal Investigations and Counterintelligence*; AFI 71-101V1, *Criminal Investigations Program*; AFI 71-101V2, *Protective Service Matters*; and AFI 71-101V4, *Counterintelligence.*

**2.11. Civil Law Issues, Lawsuits, and Other Litigation.** In all cases, consult with the servicing SJA.

**2.12. Force Structure Announcements.** Force structure or base realignment and closure announcements are made at HAF level. No public comments should be made until official announcements are made from the headquarters level and congressional notification has been completed. PAs should work closely with the SJA and relevant manpower and organization experts, as well as MAJCOM and/or Field Command and SAF/PA, to prepare and coordinate questions and answers and news releases before commenting.

**2.13. Reduction in Force.** Consult SAF/PA, through the MAJCOM or Field Command, before releasing any general reduction in force information.

**2.14. Scientists, Engineers, and Technical Documents.** Significant work by Department of the Air Force scientists and engineers can be releasable, but is subject to security and policy review requirements. See AFI 61-201, *Management of Scientific and Technical Information (STINFO),* and **Chapter 9,** *Security and Policy Review Process*, for more information.

**2.15.  Contracts and Contractors' Releases.**

2.15.1.  The Department of the Air Force acquisition system is complex, but also of high interest to media representatives, given the significant cost of weapon systems and interest in advanced capabilities. At numerous stages of the contracting process, sensitive acquisition information may be restricted from public release to protect proprietary data, bids, specific source selection criteria, reviewing officials, etc. Inadvertent release of sensitive information could nullify substantial preparation and invite protests.

2.15.1.1.  PA professionals must coordinate with program managers and contracting officers and supporting legal offices to ensure only publicly releasable information is released. **(T-1).**

2.15.1.2.  PAs for product centers on major defense acquisition programs will coordinate significant media releases and media queries (for example, major milestones, deficiencies, cost overruns, schedule delays, etc.) with Program Executive Officers, MAJCOM/PA or Field Command PA, and SAF/PAO for awareness. **(T-1)**

2.15.2.  Unclassified Contracts. Companies or institutions with unclassified Department of the Air Force contracts may release information about them unless the contract states otherwise. Contracts related to weapon systems will frequently stipulate a requirement to coordinate news releases with the government contracting officer and or program manager. Conduct PA security and policy review in accordance with **Chapter 9** and any local instructions. DoD 5220.22-R, *Industrial Security Regulation*, governs release of information by colleges and universities holding unclassified research and development contracts or letters of intent. The following may be released without further DoD approval:

2.15.2.1.  A statement that the contract, letter of intent, or supplement agreement has been received. Certain types of contracts (such as proposals for a new electronic system, a high-altitude research study, etc.) may be released if this information is not limited by the contract.

2.15.2.2.  Information of public or professional interest about the work being done, if this information is not limited by terms of the contract.

2.15.2.3.  Information previously approved for release.

*Section 2C—Release of Information on Operational Subjects*

**2.16. Alert Status.** Information concerning changes of alert status or defense readiness condition may be released only by SAF/PA and only after coordination with OSD/PA.

2.16.1.  In addition, PA offices at all levels are notified by their local command post when there are changes in alert status. The local force protection condition may be released in general terms to the general public if conditions affect the local community. For example, it is appropriate to acknowledge if the base will be closed or a security check at the gate will be instituted causing disruption to local traffic patterns.

2.16.2.  Do not release the specific level and measures taken during a particular force protection condition other than to acknowledge the unit is increasing its vigilance. Consult MAJCOM/PA or Field Command PA offices for additional guidance.

**2.17. Operations and Exercises.**

2.17.1.  Releasable information. SAF/PA, Combatant command PA, MAJCOM/PA or Field Command PA will often release guidance in advance or in conjunction with a significant exercise or operation, particularly one involving deployments or troop movements. However, if it is readily apparent that the unit has departed, coordinate with HHQ PA and confirm the obvious. Unless directed otherwise, the following items of information are releasable:

2.17.1.1.  Arrival of U.S. units in the commander's AOR once announced by DoD or the combatant command.

2.17.1.2.  Date of the unit's departure from home station after the unit has reached its deployed location.

2.17.1.3.  Home station.

2.17.1.4.  Approximate friendly force strength deployed (multi-squadron, group, wing -- not how many people).

2.17.1.5.  Approximate friendly casualty and prisoner of war statistics.

2.17.1.6.  Approximate number of enemy personnel detained.

2.17.1.7.  Non-sensitive, unclassified information regarding past and present operations.

2.17.1.8.  In general terms, identification and location of military targets previously attacked and types of ordnance expended, once released by the combatant commander.

2.17.1.9.  Date, time, or location of previous conventional missions and their results.

2.17.1.10.  Number of combat air patrol or reconnaissance missions or sorties flown in the operational area.

2.17.1.11.  Weather and climate conditions.

2.17.1.12.  If appropriate, allied participation by type of units (ground units, aircraft).

2.17.1.13.  Conventional operations' unclassified code names, after release by the combatant commander.

2.17.1.14.  Deployed units and locations, unless prohibited by country agreement. Check specific theater PA guidance.

2.17.1.15.  Type of equipment, including aircraft, unless classified.

2.17.1.16.  General human-interest stories.

2.17.1.17.  General stories of training facilities, methods, etc., when not classified and when they would not indicate future operational planning.

2.17.1.18.  General scope and duration of air training performed.

2.17.1.19.  Battle damage may be described as "light," "moderate," or "heavy."

2.17.2.  Not releasable. The following items of deployment information are not releasable:

2.17.2.1.  Classified aspects of equipment and operations, and formally documented tactics, techniques, and procedures (whether classified or unclassified).

2.17.2.2.  Conventional operations' unclassified code names, until released by the combatant commander.

2.17.2.3.  Information placing future operations in jeopardy.

2.17.2.4.  Information that could place people's lives at risk.

2.17.2.5.  Information that, if released, would violate host nation or allied agreement and sensitivities.

2.17.2.6.  Information that would reveal intelligence methods and sources.

2.17.2.7.  Information that would reveal intelligence targeting and battle damage assessments.

2.17.2.8.  Specific numbers of deployed troop strength, aircraft, weapons systems, on-hand equipment, or supplies available, unless otherwise stated in HHQ PA guidance.

2.17.2.9.  Information that would reveal details of future plans, operations, or strikes, including postponed or canceled operations.

2.17.2.10.  Information or imagery that would reveal specific location of forces.

2.17.2.11.  Information or imagery that would reveal the level of security at deployment sites or installations.

2.17.2.12.  Datelines showing specific countries when those countries have not acknowledged their participation in the operation.

2.17.2.13.  Rules of engagement.

2.17.2.14.  Details of training of specialized units.

2.17.2.15.  Details of techniques, results, efficiency, etc., of forces involved.

2.17.2.16.  Destination of units prior to, or while in, transit, unless initially released by OSD/PA.

2.17.2.17.  Point of origin for an operational mission for an attack.

2.17.2.18.  Information on the effectiveness of weapon systems and tactics.

2.17.2.19.  Specific identifying information on missing or downed aircraft while search and rescue operations are ongoing.

2.17.2.20.  Special operations' unique methods, equipment, or tactics that, if disclosed, could harm mission accomplishment.

2.17.2.21.  Information on operational or support vulnerabilities.

2.17.2.22.  Specific methods and tactics, speeds, and formations.

2.17.2.23.  Information that, in combination, identifies the who, what, and when of a deployment. For example, combining individual names, deployment locations, and deployment dates is not authorized for release.

2.17.3.  Movement of Units. As previously mentioned, release guidance from HHQ PA usually precedes a deployment, but if it is obvious that a unit has departed, confirm the obvious but notify the HHQ PA office.

2.17.3.1.  CONUS to Overseas. Information on the movement of Air Force and/or Space Force units to overseas areas must be released initially by OSD/PA, unless delegation is authorized. SAF/PA will immediately notify MAJCOM/PA or Field Command PA offices that such a release is being made. The time and content of the release are included in this notification. In addition, guidance on releasing any information subsequent to the initial release is incorporated. This guidance applies to all commands affected by the move, even if the unit is only passing through. MAJCOM/PA and Field Command PA offices will disseminate the guidance immediately to their affected units. Unit PAOs and commanders must comply strictly with the policy outlined in the notification, deviating from it only when specifically authorized by SAF/PA. **(T-1).**

2.17.3.2.  Within Overseas Areas. Within overseas areas, movement releases are governed by instructions issued by the theater commander.

2.17.3.3.  Within CONUS. For unit movements within the CONUS, the following information is releasable:

2.17.3.3.1.  Designation of Unit.

2.17.3.3.2.  Name and location of new station, assembly point, training area, etc., within the U.S., unless the movement itself or new station is classified.

2.17.3.3.3.  Departure date, if routing for training and details of movement are not classified.

2.17.3.3.4.  General information necessary for local civic relations, such as housing, recreation, etc.

2.17.3.3.5.  On arrival at new station within the U.S., resume normal PA activities.

**2.18.  Access to Sensitive Information.**  Unit commanders will determine that coverage of a story by civilian media sources will involve exposure to sensitive or classified information, but is in the best interests of the Department of the Air Force if ground rules can be established to restrict publishing classified information in reporting or discussion. **(T-1).** For more information on setting these ground rules, see AFMAN 35-101, **Chapter 3**.

**2.19.  Intelligence, Surveillance, or Reconnaissance Activities.**  News releases will not be made regarding intelligence activities, except as authorized by SAF/PA. **(T-1)**.

**2.20.  Chemical, Biological and Radiological Warfare.**  Air Force and Space Force PA materials that deals with chemical, biological, or radiological warfare must be cleared by OSD/PA, through SAF/PA. **(T-1)**.

**2.21.  Simulated Employment of Nuclear Weapons on Maneuvers and Training Exercises.**  The fact that a particular maneuver or exercise involves the simulated employment of nuclear weapons may be released to news media as the maneuver or exercise commander deems necessary. Commanders must ensure the tactics, techniques, and procedures required in the use of any nuclear weapon are not released. **(T-0).** See DoDI 5230.16, *Nuclear Radiological Incident Public Affairs Guidance, for guidance.*

**2.22.  Personnel Wounded in Combat.**  PA must exercise care in releasing Protected Health Information (PHI) and photographs of personnel wounded in action or hospitalized for other reasons. **(T-1).** The governing concerns are patient welfare, patient privacy, and next of kin or family considerations. OSD/PA, unless it delegates authority to the Combatant command PA, issues an initial news release acknowledging that combat injuries have occurred. After the initial release, the services may release additional information on casualties, consistent with the 5 USC § 552a, and in those instances involving the PHI of the casualty, consistent with the Health Insurance Portability and Accountability Act as implemented by DoDI 6025.18 *Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule Compliance in DoD Health Care Programs*.

**2.23.  Casualties.**  The term "casualty" can indicate either injured or deceased personnel. Commanders must ensure in accordance with with DoDI 1300.18, *Department of Defense (DoD) Personnel Casualty Matters, Policies, and Procedures*, that no casualty information on deceased military personnel is released to the media or the general public until 24 hours after the final next-of-kin notification regarding the casualty status of the member. **(T-0).**  After the initial release, the services may release additional information on casualties, consistent with the Privacy Act, and in those instances involving the PHI of the casualty, consistent with the Health Insurance Portability and Accountability Act as implemented by DODM 6025.18, *Implementation of the Health Insurance Portability and Accountability Act (HIPPA) Privacy*

*Rule in DoD Health Care Programs*. **(T-0).**  Information on ill or injured Airmen and Space professionals may not be released without the consent of the individual, unless the release is otherwise authorized by Privacy Act and the Health Insurance Portability and Accountability Act as implemented by DoDI 6025.18.  For additional guidance on releasable information about Department of the Air Force personnel, see **paragraph 2.6**

2.23.1.  In the case of service members who have been unaccounted for from past conflicts, public release cannot occur until 24 hours after the next-of-kin accepts the member's identification, or 24 hours after the next-of-kin has been notified that the Armed Forces Identification Review Board has upheld the identification. **(T-0).**

2.23.2. Military Treatment Facilities. Media visits are authorized to military treatment facilities. For MTFs under the administration and management of the Defense Health Agency (DHA), coordinate with the responsible DHA Public Affairs Office in accordance with DHA-PI 5400.01, *Public Affairs and Strategic Communications.* **(T-0)** Health care providers cannot invite or allow media personnel, including film crews, into treatment or other areas where patients' PHI will be accessible in written, electronic, oral, or other visual or audio form, or otherwise make PHI accessible to the media, without prior written authorization from each individual who is or will be in the area or whose PHI otherwise will be accessible to the media.   Additionally, there need to be safeguards in place to limit incidental disclosures of PHI of patients who have not provided any authorization.  The medical facility commander or director and attending physician would also be involved in approving the visit. **(T-1).**  Such visits must be done without interference with medical treatment. **(T-0)**. Patients are not to be interviewed, or photographed if they can be identified in the photo, without a signed Health Insurance Portability and Accountability Act compliant authorization.  **(T-1).** Signed authorizations are also required for medical staff to release information about patients.  PA escorts the media while at the medical treatment facilities.  **(T-2).**

2.23.3.  Unit Casualties and Losses. Information on unit casualties and losses of personnel and/or equipment should be described in general terms only (for example, light, moderate, heavy). The use of percentages, numbers of aircraft, buildings, facilities, vehicles, etc. damaged or destroyed, will not be released without approval of the combatant commander, a designated representative, or OSD/PA. **(T-0).**

2.23.4. Aeromedical Evacuation Flights. Media requests to travel aboard aeromedical evacuation flights are considered on a case-by-case basis. For more information and request procedures, see AFI 35-101,and **Chapter 8**, *Travel for Public Affairs Purposes*.

2.23.5.  Transfer of Casualties to the U.S. Media visits to Dover Department of the Air Force Base are authorized with primary next-of-kin approval. Media visit requests should be coordinated with the Department of the Air Force Mortuary Affairs Operations PA office.

**2.24. Casualty Notification to Next of Kin.** Although not an official part of a casualty notification team, in cases with high potential for media interest, PA has a critical role in assisting with Department of the Air Force casualty NOK notification.  PA responsibilities include:

2.24.1.  PA should assess the media climate and, in potentially high visibility cases (combat related, mass casualties, homicides, etc.) or duty status-whereabouts unknown, missing or captured situations, advise the commander of the likelihood of news media contacting the

family members of the deceased Airman or Space Professional and offer PA support to the family.  Information on ill or injured Airmen and Space Professionals may not be released without the consent of the individual, unless the release is otherwise authorized by the Privacy Act and the Health Insurance Portability and Accountability Act as implemented by DODM 6025.18.

2.24.2. The local commander or notification officer may request that PA accompany the NOK notification team when there are indications of high media interest and the possibility of news media contacting the deceased's family members directly.

2.24.3. The PA representative should travel with the NOK notification team but stand by while the official notification is made to the family and remain available if the family requests PA advice or support.

2.24.4. After the NOK notification is completed, the notification officer will provide the family a copy of the "Guide for Dealing with the Media," which the Air Force Casualty Matters Division provides to notification teams. **(T-3).** The notification officer should provide families with the installation PA office contact information and advise the family of services the installation PA office can provide if there is media interest. If requested, the PA office advises the family on interaction with the news media, offers assistance with any public statements, and defines the family's preferences on news media requests for information. Contact Air Force Personnel Center PA for current copy of the guide, as needed.

2.24.5. If the news media is already at the family's residence or calling during the notification, PA should offer to act as the liaison between the news media and the family, according to the family's preferences.

2.24.6. Casualty notification officers in remote areas who do not have PA support will provide the family contact information for Air Force Personnel Center's Casualty Services (1-800-525-0102). **(T-2).** Casualty Services contacts the on-call PA representative if needed.

**2.25. Unit Activations, Inactivations, Phasedowns, or Movements.** A significant change in unit level of operations is extremely important news for local communities. This change does not take place until after thorough deliberation at appropriate levels of government. PA personnel will not discuss these subjects without guidance from HHQ PA. **(T-1).**

**2.26. Weapon Systems.** This category includes aircraft, missiles, munitions, support systems, subsystems, and space vehicles. Information about the existence, characteristics, potential or demonstrated capabilities of new systems, or improvements or modifications of existing ones must be reviewed by SAF/PA before it is released. **(T-1).** The same is true for military applications of nuclear energy and the following types of warfare subjects: biological, radiological, chemical, electronic, and psychological. **(T-1).**

*Section 2D—Guidelines for Other Published Information*

**2.27. Books.** SAF/PA and its field offices are the points of contact between the Department of the Air Force and book representatives.

2.27.1. SAF/PA Responsibilities. The New York field office generally handles book activities since most publishers have major offices in that city. All information requests that support book activities should be referred to them. Their responsibilities include:

2.27.1.1. Responding to requests for available material on Air Force and Space Force subjects.

2.27.1.2. Referring requesters to MAJCOMs or Field Commands, FOAs, DRUs and Department of the Air Force record centers and depositories.

2.27.1.3. Coordinating and approving requests from authors with Letters of Intent to interview Air Force and/or Space Force personnel, visit bases, and/or participate in media orientation flights.

2.27.2. MAJCOM and Field Command Responsibilities. SAF/PA may delegate direct liaison between Department of the Air Force and book representatives to the MAJCOM or Field Command, FOA, DRUs or unit level (with MAJCOM, Field Command or FOA coordination and approval) on a case-by-case basis.

2.27.2.1. Overseas MAJCOMs and FOAs are the liaison with foreign book representatives covering subjects solely within their areas of responsibility. After approval by OSD/PA, appropriate MAJCOMs and FOAs are the Department of the Air Force focal points for coordination and support.

2.27.2.2. Send all foreign magazine and book representatives' requests for material not available at the overseas location to SAF/PA for coordination, support, or concurrence. Advise overseas-based foreign book representatives who request to visit CONUS installations to contact the press office in their respective U.S. embassies.

**2.28. National Magazine Story Ideas** . Placement of solid, mission-oriented stories in the national magazine market is a critical part of the PA mission.

2.28.1. MAJCOMs, Field Commands and FOAs should encourage PA offices to develop original story ideas for proposal to national and regional magazines. These include trade, technical, fraternal, consumer group, and industrial publications. Stories receive official support when they satisfy Department of the Air Force PA requirements; that is, the topic is related to an operational mission of an Air Force and/or Space Force organization or it directly supports Department of the Air Force programs, priorities, or interests.  PA reviewers should assess whether a disclaimer is required to indicate that the views presented in the article are not the official views of the Department of the Air Force or DoD.

2.28.2. All PA personnel are encouraged to write for national publications as part of their official duties. On a voluntary basis, writers may prepare articles while on official duty and be credited in print with a by-line.

2.28.3. If a non-PA Airman or Space Professional writes an article for submission to a national magazine, PA offices should screen story ideas for accuracy, quality, security, and policy. In addition, PA is responsible for quality control to ensure the final product presents a professional image. Contact SAF/PA for additional assistance.

**2.29. Payment and Honoraria for Writing.** Department of the Air Force military and civilian professionals are encouraged to write for publication. Department of the Air Force and civilian professionals are not allowed to receive payment or honoraria for writing produced as part of their official duties. **Exception**:  Under certain circumstances they may accept payment and honoraria for writings that are done off-duty, stem from a particular area of expertise, and are

unrelated to their official duties. Before accepting any payment, personnel should consult a local ethics counselor for guidance under DoD 5500.07-R.

2.29.1.  Department of the Air Force personnel receive the same service from the PA office as all other writers when they write for profit. They cannot base their writing on access to technical or operational military information that is not available to the general public.

2.29.2. Writings that describe actual individuals, even if they are fictionalized, are not permitted without the permission of those individuals. Department of the Air Force members cannot receive payment for materials their duties require them to provide at no cost. PA at every level may support unofficial Department of the Air Force authors as they would support civilian writers and may review submissions for policy and technical accuracy, if requested.

**2.30.  Commercial Use of Published Official Department of the Air Force Material.**  Official U.S. government and contractor-produced unclassified AFMANs, symposium papers, and other documents often provide valuable story material for publishers. Excerpts are frequently reprinted commercially. If a publisher requests Department of the Air Force documents for this purpose, contact SAF/PAO.

**2.31.  Academic Institutions.**  Guidance in this instruction applies to students and faculty at Department of the Air Force academic institutions. Students and faculty interested in discussing academic research, papers, reports, etc., with the media must coordinate with their local PA office in advance. **(T-1).**

*Section 2E—Support for Non-Government, Non-Entertainment Visual Information Productions*

**2.32.  General.**  The information provided in this section is relevant to non-government VI productions other than news. These include commercial and nonprofit industrial, institutional, documentary, educational, and commercial enterprise productions. The key is these productions are intended to inform.

**2.33.  Visual Information Guidance** .  Per DoDI 5410.15, *DoD Public Affairs Assistance to Non-Government, Non-Entertainment-Oriented Print and Electronic Media*, Department of the Air Force assistance, access to installations, equipment, and personnel for interviews, photo and video opportunities, and unclassified VI material may be provided when it is considered beneficial to the Department of the Air Force and DoD and is in the national interest. See DoDI 5410.15 for complete information and guidelines.

**2.34.  Responsibilities** .

2.34.1. SAF/PA evaluates and approves support for national-level, non-government, and non-entertainment VI productions. SAF/PA determines if the VI production meets Department of the Air Force and DoD policy and coordinates with OSD/PA. Requests are generally supported when they serve the Department of the Air Force interest, meet guidelines in Department of the Air Force and DoD directives, and are not prohibited by legal or policy restrictions.

2.34.1.1. When a national production involves more than one MAJCOM and/or Field Command, SAF/PA coordinates assistance to obtain or produce the VI material. SAF/PA

notifies the requester the project is approved, reiterates project restrictions, and arranges for release of stock footage or puts the requester in contact with the right PA point of contact.

2.34.1.2. SAF/PA must approve support for VI productions involving Department of the Air Force-level contracts.

2.34.2. MAJCOM and Field Command Responsibilities. MAJCOMs and Field Commands approve regional and local requests. MAJCOMs and Field Commands review, evaluate, and determine support for VI productions judged as having regional and local impact only. MAJCOMs and Field Commands will withhold approval until support is coordinated with SAF/PA if it is believed interest may expand beyond a regional audience. They also keep SAF/PA appraised of MAJCOM- and Field Command-approved projects.

2.34.3. Unit Responsibilities. When contacted by a non-government, non-entertainment group (other than news media) seeking VI support, units will forward requests through PA channels to MAJCOM/PA or Field Command PA with a unit recommendation, if appropriate. **(T-1).**

2.34.3.1. Provide normal PA assistance in the form of advice or guidance. Do not make any commitment of resources without approval.

2.34.3.2. Units approve requests for assistance from Department of the Air Force contractors when the support relates to contract requirements. Contract-associated support should be confirmed with the contract administrator. Requests relating to contractor-sponsored photography outside the scope of the contract are sent through PA channels to SAF/PA.

**2.35. Support Procedures.** For detailed guidance on how to support non-government, non-entertainment VI productions other than news media, see AFMAN 35-101, **Chapter 3**.

**2.36. Contractor Visual Information (VI) Productions.** These are products by Department of the Air Force and DoD contractors such as annual reports, corporate in-house training videos, and promotional and marketing productions.

2.36.1. Government contracts often include VI productions that address the contract program. Contractors are responsible for seeking approval of their produced print and electronic promotional, marketing, and advertising material before public release. Subjects of material that require OSD/PA and SAF/PA clearance are listed in DoDI 5230.9, *Clearance of DoD Information for Public Release.* Material not requiring OSD/PA or SAF/PA clearance is cleared at the lowest level competent to evaluate the information.

2.36.2. Contractors seeking VI material for a production must certify in writing that funding of the production is not billed to the government unless the production itself is being done pursuant to a government contract that authorizes such costs. **(T-1).**

**2.37. Commercial Advertisements.** These are requests by advertising agencies for Department of the Air Force materials or assistance in campaigns designed to sell a particular product, service or company.

2.37.1. DoD is prohibited from endorsing or appearing to endorse or selectively benefit any particular product, company, or commercial concern. Because of this, the Department of the Air Force generally does not support commercial advertising even if the Air Force and/or

Space Force uses the product or service being advertised. The requester must show a specific tie between the Department of the Air Force and the advertised item. Proof can be via valid contract numbers or other verifiable information that shows the company provides the advertised goods or services to the Department of the Air Force. Any request for Department of the Air Force support for a commercial advertisement is coordinated through SAF/PA. In all cases, a proposed advertisement must be in the policy guidelines and the following:

2.37.1.1. The advertisement must be factual and in good taste. **(T-0).**

2.37.1.2. The advertisement is of some clearly identifiable benefit to the Department of the Air Force (informational value, enhancement of public understanding, etc.). **(T-0).**

2.37.1.3. The advertisement cannot state or imply Department of the Air Force endorsement or preference of one product over another. **(T-0).** Terms such as “government approved” or “Department of the Air Force certified” cannot be used. **(T-0).**

2.37.1.4. The advertisement cannot compare the relative merits of current weapons or weapons systems. **(T-0).**

2.37.1.5. The advertisement cannot refer to the economic impact of a proposed continuation or cancellation of a defense contract. **(T-0).**

2.37.1.6. The advertisement cannot reproduce the Department of the Air Force or U.S. Space Force seals or any of their parts, except as authorized by AFMAN 33-326, *Preparing Official Communications*. **(T-0).**

2.37.1.7. Active-duty Department of the Air Force military and civilian personnel may not use their title or position to endorse commercial products, services, or activities; assume responsibility for advertising claims; or obtain personal gain. **(T-0).**

2.37.2. Refer to AFI 34-108, *Commercial Sponsorship and Sale of Advertising*, for information on the Commercial Sponsorship Program for morale, welfare and recreation programs.

## Chapter 3

## CRISIS COMMUNICATION

*Section 3A—Purpose, Objectives, and Planning*

**3.1. Crisis Communication Purpose.** A crisis is a rapidly developing situation ranging from natural disasters and aircraft accidents, to hostile activities posing a threat to U.S. interests. For OSD/PA, a crisis becomes relevant when it is of a nature that commitment of U.S. military forces and resources is contemplated in order to respond to the situation, or where the situation directly affects military assets. PA must be ready to implement courses of action to provide relevant audiences with accurate, timely, and essential information. **(T-1).**

**3.2. Crisis Communication Objectives.**

3.2.1. Establish procedures that prepare PA to handle any crisis communication issue.

3.2.2. Provide PA rules of engagement for the proper release of information during a crisis.

**3.3. Crisis Communication Planning and Preparation.** MAJCOMs and Field Commands, FOAs, and wings and garrisons must prepare comprehensive PA accident response plans, or supplements to this instruction, for both nuclear and non-nuclear accidents. **(T-1).** These plans include provisions for adequate personnel, administrative, communication, and logistical support for a wide range of accidents and incidents. MAJCOMs and Field Commands, FOAs, and wings and garrisons must ensure plans comply with AFI 10-2501, E*mergency Management Program*, which establishes requirements for local responses, and AFI 91-204, which describes mishap investigation management after initial response. After the initial mishap response, also consult AFI 51-307, and DoDI 5230.16, if it is a nuclear incident for mandatory guidance governing release of status or substantive information regarding mishaps. MAJCOM and Field Command, FOA and DRU PAs should coordinate with SAF/PA when activating accident plans. Installation-level PA offices should coordinate with the appropriate MAJCOM/PA and/or Field Command, which will notify SAF/PA. **(T-1).**

3.3.1. Resources. When preparing comprehensive crisis response plans, PA offices will consult AFMAN 35-101, **Chapter 4**, for specific PA requirements and procedures related to preparing for, and responding to, a crisis situation. **(T-2).**

3.3.2. Unclassified Information. It is Department of the Air Force policy to give the public unclassified information on all activities subject to the guidance in this AFI. The Air Force and Space Force will promptly release unclassified facts about accidents and incidents, including near misses or missing aircraft, consistent with national security considerations and responsibilities. **(T-1).**

3.3.3. Classified Information. Federal law and Executive Order 12356, *National Security Information*, require protection of classified information. Department of the Air Force personnel must protect classified information against compromise. **(T-0).** The incident commander, with the advice of the Security Forces representative, will provide initial guidance to the PA representative when it is determined classified information is involved. **(T-1).** However, there are limits to Department of the Air Force authority at an accident site, particularly away from Air Force and Space Force installations.

**3.4. Considerations.** The following items are critical to consider in the event of a crisis involving Department of the Air Force personnel, assets, or installations. For further guidance on how to ensure these requirements are planned for in advance of a crisis, see AFMAN 35-101, **Chapter 4**.

3.4.1. Media Operations Center. The commander will establish a centrally located media operations center, as needed, for news media representatives. **(T-3).** Do not co-locate the media center and the PA office.

3.4.2. Social Media and Official Websites. Organizations should use social media platforms (such as Twitter ™, Facebook ™, Instagram ™, or any applicable mobile apps) to simultaneously provide base personnel and news media representatives with timely, accurate information. Use of social media provides affected and interested audiences with an authoritative point of contact for current, accurate information about the status of a crisis issue and the command's actions. Consider using official public websites to communicate lengthier messages, when time allows. For more information on the use of organizational social media and the public web, refer to **Chapter 5**, *Command Information and Distribution*.

3.4.3. First Responders. PA should be prepared to join other base emergency responders as part of the initial response element as determined by local procedures. These forces— typically fire, medical, Chaplain Corps and security members—arrive as part of the first responders to manage the incident and coordinate with civil authorities.

3.4.3.1. Emergency Operations Center. For on-base accidents and incidents, a PA representative should be designated for incident response.

3.4.3.2. PA staff members should also be prepared to join base emergency responders as part of the follow-on forces as determined by the incident commander. This team should provide enhanced command, control, and communication functions at an incident site.

3.4.4. National Defense Area. A National Defense Area is an area established on non-federal lands located within the U.S., its possessions or territories, for safeguarding classified defense information or protecting DoD equipment and or material (Title 50, United States Code, Section 797, *Penalty for Violation of Security Regulations and Order*). If an off-base site of an accident or incident is designated as a National Defense Area, PA supports news media representatives in the same way as if they were on a military installation. Brief the media on appropriate, disclosable information during an accident or incident and any procedures to be followed, such as escort requirements.

3.4.5. Jurisdiction. In the U.S., PAs must respect the jurisdiction and interests of all concerned government agencies at national, state, and local levels to include additional coordination which may be required with the Departments of Justice and State, the Federal Bureau of Investigation, and the FAA. **(T-0).**

3.4.6. Transportation. Mobility is vital during a crisis response. The PA office must request sufficient vehicles and land mobile radios for on-base internal information program support, and vehicles for media through the base crisis response contingency plan. **(T-1).**

3.4.7. Units Without a PA Office. MAJCOMs, Field Commands and FOAs must ensure that commanders of units without a primary duty PAO understand the need to release accident

information to the news media on a timely basis, as well as the restrictions on release of certain types of information. **(T-1).** The MAJCOM/PA or Field Command PA should ensure commanders have established notification procedures between the unit and their supporting PA office.

3.4.8.  Crisis Notification. Installation command posts prepare incident and event reports in accordance with AFMAN 10-206, *Operational Reporting*.  **(T-1).** Commanders will ensure command post and unit PA procedures exist to guarantee simultaneous release of PA information and operational reporting.  Additionally, the Chief of the Command Post and Senior PA officer should annually review reporting procedures between the two organizations.

3.4.9.  Overseas Precedence. When instructions or plans of a combatant command conflict with this instruction in procedural detail (such as naming a release authority for confirming a nuclear accident) or with host nation sensitivities, use the combatant command plan.

3.4.10.  Controlling Photography. It is imperative for PA to plan for photography during a crisis situation. PA must protect classified and sensitive information and materials, as well as wounded personnel and fatalities. **(T-0).** PA is responsible for being aware of on- and off-base photography to the maximum extent possible in relation to Department of the Air Force activities. Special attention is placed on photography of prisoners, wounded or killed personnel. See AFMAN 35-101, **Chapter 4**, for specific guidelines on controlling photographing on a U.S. military installation, at an off-base location in the U.S. and its territories, and off-base in a foreign country.

*Section 3B—General Release of Information during Crisis*

**3.5.  Release of Personal Information** . This section provides guidelines for the release of personal information about victims of accidents, incidents, disturbances, and disasters. The installation PA will consult with the local SJA before releasing personal information. **(T-1).** AFI 51-307, may prohibit or restrict release of certain information related to aerospace or ground mishaps.

3.5.1.  Names of Survivors. Generally, release the names of all survivors as soon as possible in close coordination with the commander, SJA, the medical community and the installation Senior Religious Support Team. The installation PA will make releases quickly, to ease the concern of families and friends of individuals involved in the accident, as well other individuals flying similar aircraft or on similar duty in the vicinity. **(T-1).** When releasing personal information in these types of instances, PA personnel should be in constant communication with the local SJA.

3.5.1.1.  If, in the judgment of the commander, releasing survivors' names would reveal the identity of deceased individuals prior to NOK notification (in the case of crew members known by their families to customarily fly together, for example), the survivors' names may be withheld. Do this only when the potential for the NOK deducing their loss through news stories and rumors on social media and or spouse network is so high that the circumstances clearly warrant leaving other families in suspense.

3.5.1.2.  Report information on survivors who are believed to be in immediate danger of dying as "survived but in critical condition." PA must ensure releases do not invade the personal privacy of the victims or relatives in accordance with AFI 33-332.

3.5.2.  Names of People Aboard Aircraft Missing or Presumed Lost. When an Air Force or Space Force aircraft, including a contract or charter flight, is officially declared missing or crashes in a remote area, the PA office at the departure base will individually release the names of passengers and crew to news media after the NOK are notified. **(T-1).** This should not delay the announcement that the aircraft is missing.

3.5.3.  PA should coordinate responses to query or news releases about admittance or status of patients with the MTF's HIPAA privacy officer and, for MTFs under DHA's administration and management, the responsible DHA Public Affairs Office in accordance with DHA-PI 5400.01. **(T-1).**

3.5.4.  Names of Deceased. The installation to which Airmen and Space professionals are permanently assigned maintains responsibility for releasing names of Airmen and Space professionals killed in military accidents, consistent with the DoD's 24-hour next-of-kin notification policy, and in accordance with **paragraph 2.24 (T-0).** For casualties occurring in an AOR, DoD will make the initial release.

3.5.4.1.  When a military accident in a civilian community causes significant property damage or loss of civilian life, the commander may release the names of Department of the Air Force members killed in the accident before their NOK have been notified.

3.5.4.2.  This is only done when, in the judgment of the commander, the needs of the public outweigh any potential distress of the victim's NOK. This may be necessary when civilian authorities need information on the members to identify the accident victims' remains.

3.5.5.  Release of Information When More than One Service is Involved. In joint exercises or operations, the joint command PA is responsible for all PA actions. In all other cases, if circumstances permit, the parent service of the involved aircraft or vessel makes the initial announcement of the accident. If this is not feasible because of location or time constraints, any other service directly involved may assist media as necessary, including release of facts. The responding service keeps the parent service PA informed. Once an official statement is released by the parent service, other services involved may release a full description of their own participation, such as rescue or disaster relief activities.

3.5.5.1.  Release specific casualty information according to that military service's regulations. Names and numbers of casualties are released by the service to which the casualties belong.

3.5.5.2.  When time does not permit and facts are obvious to the public, any other service involved in the operation may announce, when queried, only the number of dead, number of survivors, and number of injured. If possible, release all services' casualty names simultaneously.

3.5.6.  Names of Foreign Nationals. When a foreign national (other than a locally hired employee) is an accident casualty while under Department of the Air Force auspices (authorized by the Department of the Air Force to perform a specific task, though not

employed by them directly), Department of the Air Force officials will not release the name without host nation coordination and confirmation that NOK notifications have taken place. **(T-1).** When the foreign national is locally employed by a host nation agency, the host nation's agency rules take precedence. Overseas MAJCOMs must develop policy for releasing names of local foreign national U.S. Department of the Air Force employees injured or killed on duty.

3.5.7.  Key U.S. and Foreign Government Persons. Because of national and international interest and implications, carefully coordinate the release of casualty information concerning key U.S. government personnel or equivalent rank foreign government visitors. When the following key persons are killed, injured, or listed as missing while on a Department of the Air Force installation or traveling in a Department of the Air Force vehicle or aircraft, notify the OSD/PA press desk for public announcement by the White House Press Secretary:

3.5.7.1.  The President of the United States.

3.5.7.2.  The Vice President of the United States.

3.5.7.3.  Speaker of the House of Representatives.

3.5.7.4.  President Pro Tempore of the Senate.

3.5.7.5.  Members of the Cabinet.

3.5.7.6.  Foreign visitors of political or royal rank equivalent to the above list of U.S. officials, and chiefs of foreign military services.

3.5.7.7.  U.S. Senators.

3.5.7.8.  U.S. Representatives.

3.5.7.9.  Secretaries of the Military Departments.

3.5.7.10.  The Joint Chiefs of Staff.

3.5.7.11.  Commanders of combatant and specified commands.

3.5.7.12.  Federal Government department heads.

3.5.7.13.  The installation PA office withholds casualty information on the following officials until OSD/PA approves: all military officers in the grades of lieutenant general or above and civilian personnel holding equivalent level positions, and Senior Executive Service Precedent Priority Codes DV-1 through DV- 4/Tier 3. SAF/PA may authorize releasing casualty information before securing OSD/PA approval if specific by-name queries are received. Only do this when OSD/PA approval is not available in time to meet immediate needs.

3.5.7.14.  When it is necessary to call OSD/PA directly about releasing casualty information on key personnel, such as Department of the Air Force members killed in action, send an immediate confirmation email to OSD/PA, copying SAF/PA and any intermediate headquarters. Coordinate with the appropriate U.S. embassy or consulate, if applicable, to ensure the host government is notified of accidents occurring outside the U.S.

*Section 3C—Aircraft, Missile and Space Accidents (Non-nuclear)*

**3.6. Initial News Release.** Department of the Air Force officials will publicly disseminate a news release within an hour after notification of an accident or incident, or as close to an hour as possible after notification of the accident or incident. **(T-1).** The release should include as much of the following information as possible. **Note**:  If all the information listed below is not available, release any information that is. The news release should be sent to SAF/PAO at **usaf.pentagon.saf-pa.list.rss-saf-pao@mail.mil** in addition to local and regional media.

3.6.1.  A general description of the type of accident (crash, mid-air collision, space launch mishap, etc.).

3.6.2.  The time and location.

3.6.3.  The aircraft, space launch vehicles, or missile's departure or launch point and destination or, in the case of satellites, intended orbit (unless that information is classified or foreign country sensitivity precludes release).

3.6.4.  The number of crewmembers and passengers aboard.

3.6.5.  The type of aircraft, space launch vehicle, satellite or missile. Withhold this information if the aircraft or missile is an experimental type that has not been publicly announced or is on a classified mission and an exact description would reveal the nature of that mission. **(T-1).** In these cases, release a general description (for example: "...a U.S. Air Force fighter aircraft...").

3.6.6.  Release unclassified facts about the mission the aircraft and crew were on when the accident occurred. Describe the purpose of the flight (for example: the specific training being conducted) and give as many facts about the mission as security permits.

3.6.7.  A board of officers will investigate the accident. **(T-1).** See **paragraph 3.7** for guidance on answering queries related to the board's findings and the cause of the accident.

3.6.8.  If an accident occurs overseas, the board of officers will ensure U.S. embassy coordination is obtained prior to release. **(T-0).**

**3.7. Accident Investigations.** Commanders and PA representatives cannot speculate about the possible causes of the accident, even if the cause(s) seems obvious. If pressed by a reporter, explain that if it is an aerospace accident, an Accident Investigation Board (AIB) report is going to be publicly released and will include a statement of opinion as to the cause(s) and or substantially contributing factor(s); if it is a ground accident, the ground AIB is going to be publicly released. Do not speculate as to the timing of the completion and release of any AIB report.

3.7.1.  Explain the processes for the Safety Investigation Board and the AIB. The Safety Investigation Board report is not releasable.

3.7.2.  The AIB report is releasable. Release of AIB reports is governed by AFI 51-307. In most instances, MAJCOM/PAs or Field Command PAs are responsible for working with the convening authority to release the AIB.   Units should coordinate with the responsible MAJCOM/PA or Field Command PA for local release (community in which the weapon system and or personnel were assigned) of the AIB report's Executive Summary.

**App. 108**

*Section 3D—Incidents*

**3.8.  On-Base or Off-Base Disturbances.** Disturbances, such as protests and marches due to social, political, or economic unrest, can occur on or just outside of any Department of the Air Force installation. PA must ensure their actions do not aggravate the existing situation. **(T-1).** PA also must ensure all PA actions are in close coordination with Security Forces activities. **(T-1).** In overseas areas, PA will ensure activities conform to policies and directives established by the combatant or specified commander and the country team. **(T-0).** Follow the crisis procedures outlined in AFMAN 35-101, **Chapter 4**, paragraph 4.3. **(T-0).**

3.8.1.  Release Authority. The local commander is the release authority.

3.8.2.  Initial News Release. The initial news release should include the nature and background of the disturbance, numbers of personnel involved, damage or injury estimates, command actions, and a statement that the cause is being investigated.

**3.9.  Chemical or Biological Material** . If an accident or incident involves chemical or biological material, release information according to AFI 10-2501. The release must comply with any specific instructions given in movement and operations plans or orders, and any DoD or overseas Combatant command policies that apply. **(T-0).**

**3.10.  Terrorism.** Because terrorists seek media recognition, media information management is in the best interest of the hostage (if any) and the situation. PA screens information disseminated to the media to ensure operational security and force protection, and provides communication advice and counsel to those in charge. **(T-0).** In response to a possible or real terrorist threat, the PA representative may acknowledge, if appropriate, that increased security measures have been taken (without going into specific detail). PA may also confirm the obvious as permitted by applicable guidance and policy. Requests for coverage of counter-terrorism forces are not approved. **(T-0).** In overseas areas, coordinate announcements with the appropriate U.S. embassy and combatant command PA. **(T-0).** PA will ensure queries or requests for information or photography beyond the above guidance are referred to OSD/PA. **(T-0).**

**3.11.  Near Mid-Air Collision.** In case of a near mid-air collision that is of more-than-local PA significance, advise HHQ PA of the details and the PA situation. Include any actual or proposed responses to queries. MAJCOMs, Field Commands and FOAs should consider whether SAF/PA should be advised. Responses to news media queries at any level should be coordinated with the appropriate FAA office.

*Section 3E—Nuclear Weapons*

**3.12.  Policy for Information Releases After Nuclear Accidents and Incidents** . DoD policy is to establish efficient and effective procedures for release of information to the public in the event of nuclear accidents or incidents. However, procedures are consistent with the policy of neither confirming nor denying the presence or absence of nuclear weapons at any specific location.

**3.13.  Initial Public Affairs Responsibility.** In the U.S. and its territories and possessions, OSD/PA has responsibility for the initial PA response to nuclear weapon accidents and significant incidents at military installations. **(T-0).** In overseas areas, Combatant commanders,

in coordination with OSD/PA, will have this responsibility, with the exception of losses, thefts, or seizures. **(T-0).** See **paragraph 3.15** for information on losses, thefts, or seizures.

**3.14. Neither Confirm Nor Deny.** PA must not confirm or deny the presence of nuclear weapons or radioactive nuclear weapon components at any specified location. **(T-0).**

3.14.1. Exception for Public Safety. In the interest of public safety in the U.S. and its territories and possessions, confirmation of nuclear weapons or radioactive nuclear weapon components will be made by any on-site commander (OSC). **(T-0).** The Deputy Director of Operations of the National Military Command Center also may invoke this exception to policy before the OSC arrives, based on available information and in coordination with the U.S. Air Force Chief of Staff, or designee. **(T-0).** Once release of the information is properly approved, notify public authorities in a timely, candid manner to enable them to take public safety actions. **(T-0).** Notification is necessary if the public is or may be in danger of radiation exposure, or any other danger posed by the nuclear weapon or radioactive nuclear weapon component. Make confirmation promptly when protective action or evacuation of civilians may be required. **(T-0).** These actions may include releasing statements to news media to expedite public safety procedures. PA will advise SAF/PA and OSD/PA as soon as possible when confirmation is made directly by the OSC or the deputy director of operations of the National Military Command Center. **(T-0).**

3.14.2. Exception to Prevent Public Alarm. To reduce or prevent widespread public alarm in the U.S. and its territories and possessions, the OSC may issue an official statement of reassurance to the public that confirms or denies the presence of nuclear weapons or radioactive nuclear weapon components. Before the OSC arrives, the deputy director of operations of the National Military Command Center may invoke this exception to policy with available information and in coordination with the U.S. Air Force Chief of Staff, or designee. PA will notify SAF/PA and OSD/PA in advance if practicable, or as soon as possible thereafter if this exception to policy is initiated, to enable OSD/PA and SAF/PA to continue initial PA responsibilities and ensure release of timely, accurate information at the national level. **(T-0).**

3.14.2.1. An official confirmation should be accompanied by appropriate assurances, such as that the chance of injury from high explosive detonation or potential exposure to radiation is highly unlikely. The confirmation may also state that use of explosive ordnance disposal teams and evacuation of military personnel is only a protective measure to limit the number of personnel at the accident site.

3.14.2.2. A denial should characterize the accident or incident as a non-nuclear event.

3.14.3. See Department of Defense Instruction (DoDI) 5230.16, for policy on how release of information to the public in the event of incidents involving nuclear weapons or nuclear components. **(T-0).**

**3.15. Release of Information.** Information about any nuclear accident or incident that does not cause a public hazard or undue public alarm cannot be released without OSD/PA approval. In event of losses, seizures, or thefts of nuclear weapons, materials, or components by terrorists or other dissident groups, or in the case of seizures of nuclear storage sites or any site or location having a nuclear weapon or nuclear weapon system, release of information must be approved in advance and handled by OSD/PA. However, this does not apply in overseas areas where

governmental agreements exist for the release of this information. For general guidance on release of information, see **Chapter 2,** *Media Operations*.

3.15.1.  Procedures for Release after Nuclear Accidents and Incidents. Within the U.S. and its territories and possessions, the responsible commander must:

3.15.1.1.  Require the on-scene PAO to contact SAF/PA by the most expeditious means. **(T-1).** Phone numbers are Defense Switched Network 225-0640 or commercial (703) 695-0640. During non-duty hours, contact the Department of the Air Force Operations Center, Defense Switched Network 227-6103 or commercial (703) 697-6103, and ask for the SAF/PA duty officer.

3.15.1.2.  If action has not been taken by the Federal Emergency Management Agency or the Department of Energy to establish a joint information center (JIC), establish one near the accident site. **(T-0).** The responsible commander will make sure all public information is coordinated at the JIC before release. **(T-0).**

3.15.1.3.  Direct the release of basic accident or incident information without reference to nuclear material. **(T-1).**

3.15.1.4.  If needed, direct the preparation of a proposed follow-up release that is more specific to the situation that involves nuclear weapons, components, or radioactive materials and any conventional high explosives. **(T-0).** If the mishap causes a public hazard or undue public alarm, the responsible OSC issues the release on his or her own authority. **(T-0).** If there is no public hazard or alarm, OSD/PA approval is required for confirmation or denial of the presence of nuclear material.

3.15.1.5.  Notify HHQ and obtain OSD/PA approval of the proposed follow-on release. **(T-0).** Both telephonic and email message notifications are necessary.

3.15.1.6.  Coordinate all further releases and proposed responses to queries that go beyond the scope of previously approved releases with appropriate members of the JIC, or through PA channels to OSD/PA if a JIC has not been formed. **(T-0).**

3.15.1.6.1.  Community Emergency Action Team. When key local officials and civilian and state officials are informed of an accident or significant incident where radiation and other hazards may exist, a Community Emergency Action Team should be formed by the JIC. The Community Emergency Action Team may include PA, medical, legal, security, communications, administrative, logistics, and other appropriate personnel. As these resources become available, they function under the direction of the OSC and are physically located in the JIC to facilitate coordination.

3.15.1.6.2.  Coordinate Community Emergency Action Team activities through the senior federal official and with other agency PA activities to ensure a unified approach to working with the community. For military nuclear reactor or radiological accidents in the U.S. and its territories and possessions, state and local officials will be informed by the Federal Emergency Management Agency.

3.15.1.7.  See **paragraph 3.14** for guidance on whether or not to acknowledge the presence of nuclear weapons, components or radioactive materials. **(T-1).**

**App. 111**

3.15.1.8. Avoid public communication and discussion related to nuclear weapons or materials, beyond the scope of the above guidance, unless otherwise authorized by OSD/PA. **(T-0).**

3.15.1.9. Ensure the OSC or PA designee establishes communication with OSD/PA immediately if an accident or incident requires implementing public safety measures. **(T-0).** Direct communication between the OSC's PA representative and OSD/PA ensures appropriate coordination of PA policy matters and provides timely, accurate information for public release at the national level until the Air Force Service Response Force takes responsibility for PA at the scene. Air Force Global Strike Command will provide response task forces for Intercontinental Ballistic Missile accidents and all Non-Intercontinental Ballistic Missile nuclear weapons accidents within CONUS.

3.15.2. MAJCOM Nuclear Accident Planning. PAs for MAJCOMs possessing, storing, or transporting nuclear weapons, or supporting nuclear-capable units, should prepare sample PA annexes that can be tailored by the installation PA office. MAJCOMs and FOAs must guide subordinate units, describing what additional supplements or annexes are needed in support of accident or incident plans. See DoDI 5230.16, for more information.

3.15.3. Outside of the Continental U.S. In any country where there is potential for U.S. nuclear weapon incidents and other nuclear or radiological incidents involving materials in Department of the Air Force custody, commanders must develop provisions for clearing contingency announcements and methods of release with host governments in consultation with the Chief of U.S. Mission in each country concerned, and when required by international agreement. **(T-0).**

**Chapter 4**

**COMMUNITY ENGAGEMENT**

*Section 4A—Purpose and Objectives of Community Engagement*

**4.1. Community Engagement Purpose.** Community and public engagement is a crucial Departmental activity that reinforces trust and confidence in the U.S. military and in its most important asset – people. Proactive community outreach ensures we connect with the American people and our partner nations outside the continental United States (OCONUS) to inspire the best and most qualified candidates to serve; support our Airmen and Space professionals at home and in dangerous places throughout the world; and ultimately transition our military families back into communities ready to support them through education, employment, and wellness initiatives. These proactive engagements showcase our superior combat power, demonstrate readiness to defend the nation, and help to preserve the all-volunteer force. Effective engagement builds an informed public more inclined to support military operations and less susceptible to the effects of adversary misinformation or inaccurate information in the public sphere.

4.1.1. Community Engagement. Community engagement encompasses activities of interest to the public, businesses, academia, veterans, service organizations, military-related associations, and other non-news media entities.

4.1.2. Targeted engagements with and through various groups enhance mutual understanding, cooperation, and support necessary to create desired effects that support the Department of the Air Force's communication objectives.

**4.2. Community Engagement Objectives.**

4.2.1. Increase public awareness and understanding of the armed forces and the mission, policies, and programs of the Air Force and Space Force.

4.2.2. Support Air Force and Space Force recruiting by inspiring patriotism and encouraging men and women to serve in the military.

4.2.3. Maintain a reputation as a good neighbor as well as a respected and professional organization charged with the responsibility of national security.

4.2.4. Preserve new and enduring relationships with allies, coalition, and multi-national partners.

4.2.5. Provide counsel on community engagement issues for senior leaders. **(T-3).**

*Section 4B—Program Approvals and Participation*

**4.3. Approval Levels for Programs.** Except where prohibited by this instruction, commanders at all levels have the authority to approve the use of their community engagement resources (speakers, bands, honor guard, etc.). Wing and Garrison commanders must refer proposals for community engagement programs that exceed local support capability (as described in this AFI) to the MAJCOM, Field Command or next level HHQ with a description of the anticipated scope of the program, comments concerning expected civilian reaction, recommendations, and predicted benefits. **(T-1).**

**App. 113**

4.3.1.  Office of the Assistant Secretary of Defense PA (OASD(PA)) approval is required for:

4.3.1.1.  PA community engagement participation in programs outside the U.S. Requests are coordinated with the Combatant command PA, SAF/PA and OASD(PA). **(T-0).**

4.3.1.2.  Aerial review requests involving more than one service, or multiple types of aircraft. **(T-0).**

4.3.1.3.  Use of Department of the Air Force community engagement resources at preseason, postseason, or known programmed national sports and professional athletic events and other national-level events within the U.S. SAF/PA approves with notification to OASD(PA), as required. **(T-0).**

4.3.2.  SAF/PA will approve:

4.3.2.1.  All Department of the Air Force support of community relations programs in the National Capital Region (NCR). Exceptions to this are collocated DRUs in the NCR that conduct their own command-level specific programs, and coordinate with SAF/PA as appropriate. The NCR is defined by DoDI 4515.14, *Washington Local Commuting Area*, and includes the District of Columbia; Montgomery and Prince George's counties in Maryland; Arlington, Fairfax, Loudoun, and Prince William counties in Virginia; and the cities of Alexandria, Fairfax, and Falls Church in Virginia.

4.3.2.2.  National-level programs, including conventions and meetings (for example Special Olympics events, friendship festivals), except those in areas under combatant or specified commanders.

4.3.2.3.  Programs requiring liaison between DoD and the Washington, D.C., offices of national non-government organizations and groups, except DoD-recognized national military associations such as the Air Force Association and the Air Force Sergeants Association.  SAF/AA is sole communication conduit to Air Force Association. CMSAF is the principal communication conduit to Air Force Sergeant's Association.

4.3.2.4.  Programs providing information or other support to national organizations, including think tanks and industry groups.

4.3.2.5.  Non-local Civic Leader Tours. Submit a completed tour plan, to include justification, for review through MAJCOM/PA or Field Command PA offices and to SAF/PAY before making commitments or formally inviting guests.  For guidance on preparing tour plans, wing and garrison PA offices will coordinate with their respective MAJCOM/PA or Field Command PA. **(T-2).**

4.3.2.6.  Proper level of support for aircraft, related equipment, and support personnel requests for participation in public events such as airshows, flyovers or national level events.

4.3.3.  Commanders.

4.3.3.1.  Combatant Commanders. Per the Secretary of Defense, combatant commanders will be responsible for overseeing approval of and participation in overseas public events. This authority may be delegated. While Air Force MAJCOMs overseas operate their programs to conform to this regulation, policy direction and guidance provided by Combatant command headquarters takes precedence. Air Force MAJCOMs overseas

**App. 114**

must also advise SAF/PA when taking part in any public event that significantly affects operations, garners international media coverage or requires major administrative, financial, or logistical support.

4.3.3.2. MAJCOM and Field Command Commanders. Within the U.S., MAJCOMs and Field Commands coordinate community engagement programs and public events with combatant and specified commands significantly affected. DoD requires combatant/specified commands to coordinate with HQ USAF and MAJCOMs or Field Commands on programs requiring Department of the Air Force support. **(T-0).**

4.3.3.3. Wing and Garrison commanders are authorized to participate routinely in local events jointly planned and conducted by border communities of the U.S., Mexico, and Canada. Local unit commanders are required to consult with NORTHCOM/PA, SAF/PAY and appropriate U.S. consular officials in the Mexican and Canadian communities involved. **(T-0).**

**4.4. General Guidelines for Participation in Public Events.** Department of the Air Force participation and use of equipment in public events enhances public understanding of the Air Force and Space Force missions. Within legal and policy limitations, commanders at all levels who plan or conduct a community engagement program must consider the interests of the Department of the Air Force and the community as a whole. **(T-1).** Since limitations of time and money make it impossible to grant all requests, PA will take all appropriate requests into equal consideration and recommend approval based on common factors that are in the best interests of the Department of the Air Force and taxpayers. **(T-1).** Participation Guidelines:

4.4.1. Noninterference Basis. Ensure there is minimal interference with normal training or operational activities, the cost to the government is minimal, and that appropriate resources are available.

4.4.2. Transportation. For base visits, transportation may be provided without reimbursement, except airlift, if it makes the visit more efficient and is in the best interest of the Department of the Air Force. PA personnel will ensure compliance with all DoD and AF policies regarding the use of ground transportation assets before such is provided.  Reference AFI 24-301, *Ground Transportation*.

4.4.3. Endorsement of Entertainment Groups. Allowing groups to provide entertainment on base to military personnel, civilian employees, or family members does not constitute an endorsement. Promotion of (or appearing to involve the promotion of) the group's objectives through handouts, speeches, program content, or other forms of promotion connected with the entertainment (including the period before and after the entertainment) is prohibited. Commanders must ensure participation is in good taste, appropriate in scope and type, and in keeping with the dignity of the Department of the Air Force. **(T-1).** Participation should be coordinated with other military services and Department of the Air Force units if they are involved.

4.4.4. Wear of Uniform. Air Force and Space Force members may appear in uniform at local community-wide, civic-sponsored events only when the approving commander (see **paragraph 4.3**) believes participation is appropriate and in good taste; the individuals volunteer for the assignment; there is no interference with military duties or operations; participation involves no additional cost to the government; and the event meets the basic

participation criteria in **paragraph 4.4.2**  Questions regarding wearing the uniform at public events should be addressed to the servicing legal office in advance.  For more information on the wear of uniforms for public appearances reference AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel*, and consult with the installation legal office and MAJCOM/PA or Field Command PA.

4.4.4.1.  Uniform wear restrictions due to force protection considerations must be adhered to in a combatant commander's area of operations. **(T-1).**

**4.5.  Participation Criteria.**  To ensure every planned event complies with public law and DoD policy, at least one condition in each of the following participation criteria categories must be met: Program, Sponsor, Support, and Site or Location **(T-1).** See DoDI 5410.19, *Public Affairs Community Relations Policy Implementation*, Enclosure 2, for full definitions of these categories.

4.5.1.  Participation Criteria — Program.

4.5.1.1.  Approved:

4.5.1.1.1.  Directed by Public Law, Executive Order, or the Secretary of Defense.

4.5.1.1.2.  Official federal, state or local government ceremonies or functions.

4.5.1.1.3.  Events or occasions of general interest or benefit to a local, regional, or national community that are open to the general public. Closed events may be considered of common interest and mutual benefit to the community if invitations are extended to a broad cross-section of a diverse community.

4.5.1.1.4.  In direct support of Air Force and Space Force recruiting programs.

4.5.1.1.5.  Patriotic in nature for the celebration of an official local, state, regional, or national holiday, or national historic events such a D-Day, 9/11, etc.

4.5.1.1.6.  Supporting DoD-approved united, federated, or joint fundraising campaign, such as the Combined Federal Campaign. **(T-0).**

4.5.1.1.7.  Fundraising Events. In general the Department of the Air Force will not provide support to fundraising events. Support of installation-recognized private organizations may be provided when the program is local in nature and of community-wide interest and benefit. PA must ensure support is incidental in nature. **(T-1).** Care should be given to ensure support does not give preferential treatment to a single event or cause, even when the prospective recipient(s) participate in the Combined Federal Campaign. Limited speaker support to off-base non-federal entity fundraisers is only conducted pursuant to 5 Code Federal Regulation (CFR) § 2635.808, *Fundraising Activities*. Refer to DoD 5500.07-R, or contact a local ethics counselor for additional information and guidance.

4.5.1.1.8.  PA must ensure logistical support to non-federal entity events that are not fundraisers meets all the proper criteria outlined below. **(T-0).**

4.5.1.1.8.1.  The event may not interfere with the performance of official duties or detract from readiness.

4.5.1.1.8.2.  Community engagement with the local community and other PA and military training interests are served by the support.

4.5.1.1.8.3.  The association of Air Force, Space Force and DoD with the event is in the Department of the Air Force's best interest.

4.5.1.1.8.4.  The event is of interest and benefit to the local community as a whole, the base, command or organization providing the support.

4.5.1.1.8.5.  The installation providing logistical support is able and willing to provide the same support to other similar non-federal entity events that meet the criteria.

4.5.1.1.8.6.  Department of the Air Force support is not restricted by other statutes or regulations.

4.5.1.1.8.7.  No admission fee is charged for the portion of the event supported by the Department of the Air Force beyond what covers the reasonable costs of sponsoring the event.

4.5.1.1.8.8.  A military band, color guard or choral group (or portion of a group), flyover or static display is not logistical support and is generally not available to support non-federal entity fundraising events. For more information, contact the base legal office or HHQ.

4.5.1.1.9. Chaplains, when fulfilling mandatory endorsing religious organization requirements in accordance with DoDI 1304.28, *Guidance for the Appointment of Chaplains for the Military Departments* and AFI 52-101, *Planning and Organizing*, paragraph 3.1.1.5.

4.5.1.2.  Disapproved:

4.5.1.2.1.  Intended to, or which appears to endorse, selectively benefit, or favor any private individual, special interest group, business, religious entity group, ideological movement, commercial venture, partisan political party, candidate or cause. See **paragraph 4.5.1.1.8** for exceptions regarding chaplains.

4.5.1.2.2.  For the purpose of soliciting votes in a political election or events that provide a platform for a political message. Refer to AFI 51-508, *Political Activities, Free Speech and Freedom of Assembly of Air Force Personnel*, and the most updated version of the *DoD PA Guidance on Political Campaigns and Elections* for additional information. Contact your MAJCOM/PA or Field Command PA for the most recent version of the *DoD PA Guidance on Political Campaigns and Elections*.

4.5.1.2.3.  Commercially sponsored and intended to increase sales and business traffic (such as a business or mall grand opening or motion picture promotion).

4.5.1.2.4.  In a situation where the intended or apparent purpose is to stage controversy or public confrontation or to gain media visibility or notoriety.

4.5.2.  Participation Criteria — Sponsor.

4.5.2.1.  Approved:

4.5.2.1.1.  Local, state, or federal governments. For OCONUS events, participation is dependent on the type of event and the level of government official(s) requesting support.

4.5.2.1.2.  Veterans, military-service related, patriotic, or historical organizations, or their auxiliaries.

4.5.2.1.3.  Civic, service, youth, professional, educational, trade, or labor organizations interested in supporting the Air Force and Space Force. The Department of the Air Force cannot support events where the organization's primary purpose is fundraising or to increase membership**. (T-0).**

4.5.2.1.4.  A commercial enterprise when Air Force and/or Space Force support is patriotic in nature, is incidental to the primary program, and does not selectively benefit the commercial activity of the sponsor. The sponsor's role must be clearly civic in nature and not commercial.

4.5.2.1.5.  A public school, college, or university or where the program is of community-wide interest and benefit. The program should be free, open to all, and broadly promoted. It is clearly an educational, patriotic, program.

4.5.2.1.6.  Organizations with a narrow membership base or interest (religious or sectarian groups or organizations, ideological movements, and political organizations and campaigns) when it is clear that support primarily benefits  the community at large or the Department of the Air Force, as opposed to benefiting the sponsoring organization.  Approval includes religious organizations whose memberships are exclusive to their specific faith traditions or similar.

4.5.2.1.7.  Air Force bands, performers, and other units may perform on television and radio programs. The programs should be public service broadcasts, and participation should not benefit or endorse any commercial enterprise. Bands, performers, and other Air Force and/or Space Force units may appear on national or regional commercial programs only with approval from OSD/PA through SAF/PA. Requests are made through PA channels at least 60 days in advance. See AFI 35-110, for more information.

4.5.2.2.  Disapproved:

4.5.2.2.1.  Any organization that excludes anyone from its membership because of race, ethnicity, sex (to include pregnancy), religion, color, national origin, gender or sexual orientation, or unlawfully discriminates against, harasses, intimidates or threatens on the basis of race, ethnicity, religion, sex, national origin, color, age, disability, reprisal, or genetic information. See **paragraph 4.5.2.1.6** regarding exceptions for religious organizations.

4.5.2.2.2.  A commercial enterprise, unless Air Force and/or Space Force support is patriotic, incidental to the primary program, and does not selectively benefit the commercial activity, whose role is clearly civic in nature.

4.5.2.2.3.  Any organization whose constitution, by-laws, membership qualifications, or ritual is not available to the general public. Examples are secret societies and many fraternal organizations.

4.5.2.2.4.  A sect, partisan political organization, or ideological movement not meeting the guidelines in **paragraph 4.5.2.1**

4.5.3.  Participation Criteria — Support.

4.5.3.1.  Approved:

4.5.3.1.1.  Authorized by Public Law, Executive Order, or the Secretary of Defense.

4.5.3.1.2.  Can be reasonably expected to bring credit to the individuals involved and the Department of the Air Force at no additional cost to the government.

4.5.3.1.3.  Where admission is charged, if the support is incidental to the primary event such as sporting events or airshows, including Service Academy sports events.

4.5.3.2.  Disapproved:

4.5.3.2.1.  When support might interfere with customary or regular employment of civilians in their art, trade, or profession.

4.5.3.2.2.  Use of Department of the Air Force resources, services, or facilities which are reasonably available from commercial sources and where such use would be perceived as unfair competition.

4.5.3.2.3.  Involves the use of Regular Component, ANG, AFR, Reserve Officer Training Corps personnel or U.S. Air Force Academy (USAFA) cadets in uniform outside military bases as ushers, guards, parking lot attendants, drivers, runners, messengers, escorts, baggage handlers, for crowd control, or in any menial, unlawful or inappropriate capacity.

4.5.3.2.4.  Would interfere with military needs or operational requirements.

4.5.3.2.5.  Selectively benefits an event sponsor in that the same support would not or could not normally be provided to all similar groups or organizations that request it.

4.5.3.2.6.  Would entail illegal compensation of DoD personnel or organizations.

4.5.4.  Participation Criteria — Site or Location**.**

4.5.4.1.  Approved:

4.5.4.1.1.  Open and free of charge to the public with admission, seating, and other facilities available to all without regard to race, ethnicity, sex (to include pregnancy), age, religion, color, national origin, gender or sexual orientation.

4.5.4.1.2.  On a military base.

4.5.4.1.3.  At a local, state, or federal property, facility, or building.

4.5.4.1.4.  At a private commercial building when the program is patriotic, open to the public, and of community-wide interest, or when participation is incidental to the primary program and does not appear to selectively benefit any commercial business.

4.5.4.1.5.  In a building or facility used for religious purpose, when programs are of community-wide interest, nonsectarian, broadly promoted, and when the activity is not part of a religious service.  As an exception, Chaplain Corps personnel, due to their specialized roles, may participate in religious services in their official capacities in order to build collaborative community relations that support the religious freedom and spiritual resilience of Airmen and Space professionals and their families. See AFI 52-101, paragraph 4.3.

4.5.4.1.6.  In a shopping mall or center only when programs are directly related to recruiting or patriotic activities and do not appear to selectively benefit any commercial business.

4.5.4.2.  Disapproved:

4.5.4.2.1.  Not open to the general public, and admission, seating, or other accommodations are barred to any person because of race, ethnicity, sex (to include pregnancy), age, religion, color, national origin, gender or sexual orientation.

4.5.4.2.2.  If the site is a private commercial or religious building, shopping mall, or non-public school, college, or university, except as specified in **paragraphs 4.5.4.1**

**4.6. Funding Requirements.** Per Air Force Policy Directive 65-6, *Budget*, DAF policy is to participate in programs and events within programmed budgets using the proper appropriation(s) for incurred costs.  All fiscal rules as to proper funding apply. Participation requiring additional cost to the government should be avoided unless considered in the best interest of the Department of the Air Force. Budgeted events fall into two event categories: *Primary Interest* (all costs incurred by the Department of the Air Force unit or units involved), and *Mutual Interest* (costs are shared by the Department of the Air Force and the sponsor). Scheduled training or troop movements that are viewed by the public are considered incidental to training and not a PA activity. Contact the local SJA to help determine the proper funding sources for any event as the correct funding is more dependent on the specific facts of each situation than upon how it was programmed for in the budget, particularly when the specific facts were unknown or unsettled. The following guidelines apply:

4.6.1.  Primary Interest. Primary interest events can include those requiring SAF/PA and OASD(PA) approval, or those that may be approved by the local wing commander. In either case, the participating unit will incur all costs. **(T-1).** Events for which the participating unit is authorized to bear all costs might include DoD requirements, Department of the Air Force or civic-sponsored public observances of the U.S. or a host or partner nation, official ceremonies or functions, or speaking engagements.

4.6.2.  Mutual Interest. Events identified as mutual interest are carried out with the civilian sponsor.

4.6.2.1.  The participating unit is responsible for Department of the Air Force costs of participation unless advised otherwise by higher authority. Units must budget for these costs in annual financial plans. **(T-1).** The unit's costs are those continuing costs that exist even if the Department of the Air Force did not participate. These include pay, allowances, and incidental expenses.

4.6.2.2.  The cost of opportune airlift or routine flights in military aircraft for transportation of people and exhibit materials is also a Department of the Air Force share of costs.  This only applies to the support of other military services whose participation in an event has been authorized.

4.6.2.3.  Civilian sponsors must reimburse the Department of the Air Force for additional costs, including but not limited to: travel cost of military personnel and equipment; per diem payable under federal joint travel regulations; cost of shipping exhibit materials when commercial means are used; any rental space, utilities, or custodial services; and

cost of shipping aviation fuel if it is not available at a military contract price at the required location. **(T-1).**

4.6.2.4. Also included are any additional services determined necessary by the participating units and agreed to by the civilian sponsor. MAJCOMs and Field Commands shall waive the per diem cost payment requirement and accept locally furnished meals and quarters but only if they meet military standards. This waiver authority may not be delegated to a lower authority even if such items are accepted without prior approval.

4.6.2.5. Sponsors must also provide local area ground transportation, exhibits, space, utilities, custodial services, or any other required services. **(T-1).**

*Section 4C—Use of Aerial Assets, Parachute Teams, Static Displays and Other Equipment*

**4.7.  General Guidance for On- and Off-Base Public Event Support.**  The U.S. Air Force and U.S. Space Force take part in events at military and civilian locations in order to keep the public and military informed of U.S. preparedness, demonstrate modern weapons systems, promote good community and international relations, support Air and Space Forces recruiting and retention efforts, and to render military honors. Department of the Air Force participation in any public event shall be in accordance with DoDD 5410.18, *Public Affairs Community Relations Policy*, DoDI 5410.19, and this instruction. **(T-0).**

4.7.1. Authority to approve requests from organizations seeking off-base aviation support has been delegated by OASD(PA) to the military services. The approval authority for Department of the Air Force participation in such events is SAF/PA in coordination with Headquarters Air Force Operations, Aerial Events Office (AF/A3O). **(T-1).**

4.7.2. Approval Process. SAF/PAY is responsible for and tasked with ensuring that airshows, flyovers, Air Force parachute team demonstrations, static displays, and non-aviation events that desire Air Force aviation participation are appropriate events for Air Force support. Unified Combatant Commanders, the Under Secretary of Defense for Policy, and other OSD officials also have roles in specific cases to deem an event eligible or ineligible for military participation. Event sponsors are required to accomplish a DD Form 2535, *Request for Military Aerial Support* on the Department of the Air Force Aerial Events website, **https://www.airshows.pa.hq.af.mil**. Once the completed DD Form 2535 is reviewed by SAF/PAY and the event is determined eligible for Department of the Air Force participation, the event is made eligible on the Department of the Air Force Aerial Events website for Air Force flying units and PA offices to review and support. Complete request procedures, additional information, current guidance, and internal policies and regulations can be obtained from the Department of the Air Force Aerial Events website.

4.7.2.1. Safety is the primary consideration. All pertinent safety regulations of the Department of Defense, Department of the Air Force, and the FAA are strictly enforced.

4.7.2.2. Department of the Air Force participation at events requires approval for eligibility and level of support (SAF/PAY), as well as operational participation approval (AF/A3O). While the PA community approves the appropriateness of an event for Department of the Air Force participation, the operations community must concur on the operational issues impacting the feasibility and safety of participation.

**App. 121**

4.7.2.2.1. SAF/PAY determines eligibility and is the approval authority for all Department of the Air Force aviation public event requests including those in support of one of the five DoD-approved patriotic holidays, aviation-related events and non-aviation-related events. **(T-1).**

4.7.2.2.2. AF/A3O and Assistant Secretary of the Air Force Acquisition, Logistics and Technology (SAF/AQ) must approve the use of any aircraft or equipment undergoing testing in a research and development program. Submit these requests, through the MAJCOM/A3O to AF/A3O and SAF/AQ, at least 60 days before the event date. **(T-1).**

4.7.2.3. Flyovers of public events in support of community engagement activities are flown as a part of an approved training mission within allotted flying hours. **(T-0).**

4.7.3. All events scheduled for, or that may attract, national or international media coverage are coordinated with SAF/PA. Send requests through PA channels to SAF/PAY at least 15 days before the event date, or as soon as the event date is known. **(T-1).**

4.7.4. Department of the Air Force units should provide arresting gear, ground support equipment, and security support (as applicable) to civilian and military airshows supporting any approved DoD jet or single-ship demonstration team performances, static display aircraft, etc. This support ensures the safety and security of the performing military teams. Arresting gear support should be requested and coordinated between the airshow point of contact and the MAJCOMs that provide mobile arresting gear in accordance with the applicable policies of the military department being asked to provide the equipment. Funding the transportation, installation and removal of any mobile aircraft arresting system, transportation, and other costs associated with ground support equipment, and all temporary duty costs (travel, rental car, per diem, lodging, etc.) incurred by government personnel to provide mobile aircraft arresting system support, ground support equipment support, and security support will be the responsibility of the airshow. The transportation and installation or removal schedules, respective roles and responsibilities, and reimbursement authorities should be memorialized in a memorandum of agreement between the supporting service and the supported airshow that is accomplished in advance of the provision of any such support by the Department of the Air Force.

**4.8. On-Base Public Events.** Military units hosting one or more aerial events on a military installation, when the event is open to the public, must submit requests via DD Form 2535. **(T-0).** See **paragraph 4.27**, and AFMAN 10-1004, *Conducting Air Force Open Houses*, for more information on hosting open houses.

**4.9. Military Flyovers** . A flyover, whether on-base or off-base, is a straight and level flight, limited to one pass by no more than four aircraft of the same general type (such as tactical, rotary wing), or up to two (with AF/A3O and SAF/PAY approval) heavy/bombers, from the same military service over a predetermined point on the ground at a specific time, and not involving aerobatics or demonstrations. A flyover of more than four aircraft, or of multiple types of aircraft that do not typically fly operational missions together, or of aircraft representing more than one military service, with elements in trail formation and not involving precision maneuvers or demonstrations, constitutes an aerial review. See **paragraph 4.10** for information on aerial reviews. Flyovers at memorial or funeral services are not community engagement activities. In those cases, Mortuary Affairs and AF/A3O shall determine whether a flyover will be approved.

**(T-1).** Any situational OSD/PA and SAF/PA guidance takes precedence over this AFI (such as sequestration limitations, budgetary issues, Annual Aerial Events Message, etc.).

4.9.1.  All requests received for use of military aircraft at a location in North America are completed via the DD Form 2535 through the online Aerial Events website: **www.airshows.hq.af.mil**. The civilian organization requesting support for an event will be the point of contact on the request. If a request is received with a Department of the Air Force member as the point of contact, it will be denied until the proper civilian contact is provided to SAF/PAY. Requestors will ensure a hard copy of the request is printed and required signatures are obtained and forwarded to SAF/PAY within required time constraints (no more than 45 but no less than 15 days prior to the event). Do not give the impression of approval before the event is officially approved by HHQ. Department of the Air Force members will not solicit an organization to provide flyovers or other support. Upon request, providing a list of available assets to the event organizer is acceptable. **Note**:  Requests are not processed until all required signatures are obtained, including the event site certifier and FAA, and received by SAF/PAY.

4.9.1.1.  Units that volunteer to support an event must indicate their intent on the website. Support must then be approved by the respective MAJCOM/A3 (may be delegated to lower echelon in MAJCOM/A3). **(T-1).** Sponsors of events may contact a unit to solicit participation in their particular event. Units will not rely on the sponsor to notify SAF/PAY.

4.9.1.2. Aerial Events Message. An aerial events message is distributed annually to specify the types of exception-to-policy events that are and are not eligible for support by the Department of the Air Force, and to pre-determine the proper level of support. This message also annotates further restricting of policy due to current budgetary and OASD (PA) policies. It is disseminated from AF/A3O and SAF/PAY at the beginning of the calendar year, or as needed.

4.9.2.  Recruiting. PA offices will work with the local recruiters to ensure they are offered the opportunity to have booth space at events where there is an Air Force flyover, using DD Form 2535. **(T-0).**

4.9.3.  United States Air Force Academy (USAFA). All definitions and policies regarding flyovers and aerial reviews apply to the USAFA. Examples of approved Academy events include graduation ceremonies, football games, parades, and other events with a patriotic or military theme.

4.9.3.1.  The USAFA requests appropriate Department of the Air Force aviation participation through the Department of the Air Force Aerial Events website and is limited to one non-organic flyover per event, in addition to local capabilities demonstrations (for example, parachute, gliders, etc.).

4.9.3.2.  Additional information regarding support to USAFA events can be found in the Annual Aerial Events Message published by AF/A3O.

4.9.4.  Off-Base Public Events. Event eligibility determination is provided by SAF/PAY. Department of the Air Force evaluation of aviation support for off-base events is based on the theme and purpose of the event, the sponsoring organization, anticipated audience, assets

requested, and the benefits of participation to the Department of the Air Force. See **paragraph 4.5** for more information on eligibility criteria.

4.9.4.1.  Single Flyovers. Authorized flyovers include no more than four tactical/rotary aircraft of the same type, or up to two (with AF/A3O and SAF/PAY approval) heavy/bombers, making one pass only. Requests for off-base flyovers are considered by SAF/PAY only for aviation-oriented events (such as airshows, airport anniversaries or dedications), or patriotic observances that are open to the public and held in conjunction with one of the five DoD-approved patriotic holidays: Armed Forces Day (third Saturday in May), Memorial Day (last Monday in May), Independence Day (July 4), POW/MIA Recognition Day (3rd Friday in September), and Veterans Day (November 11). Flyovers must occur within seven days before or after the national day of observance for the patriotic holiday and must directly support the holiday commemoration. **(T-0).**

4.9.4.1.1.  Exceptions to policy for events other than those listed above are considered by SAF/PAY on a case-by-case basis after determining appropriateness and benefit of Department of the Air Force participation.

4.9.4.1.2.  Sporting events require SAF/PAY exception-to-policy approval regardless of the date. **(T-0).** For example, a professional or local baseball game on July 4 must still be approved by SAF/PAY.

4.9.4.2.  Multiple Passes. Multiple passes by the same formation at any off-base event are not authorized. Send request for waiver to AF/A3O. Units will submit these requests, through MAJCOM/A3 (may be delegated to lower echelon in A3) to AF/A3O (copy to SAF/PAY), at least 15 days before the event date. **(T-1).**

4.9.4.3.  SAF/PAY coordinates all eligible events with AF/A3O to determine the extent of authorized operational participation, which is outlined in the Annual Aerial Events Message.

4.9.4.4.  Overseas Requests. For overseas units, authority for aircraft participation at civilian locations is delegated to the appropriate Combatant Commander in accordance with References and as otherwise specified in emergent and applicable policy and/or guidance. For MAJCOM asset participation, obtain concurrence of the MAJCOM prior to the event. Overseas requests for CONUS-based assets to specifically deploy in support of an airshow or other public event (such as Paris Air Show or Royal International Air Tattoo, etc.) will be addressed to the Combatant command at least 60 days before the event. If a unit is solely supporting a community relations event and is not currently deployed to the location, or is not participating in a long-range planning exercise, an exception to policy will be processed through the Combatant Command to OSD/PA for approval. SAF/PAY and AF/A3O must be informed.

4.9.5.  Requests for Missing-Man Formation. The missing-man formation is authorized for use at ceremonies commemorating Memorial Day, POW/MIA Recognition Day, Veterans Day, and at other suitable events when the theme is solemn in nature and the event is not held in conjunction with another event (such as, sporting events or airshow). The missing-man formation is not flown at CONUS public events without the approval of MAJCOM/A3 Aerial Events offices in coordination with SAF/PAY. **(T-0).**

**App. 124**

4.9.5.1. For OCONUS commands, U.S. military support for Memorial Day events at U.S. military cemeteries overseas is a key community engagement activity. All wings are encouraged to support these requests to the maximum extent possible.

4.9.5.2. While determination of event eligibility rests with the unified or combatant commander, approval for missing-man flyovers at Memorial Day events at U.S. cemeteries overseas is delegated to the supporting MAJCOM.

4.9.6. Memorial or Funeral Ceremony, Aerial Event. All requirements are validated with Warrior and Survivor Care Office in accordance with AFI 34-501, *Mortuary Affairs Program*, and AFI 11-209, *Participation in Aerial Events*.]

4.9.7. Retirement and Change of Command Ceremonies, Aerial Event. Refer to AFI 11-209 for guidance.

**4.10. Aerial Review.** A flyover of more than four aircraft, or of multiple types of aircraft, or of aircraft representing more than one military service, with elements in trail formation and not involving precision maneuvers or demonstrations constitutes an aerial review. A single element involving four or fewer aircraft of different airframes but of the same general type (for example, two F-16s and two F-22s) is not considered an aerial review. A flyover involving multiple types of aircraft from the same or different military departments that routinely fly missions together, as approved in accordance with Military Department operational procedures, is also not considered an aerial review (for example, a pre-contact refueling flyover with a KC-135 and two F-15s). However, these two latter formations should be undertaken only with applicable consideration given to safety, compatible flying characteristics, and the overall theme of the event that is being supported and will be approved at the MAJCOM/A3 or delegated echelon with the MAJCOM/A3 level. **(T-0).**

4.10.1. Aerial reviews are reserved for only the most meaningful occasions and are not scheduled or performed at CONUS events without initial review and approval by SAF/PAY and AF/A3O (Combatant Command review and approval for OCONUS events), and with final approval granted by OASD(PA). Units will submit these requests through MAJCOM/PA to SAF/PAY (information to AF/A3O) at least 45 days before the event date. **(T-0).** Aerial reviews at airshows are exempt from the OSD approval requirement.

4.10.2. Multi-Service or multi-nation aerial reviews on- or off-base may require additional approval. Refer to AFI 11-209, for specific guidance. Units will submit these requests through MAJCOM/PA and MAJCOM/A3 to SAF/PAY and AF/A3O at least 45 days before the event date. **(T-1).**

4.10.3. SAF/PAY and AF/A3O may approve the combination of a parachute jump and flyover or a flyover and aircraft demonstration (not to exceed a total of four elements) at off-base public events, since they are distinctly diverse assets. Use of such aviation assets is reviewed on a case-by-case basis. Approval is based on the supportive justification as to the significance of the event and the ability to provide such resources at no additional costs to the government.

4.10.4. USAFA demonstrations at home football games, on-base parades, graduation and other major on-base patriotic events using USAFA-owned assets are exempt from needing a waiver for an aerial review. USAFA events using USAF-owned assets in addition to one

**App. 125**

non-USAFA-owned asset at such events, and for flyovers and aerial reviews, are also exempt, as described in **paragraph 4.9.3**

**4.11. Aerial Demonstrations** . Aerial demonstration is a generic phrase that includes virtually every type of aerial participation in public or military events (except for aerial review and flyover) to include aerobatics, aircraft capabilities demonstrations, assault landing or takeoffs, aircraft weapons or tactics demonstrations, Air Force Vintage Aircraft Programs (such as USAF Heritage Flight Program operated by Air Combat Command), airdrop demonstrations of personnel or equipment, and combat search and rescue demonstrations. The phrase is used interchangeably with the phrase "aircraft demonstration." MAJCOMs may approve demonstrations by their assigned operational assets on their command bases. MAJCOM-to-MAJCOM requests for these aerial events are approved by the MAJCOM/A3 (may be delegated to lower echelon in A3) owning the requested assets. Notification to AF/A3O and SAF/PAY through their respective channels will occur at least 45 days prior to the event. **(T-1).**

**4.12. Thunderbirds.** Requests for demonstrations by the USAF Aerial Demonstration Squadron, Thunderbirds, are due to SAF/PAY no later than July 1 each year to be considered for air shows two years in advance. **(T-1).** The Chief of Staff of the Air Force is the approval authority for the Thunderbirds aerial demonstration team schedule. Schedule changes after the initial release are delegated from Chief of Staff of the Air Force to Commander, Air Combat Command (ACC). ACC/A3TA will coordinate directly with SAF/PAY prior to Commander, ACC coordination on schedule changes. **(T-0).**

4.12.1. Performances on Department of the Air Force Bases. Aerial demonstrations at Department of the Air Force bases will be requested by the host wing or garrison PA office through the MAJCOM or Field Command to SAF/PAY by July 1. **(T-0).** The Thunderbirds schedule two years in advance. Priority is given to bases that request two-day shows.

4.12.1.1. Requests for the Navy's Blue Angels and single-ship demonstration teams, the Army's Golden Knights, other Army parachute teams, and Marine Corps single-ship demonstration teams are submitted to the offices indicated on page 4 of DD Form 2535.

4.12.1.2. Requests for the Canadian Snowbirds and the CF-18 demonstration team are submitted to the Canadian Air Division Special Events office, for more information and a copy of the request form, visit the team's website: **http://www.rcaf-arc.forces.gc.ca/en/demo-teams/booking.page.or** call (204) 833-2500 ext. 5228.

4.12.2. Performances on Other-Than-Air-Force Military Installations or Civilian Venues. Requests for Thunderbirds performances are submitted to SAF/PAY for review and submission to the Thunderbirds schedulers by July 1, two years prior to requested air show date. The individual or agency sponsoring the event must submit the completed DD Form 2535 directly to SAF/PAY via the Aerial Events Website. PA offices may assist sponsors with the DD Form 2535 but will not submit the request for the sponsor to avoid perception the Department of the Air Force will approve the request. **(T-0).**

4.12.3. Cancellations. If a PA office is notified of a cancellation of an off-base performance, encourage the sponsor to notify the Thunderbirds immediately if they have not already done so. A military unit canceling a performance by the Thunderbirds at its installation must immediately send an e-mail message to the Thunderbirds scheduler, with a copy to SAF/PAY

at **usafaerialevents@mail.mil**. The email must list the date the performance was scheduled, location, reason for cancellation, and person canceling the performance. **(T-0).**

4.12.4.  All activities undertaken by the Thunderbirds that are likely to result in national media exposure (for example videos, civic leader or media flights, and television appearances) are to be reported to SAF/PAY via Air Combat Command/PA. Photo shoots over national landmarks such as Mount Rushmore, the Statue of Liberty, etc., are to be coordinated with SAF/PAY via Air Combat Command PA at least 10 days in advance. **(T-1).**

4.12.5.  All open houses and airshows eligible for Thunderbirds support are posted for internal use to the Department of the Air Force Aerial Events website: **https://www.airshows.pa.hq.af.mil**.

4.12.6.  The Thunderbirds do not routinely do flyovers at events. Any request for a flyover by the team will be forwarded to SAF/PAY for event eligibility determination. Only events of a national nature will be considered (for example Super Bowl, World Series, etc.).

**4.13. Single-Ship Demonstration Teams.** Requests for demonstrations by the ACC Single-Ship Demonstration Teams are due to SAF/PAY no later than July 1 each year to be considered for airshows the following year. **(T-1).**

**4.14. Foreign Demonstration Teams.** Performances by government-sponsored foreign demonstration teams at Department of the Air Force installations can enhance international goodwill. Questions regarding performances by foreign teams in the U.S. should be addressed to AF/A3 in accordance with AFI 11-209.

**4.15. Parachute Demonstrations.** Parachute demonstrations are restricted to appropriate events over airports, or areas of land where adequate crowd control can be assured. Requests for off-base parachute demonstrations at locations other than those specified above may be approved as an exception-to-policy. Participation is usually limited to three days for any one event.

**4.16. Aircraft Static Displays.**

4.16.1.  On-Base Public Events.

4.16.1.1.  Small Public Events. The installation commander is the approval authority for static displays for events such as base tours, and will ensure compliance with all operational required approvals for aircraft not in the current inventory, as well as any photography rules currently in-place. **(T-2).** See AFI 11-209, for more information.

4.16.1.2.  Large Public Events. MAJCOM/A3 (may be delegated to lower echelon in A3) may approve on-base static displays for assigned operational resources, not in conjunction with a retirement or change of command ceremony, for large public events such as open houses.

4.16.1.3.  Civilian Aircraft. MAJCOM/A3 (may be delegated to lower echelon in A3) may approve static displays of civilian aircraft on their respective bases. Civilian participation should be at no additional cost to the U.S. government. See AFMAN 10-1004, for guidance.

4.16.1.4.  Static displays used in conjunction with retirement or change of command ceremonies consist only of aircraft assigned to the base where the ceremony is occurring. For complete guidance on retirements and changes of command, refer to AFI 11-209.

4.16.2.  Off-Base Public Events.

4.16.2.1.  Authorized only at airfields, heliports, and landing sites meeting the qualifications prescribed in AFMAN13-204, Volume 2, *Airfield Operations Standardization and Evaluations*, as supplemented by MAJCOMs. USAFA gliders and remotely piloted aircraft are authorized participation at other locations because of their capability to be trailered to static display sites.

4.16.2.2.  At least one qualified crewmember will be present throughout all static displays to answer questions from spectators and help to ensure security. **(T-0).** In addition, placards placed near the aircraft describing the specifications and missions are encouraged.

4.16.3.  All requests for static displays must to be entered on the Aerial Events website: **www.airshows.hq.af.mil**. Static displays do not require FAA approval on the DD Form 2535.

**4.17.  Jump Platforms.**

4.17.1.  On-Base Public Events.

4.17.1.1.  MAJCOM/A3O may approve use of its assigned operational assets on their command bases.

4.17.1.2.  MAJCOM-to-MAJCOM requests for a jump platform are approved by the MAJCOM owning the requested assets.

4.17.1.3.  If the request is for an Air Mobility Command (AMC) asset, units will submit requirements to AMC Operations (AMC/A3O) at least 45 days before the event date for consideration at the monthly Joint Airborne and Air Transportability Training planning conference. **(T-2).**

4.17.2.  Off-Base Public Events.

4.17.2.1.  When a military unit is making the initial request, submit the request through PA channels to SAF/PAY (with a copy to AF/A3O) at least 45 days before the event date. SAF/PAY coordinates all approved events with AF/A3O to determine extent of operational participation authorized. **(T-1).**

4.17.2.2.  If the request is for an AMC asset, units will submit requirements to AMC/A3O at least 60 days before event date for approval or disapproval at the monthly Joint Airborne and Air Transportability Training planning conference. **(T-2).**

4.17.2.3.  For additional guidance, reference the Annual Aerial Events Message.

**4.18.  On-Base Civilian Aerial Demonstrations.**  Awareness of aviation heritage is the primary objective when scheduling civilian aerial demonstrations and performances during on-base events. While the intent of HQ USAF is that DoD aerial demonstration teams normally perform aerobatics at or over Department of the Air Force installations, qualified civilian performers may be permitted to provide aerial demonstrations, flyovers, and static displays to supplement or augment DoD team performances. Commanders must select civilian organizations whose aircraft are of historic military significance and whose performances clearly reinforce and promote a better understanding of the Department of the Air Force. **(T-1).** See AFMAN 10-1004, for additional guidance.

**4.19. Supporting Special Events** . Requests for non-aviation related military support of public programs should be addressed to the nearest military installation, using DD Form 2536, *Request for Armed Forces Participation in Public Events (Non-Aviation)*. Decision criteria should include the nature of the program, sponsor, site, and support. See **paragraph 4.5** for more information about participation criteria. Wing commanders may authorize local program support without further authorization. DD Form 2536 is designed to aid civilian sponsors and provide required information for approval authority. When possible, local PA offices can provide the sponsor with the form and assist the sponsor in filling out the form completely; however, they should not be listed as the point of contact. Local PA should also contact local recruiters if appropriate. For band requests, refer sponsors to the Department of the Air Force Outreach Request System, **www.outreachrequests.hq.af.mil**. Additional consideration should be given to integrating military assets into key civilian events and ensuring proper Department of the Air Force message placement in all public events.

4.19.1. All requests for Department of the Air Force support within the National Capital Region, unless specific to the Department of the Air Force District of Washington and their community outreach efforts, will be sent to SAF/PAY using DD Form 2536 at least 60 days before the event date or as soon as the event is known; SAF/PAY coordinates with OASD (PA) as appropriate. **(T-1).**

4.19.2. When the Office of the Assistant Secretary of Defense or HQ USAF receives direct requests from civilian sponsors, SAF/PAY will coordinate with the respective MAJCOM/PA or Field Command PA to appoint a project officer at the base closest to the requester to plan all Department of the Air Force participation at that approved event (such as White House events, Armed Forces Day, Veterans Day, national sporting events). The project officer should establish initial contact with the sponsor as soon as possible and maintain close liaison to assure the sponsor that the Department of the Air Force is going to provide the appropriate level of assistance and participation. Project officers are authorized direct communication with participating commands and military services. Project officers will provide SAF/PAY a report of all planned participation at least 15 days before the event and prepare a brief after-action report within 30 days after the event. **(T-1).**

4.19.3. MAJCOMs must ensure details regarding all events scheduled for or that may attract national or international media coverage are sent to SAF/PAY at least 30 days before the event date or as soon as the event is known. **(T-1).**

**4.20. Sports Outreach.** Local units are encouraged to create and maintain relationships with national, collegiate, and minor league sports teams in their communities. When supporting events that are nationally televised, or have the potential to be nationally televised, SAF/PAY must be informed through MACOM/PA offices. **(T-0).** PA offices must coordinate with the Services to deconflict support to events, avoid duplication of efforts, and maximize messaging opportunities. **(T-1).**

4.20.1. The gifting of tickets to service members may be permitted within limits. The supporting legal office must be consulted before any offer of a gift of free tickets is accepted, regardless of quantity.  Organizations hosting sporting events may choose to make them more accessible to Airmen and Space professionals by offering free or reduced price admission, pursuant to Title 5, Code of Federal Regulations (CFR), Part 2635.203. **(T-0).** Alternatively, blocks of tickets may be gifted to the Department of the Air Force for

distribution to Airmen and Space professionals, pursuant to AFI 51-506, *Gifts to the Department of the Air Force from Domestic and Foreign Sources,* **Chapter 7**.

4.20.2. PA and other Department of the Air Force units must adhere to proper personal conduct at sporting events in accordance with the DoD 5500.07-R and AFI 1-1. **(T-0).**

4.20.3. While installations are encouraged to maintain relationships with sports teams by ensuring organizers understand the assets the Air Force and/or Space Force can provide, service members are not authorized to directly ask a team to allow their aviation and non-aviation assets to support an event.  Nor can AF personnel solicit free or reduced rate attendance.

4.20.4. Per DoDI 5410.19, SAF/PAY will lead and execute strategic opportunities for pre-planned national-level sporting events, working with local and participating units and other services. Examples include the Super Bowl, World Series, certain motorsports events, professional and collegiate level playoff series, etc. These events will be determined on a yearly basis and will be coordinated through the MAJCOM/PA and Field Command offices. **(T-0).**

### Section 4D—Interagency Programs

**4.21. Department of the Air Force Participation in Interagency Programs.** Occasionally, the Air Force and Space Force take part in and support interagency exhibits, programs and training such as approved trade shows, Joint Interagency Task Force programs, and interagency wildland fire management programs (ANG/AFR). Each Air and Space Forces component of a combatant or specified command is guided by the policy on interagency programs issued by that command. However, the policy stated below on programming, preparing budget estimates, and financing Department of the Air Force participation in interagency programs applies to all Department of the Air Force activities.

4.21.1. Coordination. The Department of the Air Force must work through, and obtain approval from, OSD/PA on all interagency programs. **(T-0).**  In supporting such programs, the Department of the Air Force objectives are to strengthen its community engagement program and provide PA support to all Air Force and Space Force activities worldwide.

4.21.2. The Air Force or Space Force element must forward a request to take part in or to support an interagency action through PA channels to SAF/PAY for determination and processing through OSD/PA, unless OSD/PA approval has already been obtained by the combatant or specified command. **(T-0).**

### Section 4E—Speeches, Public Appearances, Messages and Official Functions

**4.22. Acceptance Criteria.** Official public appearances and speeches by Air Force and Space Force personnel, military or civilian, constitute essential parts of the Department of the Air Force program to keep the public informed. Individual members of the Air Force and Space Force at all levels, but particularly general officers and other key personnel, should make every reasonable effort to fill requests unless overriding or previous official commitment precludes acceptance. Apply the following criteria:

4.22.1. Participation does not interfere with assigned duties.

4.22.2.  Remarks are confined to discussion of subjects within the Department of the Air Force and speaker's purview.

4.22.3.  Views expressed are nonpartisan, consistent with AFI 51-508, (uniformed military personnel), Title 5 United States Code Section 7323, *Political Activity Authorized; Prohibitions*, also referred to as "*The Hatch Act."*  This will apply to civilian personnel. **(T-0).**

4.22.4.  Views expressed during an official speaking engagement, whether the event is sponsored by a federal or non-federal entity, must reflect U.S. government policy. **(T-0).**

4.22.5.  Participation does not imply Department of the Air Force sponsorship or agreement with the statements of others that may be partisan in nature or contrary to national policy.

4.22.6.  Participation does not violate DoD 5500.07-R.

**4.23. Security and Policy Review.** Speakers must have their speeches reviewed for security and policy issues at the appropriate level. **(T-1).** See **Chapter 9,** *Security and Policy Review Process*, for complete information.

**4.24. Payment and Honoraria.** Payment or honoraria will not be accepted for making an official on- or off-duty public appearance or speech done as part of official duties. **(T-0).** Consult the installation SJA for more information. Refer to Title 5, CFR § 2635.807, *Teaching, Speaking, and Writing* for more information about the ability to accept honoraria for non-official speeches.

4.24.1.  Travel Expenses. Funded temporary duty is authorized to support approved events; however, in some cases, an unsolicited offer by the organization requesting a speaker may be accepted by appropriate authority. Coordinate with the SJA to ensure proper authorization. Refer to AFI 51-506, **Chapter 8,** for more information about the acceptance of travel payments from non-Federal entities.

4.24.2.  As a general rule Federal government employees shall not accept any gift of value given to them because of their government position, or given by a "prohibited source." **(T-0).** Gifts valued under $20 may be accepted, pursuant to Title 5, CFR § 2635.204(a), *Exceptions to the prohibition for acceptance of certain gifts*. If the gift is valued at more than $20 or results in gifts totaling more than $50 received from the same source in a calendar year, do not reject it outright. Contact ethics counselor to determine if the gift can be accepted based on other authorized gift exceptions.

**4.25. U.S. Air Force Representation at Events in the National Capital Region and New York City.** SAF/PA has an established process to vet, advise, and approve community engagements and speaking opportunities in the NCR and New York City. SAF/PAY advises whether or not attendance is desirable, optional, or inadvisable and assists in ensuring legal requirements are met. Members must contact SAF/PAY upon receipt of the invitation in these areas. **(T-1).** SAF/PAO maintains operational authority for media activities in NYC.

4.25.1.  Personal Responsibilities. Air Force and Space Force military members or civilians invited to speak or appear at public events in the NCR or in New York City will notify their respective PA offices immediately upon receipt. The respective PA office will then notify the owning MAJCOM/PA or Field Command PA and request guidance from SAF/PA. The invited member will indicate desire to accept or decline the invitation. **(T-0)**

4.25.2.  Unit Responsibilities.

4.25.2.1. Units based in the NCR/Washington Metropolitan Area do not need to coordinate local community engagement programs with SAF/PA unless senior Department of the Air Force leaders are involved. **Exception**:  Events sponsored by, or in honor of, foreign nationals. Invitations in honor of foreign dignitaries should be reported to the office of the Deputy Under Secretary of the Air Force International Affairs (SAF/IA). **(T-1)**

4.25.2.2. Department of the Air Force Protocol Office provides advice on state and official functions.

**4.26. Inviting Distinguished Visitors.** Air Force and Space Force units may invite distinguished visitors to attend appropriate functions.

4.26.1. Government Officials. SAF/PAY should be notified if invitations are sent to any government dignitary, including members of the Supreme Court, Cabinet Secretaries, and Principal Deputies to Cabinet Secretaries.

4.26.1.1. Invitations to the President of the United States, Vice President, and members of Congress should be processed according to AFI 90-401, *Air Force Relations with Congress*. **(T-1).**

4.26.1.2. Commands must favorably endorse invitations for them to receive approval at HQ Department of the Air Force level.

4.26.1.3. Air University and USAFA. Correspond directly with Cabinet Officers and Principal Deputies to Cabinet Officers to speak or appear at academic functions. On acceptance of such an invitation, Air University and or U.S. Air Force Academy Public Affairs will notify SAF/PAY immediately. **(T-1).**

4.26.2. Military Officials. Invitations may be made directly by or through commanders of MAJCOMs, Field Commands, DRUs or FOAs to senior officials up to, and including, the Chairman, Joint Chiefs of Staff; the Secretary or Chief of Staff of the Army; the Secretary of the Navy or the Chief of Naval Operations; the Secretary of the Air Force, Chief of Staff of the Air Force, or the Chief of Space Operations; or the Commandant, U.S. Marine Corps. When an invitation from an Air Force and/or Space Force unit is accepted by any of the officials listed above, the hosting PA will notify SAF/PAY immediately. **(T-1).**

4.26.3. Foreign Nationals. SAF/IA must approve all invitations from CONUS commanders to foreign nationals to visit Department of the Air Force facilities or to take part in Department of the Air Force-sponsored functions.  Per AFI 65-603, *Emergency and Extraordinary Expense Authority*, paragraph 1.4 and DoD guidance, only the Secretary of the Air Force, Chief of Staff of the Air Force, or Chief of Space Operations may extend invitations to foreign dignitaries to visit the U.S. at the expense of the Department of the Air Force.  Contact your installation-level foreign disclosure office for further details. **(T-1).**

4.26.4. Invitations to distinguished visitors not listed in preceding paragraphs are procedural matters for commands. However, MAJCOMs and Field Commands will advise SAF/PAY immediately when the appearance of a distinguished visitor at an Air Force or Space Force function is considered likely to attract national attention. **Note**:  Invitations for citizens of national prominence to take part in or attend memorial and dedication programs are processed according to AFMAN 36-2806, *Awards and Memorialization Programs*.

4.26.5. Congressional Visits. Information concerning visits by members of Congress is found in AFI 90-401.

4.26.6. Joint Civilian Orientation Conference. This is an annual conference arranged by OASD(PA) in which civilian opinion leaders are personally invited by the Secretary of Defense (SECDEF). The participants attend briefings to the Pentagon and visit field installations within different Combatant Commands.

4.26.6.1. These tours should be given the highest priority since they are SECDEF sponsored with assistance from OASD (PA) and SAF/PAY. SAF/PA will send a message to MAJCOMs and Field Commands annually requesting nominations. The message outlines nominee criteria and instructions for submission. The Joint Civilian Orientation Conference website is located at **https://jcoc.osd.mil/**.

4.26.6.2. Nominees must be influential leaders in their professions and in their communities who, both personally and professionally, communicate with key audiences. Examples include: presidents of universities and colleges; chief executive officers and senior officials of private enterprises with regional or national reach; publishers, editors, and management officials of news media organizations; national and regional leaders of professional groups; leaders of marginalized group organizations; and rising state and local elected and appointed officials. OSD/PA makes the final selections of attendees from among those nominated. **(T-0).**

*Section 4F—Department of the Air Force Tours, Programs and Open Houses*

**4.27. General Guidelines.** The Department of the Air Force Tour Program increases awareness and understanding of the role in national security by inviting groups of opinion and community leaders to witness Air Force and Space Force missions by visiting Department of the Air Force installations. Air Force and Space Force units carefully select candidates who are capable of disseminating information to various publics about the Department of the Air Force's programs. With proper advance approval participants may travel on military transportation, including aircraft, to view the Air Force and Space Force in action, in accordance with DoDI 4515.13, *Air Transportation Eligibility*.

4.27.1. Although there are different types of tours, to include National Civic Leader Tours, civic leader tours, community engagement tours, and base tours, all tours are conducted under the same basic guidelines.

4.27.1.1. Prior to planning or scheduling any community engagement tour other than a routine base tour or local tour (no travel outside the local area, and out and back in the same day), PA units must complete a tour plan and forward it to the MAJCOM/PA or Field Command PA office for concurrence and forwarding to SAF/PAY for approval. **(T-1).**

4.27.1.2. For the most current tour plan template contact the appropriate MAJCOM/PA or Field Command PA office.

4.27.2. Hosting units will ensure that tours adhere to OSD/PA guidance that civilian visitors are not permitted to operate any item of military equipment when such operation could cause, or reasonably be perceived as causing, an increased safety risk. **(T-0).** This policy is designed to ensure visits are conducted as safely as possible. This policy specifically includes any

aspect of the actual operation of military vessels, aircraft, vehicles, and crew-served weapons systems. Small-arms weapons firing is allowed with local wing or garrison commander approval, but host nation sensitivities involving this event should be taken into consideration at OCONUS locations.

4.27.3.  Tours are not intended to produce media coverage; however, media queries concerning the program or a specific tour are answered factually, completely, and in a timely manner. Hosting units will ensure tour participants are advised prior to the event that names, business affiliations, and any other information releasable under FOIA are released if queried by the media. **(T-0).**

4.27.4.  Working members of the press and members of the U.S. Congress and their staff are not included in community engagement tours since there are other programs in place for these groups. Members of local and state governments may be included.

4.27.5.  In areas where major units are co-located, the tour host will coordinate tour plans and guest lists with other Department of the Air Force Public Affairs offices in the area before extending invitations in order to maximize Department of the Air Force reach. **(T-1).** Local Air Force recruiting squadron commander and or recruiters, Air Force Reserve Officer Training Corps detachments, and ANG and AFR sources should also be contacted for suggested tour invitees.

## 4.28. National Civic Leader Tours.

**4.28. National Civic Leader Tours.** SAF/PAY manages the overall National Civic Leader Tour Program, focusing primarily on tours that are broadly Department of the Air Force focused in nature, as opposed to a MAJCOM-specific or Field Command-specific mission set. For example, SAF/PAY may set up a tour specifically targeting Science, Technology, Engineering and Math career fields and have the Air Force's Chief Scientist as the host. SAF/PAY, working with MAJCOMs and Field Commands, will coordinate to assign execution responsibility for individual tours. Additional themes for national civic leader tours may be proposed at lower echelons and submitted through MAJCOMs or Field Commands along with the tour plan to SAF/PAY for approval. When organizing national civic leader tours:

4.28.1.  The focus is on issues or themes that have greater local or national impact.

4.28.2.  The target audience is composed of stakeholders generally associated with a major strategic issue or persons who are force multipliers in communicating Department of the Air Force messages.

4.28.3.  Limit National Civic Leader Tours to two days.

4.28.4.  SAF/PAY will identify a senior Department of the Air Force leader and PA escort(s) to accompany the tour.

4.28.5.  MAJCOMs and wings and/or Field Commands and garrisons may be asked to nominate invitees. MAJCOMs and Field Commands may be asked to provide assistance.

4.28.6.  In accordance with AFI 24-602v1, *Passenger Movement*, Air Mobility Command Public Affairs (AMC/PA) will work with SAF/PAY to request and monitor funds through AMC/PA for all SAF/PA National Civic Leader tours, Joint Civilian Orientation Conference, SAF/PA field offices, and Air Force District of Washington military airlift requests via the Program Objective Memorandum process. **(T-1).**

**4.29. Civic Leader Tours.** The target audience is stakeholders connected to a local issue, or where general civic education can be justified. Civic Leader Tours are more than one day and involve travel away from the local installation. For detailed guidance and requirements on how to plan and execute a Civic Leader Tour, see AFMAN 35-101, **Chapter 5,** *Community Engagement*.

4.29.1.  Bases and units are generally responsible for funding their own civic leader tours, to include Special Assignment Airlift Missions. MAJCOMs are not required to fund civic leader tours for bases, but may do so through established budgeting processes. PA offices should contact their MAJCOM/PA or Field Command PA early in the fiscal year budget process to determine any MAJCOM or Field Command priorities, as well as the procedures to submit requests for approval if the owning MAJCOM or Field Command funds wing-level or garrison-level Civic Leader Tours, respectively.

4.29.2.  Tours are limited to two days. SAF/PAY will be the approval authority for exception to the policy authorizing a tour that extends more than two days.

4.29.3.  There is no limit on the number of civic leader tours that may be performed as long as justification is provided via the tour plan. Approval is also contingent upon MAJCOM or Field Command concurrence and budget availability.

4.29.4.  With proper advance approval participants may travel on Department of the Air Force aircraft to view the Air Force and/or Space Force in action in accordance with information provided in DoDI 4515.13; DoDI 5122.08, *Use of DoD Transportation Assets for Public Affairs Purposes*; and DoDI 5410.19. Reference **Table 8.1** in **Chapter 8** of this instruction for more information.

4.29.5.  Not all civic leader tours require airlift. Commanders should consider all alternatives in an effort to meet the communication objective(s).

4.29.5.1.  Airlift is flown as a funded Special Assignment Airlift Missions per AFI 24-602v1.

4.29.5.2.  If flying on Department of the Air Force aircraft, invitational travel orders should be accomplished in accordance with applicable Department of the Air Force and DoD procedures. A manifest of passengers will be accomplished for all flights per the DoD and Department of the Air Force guidelines. **(T-2).**

4.29.6.  Tours should be focused on and driven by local or regional issues. Itinerary is developed to meet specific objective(s) with measurable result(s). Care will be taken to tie the MAJCOM and/or Field Command mission to the overall Air Force and/or Space Force missions. **(T-2).**

4.29.7.  PA Office Responsibilities. The sponsoring PA office will ensure tour participants:

4.29.7.1.  Confirm with participant that they are in good health and physical condition. **(T-3).** Local medical personnel will be consulted and provide final determinations regarding any questions regarding prospective participants. **(T-3).**

4.29.7.2.  Assume full financial responsibility for their own lodging, meals, and other expenses during the tour. **(T-3).**

**App. 135**

4.29.7.3.  Furnish the name, address, and telephone number of an emergency contact. **(T-3).**

4.29.7.4.  Disclose any special dietary requirements or other restrictions. **(T-3).**

4.29.8.  Money Management. Since participants in the Civic Leader Tour program pay their own expenses, priority shall be given to making bill payments the least cumbersome on everyone – the escorts, guests, and payees. **(T-3).**  **Exception.** This cannot include payment of participants' bills using Air Force or Space Force funds and seeking reimbursement later or collection and management of funds from participants by Air Force or Space Force personnel (either up front or by individual expense) to cover various costs incurred by participants**.**

**4.30.  Base Tours.**  Base tours tell a portion of the Air Force and/or Space Force story to visitors and should be tailored to coincide with the interests of different age groups. To ensure safety, a risk assessment should be done of any areas on base that will be visited by members of the public.

4.30.1.  Classified Information. Protecting classified information is a matter of prime concern in any tour program.

4.30.2.  Coordination. PA must have written procedures, coordinated with base Security Forces, on how to handle all types of tour issues or emergencies. **(T-3).**

4.30.3.  Foreign Nationals. Foreign nationals may be given the standard base tours provided to U.S. citizens. All requests must be coordinated through the local foreign disclosure office. **(T-1).**

4.30.4.  Non-PA Sponsored Tours. Unit commanders may sponsor visitors into their organization and onto installations in accordance with local base access procedures. In approving such visits, commanders will assume responsibility for the safety and security of visitors to include providing escort and supervision of guests, performing risk assessment on activities, properly coordinating activities that fall outside the commanders' immediate span of control (for example, anything outside the commander's organization), and adhering to the local installation tour procedures. **(T-3).**This includes mini-open houses. Units can request installation support (such as Security Forces, Force Support Squadron.) **(T-3).**

**4.31.  Base Open Houses.**  Open houses provide an opportunity for citizens to gain an understanding of Air Force and Space Force missions and military capabilities, as well as the skills and professionalism of its people. Commanders are encouraged to execute an open house with prudent oversight that balances the issues of force protection and operations tempo with the expected benefits of opening the base to the public. AFMAN 10-1004, provides full guidance for the planning and execution of Department of the Air Force open houses.

4.31.1.  Commanders should hold open houses when considered in the best interest of their overall community engagement program.

4.31.2.  Open houses should inspire patriotism and aid military recruiting efforts and not be (or convey the image of) a fair, carnival, or circus.

4.31.3.  Open houses should highlight the base mission and Air Force and/or Space Force life, and do not always have to be an airshow. Commanders may consider opening dining

facilities, dormitories, maintenance shops, classrooms, flight simulators, and other unclassified facilities during a non-aviation-related open house.

4.31.4. Consider highlighting air, space, cyberspace, sister-service and other government assets at open houses, and partnering with NASA to showcase educational resources such as space missions and exploration, exhibits and astronaut appearances.

4.31.5. Commanders must ensure, due to extensive PA involvement, that the PA officer is not appointed as overall open house project officer. **(T-1).** The PA office works closely with the project officer to ensure public awareness and promote attendance at the open house.

4.31.6. Commanders may partner with one or more local non-Federal entities to conduct the Open House.  The entire event may not be advertised as co-sponsored but discrete portions of the air show may be sponsored by such partners.  See AFMAN 10-1004, paragraph 7.7. Funding provided by a non-Federal entity should be processed as a gift to the Department of the Air Force per AFI 51-506 or a gift to the Non-appropriated Fund Instrumentality (for Morale, Welfare and Recreation portions of the Open House) per AFMAN 34-201, *Use of Nonappropriated Funds (NAFS)*.

**Section 4G—Requests for Information (Non-Media) and General Inquiries**

**4.32. Information Requests General Guidelines.** Responding promptly, accurately, and completely to requests for information or complaints is an important part of PA. People often develop lasting impressions of the Air Force and Space Force and the professionalism of its members based on the quality and timeliness of replies to their queries, requests and comments. Many times, correspondence is the only direct contact a person or organization has with the Air Force or Space Force. See AFMAN 35-101, **Chapter 5**, for specific guidelines on how to respond to information requests and public inquiries, including Congressional requests and inquiries; regional, state and local government officials and special interest group requests; and foreign national requests. See **Chapter 2**, *Media Operations*, for information on responding to media requests.

**Section 4H—Community Involvement, Participation and Programs**

**4.33. General Guidelines.** Department of the Air Force policy is to maintain close working relationships with its civilian neighbors. Such a partnership should include every area of Air Force, Space Force and civilian community life. Personnel, both military and civilian, in leadership positions at an installation are encouraged to take part in community programs and organizations. Key civic leaders or groups should be invited to the base for informational briefings and meetings hosted by the commander and staff, as applicable.

4.33.1. Commanders must ensure that individuals or groups are not given preferential treatment that implies or confers authority or access to base services they would not otherwise be entitled to. **(T-1).**

4.33.1.1. Commanders and PA offices should be made aware of any misuse of commander-granted access to the base, to include use of services meant exclusively for Airmen and Space professionals, their families and DoD employees.

**App. 137**

4.33.2. Local Organizations. Base personnel should be encouraged to join local organizations compatible with their interests such as military affairs committees, community councils, etc.

4.33.2.1. PA should maintain an organizational reference file to include titles and addresses, official missions and structure, places and scheduled meetings, and conventions.

4.33.2.2. The commander, or designated representatives, should be ex-officio observers who regularly attend meetings of key civic organizations representing a broad cross-section of the community, such as the Chamber of Commerce. The commander or designated representative should consult the servicing legal office regarding the limits imposed by DoD 5500.07-R on attendance at, and participation in non-federal entity activities in one's official capacity, and for ethics advice on activity limits, especially fundraisers.

4.33.2.3. Base access for civic leaders and others is an installation commander's decision and will be worked with the local Security Forces offices. **(T-1).**

**4.34. General Responsibilities.** Department of Defense and Department of the Air Force policies express the responsibility to maintain an open, timely, and honest dialogue between military organizations and community and opinion leaders. While media engagements facilitate the more familiar avenue for such communication, community engagement enables community leaders to understand Department of the Air Force missions and priorities through direct personal contact and dialogue with Air Force and Space Force personnel, and to convey community leaders' understanding to broader community audiences and opinion leaders. Commanders must establish personal contact with local community leaders, and may involve subordinate commanders and staff elements to assist, to increase citizen awareness of the armed forces and missions, policies, and programs of the Air Force and Space Force, and to build relationships of mutual trust and benefit between the Air and Space Forces and community leaders and their constituents. **(T-1).**

**4.35. Managing Community Leader Meeting or Visit Requests.** Community leaders may request informational meetings with Air Force and Space Force commanders, and visits to Air and Space Forces installations, to better align community plans and services to assist Air Force and Space Force operations and priorities. These are not considered part of the tour program, and commanders should accommodate these requests as long as they do not interfere with installation mission execution and support activities. Commanders determine visit timing and the level of support provided, while remaining cognizant of the Department of the Air Force's obligation to provide equal access and levels of support to similarly situated visitors.

4.35.1. Such visitors may include volunteer representatives of community organizations and private groups, local or state officials, members of Congress or their representatives, and paid advocates for private, civic, local, state or federal interests or other entities, sometimes referred to as "lobbyists." Groups that include individuals representing diverse community components or interests frequently benefit more broadly from meetings with Air Force and Space Force leaders than singularly aligned or purposed groups. The PA office should identify community and member affiliations within the initial visit request. Participation by former Department of the Air Force or federal government personnel, unilaterally or

representing a non-DoD entity, does not confer special access or expanded discussion scope, unless otherwise authorized by law or Departmental instruction.

4.35.2.  Commanders should outline unit and installation details in formal presentations and informal meetings during discussions with community groups. See **Chapter 9,** *Security and Policy Review Process*, for information on the requirement for review and clearance of the content of formal presentations. Air Force PA, Judge Advocate, Legislative Liaison, and mission area subject matter experts should assist commanders in determining acceptable, relevant information to satisfy community interests while complying with information guidelines governing congressional, contractor, technical, legal, and media information, 5 USC § 552, and operations security policies and regulations, concurrent with guidance. **(T-1).** These examples are not all inclusive.

4.35.3.  Commanders will discuss the same unit and installation information across diverse community groups to avoid providing a selective benefit or conferring preferential treatment upon any particular group, whether perceived or actual, as described in DoD 5500.07-R. **(T-0).**

4.35.4.  Installation personnel may only ask participants in community leadership programs for their personal or individual observations or recommendations. In order to avoid triggering the Federal Advisory Committee Act, these groups will not be asked by the Department of the Air Force for group or consensus recommendations. **(T-1).** Commanders should coordinate with their servicing legal office in advance of engagements so as to anticipate and avoid any issues in this area.

**4.36.  Civic Leader Programs.**  Commanders are encouraged to have civic leader and honorary commander programs. These programs increase the bond between local civic leaders and the Department of the Air Force. The goal of a civic leader program is to engage, educate and empower local, regional and national level community leaders to be unofficial spokespersons for the Department of the Air Force, Airmen and Space professionals and their families. Civic leader program members should serve as advisors, key communicators and unofficial spokespersons for Air Force and Space Force issues, providing ideas and feedback to commanders as to how Air and Space Forces missions can be best accomplished, and monitor public attitudes toward the Air Force and Space Force missions.  For specific guidelines and requirements on how to execute an installation or base or MAJCOM/Field Command Civic Leader Program, see AFMAN 35-101, **Chapter 5,** *Community Engagement*.

4.36.1.  Civic leaders at all levels serve as unofficial spokespersons on Air Force and Space Force matters and issues. In particular, programs should focus on fostering support for Airmen and Space Professionals and their families, recruiting talented individuals to consider the Air Force or Space Force, encouraging youth to serve, encouraging diversity and outreach to marginalized groups, and providing Air Force and Space Force leadership with insight and perspective on high priority issues.

4.36.2.  Base-level Civic Leader Programs should aim to develop core partners from the community who are committed to the Air Force and Space Force, and who would make good candidates to ultimately join MAJCOM/Field Command and Department of the Air Force-level civic leader programs.

**App. 139**

4.36.3.  Base-level Civic Leader Programs will be managed by wing or garrison PA staff. **(T-3).**

4.36.4. Under no circumstances will Air Force or Space Force program participation be determined by any local civic organization nor will any local civic organization assess a fee to any civic leader who is chosen by the base to participate in the base Civic Leader Program. **(T-0).**

4.36.5.  Executing a Civic Leader Program. For specific guidelines and requirements on how to execute an installation or base or MAJCOM/Field Command Civic Leader Program, see AFMAN 35-101, **Chapter 5, *Community Engagement***.

4.36.6.  Choosing Civic Leaders. For specific guidelines on how to choose appropriate civic leaders for participation, see AFMAN 35-101, **Chapter 5, *Community Engagement***.

**4.37. Think Tank and Academia Engagement.** SAF/PA conducts a think tank engagement program to connect with opinion leaders who shape national and global policy. This program orchestrates engagements between Department of the Air Force senior leaders and leading opinion leaders from think tanks, academia and industry to establish conversations on key Department of the Air Force issues while receiving candid individual, not group feedback. The intent of the program is to ensure Air Force and Space Force senior leaders build and maintain relationships so that influential national security opinion leaders gain useful insight to better inform audiences of Department of the Air Force issues. SAF/PA recommends MAJCOM or Field Command commanders and general officer level wing commanders or Senior Executive Service civilians plan meetings with think tanks in the NCR when they are in town for Capitol Hill visits.

4.37.1.  All engagements must be worked through SAF/PAY, and units should contact them 30 days in advance for additional details. **(T-1).**

4.37.2. Installations may execute a think tank engagement program at the local level to facilitate discussions with local university professors, think tanks, and opinion leaders on installation-specific issues. Contact SAF/PAY for additional details on setting up a program.

***Section 4I—Special Events, Observances and Joint Councils***

**4.38. Inter-Service Support for Events.** Some community engagement programs involve support from more than one military service. When more than one military service supports a program sponsored by a civilian organization and the magnitude of the support warrants DoD coordination, OASD(PA) requests one military department to nominate an officer located in the area of the program to serve as the overall DoD support coordinator.

4.38.1. When the Department of the Air Force is requested to nominate a DoD coordinator, SAF/PA requests the command with the installation closest to the event nominate a PA representative. OASD(PA) then designates them as the DoD coordinator. The DoD coordinator is responsible for coordinating all military support, including support by the ANG and AFR. DoD coordinators are authorized direct liaison with OSD/PA. **(T-0).**

4.38.2. When the Department of the Air Force provides support for a particular event, SAF/PA requests appointment of a project officer, usually located within the area of the event, to represent the Department of the Air Force and assist the DoD coordinator.

4.38.3.  The DoD coordinator prepares an after-action report and sends it to OSD/PA within 30 days following the event. Department of the Air Force project officers assist the DoD coordinator in preparing the after-action report by supplying the Department of the Air Force information. Department of the Air Force project officers must ensure a copy of the report is sent to SAF/PAY. **(T-1).**

**4.39.  Observances.**

4.39.1.  Armed Forces Day. By Presidential Proclamation, Armed Forces Day is observed on the third Saturday in May. On Armed Forces Day, in keeping with the spirit of unification in Title 50 USC § 3002 et seq., *National Security Act*, as amended, Air Force and Space Force units must not observe this commemoration (or any other day of significance to the Department of the Air Force and its subordinate elements) at any location away from an Air Force or Space Force installation without specific authorization of OSD/PA. **(T-0).**

4.39.1.1.  OSD/PA coordinates Armed Forces Programs at the national level. SAF/PA will pass OSD/PA guidelines to the field.

4.39.1.2.  Air Force and Space Force units will participate by extending hospitality to the public through open houses or similar events and by cooperating with community and organizational observances of Armed Forces Day as appropriate. **(T-3).** In locations and situations where two or more military services are represented, joint participation in community-sponsored programs is encouraged.

4.39.2. Veterans Day. The Administrator of Veterans Affairs is usually designated by Presidential Proclamation as the Chairperson of the Veterans Day National Committee. The objective of this committee, comprised of representatives from major veteran's organizations, is to stimulate and perpetuate national public interest in honoring all veterans of all wars on Veterans Day. Each year, this committee designates certain communities as regional sites for observing this national holiday. DoD supports these observances by appointing a coordinator and approving military support. Regional sites are designated to ensure proper priority and appropriate levels of support are available for these major observances. DoD policy is to provide military support for Veterans Day observances in communities designated as regional sites as well as for smaller local observances held in communities not designated as regional sites.

4.39.3.  Presidential Wreath Laying Ceremony. The Office of the Military Assistant to the President provides Presidential wreaths and arranges for their annual placement at the tombs, burial sites, and monuments of all former presidents.

4.39.3.1.  The Department of the Air Force, through the MAJCOM or FOA indicated, provides Presidential representatives at wreath laying ceremonies for the following Presidents: Millard Fillmore (ANG), 7 January, at Buffalo, New York, and Lyndon B. Johnson (ANG), 27 August, at LBJ Ranch, Texas.

4.39.3.2.  The minimum military grade for wreath laying ceremonies will be a colonel from the installation closest to the site, unless overriding considerations preclude the availability of a senior officer. **(T-0).** The name, grade, title, address, and telephone number of each designated representative must be sent to SAF/PAY at least 65 days in advance of the month of wreath placement.

**App. 141**

**4.40. Joint Councils.** When there is more than one military installation in an area, community engagement efforts or programs should be coordinated when appropriate. Consideration should be given to either forming a joint community council or providing for representation on the separate councils.

*Section 4J—Musical Support*

**4.41. Musical Support at Public and Ceremonial Events.** The use of Air Force bands is an effective and favorable way to gain access to locations and audiences to inform the public about the Air Force and Space Force, and foster public trust and support with communities at home and abroad. Each event is a planned and structured opportunity to engage leadership and interact with a targeted public on behalf of the Department of the Air Force. These public events offer opportunities for senior leadership to directly engage with audiences or deliver specific messages during their performances.

4.41.1. Musical support of events includes, but is not limited to, public events, parades, concerts, choral presentations, patriotic openers or presentations, and community outreach concert tours that are in the best interest of the Department of the Air Force. CONUS Regional Air Force bands operate in geographic AORs as assigned by SAF/PA. OCONUS Air Force bands operate in geographic AORs as assigned by Pacific Air Forces (PACAF) and U.S. Air Forces in Europe and Air Forces Africa (USAFE-AFAFRICA). The United States Air Force Band stationed in Washington D.C. rotates through five national tour areas on a six-month cycle as determined by the Deputy Assistant Secretary of Defense for Community and Public Outreach.

4.41.1.1. Performances by Non-professional Military Musicians. Official military musical performances that could garner national media attention (such as singing the National Anthem at a sporting event) should be performed by a professional military musician. On a case-by-case basis, service members who are non-professional military musicians who volunteer or are solicited to perform at such events must be approved by the closest military band commander or the Secretary of the Air Force Public Affairs Bands Division prior to accepting an invitation to perform in uniform. **(T-2).**

4.41.1.2. Even if the service member volunteers to perform in civilian attire, if introduced as a member of the military, prior approval will be required. **(T-2).** Refer also to guidance in DoDI 5410.19 and AFI 35-110.

4.41.2. No event will receive the support of more than one musical unit without prior approval of OSD/PA or designated representative with two exceptions:

4.41.2.1. One local band per Military Department is authorized to participate in local patriotic or civic parades (such as Armed Forces Day parades, Norfolk North Atlantic Treaty Organization Festival parade, and Veterans Day parades) that are of general interest or benefit to a local, state, regional, national or broadly representative community. The parades should be sponsored or supported by the local government.

4.41.2.2. Participation by more than one Military Department must be considered when extensive support is required, or when cross-Military Department representation is in the best interests of the DoD to display the members of the joint team.

4.41.3.  Social music, background music and dance music are not authorized at civilian sponsored events, unless the event sponsor is a military welfare society as identified in Title 10 USC § 2566, *Space and Services: Provision to military welfare societies*.  Until such time as new guidance is issued by the ASD(PA) or published in DoDD 5410.18 by the Secretary of Defense, authorized support to military welfare societies is outlined in the Assistant Secretary of Defense for Public Affairs Memorandum, *Determination of Military Band Participation in Certain Military Relief Activities*, 29 January 2010.  Background, dance, or other social music programs are authorized for official U.S. government events supported solely, or in part, by appropriated funds, regardless of location. (T-0).

**Section 4K—Support for Non-Government Entertainment Productions**

**4.42. Television, Motion Picture, Documentary, Unscripted and Other Entertainment Production Guidance.** This section covers guidance governing Department of the Air Force assistance to non-government scripted and unscripted productions, including motion pictures, DVD, television and web-based movies; series and mini-series, as well as theatrical productions, game shows, and video games. These productions are primarily intended to entertain. The SAF/PAY Entertainment Liaison Office in Los Angeles (SAF/PAYL) is the office of primary responsibility for liaising with the entertainment industry on all Department of the Air Force-related projects.

4.42.1.  DoD Instruction 5410.16, *DoD Assistance to Non-Government, Entertainment-Oriented Media Productions*, authorizes assistance to an entertainment-oriented motion picture, television, DVD, or video production when cooperation benefits DoD or when this would be in the best national interest. See DoDI 5410.16 for complete information.

4.42.2.  The OSD/PA-Special Assistant for Entertainment Media serves as the sole authority for approving DoD assistance to non-government, entertainment-oriented motion picture, television, DVD and video productions. The Special Assistant for Entertainment Media is herein referred to as OSD/PA. **(T-0).**

4.42.3.  SAF/PAY serves as the Department of the Air Force approval authority for official support before elevating requests to OSD/PA for DoD-level approval. SAF/PAYL serves as the entry point for all requests, reviews and coordinates support requirements with MAJCOMs and Field Commands, makes a qualifying recommendation to OSD/PA, and is ultimately charged with preparing, coordinating, and executing a DoD Production Assistance Agreement. Before a production company officially submits a project to OSD/PA, SAF/PAYL may provide advice and courtesy assistance that might ultimately help to qualify the project for support. However, no premature commitments may be made. SAF/PAYL also provides the production company a copy of DoDI 5410.16.

4.42.4.  MAJCOM and Field Command Role. Installations will be asked to support on-site filming requests for major motion pictures, television shows or documentaries. SAF/PAYL reviews requests and makes recommendations to MAJCOM/PA and/or Field Command PA, to include MAJCOM, Field Command and local unit ability to support. SAF/PAYL will coordinate and ensure required documents are accomplished before filming is allowed. **(T-1).**

4.42.5.  Installations. If initially contacted by a representative from the entertainment industry (to include TV and motion picture companies and city and state film commission offices), the

unit PA office, after gaining approval from the installation commander, should contact respective MAJCOM/PA or Field Command PA, who should contact SAF/PAYL in-turn, before agreeing to anything. Concurrently, units should refer productions to SAF/PAYL via their online website, **https://www.airforcehollywood.af.mil/**, to complete the Request for Production Support form required for any product seeking to utilize military assets. If contacted by SAF/PAY or MAJCOMs/Field Commands concerning projects already under SAF/PAYL review, units should advise MAJCOMs or Field Commands of their ability to support.

**4.43. Production Companies.** SAF/PAYL collaborates and coordinates with production companies to develop a project that will qualify for DoD-approved assistance. As noted in **paragraph 4.42.3**, SAF/PAYL may provide assistance to help a production company qualify for DoD assistance. For specific guidelines on how to support and assist a production company throughout an Department of the Air Force-related project, see AFMAN 35-101, **Chapter 5**.

*Section 4L—Use of Department of the Air Force Members as Extras, in Game Shows or Entertainment Productions*

**4.44. Use of Department of the Air Force Personnel in Non-Department of Defense-Supported Entertainment Programs.** Department of the Air Force personnel who appear in non-government entertainment-oriented productions (non-news) do so voluntarily. Members must have their individual commander's approval. **(T-3).** Additionally, some MAJCOMs or Field Commands require members to receive MAJCOM- or Field Command-level approval. Contact MAJCOM/PA or Field Command PA and SAF/PAYL for current guidelines. Members may participate in these programs but only in their personal, off-duty capacity. **(T-1).** Members may not wear their uniform for any of the segments, may not arrange to use military facilities nor equipment in support of any portions of the program, or provide any footage (to include filming or photographing the member on base or at his or her job) that gives the appearance of or implies Department of the Air Force endorsement. Members should also coordinate with their local PA office for media training.

4.44.1.  All active duty members must be in a leave or commander-approved off-duty status. **(T-1).** Permissive temporary duty is generally not authorized. Even though the requirements may state a certain time frame and will require leave, individuals should know that they may be required to make other appearances on behalf of the show or there may be instances where they would be required to stay on leave more than 45 days due to production schedules. Commanders should not sign any forms generated by production companies indicating that the member will not be deployed during the duration of filming the program, or any forms indicating the members' fitness.

4.44.2.  Regular Component and Reserve members must also have an approved Air Force Form 3902, *Application and Approval for Off-Duty Employment*, prior to leaving home duty installations for casting and or auditions and for participation. **(T-1).** The form should document any compensation the member may receive. Compensation includes travel, airline tickets, per diem, lodging, food, gifts and prizes, etc. The form also requires review from the SJA in the case of compensation for participation and or in the event the person wins prizes on the show. SAF/PAYL should also be informed to provide further guidance to members.

**4.45. Use of Airmen and Space Professionals as Extras in Approved Department of Defense Entertainment Productions.**

4.45.1.  If Airmen and Space professionals are performing normal duties during the time of an approved DoD-supported production, they are said to be on-duty and may not be paid by the producer, nor are they required to participate.

4.45.2.  If Airmen and Space professionals are not performing normal duties while taking part in an approved DoD production, they are off-duty.

4.45.2.1.  Airmen and Space professionals in an off-duty, non-official status may be hired by the production company to perform as actors, extras, etc., provided they are on leave or in a commander approved off-duty status, have an approved Air Force Form 3902, and there is no conflict with any other AFI. In such cases, contractual arrangements are solely between those individuals and the production company; however, payment should be commensurate with current industry standards.

4.45.2.2.  The production company is responsible for resolving any disputes with unions governing the hiring of non-union actors and extras. Military personnel accepting such employment may receive compensation at the same pay scale as non-military personnel. The individual's uniform may only be worn when it is used to identify the military service to which the individual belongs, and must be worn in accordance with AFI 36-2903. **(T-1).** Local units may assist the production company in publicizing the opportunity for employment, and in identifying appropriate personnel.

**4.46. Member Participation in Game and Talk Shows.**

4.46.1.  General Guidance. Air Force and Space Force members may participate in game or quiz shows in a personal, off duty (leave) status when such participation does not detract from the dignity and prestige of the Department of the Air Force. The following factors should be weighed in favor of participation when appropriate:

4.46.1.1.  The show is devoted mainly to observing a national holiday or is dedicated to the U.S. Armed Forces or a particular service.

4.46.1.2.  The show is local and originates entirely from a military installation.

4.46.1.3.  The appearance of Air Force and/or Space Force personnel is for a purpose that has no commercial counterpart or that contributes to a specific Department of the Air Force interest.

4.46.1.4.  The show supports national interests.

4.46.1.5.  Members may appear when they are newsworthy in their own right or when appearing as an Air Force or Space Force official to provide information on Air Force or Space Force subjects to the listening or viewing audience.

4.46.1.6.  A show's sponsors or business practices do not reflect adversely on the Department of the Air Force.

4.46.2.  Member Coordination with PA. Air Force and Space Force personnel must coordinate with his or her installation-level PA office if he or she intends to participate either in or out of uniform, or by expressly presenting himself or herself as a member of the Air

**App. 145**

Force or Space Force. **(T-3).** The installation-level PA office should in-turn inform MAJCOM/PA or Field Command PA, which will coordinate with SAF/PAYL as required.

4.46.3.  Unscripted and Talk Shows. SAF/PAYL is the OPR for coordination and approval of an Air Force or Space Force member's participation on a talk or unscripted program. Member participation is approved on a case-by-case basis.

4.46.4. Game and /Quiz Show Formats. SAF/PAYL is the OPR for coordinating an Airman's or Space Professional's participation on a game or quiz show.

4.46.4.1.  Military-Themed Game or /Quiz Shows. When a military installation takes an active role in providing military contestants, approvals by SAF/PAYL and OSD/PA are necessary for military members' participation (other than as audience members only), whether appearing in or out of uniform. Military personnel selected as game or quiz show participants should be placed in a leave or other authorized off-duty status.

4.46.4.2. Non-Military Themed Game or Quiz Shows. Military personnel who independently go to a studio to be a member of a game or quiz show audience and have the possibility of being selected out of the audience for participation are encouraged to contact SAF/PAYL prior to attending. SAF/PAYL can advise on which Air Force or Space Force uniform (if any) is appropriate. If randomly selected, military members should inform their unit PA office as soon as possible, which should inform MAJCOM/PA or Field Command PA and SAF/PAYL.

**4.47. Participation in Commercials.** Participation in endorsing or marketing any commercial products in an official capacity is strictly prohibited. See **paragraph 2.38** for more information. SAF/PAYL is the OPR for coordination of an Air Force or Space Force member's participation and involvement in all commercials depicting any relationship with a product and the Department of the Air Force or any Airman.

## Chapter 5

## COMMAND INFORMATION AND DISTRIBUTION

*Section 5A—General Guidelines and Background*

**5.1. Command Information Overview** . Department of the Air Force command information programs will be planned and executed to increase awareness and understanding of the service's mission, capabilities, policies, priorities and programs; inform Airmen and Space Professionals and their families of developments affecting them and educate them about the need to protect sensitive information; provide avenues for feedback, and prepare Airmen and Space professionals to effectively tell their story to the American people. Command information is one of the many ways Air Force and Space Force leaders communicate with Airmen and Space Professionals and their families, as well as communicating with the media, communities surrounding the installations, and the American public at large. Command information activities use timely, accurate and relevant information to link Airmen and Space professionals and to their leaders, link the Air Force and Space Force to surrounding communities and the media, and enhance Airmen and Space professionals morale and readiness. Timely, accurate and relevant information is a force multiplier that enhances Airmen and Space professionals morale and readiness through the free flow of information. Command information production and distribution capabilities also support and amplify media and community outreach.

**5.2. Command Information Purpose.** Command information programs will integrate internet, web, social media, mobile applications and other information technologies into Air Force and Space Force public and command communication programs. **(T-0)**. This instruction complements Department of the Air Force and Department of Defense policies and guidance relating to the use of the internet and information technology in public and internal communication strategies. It also outlines the roles and responsibilities of Air Force and Space Force Public Web, social media, mobile applications and related technologies' digital publishing programs. All programs will be operated in compliance with applicable laws and regulations.

**5.3. Command Information Objectives.**

5.3.1. Leverage new and optimize existing technology to link Airmen and Space professionals and their leaders through a free flow of timely, accurate and relevant news and information as well as support and amplify the efforts of community and media outreach programs.

5.3.2. Enhance Airmen and Space Professionals' morale and readiness by helping them understand their role(s) in the Air Force and Space Force, how Department of the Air Force policies, programs and operations affect them, and how to effectively communicate their story.

**5.4. Command Information Policy.**

5.4.1. Authorized users of unclassified Department of the Air Force networks must comply with all laws, policies, regulations and guidance concerning communication and the appropriate control of Department of the Air Force information referenced throughout this instruction regardless of the technology used for distribution. **(T-1).**

**App. 147**

5.4.2.  Publicly accessible Air Force and Space Force websites, mobile apps and third-party platforms such as social media are part of the Air Force Public Digital Information Distribution program. Public websites should be hosted on the AFPIMS content management system administered by the DMA and AFPAA with oversight from SAF/PA.

5.4.2.1. All information published on publicly accessible platforms must receive the appropriate release authorization and comply with **Chapters 2** and **Chapter 3** of this instruction, as well as DoDI 5230.29. **(T-0).**

5.4.2.2. Any person maintaining a public-facing digital platform identified as officially representing the Department of the Air Force, or any unit thereof, must submit the Uniform Resource Locator (URL) to the respective MAJCOM or Field Command and AFPAA for URL creation **(T-1)**. Once created, all units will submit URLs for all digital publishing platforms to **https://www.af.mil/AF-Sites/Site-Registration/**, including a comprehensive list of social media sites and mobile applications. **(T-1).**

5.4.2.2.1. All website URLs will be indexed on the "Public Websites" (**http://www.af.mil/publicwebsites/index.asp**) tab of the official Department of the Air Force website.

5.4.3.  All Department of the Air Force websites must host links to the following content:

5.4.3.1. **Department of the Air Force FOIA** (**https://www.compliance.af.mil/** **(T-1).**

5.4.3.2. **USA.gov** (**https://www.usa.gov/**) **(T-0).**

5.4.3.3. Public Law 107-174, *The Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002* (No Fear Act) (**https://www.nlrb.gov/reports/regulatory-reports-and-notices/no-fear-act**) **(T-0).**

5.4.3.4. Department of the Air Force Equal Employment Opportunity (**https://www.af.mil/Equal-Opportunity/**) **(T-1).**

5.4.3.5. Privacy and Security page that complies with DoDI 8170.01, *Online Information Management and Electronic Messaging*, agency strategic plan and annual performance plans **(T-0).**

5.4.3.6. Department of the Air Force Small Business Support (**https://www.airforcesmallbiz.af.mil/**) page as required by Public Law 107-198, *Small Business Paperwork Relief Act of 2002.* **(T-1).**

5.4.3.7. Department of the Air Force's Open Government page, the Department of the Air Force's Plain Writing page, and information associated with the Department of the Air Force's implementation of the Information Quality Act per the Office of Management and Budget (OMB) Memo 17-06, *Policies for Federal Agency Public Websites and Digital Services* (**https://www.publicaffairs.af.mil/Portals/1/documents/OMB%20Memo%2017-06%20Website%20Management.pdf**). **(T-0).**

5.4.3.8. **Department of the Air Force Public Web SharePoint ™** site (**https://cs2.eis.af.mil/sites/10066/commandinformation/SitePages/AFPW%20-%20Air%20Force%20Public%20Web.aspx**) for the latest recommended and required footer links for Department of the Air Force websites. **(T-1).**

5.4.4.  Content on official Department of the Air Force digital publishing platforms will not violate intellectual property rights laws, specifically copyright laws. **(T-0).** For a complete list of applicable Department of Defense web policies, see **https://dodcio.defense.gov/DoD-Web-Policy/**.

5.4.5.  To ensure compliance with the Title 42, United States Code, Section 508, *Rehabilitation Act*, all content will be loaded into websites, social media, and mobile apps as native content without any document format. **(T-0).**  This ensures optimal accessibility for sight-impaired users. Archives of previous documents, such as newspapers, stored online in PDF format is acceptable, but new content should be loaded directly to the platform. If formatting is required for large documents, use an eBook format such as Mobi or ePUB. All formats are available on AFPIMS, however, the DMA Service Desk must set up the website to accept them. A trouble ticket will be required. **(T-0).**

5.4.6.  All official Department of the Air Force public websites will use the top-level internet domain "af.mil," which is the approved government domain for the U.S. Department of the Air Force. **(T-0).** Approved exceptions to this policy include, but are not limited to, **www.airforce.com**,  **www.afreserve.com**,  **www.afrotc.com**,  and  **www.goang.com**. Appropriate academic organizations can use the ".edu" domain.

5.4.7.  Airmen and Space professionals will have a responsibility to facilitate a free flow of information to the U.S. public that is accurate and void of propaganda, limited only by security restraints, privacy considerations and respect for intellectual property rights as outlined in DoDD 5122.05. **(T-0).**

5.4.8.  Public Affairs, which includes media relations, command information, and community engagement, will have standalone computers with commercial internet service provider (C-ISP) worldwide web connections at the highest available speeds to support high resolution image and high definition video distribution as outlined in DoDI 8010.01, *Department of Defense Information Network (DoDIN) Transport* and AFMAN 17-2101, *Long-haul Communications Management.* **(T-0).** Systems Network Approval Process registration for all PA C-ISP systems will be one central entry. These connections will be tracked on the PA SharePoint ™ page titled C-ISP Registry (**https://cs2.eis.af.mil/sites/10066/Resources/CommPlanning/SitePages/C-ISPRegistry.aspx**). **(T-0).** The contact information for the Authorizing Official and the Authorizing Official Memorandum for the PA career field will also be displayed on the C-ISP Registry page.

5.4.8.1.  All computer systems in the Department of the Air Force, including the standalone C-ISP connected system for PA, must follow basic security maintenance (requirements for each system can be found at **https://iase.disa.mil/stigs/pages/a-z.aspx**, in accordance with AFMAN 17-2101. **(T-1).**

5.4.8.2.  A standalone computer is a computer which is physically separated and in no way connected to any government system or network. A government computer system is used for processing controlled or classified information. A standalone computer in PA is used primarily for processing information intended for public release on websites, social media or other digital publishing platforms.

*Section 5B—Content for Command Digital and Printed Information Distribution.*

**5.5.  Content Requirements.**

5.5.1.  News, feature and editorial material will conform to the *Department of Defense Visual Information Guide* and the *Associated Press Stylebook* ™. **(T-0).** Courtesy titles will be used in accordance with **paragraph 6** of the DoD Visual Information Style Guide (**https://www.dimoc.mil/VI-Training/DoD-VI-Style-Guide/**). **(T-0).** Coverage will be factual and objective, and will avoid morbid, sensational or alarming details. **(T-0).**

5.5.2.  News content will be based on local articles developed by the PA staff and releases by MAJCOM/PA or Field Command PA offices and other agencies of the DoD and federal government. **(T-3).** For guidance on printed publications, must refer to DoDI 5120.04, *DoD Newspapers, Magazines, Guides, and Installation Maps.* **(T-3).**

5.5.3.  Articles of local interest to Airmen and Space Professionals produced outside government channels (for example, ad hoc reporters, citizen journalists, local organizations) may create intellectual property rights concerns. Articles produced outside the Department of the Air Force will be used only if permission has been obtained, the source is credited and they do not otherwise violate this instruction or laws. Articles for off-base, non-profit organizations, including non-profit military-affiliated organizations (such as, Air Force Association, Air Force Sergeants Association, NCO Association) must be consistent in length and placement to avoid the appearance of favoritism or implied endorsement. **(T-0).** "Articles for on-base recognized private organizations should also be consistent in length and placement." (T-0)

5.5.4.  Credit sources of all material. This includes, but shall not be limited to, Airmen and Space Professionals and their families, other DoD components and MAJCOM/PA or Field Command PA offices. **(T-0).** This ensures compliance with the DoDI 5120.04, Enclosure 3.

5.5.5.  Must conform to applicable policies, regulations and laws involving the collection, processing, storage, use, publication and distribution of information by DoD components (such as, libel, photographic imaging alteration, copyright, sexually explicit materials, classified information) and U.S. government postal and printing regulations, as specified in DoDI 5120.04. **(T-0).**

5.5.6.  Inspection ratings. Will coordinate with Secretary of the Air Force, Office of the Inspector General to determine releasability of inspection results, including operational, compliance and nuclear inspections. **(T-1).**

5.5.7.  Base Guides. These are optional authorized publications containing advertising prepared and published under contract with civilian publishers. PA should consider the availability of information on websites and other sources when considering the necessity of producing an optional publication. As with civilian enterprise newspapers, the right to circulate this advertising to Department of the Air Force readership constitutes contractual consideration substituting for the Department of the Air Force requirement to pay for the publication, saving both the Department of the Air Force and the American taxpayer money.

5.5.7.1.  Base guides should become the property of the command, installation or intended recipient upon delivery, according to contract terms. The PA SharePoint ™ site

([https://cs2.eis.af.mil/sites/10066/default.aspx](https://cs2.eis.af.mil/sites/10066/default.aspx)) has a sample Statement of Work for a guide or map contract.

5.5.7.2. These publications must provide Airmen and Space professionals with information about the mission of their command; command, installation or community services available; local geography and history; and related information. **(T-3).**

*Section 5C—Digital Platform Management*

**5.6. Website Management.**

5.6.1. Content Release Approval. Commanders, or their designated representatives (typically PA personnel), have the final authority to approve content for public release. **(T-0).** Coordinate any release of content with applicable representatives and the local PA office prior to seeking release approval from the commander or designated representative.

5.6.2. Security and Policy Review. Official public platforms must comply with the requirements in DoDI 5230.29, and **Chapter 9** of this instruction. **(T-0).**

5.6.3. Internet Protocol version 6. All websites will be hosted on IPv6-compliant servers. AFPIMS-hosted websites will be managed at the enterprise level to ensure compliance. **(T-0).**

5.6.4. DMA Service Desk Support. When requesting assistance for AFPIMS technical issues, contact the DMA Service Desk. Never include Controlled Unclassified Information (CUI), Personally Identifiable Information (PII) or HIPAA content in emails to the DMA Service Desk. **(T-0).** Never mark emails to the DMA Service Desk as CUI. It is an organizational email box and not rated for sensitive content.

**5.7. Multidisciplinary Review Board-Quality Assurance (MDRB-QA) Program.**

5.7.1. Multidisciplinary Review Boards. These boards will be conducted annually, using **Attachment 2** of this instruction. **(T-1).** The purpose of these boards is to ensure websites, blogs, mobile apps, podcasts, social media and other forms of information distribution are operating within the requirements of this DAFI and practicing safe OPSEC and information security **(T-1)**.

5.7.1.1. Board Chair. PA offices will establish and chair an MDRB, which will consist of applicable representatives from communications, information, legal, contracting and security offices. **(T-0).** The board will be responsible for determining if there are Privacy Act, CUI, legal, contracting, operations security, or other issues in the information shared on public sites. **(T-0).**

5.7.1.2. The boards will perform the following actions:

5.7.1.2.1. Security Check. Perform reviews that will check the location's public website(s) to ensure sensitive information from the operational, PA, acquisition, technology, privacy, legal, or security perspective is not present. **(T-0).**

5.7.1.2.2. Privacy Check. Ensure the public site(s) comply with privacy policies regarding restrictions on persistent, third-party cookies and session cookies, and that appropriate privacy and security notices are present on the site. **(T-0).** When

collecting personal information, must include appropriate statements and advisories regarding 5 USC § 552a. **(T-0).**

5.7.1.2.3.  Regulatory Compliance. Ensure the public site(s) comply with current law and U.S. government and DoD policies, to include Section 508 of the Rehabilitation Act 29 USC § 794, OMB, etc. **(T-0).** A comprehensive and updated listing of DoD web and internet-based capabilities laws and regulations shall be maintained on the DoD website. **(T-0).**

5.7.2.  While the MDRB-QA is an annual requirement, websites should be monitored daily, and content reviewed judiciously prior to posting, to ensure compliance with federal law, and AFI, DoD, and OMB requirements.

**5.8.  Website Content.**

5.8.1.  Mandatory Links. All links required by OMB Memo 05-04, *Policies for Federal Agency Public Websites*, will be mandatory. **(T-0).** The following links are also mandatory:

5.8.1.1.  Electronic Freedom of Information Act (5 USC § 552). Each site must link to the local installation FOIA site. **(T-0).** Frequently requested material released as a part of the unit's FOIA program may be posted to the website.

5.8.1.2.  Links to Key Leaders. Official biographies are maintained on the official home page of the Air Force (**https://www.af.mil**) library and Space Force (**https://www.spaceforce.mil**) library. The release of names and duty information of personnel who, by nature of their position and duties, frequently interact with the public (such as flag or general officers, PA personnel or other personnel designated as official command spokespersons) is allowed, but must not reveal names, addresses or other PII of family members of Department of the Air Force employees or members. **(T-0).** Biographies will be authorized for the Secretary of the Air Force, Under Secretary and assistant secretaries of the Air Force, Department of the Air Force general officers (Regular Component, Air Reserve and ANG, active or retired), Department of the Air Force personnel assigned as pilots to the Manned Space Program, key Department of the Air Force uniformed and civilian personnel at all Department of the Air Force organizations and key Department of the Air Force uniformed and civilian personnel in the Office of the Assistant Secretary of Defense. **(T-0).**

5.8.1.3.  Links to Associated Technologies. Fact sheets maintained by MAJCOMs or Field Commands and posted on the **https://www.af.mil/** library page will provide basic information on aircraft and weapons systems in the Department of the Air Force inventory. **(T-2).**

5.8.1.4.  Links to HHQ Sites. Sites must link to public sites belonging to HHQ within their organizational chain. **(T-2).**

5.8.1.5.  Base or Unit Fact Sheets. Maintained locally, base fact sheets will provide general history, organization and economic impact of a particular unit or installation. **(T-2).** These should be submitted to the official home page of the U.S. Department of the Air Force site manager for central repository.

5.8.1.6.  Contact Information. In accordance with  DoDI 8170.01, contact information for the unit is required and should be visibly accessible from the main page of the unit's

website in addition to the "Contact Us" link commonly found in the footer. **(T-0).** Units should use a generic or organizational email address, not individual email addresses with people's names. All contacts listed must be responsive to requests; the general guideline is within two working days for Regular Component units and two weeks for Guard or Reserve units. **(T-0).**

5.8.1.7.  Comment Policy. Ensure all webpages, social media pages and digital platforms shall allow users to comment on content include the policy in **Figure 5.1 (T-0).**

**Figure 5.1.  USAF Comment Policy**

DEPARTMENT OF THE AIR FORCE COMMENT POLICY

If you wish to comment, use the text box. The Department of the Air Force reserves the right to modify this policy at any time.

This is a moderated forum. That means all comments will be reviewed. In addition, we expect that participants will treat each other, as well as our agency and our employees, with respect. We will not allow comments that contain abusive or vulgar language, hate speech, personal attacks, comments that violate equal employment opportunity policy or are offensive to others, or similar content to remain. We will not allow comments that are spam, are clearly "off topic," promote services or products, infringe on copyright-protected material, or contain links that do not contribute to the discussion to remain. Comments that make unsupported accusations will not be allowed. The Air Force alone will determine which comment will be posted.

Any references to commercial entities, products, services or other nongovernmental organizations or individuals that remain on the site are provided solely for the information of individuals using this page. These references are not intended to reflect the opinion of the Department of the Air Force, Department of Defense, the U.S., or their employees concerning the significance, priority or importance to be given the referenced entity, product, service or organization. Such references are not an official or personal endorsement of any product, person or service, and may not be quoted or reproduced for the purpose of stating or implying Department of the Air Force endorsement or approval of any product, person or service.

Any comments that report criminal activity, including suicidal behavior or sexual assault, will be reported to the appropriate authorities, including the Department of the Air Force Office of Special Investigations.

Do not use this forum to:

- Report criminal activity. If you have information for law enforcement, please contact Department of the Air Force Office of Special Investigations or your local police agency.

- Submit unsolicited proposals or other business ideas or inquiries. This site is not to be used for contracting or commercial business.

- Submit any claim, demand, informal or formal complaint, or any other form of legal and or administrative notice or process, or for the exhaustion of any legal and or administrative remedy.

The Department of the Air Force does not guarantee or warrant that any information posted by individuals on this forum is correct, and disclaims any liability for any loss or damage resulting from reliance on any such information. The Department of the Air Force may not be able to verify, does not warrant or guarantee, and assumes no liability for anything posted on this website by any other person. The Department of the Air Force does not endorse, support or otherwise promote any private or commercial entity or the information, products or services contained on those websites that may be reached through links on our website.

News media representatives are asked to address questions to the Public Affairs (PA) office through their normal channels and to refrain from submitting questions here as comments. Reporter questions will not be posted.

We recognize that the web is a 24/7 medium, and your comments are welcome at any time. However, given the need to manage federal resources, moderating and posting of comments will occur at a time determined by the PA office. Comments submitted after hours or on weekends will be reviewed as early as possible; in most cases, this means the next business day.

For the benefit of robust discussion, we ask that comments remain "on-topic." The views expressed on the site by non-federal commentators do not necessarily reflect the official views of the Department of the Air Force or the federal government.

To protect your own privacy and the privacy of others, please do not include personally identifiable information, such as Social Security number, DoD ID number, Department of the Air Force Office of Special Investigations case number, phone numbers or email addresses in the body of your comment. If you do voluntarily include personally identifiable information in your comment, such as your name, that comment may or may not be removed from the page. If your comment is posted, your name will not be redacted or removed. In no circumstances will comments that contain Social Security numbers, DoD ID numbers, Department of the Air Force Office of Special Investigations case numbers, addresses, email addresses or phone numbers be

allowed to remain.

Thank you for taking the time to read this comment policy. We encourage your participation in our discussion and look forward to an active exchange of ideas.

5.8.2.  External Links.

5.8.2.1. Mission Support. Links to non-DoD website resources must support the organization's mission. In addition, organizations must link to all generally available sites that have the same mission impact. For example, if you are linking to a weather site for mission-related weather, you must link to all sites that provide that service. External links must be reviewed periodically to ensure continued suitability and to determine if the link is broken. **(T-0).** If the content of a linked external site becomes questionable or objectionable, remove the link. **(T-0).**

5.8.2.2. No Endorsement. In accordance with DoDD 5500.07-R, no product endorsements or preferential treatment shall be given on Department of the Air Force public websites. **(T-0).**

5.8.2.3. No Paid Links. No payment of any kind will be accepted in exchange for a link placed on an organization's public website. **(T-0).**

5.8.2.4. No Specific Browsers. Department of the Air Force public websites will not require or encourage users to choose any specific browser software. **(T-0).**

5.8.2.5. Link Disclaimers. To avoid the perception of Department of the Air Force promotion or endorsement, links to commercial organizations such as, but not limited to, contractors who produce websites, non-military content providers, or event organizers and promoters must be avoided. **(T-0).** If a link to a non-government website is considered for placement on a Department of the Air Force public site, the commander will be responsible for ensuring that a proper disclaimer notice is prominently displayed. **(T-0).** The disclaimer must state that neither the Department of the Air Force nor the unit endorses the product(s), or organizational entity, at the hyperlink destination. **(T-0).** The disclaimer must also state that the Department of the Air Force does not exercise any responsibility or oversight of the content at the destination. **(T-0).** This disclaimer shall be managed at the enterprise level for all AFPIMS websites. **(T-0).**

5.8.2.5.1. Disclaimer. The disclaimer directed in DoDI 8170.01 shall be displayed when linking to external sites. **(T-0).** This disclaimer must appear on the page, or pages, listing external links whenever a request is made for any site other than an official DoD website (usually the .mil domain) or U.S. government (usually the .gov domain). **(T-0)**

5.8.2.5.2. Under no circumstances will a pop-up be used for this purpose, due to the security vulnerability created by pop-ups. **(T-0).**

5.8.3. Inappropriate Material and Prohibitions. Commanders or their designated representative, in coordination with PA professionals, have the oversight to determine what

links may or may not be posted to Department of the Air Force public sites. The following items are inappropriate for public websites:

5.8.3.1. Inappropriate Links. Department of the Air Force public sites will not link to offensive or unrelated commercial material. **(T-0).**

5.8.3.2. References to any information that would reveal sensitive movements of military assets or personnel or the locations of units, installations or personnel where uncertainty is an element of security of a military plan or program. **(T-0).**

5.8.3.3. Material that is classified or CUI. Do not publish scientific and technical information that has not been cleared for public release. **(T-0).** All content on Department of the Air Force public sites or platforms must be cleared for public release. **(T-0).**

5.8.3.4. Personal Information. Use of personal information protected by 5 USC § 552a is prohibited. **(T-0).** See AFI 33-332, for more information. **(T-0).**

5.8.3.5. Copyright Information. Copyrighted material shall only be used with written permission from the owner. **(T-0).** See AFI 51-303, *Intellectual Property-Patents, Patent Related Matters, Trademarks and Copyrights*, or the servicing legal office for more information. U.S. laws on copyright, primarily Title 17 United States Code Section 101, *Copyrights,* preserve, for the owner of copyrighted material, the benefits and earnings to be derived from the reproduction and distribution of such works. Material that is subject to copyright protection includes "original works of authorship fixed in any tangible medium…," Title 17 United States Code Section 102(a), *Subject Matter of Copyright: In General*. Computer software and sequences of code and instructions are also subject to copyright. Per Title 17 United States Code Section 105, *Subject Matter of Copyright: United States Government Works,* government works are not copyright protected. **(T-0).**

5.8.3.6. Political Activity. No links will be allowed to any non-news sites that discuss political activity, to include presidential or gubernatorial elections and or rallies. **(T-0).**

**5.9. Usability Requirements: Section 508.**

5.9.1. Accessible Websites. In 1998, Congress amended Section 508 of the Rehabilitation Act - 29 USC § 794 to require that federal agencies make their electronic and information technology accessible to people with disabilities. Section 508, 1194.22, *Web-based Intranet and Internet Information and Applications*, is of particular importance with regard to website management. This section outlines the requirements for federal websites, both internet and intranet. It states that federal websites must meet the needs of disabled employees and members of the public and allow them access to internet technology in a format understood by software readers and viewers. Units must meet the requirements in Section 508, found in entirety at **https://www.section508.gov**. **(T-0).** There are a range of online automatic 508 compliance checking websites available that recommend corrections to improve accessibility. 29 USC § 794 accessibility requirements are a large part of the annual MDRB-QA program.

5.9.2. Video Transcripts. All videos will require transcripts or closed captioning if uploaded to public websites. **(T-0).** The preferred option is to post a full transcript with the video, which is used to automatically closed caption the video through sources like the Defense Visual Information Distribution Service (DVIDS).

**5.10. Collection of Information.** Department of the Air Force public websites must comply with DoD limitations on the collection and use of user information. **(T-0).** The use of cookies or other browser measures to gather information on public site users beyond statistical summaries is prohibited. **(T-0).** Any collection of information of 10 or more members of the general public will require an OMB control number. **(T-0).** This will include surveys, customer feedback and social media posts. **(T-0).** Website administrators will ensure the appropriate privacy and security notices are included or linked to from the homepage. **(T-0).** Also, all forms, especially those used for the collection of PII, must follow the regulations and requirements governing DoD and U.S. government forms creation and management, including, but not limited to, DoDI 7750.07, *DoD Forms Management* and DAFI 33-360. **(T-0).**

**5.11. Public Website Policies.** A current list of policies affecting the management and operation of public websites in the DoD is maintained at **https://dodcio.defense.gov/DoD-Web-Policy/**.

*Section 5D—Organizational Social Media Guidance*

**5.12. Department of the Air Force Social Media Purpose.** Public Air Force and Space Force organizational social media sites are official representations of the Department of the Air Force and must demonstrate professionalism at all times. While third-party social media sites are not owned by the Department of the Air Force, there are guidelines to follow for the management of social media. Social media sites without a dedicated PA office (for example, organizational sites below wing-level or equivalent) must adhere to the provisions outlined in this chapter. **(T-0).** Social media sites and mobile apps are required to follow all requirements governing government websites as outlined under References as well as emergent policy and guidance. **(T-0).** For information on personal social media use by Department of the Air Force personnel. See AFI 1-1.

**5.13. Organizational Identification.** All social media accounts should have the organization's patch or logo, a link back to the organization's .mil website, and a .mil email address on their pages to verify they are a valid U.S. Department of the Air Force page. **(T-1).**

**5.14. Disclaimers.** A disclaimer must appear on a unit's social media site to avoid the perception of Department of the Air Force promotion or endorsement. **(T-0).** For example, "The appearance of external links on this site does not constitute official endorsement on behalf of the U.S. Department of the Air Force or Department of Defense. **(T-0).** The Department of the Air Force does not endorse any non-federal entities, products or services." **(T-0).** The disclaimer must also state that the Department of the Air Force does not exercise any responsibility or oversight of the content at external link destination(s). **(T-0).**

**5.15. Comment Policies** . The comment policy in **Figure 5.1** must appear on official public social media sites. **(T-0).**

**5.16. Anonymous Posts.** If the technology allows for users to post anonymously, then organizations must allow the posts to be published anonymously. **(T-3).**

**5.17. External Links.** Linking to external sources via social media is permitted and encouraged. PA professionals should be educated consumers of information and be sure that an external source of information not only is an appropriate link coming from an official Department of the Air Force social media site, but also follows security, accuracy, propriety, and

**App. 157**

policy guidelines. Links should be related to the Department of the Air Force mission and or its people. Organizations should avoid the appearance of preferential treatment when determining who to follow. For example, if the organization elects to follow one local news organization, then all local news networks should be followed.

**5.18. Social Media Prohibitions.**  See **paragraph 1.15.2** for a list of prohibitions that apply to both public web and organizational social media sites. **(T-0).** In addition to the prohibitions listed in **paragraph 1.15.2**, surveys' will not be conducted on social media without obtaining an Office of Management and Budget control number prior to requesting information from the public, 44 USC § 3501-3521, *Paperwork Reduction Act*. **(T-0).** Contact the Air Force Survey Office for more information, to include specifics on what constitutes a survey.

**5.19. Transparency.**  Transparency is defined as portraying an agency online in a truthful manner without falsifying identity or credentials. Do not forge or otherwise manipulate identifiers in a post in an attempt to disguise, impersonate or otherwise misrepresent your agency's identity or affiliation with any other person or entity. **(T-0).** Government agencies are required to declare the agency they represent per the Public Law 113-101, *Digital Accountability and Transparency Act*. **(T-0).**

**5.20. Terms of Service (ToS).**  Federal-compatible ToS agreements are special agreements negotiated between the federal government and vendors who offer free social media, mobile, business and other digital tools. These federal-compatible ToS agreements must modify or remove problematic clauses in standard ToS agreements and allow federal employees to legally use these tools. **(T-0).**

**5.21. Live Streaming.**  All live-streamed events should be constantly manned with a plan to take the content offline in the event of violence, crime or imagery unsuited for public consumption. **(T-0).**

**5.22. Web Records Management.**  All Web 2.0 (participative and social web) content is a federal record and must be retained per the Federal Records Act and National Archives and Records Administration and Department of the Air Force records schedules. **(T-0).** If a records schedule has not been created for the Web 2.0 content, the sponsor of the Web 2.0 products must retain all content until a records schedule is created and the content may be disposed of per the schedule. **(T-0).** The Department of the Air Force must retain control of all of its records and may not store them on third-party products not under contract with the Department of the Air Force to provide storage of records. **(T-0).** Official Department of the Air Force social media pages should archive their content once a month. **(T-0).** See AFI 33-322, for more information. **(T-0).**

## Chapter 6

## ENVRONMENTAL PUBLIC AFFAIRS

**6.1. Environmental Public Affairs Purpose.** An active PA program is a cornerstone of the Department of the Air Force's environmental program and supports the intent of Title 42 USC § 4321et seq., *The National Environmental Policy Act* and Title 42 USC § 4334, *National Environmental Policy*. PA supports environmental program objectives by communicating the Department of the Air Force's commitment to public involvement and environmental excellence.

6.1.1. The focus of environmental PA is to inform and involve audiences during critical decision-making windows in various Department of the Air Force Environment, Safety, and Occupational Health (ESOH) programs.

6.1.2. The primary Department of the Air Force ESOH priorities are: compliance with all ESOH legal obligations, reduction of mission risk by ensuring workforce availability as well as the availability of natural and manmade resources, and instilling a culture of continuous ESOH improvement.

**6.2. Environmental Programs.** As a member of the interdisciplinary ESOH management team, the PAO will ensure all members of the PA staff have appropriate training, are kept current on applicable local, national, and international Department of the Air Force-related environmental issues, and resourced sufficiently to support requirements for the release of information to the public. **(T-1).**

6.2.1. PA can support environmental programs via community relations activities such as the public information events, speaker's bureau program, educational outreach to local schools, and the installation tour program.

6.2.2. PA will assist project officers and planners with installation Earth Day and other environmental awareness events and activities. **(T-3).**

6.2.3. To ensure maximum public communication of actions and activities that could have an environmental impact, installation or wing PA offices will (in coordination with the installation's civil engineer environmental office, Air Force Civil Engineer Center restoration project managers, and installation leadership):

6.2.3.1. Coordinate releases on significant environmental issues with AFIMSC/PA and MAJCOM/PA or Field Command PA, who in turn will inform SAF/PAO if information may reflect negatively on the Department of the Air Force or result in national or international media attention or congressional interest. **(T-1).**

6.2.3.2. Serve as the Department of the Air Force point of contact for public and media environmental queries. **(T-3).**

6.2.3.3. Review all environmental documents that are intended for release to the public. **(T-3).** Ensure all documents intended for public release, particularly the executive summaries, are written in non-technical language that is understandable to target audiences. **(T-3).**

6.2.3.4. Promote the Department of the Air Force environmental program by communicating success stories to external audiences. **(T-3).**

**App. 159**

6.2.3.5.  Place newspaper ads, post on social media and mobile app platforms, and issue news releases in support of environmental projects (usually in coordination with the installation's civil engineer environmental office, Air Force Civil Engineer Center restoration project managers, and installation leadership). **(T-3).**

6.2.3.6.  Prepare communication plans addressing environmental concerns and issues at their installation. Depending on the scope of the issue, these plans address PA activities, supporting PA products, timelines, milestones, and legal requirements of environmental activities. **(T-3).**

6.2.3.6.1.  Coordinate communications plans and other PA products addressing environmental restoration, air installation compatible use zones, the National Environmental Policy Act, or Department of the Air Force Environmental Public Affairs issues with AFIMSC/PA. **(T-2).** More information is available on the PA SharePoint site.

6.2.3.6.2.  Work closely with bioenvironmental engineers, legal advisors, security advisors, and environmental managers to explain the health, safety, and emergency response plans implemented to protect the community in the case of a chemical mishap. It is also important to communicate to the public that the military has aggressively sought and implemented pollution prevention measures that have reduced hazardous waste and is constantly seeking alternate, less hazardous chemicals. **(T-3).**

6.2.3.7.  Ensure the Department of the Air Force meets environmental justice considerations by informing an accurate cross section of the public about relevant processes and actions. **(T-1).**

6.2.3.8.  Actively and fully participate in Environmental Impact Analysis Process (EIAP), including:

6.2.3.8.1.  Post all publicly releasable documents to appropriate information repositories, including installation websites, public libraries, and other locations determined appropriate by regulatory officials. **(T-3).**

6.2.3.8.2.  Support preparation of EIAP analyses and public involvement. **(T-1).** For guidelines on how to provide specific PA support during each phase of the EIAP, see AFMAN 35-101, *Environmental Public Affairs,* **Chapter 6**, **Table 6.1**., PA Activities for EIAP Actions.

6.2.3.8.3.  Notify the public on the availability of a finding of no significant impact or record of decision via display ad (not a legal announcement) in a local, state or regional general circulation newspaper and, where appropriate based on demographics, the primary second-language publication. **(T-0).** A news release will also be sent to local media. **(T-0).** For specific guidelines related to preparing the display advertisement, see AFMAN 35-101, **Chapter 6**.

6.2.3.9.  Coordinate with AFIMSC/PA to provide public information on Installation Restoration Program efforts, including emerging contaminant issues. **(T-2).**   At the installation, MAJCOM, Field Command and Air Staff or Space Staff levels, Air Force Civil Engineer Center Environmental Directorate has centralized responsibility for

executing the Department of the Air Force environmental restoration program in support of active installations.   It provides direct installation support by planning and programming requirements, and executing projects.  For specific guidelines on how to provide PA support during installation restoration program cleanup, see AFMAN 35-101, **Chapter 6**.

6.2.3.10. Support other federal agency communication efforts associated with environmental issues at Department of the Air Force installations, including providing information on community concerns and cooperating on issues of mutual concern. See AFMAN 35-101, **Chapter 6**, for guidelines on coordinating with other agencies.

6.2.3.10.1. Support federal regulators in providing information as mandated under the Defense Environment Restoration Program, Title 42 United States Code Section 6962, *Resources Conservation,* Title 42 USC § 6901 et seq., *Resource Conservation and Recovery Act.* **(T-0).**  PA plays a role in communicating the Department of the Air Force role in the use of chemicals, hazardous materials and potential contaminants.

6.2.3.10.2. Support the local Community Involvement Program by expanding on already established partnerships with civilian leaders and organizations to include base-level organizations, working in coordination with the applicable environmental program offices. The community involvement program ensures the community has the opportunity to participate in environmental issues that may affect the community or that are of high interest to the community.

6.2.3.11. Ensure notification of local community, political, health, and environmental leaders prior to public release of information, if appropriate. **(T-3).** Notify civic leaders, spokespersons for local interest groups, and other interested parties of proposed program actions with advance coordination through the relevant program office. **(T-3).**

6.2.3.12. Be familiar with the content of the U.S. Environmental Protection Agency "Final Report of the Federal Facilities Environmental Restoration Dialogue Committee" and the Environmental Restoration Program. **(T-3).**

6.2.3.13.  Release all public announcements on ESOH issues no later than the first day of the public comment period when the action involves a comment period. **(T-3).**

6.2.3.14.  Coordinate all public meetings on ESOH issues related to Department of the Air Force activities, and serve as the point of contact upon request. **(T-3).**

6.2.3.15.  Maintain a complete record of all news releases made, public meetings held, queries answered, and media articles published concerning environmental programs. **(T-3).**

6.2.3.16.  Train and maintain a list of qualified Department of the Air Force subject-matter expert speakers to address public stakeholders, and in coordination with appropriate unit and environmental office leaders, arrange for community engagements as appropriate and or required. **(T-3).**

6.2.3.17.  Coordinate on the release of any contacts, messages, reports, documents, and letters to the public or local legislators. **(T-3).**  In each case, such release should not occur without the coordination of the affected program office(s) at the appropriate levels. Draft

reports or documents are solely for internal review and comment and generally are not releasable; advance copies of final reports also generally are not releasable. Requesters of the document should be provided the release date and location. Provide the documents' release date and location to the requesters.

6.2.3.18.  Consult with the appropriate level JA officeand the ESOH management team to ensure PA products, activities and responses are cleared in accordance with local, state and federal environmental laws, regulations, instructions, and otherwise comply with applicable legal or policy requirements. **(T-0).**

6.2.3.19.  Respond to noise complaints or queries directly and as completely as possible. **(T-1).**

6.2.3.19.1. Provide timely, responsive, and factual answers to aircraft noise complaints in order to maintain positive media and community relations. PA will attend relevant installation meetings conducive to presenting the complaints, such as the Air Operations Board Meeting. **(T-3).**

6.2.3.19.2. Installation PAs should not refer callers to other bases or commands regardless of the aircraft origin or type. The installation or unit receiving the complaint should make every attempt to locate the source of the noise, and provide the constituent with a thorough response. **(T-3).**

6.2.3.19.3. Refer any claims of damage to the installation office of the Staff Judge Advocate.

## Chapter 7

## VISUAL INFORMATION (VI)

**7.1.  Visual Information Purpose.** The Department of the Air Force VI mission is to gather, accession, maintain and archive VI as an irreplaceable account of Department of the Air Force activities. Department of the Air Force VI will be established in accordance with DoDI 5040.02, and DoDI 5040.07, *Visual Information (VI) Productions*.

**7.2.  The overall management of the Department of the Air Force VI mission is performed at four primary levels:** Department of the Air Force, FOA, MAJCOM, Field Command and wing or installation level. The host PA office performs the installation level VI mission. In some instances, a dedicated VI mission may also be performed at the unit level independently, in a non-host tenant organization.

7.2.1.  The Department of the Air Force VI Manager oversees the overall Department of the Air Force VI Program and is designated by the Secretary of the Air Force Office of Public Affairs Command Information Division (SAF/PAI) chief. The Department of the Air Force VI Manager provides qualified representatives to VI-related committees, working groups, and special panels at OSD/PA's request.

7.2.2.  On behalf of SAF/PA, AFPAA executes the Department of the Air Force-level program management of the three main DoD-mandated VI mission areas:  VI mission operations and Defense Visual Information Activity Number (DVIAN) management; COMCAM; and Video Production Management. AFPAA:

7.2.2.1.  Acts as approving authority for Department of the Air Force organizations to operate VI activities, and assigns DVIANs to units.

7.2.2.2.  Chairs the Department of the Air Force PA/VI Equipment Review Panel.

7.2.2.3.  Administers the VI Equipment Plan for the Department of the Air Force.

7.2.2.4.  Oversees Department of the Air Force COMCAM program management, combat readiness, and flying program.

7.2.2.5.  Submits requests to the lab for analysis and approval of new PA/VI equipment for use onboard military aircraft. **Note:**  Contact AFPAA for the most recent list of approved equipment.

7.2.2.6.  Coordinates host base support for all aircrew or operational support requirements.

7.2.2.7.  Oversees the Video Production management and distribution program.

7.2.2.8.  Acts as the sole Department of the Air Force approval office for all requests for contracted video productions worldwide.

7.2.2.9.  Approving official for purchase of the Adobe Creative Suite umbrella for installations.

7.2.3.  Each MAJCOM/PA or Field Command PA Office designates a MAJCOM or Field Command VI Manager to perform all VI program management functions for the VI mission

**App. 163**

across the command. This function is inherently governmental, and must not be performed by a contracted employee. The MAJCOM or Field Command VI manager:

7.2.3.1.  Serves as subject matter expert for VI matters and OPR for command VI policy.

7.2.3.2.  Serves as the OPR for video production requests.

7.2.3.3.  Is the OPR for all career field-approved database requirements for any units in the command with DVIANs.

7.2.3.4.  Serves as the OPR for all MAJCOM- or Field Command-owned joint base VI activities and reviews and coordinates on VI joint base common output levels of service.

7.2.4.  Base VI Manager (BVIM). Each unit performing a VI mission must be managed by a designated VI Manager in accordance with DoDI 5040.02. **(T-0).** BVIM responsibilities are management functions performed by the host wing or garrison PA office. The host wing or garrison PA office is responsible for the base-wide VI mission, and the wing or garrison commander will appoint, in writing, someone responsible for BVIM duties. **(T-1).** There is only one BVIM for each installation. BVIM responsibilities will be performed by a functionally qualified expert in AFSC 35PX, 3N0XX, or civilian personnel in GS 1000 series. **(T-1).** The BVIM function is inherently governmental, and will not be performed by a contracted employee. **(T-1).** The BVIM is the:

7.2.4.1.  Subject matter expert for VI matters. **(T-1)**

7.2.4.2.  VI activity and resource manager in VI budgetary management, including planning and requirements development actions. **(T-1)**

7.2.4.3.  OPR for host wing or garrison VI instructions and guidance. **(T-1)**

7.2.4.4.  OPR for all video production requests. **(T-1)**

7.2.4.5.  VI production manager and quality control for all VI products and services. **(T-1)**

7.2.4.6.  Final approving official for all VI equipment purchase requests for all units on base.  Details for government purchase card requests are outlined in AFI 64-117, *Government Purchase Card Program*, and Allowance Standard 629, management is located in **paragraph 7.16**

7.2.4.7.  OPR for all career field database requirements ensuring to log and track all resources, man-hours, and activities and populate the production report monthly for their activity. Make data available highlighting PA support to the wing's or garrison's mission, if requested. **(T-1).**

7.2.4.8.  VI mission OPR for geographically co-located installations comprising a joint base. There may be a need for separate VI managers for geographically-separated installations comprising a joint base.

7.2.4.8.1.  If the VI mission is required to be performed by more than one organization on a base, each organization that performs the VI mission must have a dedicated mission DVIAN, and BVIM duties must be performed specifically for the unit by a PA expert as outlined in **paragraph 7.2.4** **(T-0).**

7.2.4.8.2. If the base level VI mission is performed by a contracted operation, a business-case analysis will be performed by the local manpower office to determine applicable cost and manpower efficiencies. **(T-0)** However, management (such as, VI manager) and Quality Assurance Evaluator (QAE) functions may not be contracted. **(T-0)**

7.2.4.9. Installation coordinating official for all units requesting to purchase software under the Adobe Creative Suite umbrella. All requests will be forwarded to AFPAA through the MAJCOM/PA or Field Command PA offices for final approval by AFPAA. **(T-1)**

## 7.3. Visual Information Activity Management and Resource Management

7.3.1. Visual Information Documentation (VIDOC) is motion, still, and audio recording of technical and non-technical events that are made while occurring, and not usually under the production control of the recording element. VIDOC ensures that Department of the Air Force wartime, contingency and humanitarian operations, historical, and newsworthy events are visually recorded. Other mission-related uses are military information support operations, training, battle damage assessment, post-strike assessments, public information, intelligence, and providing an accurate record of Department of the Air Force operations. VIDOC includes documentation by PA and COMCAM forces.

7.3.2. VIDOC will only be created by PA personnel using government equipment as part of their official duties. **(T-1).** The use of personal equipment to create official Department of the Air Force VI is strongly discouraged. Except as authorized for official use and purposes, personnel are prohibited from taking, making, possessing, reproducing, uploading, or transferring in any way photographs, videos, depictions, audio-visual recordings, and any other VI on personal recording devices (including devices with photography, audio, or video recording capabilities). **(T-3).** VIDOC created by Department of the Air Force personnel as part of their official duties using personal equipment will be considered works of the U.S. government. **(T-1).**

7.3.3. PA personnel designated to create VIDOC as part of their official duties will be trained to follow VI standards and procedures in accordance with DoDI 5160.48, *DoD Public Affairs and Visual Information (PA&VI) Education and Training (E&T)*, the DoD VI Style Guide, and this instruction. **(T-0).**

7.3.4. Entering Department of the Air Force Products in Non-Department of Defense VI Contests or Similar Events. Send requests for Department of the Air Force participation in non-DoD VI events through the MAJCOM/PA or Field Command PA to the Air Force Public Affairs Agency Plans and Programs Division. Individuals, on their own and in an unofficial capacity, may not enter Department of the Air Force-funded products in festivals or other competitions. **(T-1).**

7.3.4.1. Entry of all Department of the Air Force products into any non-DoD awards competition requires clearance through the Air Force Public Affairs Agency Plans and Programs Division.

7.3.4.2. Entry of all Department of the Air Force video productions into any non-DoD awards competition requires the production have a product identification number assigned by the Air Force Public Affairs Agency Plans and Programs Division.

7.3.4.3.  AFPAA will coordinate with SAF/PA to conduct the security and policy review process, if needed, of all Department of the Air Force video productions selected for film festivals and exhibitions to determine release. **(T-1).** Products will not be cleared for entry into competitions that discredit the Department of the Air Force, DoD, or any associated programs. **(T-1)**

**7.4.  Requesting Visual Information Support.** The host wing or garrison PA office, as the OPR for VI, is required to support the installation with VI products and services, including photography, video services and graphic arts (where applicable). All requirements for VI support must be requested on an AF Form 833, *Multimedia Work Order*. **(T-1).**

**7.5.  Visual Information Products and Services Management.** All VI products and services missions are performed by personnel in the military AFSCs of 35P, 3N0XX, and civilians in the 1001, 1020, 1035, 1060, 1071, 1082, 1084 series, or via a contracted VI activity. However, management (such as, VI manager) and QAE functions may not be contracted. **(T-1)** VI includes graphics, animation, still photography, motion photography, audio, video, photojournalism and broadcast journalism products except where exempted by DoDI 5040.02, Enclosure 4, paragraph 3. No VI work will be performed by any organization or personnel other than listed above without the approval of SAF/PA. **(T-1).**

7.5.1.  The VI prioritized missions must be performed at all Department of the Air Force installations by the Type A DVIAN host-wing PA office. **(T-1).**

7.5.2.  Priority System. Wing and Garrison PA leadership must establish and publish a priority system that considers urgency, mission impact, agencies supported, missions, task complexity and resources available. **(T-2).** The purpose of a priority system is to meet critical timelines, schedule work and satisfy customer requirements. This priority system will be included in the PA employment plan that is approved and signed by the wing commander. **(T-2).** See **paragraph 1.14.1.3** for information about overall PA prioritizations plans.

**7.6.  Defense Visual Information Activity Number (DVIAN) Mandates, Definition and Responsibilities.** A VI activity is any unit or portion of a unit which performs the VI mission, creates VI products, or provides VI services. AFPAA, on behalf of SAF/PA, is the approving authority for Department of the Air Force organizations to operate VI activities, and assigns DVIANs to units. MAJCOM/PA or Field Command PA offices will maintain copies of all DVIAN authorization documents for all units within their command. **(T-1).**

7.6.1.  DVIANs are revalidated every five years, or whenever the current DVIAN's unit designation changes. In order to keep records current, MAJCOM and Field Command VI managers should inform AFPAA when the current DVIAN's designated VI Manager changes. The installation PA office BVIM will ensure that a revalidation request is completed and sent through the host installation commander and MAJCOM/PA or Field Command PA office to AFPAA (**afpaa.aox@us.af.mil**). **(T-2).**

7.6.2.  Requests for revalidation should include copies of previous and current mission and function statements, AFSCs or series of unit manning document positions, and UTCs supported. Units must have at least one PA AFSC or Series position on the unit manning document. **(T-1).** Units should also include:

7.6.2.1.  A list of supported units, agencies, activities, or locations. Include copies of the host tenant and inter-service support agreements.

7.6.2.2.  Wing or Garrison commander certification that the function is still needed.

7.6.3.  All organizations or units that possess an approved DVIAN are required to coordinate with AFPAA to establish an account in the career field-approved database tool, and perform all database functions, including tracking production and performing equipment lifecycle management functions. **(T-1).**

**7.7.  Authorized Use of Department of the Air Force Visual Information Resources.**

7.7.1.  Department of the Air Force VI resources (personnel, equipment, facilities, funding, etc.) are government property to be used solely for support to official Department of the Air Force organizations and their missions, DoD or other government agencies per current host-tenant support agreement, memorandum of agreement, or similar vehicle. Use of government-owned self-help equipment requires users to adhere to operational security and information security guidelines. **(T-0).**

7.7.2.  Do not use government-funded VI resources to:

7.7.2.1.  Provide personal souvenirs or gifts (for example, farewell gifts). **(T-1).**

7.7.2.2.  Provide décor for individual personal office walls. Products for organizational areas may be provided depicting relevant missions performed.

7.7.2.3.  Support or document farewell parties or social events unless certified as newsworthy or having historical significance by the base historian or chief of PA. Accession all imagery according to **paragraph 7.18**

7.7.2.4.  Create products used primarily for entertainment during farewell parties or social events. **(T-1).**

7.7.2.5.  Support Non-Appropriated Fund Force Support morale, welfare, and recreation activities. **(T-1).**

7.7.2.5.1.  Force Support activities are authorized to receive VI support for category A (Mission Sustaining), and category B (Basic Community Support) activities.

7.7.2.5.1.1.  Category A programs are essential to the military mission and are authorized all support.

7.7.2.5.1.2.  Category B activities are closely related to Category A activities and are essentially community support programs.

7.7.2.5.2.  The PA office can furnish support to these activities as long as the specific Force Support morale, welfare, and recreation activity does not generate revenue, or the requested VI product is not intended to generate revenue. For additional clarification of morale, welfare, and recreation activities, refer to AFI 65-106, *Appropriated Fund Support of Morale, Welfare, and Recreation (MWR) and Other Nonappropriated Fund Instrumentalities (NAFIS)*.

7.7.2.6.  Unauthorized requests. If it is unclear whether the request is authorized, consult the base legal office for guidance and clarification. **(T-1).**

7.7.3.  Imagery taken by Department of the Air Force personnel using personal cameras and equipment for non-official purposes will be considered personal imagery as long as it is not

related to missions, operations, exercises, and training (hereinafter "mission-related VI"). **(T-1).**

7.7.3.1. Department of the Air Force personnel who capture mission-related VI on personally owned devices must comply with the provisions of **paragraphs 7.8 and paragraph 7.18** of this instruction. **(T-1).** Department of the Air Force personnel should contact their local PA office for release procedures.

7.7.3.2. Mission-related VI captured on personally owned devices may be determined to be official DoD VI and a work of the U.S. government if the employee or military member used their official position or duties to obtain it (such as gaining access to military operations). **(T-1)**

**7.8. Quality Control.** The PAO or his or her designee shall ensure all VI products, regardless of medium, are reviewed for quality prior to customer acceptance. **(T-1).** Quality control should include:

7.8.1. Associated Press and DoD Visual Information Style Guides. The guides provide a standard method of writing. The publications help personnel in the creation of official DoD products that are clear, concise, meet DoD style standards and capture an accurate historical record.

7.8.2. Official DoD Imagery. Imagery must not be altered to misinform or deceive. **(T-0).** Anything that weakens or casts doubt on the credibility of official DoD imagery in or outside the DoD will not be tolerated.

7.8.3. Security, Accuracy, Propriety, and Policy. Consult **Chapter 9,** *Security and Policy Review Process*, for more information.

7.8.3.1. Security. Refers to information that is formally classified or information that falls under OPSEC or Essential Elements of Friendly Information. It can be divided into two categories: classified and sensitive.

7.8.3.2. Accuracy. Demands that PA sources provide only factual information, not speculation.

7.8.3.3. Propriety. PA personnel will not help gather or publish inappropriate descriptions or images. Ensure all releases are in good taste. They should not violate the sensitivities of the listening, viewing, and reading audiences.

7.8.3.4. Policy. In accordance with AFPD 35-1, *Public Affairs Management,* strive to keep the public fully informed of all unclassified activities. This requires the full and prompt release of both good and bad news. There are, however, restrictions and limitations placed on the release of some information: when it is released, how it is released, and who can release it.

**7.9. Medical.**

7.9.1. In coordination with the Defense Health Agency and the installation Public Affairs Officer, a Military Treatment Facility may establish a Medical Visual Information Service Center when the installation PA office cannot support its medical needs.

7.9.2. All Military Treatment Facility VI manpower validations must be submitted to AF/SG and SAF/PA for validation. **(T-1).** Funding requirements need only to be submitted to

Medical HHQs. Although the Military Treatment Facility may fund these positions, they will be on the installation PA office's unit manning document. **(T-1).**

7.9.3.  Release of Protected Health Information.

7.9.3.1.  All products must be protected in accordance with the Health Insurance Portability and Accountability Act, DoDI 6025.18, Defense Health Agency Procedural Instruction (DHA-PI) 5400.01, AFI 41-200, *Health Insurance Portability and Accountability Act (HIPAA)*, and AFMAN 41-210, *Tricare Operations and Patient Administration*, which provide protection and privacy of individually identifiable health information. **(T-0).**

7.9.3.2.  When patient authorization is required, obtain written authorization from the patient or his or her legal representative before releasing information, to include VI products, from the health record to any person or agency. DD Form 2870, *Authorization for Disclosure of Medical or Dental Information*, should be used for this purpose.

7.9.3.3.  Medical VI products must be reviewed and cleared by the PA office, legal office, HIPAA office and other applicable Military Treatment Facility agencies before posting on external, publicly-accessible web and social media sites. **(T-2).**

## 7.10.  Visual Information Contract Support.

7.10.1.  Contracting. The installation PA office may contract with commercial firms for VI services and products, to include but not limited to graphics, photography, video, audiovisual, animation, video production, multimedia, 3D rendering, imagery, Small Unmanned Aircraft Systems, aerial imagery, drone imagery, television, VI, broadcast, live streaming, models and exhibits, marketing, film, and movies. These contracts will be awarded in accordance with the Federal Acquisition Regulations and AFI 63-138, *Acquisition of Services*. **(T-0).** Oral contracts are not acceptable. Contracts must be in writing and awarded by an appropriately warranted contracting official. **(T-1).** All installation contracts for any of the above services must be coordinated through the installation and MAJCOM/PA or Field Command PA offices and AFPAA. The only office authorized to negotiate contracts with commercial activities is the servicing installation Contracting Office. **(T-1)**

7.10.1.1.  Contracts for Video Productions. MAJCOM, Field Command and installation PA offices will periodically contact the appropriate installation contracting official, usually the contracting squadron commander, to ensure contracting personnel know the Department of the Air Force has in-house video production capability available before awarding a video production requirement. **(T-1).** Detailed information on Video Production Management contract processes is outlined in **paragraph 7.18.8**

7.10.1.2.  The MAJCOM, Field Command or installation PA office are to request the servicing installation contracting officer to include a referral to the installation PA office in internal contracting processes and related instructions to contracting customers regarding preparation of relevant acquisition packages for VI equipment, products, and or services. **(T-1)**

7.10.2.  Gratuities. Department of the Air Force military and civilian employees and their families are restricted from soliciting or accepting gratuity from a prospective or current

contractor. **(T-0).** Refer to the DoD 5500.07-R for procedures when a gratuity may be accepted.

7.10.3. Conflict of Interest. PA personnel shall avoid any situation that may be perceived as or may cause a conflict of interest in any relationship with a contractor. **(T-0).** Consult DoD 5500.07-R, and with the local legal officer whenever a potential conflict of interest situation arises.

**7.11. Classified and or Sensitive Imagery Requirements.** All DVIAN Type A facilities must have the capability to document and store classified and or sensitive imagery. **(T-2).**

7.11.1. Before working with classified information, the installation PA office will contact the wing or garrison information protection office to conduct a physical security inspection of PA facilities and equipment, according to AFI 16-1404. **(T-1).**

7.11.2. Before electronically processing classified information, the installation PA office will contact the wing or garrison information assurance office to ensure an assessment of PA facilities and equipment processing classified information is conducted. **(T-1).**

7.11.2.1. Do not photograph classified locations, facilities, equipment, information, or materials for public release. **(T-0)** When taking photographs in operational areas, be conscious of classified weapons, maps, or charts that may be in the background. **(T-0).**

7.11.2.2. When handling classified materials for official use, do so in accordance with AFI 16-1404.

7.11.3. Imagery Involving Nuclear Weapons. See **Chapter 3** for information on this type of imagery, and what is and is not releasable.

7.11.4. Documentation of Activities Prohibited from Release. Installation PA offices shall document activities as required, including classified missions. **(T-1).** Just because an event is not releasable does not restrict Air Force PA professionals from documenting a scene to fulfill the mission. Clearance and release procedures apply after imagery acquisition and not during imagery acquisition.

7.11.4.1. Prior to the release of a VI product from any mission or activity, PA will review in accordance with **Chapter 9,** *Security and Policy Review Process*. **(T-1).** This restriction applies to any mission, whether executed at home station or while deployed in support of contingency operations. See **paragraph 7.7.3** for additional guidance.

7.11.4.2. Department of the Air Force members overseas must comply with any Status of Forces Agreements, the laws of the host nation, and other instructions of the combatant commander responsible for that area. **(T-0).** Documentation is permitted in the execution of official duties. Operational, internal-use-only documentation by Department of the Air Force photographers or broadcasters operating in their official capacity is exempt from these policies (Status of Forces Agreements, the laws of the host nation, and other instructions of the combatant commander responsible for that area). All other documentation is prohibited. **(T-1).**

**7.12. Alteration of Official Air Force and Space Force Imagery.** PA professionals must not alter imagery. **(T-0).** PA professionals create products that can be used in legal proceedings and for critical decision-making. Therefore, absolute trust and confidence in the truthfulness of

products they create is essential. See DoDI 5040.02 for specific policy on alterations of official imagery.

**7.13. Imagery Release.** Official images of military and civilian DoD employees generally are publicly releasable. Images of Air Force and Space Force activities and people are publicly releasable. However, an image may not be releasable if it depicts matters that would constitute a clearly unwarranted invasion of personal privacy, compromise operational security, or negatively impact mission effectiveness. Also refer to AFI 91-series instructions for Department of the Air Force safety programs. The installation PA office is approval authority for public release of the following types of imagery:

7.13.1.  People involved in newsworthy and public events, where it is deemed plausible that anyone could record them there. **(T-1).**

7.13.2.  People who are presented as members of a large crowd. **(T-1).**

7.13.3.  Fatalities or injuries. **(T-1).**

7.13.3.1.  Release of official or stock news images of Air Force or Space Force casualties is permitted after next-of-kin notification.

7.13.3.2.  Release of visual imagery regarding the return of casualties to the U.S., following DoD guidance and primary next-of-kin approval. Identifiable U.S. civilians who are injured must provide written consent before release of imagery. **(T-0).** Identifiable photos of wounds and their treatment could constitute Protected Health Information subject to the protections of the Health Insurance Portability and Accountability Act of 1996.  Consult with the SJA regarding the applicability of DoDI 6025.18. **(T-0)**

7.13.4.  Children and Minors, with Signed Release. **(T-1).**

7.13.4.1.  When documenting children under age 18, a parent or legal guardian must sign a DD Form 2830, *General Talent Release*, or DD Form 2831, *General Release Where Talent Fee or Other Remuneration or Recompense Accrues to the Participant*, allowing use of the child's image. **(T-0).**

7.13.4.2.  No exemption exists for documentation of Airmen and Space professionals, Reserve Officer Training Corps or Junior Reserve Officer Training Corps cadets under age 18. The intent of the use of public release forms and processes is to protect the privacy and security of subject individuals, and to protect the legal interests of the government.

7.13.5.  Courtrooms and Accused Persons. Generally, cameras are not allowed in the courtroom even if media are in attendance. **(T-1)** The final decision will be made by the Military Judge. **(T-1).** Accused individuals will be treated the same as other personnel, as outlined in this AFI.  PA personnel will take no actions that appear to prejudge the guilt of any accused.

7.13.6.  Installations. Unclassified images of installations are generally releasable. Guidelines for releasing unclassified information must be followed, including security and policy review requirements. **(T-1).**

**7.14. Photography and or Television and Video Studio.** Each host wing or garrison PA office must maintain and operate a photographic studio to support all commanders and units on the installation. **(T-1).**

7.14.1.  The photographic studio must provide support for the following missions**:**

7.14.1.1.  General officer portraits. **(T-1).**

7.14.1.2.  Portraits for commanders' awareness programs for displays of the chain of command in facilities. This includes commanders from the squadron up to the wing or garrison level in unit hierarchy, as well as command chiefs and first sergeants. **(T-1).**

7.14.1.3.  Portraits to display key staff from prominent support agencies such as the wing or installation IG, sexual assault response coordinators, area defense counsel, equal opportunity, and others not listed here. **(T-1).**

7.14.1.4.  Application processes for special duty assignments in accordance with AFMAN 36-2032, *Military Recruiting and Accessions*. **(T-1).**

7.14.1.5.  Applications for special programs or specialized units. **(T-1).**

7.14.1.6.  Required support via memorandum of agreement to isolated organizations from other branches of the DoD which have no organic support. Memorandums of agreement should include unit monetary reimbursement for any requirements involving unique photographic equipment, all expendable photo supplies, etc. **(T-0).**

7.14.1.7.  Support for official passports (as required), isolated personnel report photos for aircrews, and other administrative or contingency mission items. **(T-1).**

7.14.1.8.  Any request for photographic studio support not listed above but specifically approved by the wing or garrison commander. **(T-1).**

7.14.2.  Air Staff, Space Staff and MAJCOM/Field Command video production facilities must have studios which accommodate and facilitate video acquisition of subject matter. **(T-1).**

**7.15. Alert Procedures.** Providing alert photo and video support is a critical PA duty. Personnel must be trained and available, on-call, after duty hours, weekends and holidays to handle emergency requirements. **(T-3).** The PA officer shall coordinate with local agencies' investigative photography and videography procedures and establish local procedures in the form of an operating instruction or standard operating procedure. **(T-3).**

7.15.1.  Alert personnel will only release alert products to the on-scene commander or his or her designated representative. **(T-3).** All information and products are protected information and should be handled as such. As most alert imagery is evidentiary in nature, a documented chain of custody is required and procedures must be established prior to the incident, if required. **(T-1).**

7.15.2.  Alert personnel are notified by the installation command post or Security Forces Base Defense Operations Center. The alert photographer and or videographer should respond back within 15 minutes to acknowledge notification. The notifying agency should inform the alert personnel where to report, who to contact on-scene and the type of incident. Alert response times should be established locally for normal and non-duty duty hours with mission requirements and risk management in mind.

**7.16.  Visual Information Equipment Management for Installations.**

7.16.1.  Allowance Standard (AS) Responsibilities.

7.16.1.1.  The host wing or garrison PA office must use the Defense Property Accountability System AS 629 to authorize VI (and audiovisual) purchases for all units on the installation. **(T-1).** Limit all allowances for VI equipment to AS 629. Contact AFPAA for current AS. **(T-1)**

7.16.1.2.  Imagery equipment not included in an AS must be approved by the BVIM for purchase and use by units outside the PA office. **(T-3).**

7.16.1.3.  The BVIM and the MAJCOM or Field Command VI Manager identify necessary changes to the AS for professional and industrial grade equipment. Send change requests to AFPAA.

7.16.2.  Requests to Purchase VI Equipment.

7.16.2.1.  The BVIM must review and approve all procurement requests for digital photographic cameras, video cameras and editing equipment, and photographic or specialty printers to ensure compatibility with existing imagery infrastructure and to verify there is no duplication of imagery services available in the PA office. **(T-3).**

7.16.2.2.  The host wing communications squadron must coordinate with the BVIM for approval on all requests from units on the installation to purchase digital photographic cameras, video cameras and editing equipment, and photographic or specialty printers. **(T-3).**

7.16.2.3.  COMCAM, broadcasting, still photographic and graphics and visual design equipment for quantities not listed or authorized in AS 629 are requested on AF Form 601, *Authorization Change Request*, submitted to the base Equipment Accountability Element on AF Form 9, *Request for Purchase,* and processed through the servicing installation contracting office.

7.16.2.4.  All accountable equipment and high dollar non-equipment and pilferable assets within the DVIAN-authorized activity must be listed in the career field-approved database tool. **(T-1).**

**7.17.  Inventories.** All units with DVIANs must update equipment inventories and account information in the current, career field-approved management tool, and inspect it annually to ensure accuracy. **(T-1).**

**7.18.  Visual Information Production Management.** VI productions are video products which support the full range of Department of the Air Force training, education, internal recruitment, corporate communication, and information requirements.

7.18.1.  DoDI 5040.02 and DoDI 5040.07 mandate that the Department of the Air Force manage VI productions for both historical and retrieval purposes.

7.18.2.  Video production facilities are the units (physical plant, human resources, equipment, etc.) that are specifically designated a "C" DVIAN. The "C" designation also includes a numeric identification denoting size, scale, and level of support. See DVIAN mandates in **paragraph 7.6**

7.18.3.  MAJCOM/PA and Field Command PA must designate a primary video production facility to support its command's requirements. **(T-1).** The MAJCOM/PA or Field Command PA is responsible for sustainment of this mission. A MAJCOM or Field Command may have the need for more than one video production facility.

7.18.4.  VI Productions Defined. See DoDI 5040.02 and DoDI 5040.07 for the definition of video productions. Video productions differ from video documentation in that VI productions are an organized and unified presentation, developed according to a plan or script, containing visual imagery, sound, or both, and used to convey information.

7.18.4.1.  Video production requires specific handling in accordance with DoDI 5040.02 and DoDI 5040.07. All Department of the Air Force video productions require assignment of a product identification number issued by AFPAA prior to start of work. **(T-1).**

7.18.4.2.  Video productions are permanent official records that are created and must be life-cycle managed as described in **paragraph 7.19** and in DoDI 5040.02 and DoDI 5040.07. **(T-0).**

7.18.5.  Video Production Request Process. Department of the Air Force video productions are created for base, multi-base, command-wide, Department of the Air Force-wide, and DoD-wide requirements. For Department of the Air Force video productions, the servicing host PA office provides guidance to the requestor to complete their portion of the production request, and then forwards it to the host's MAJCOM/PA or Field Command PA office.

7.18.5.1.  The video production center must keep a master production folder for each VI production that contains all documents from initial production request and approval through completion and distribution. Forward a copy of the completed production folder to AFPAA. **(T-1).**

7.18.5.2.  Prior to completion and initial distribution, the requestor's servicing PA office ensures completion of the production folder in collaboration with the video production center.

7.18.5.3.  The requestor's servicing legal office performs a legal clearance review, if required, of the final draft video and any applicable legal documentation, makes a legal release determination, completes their portion of the production folder, and forwards it to the requestor's servicing PA office. This can be accomplished via signature on the video production request form or an official memorandum. At a minimum, the legal review should verify:

7.18.5.3.1.  The script contains no copyrighted material or an exception to copyright exists.

7.18.5.3.2.  All appropriate legal releases have been obtained. See **paragraph 7.18.10** for guidance on mandatory legal releases.

7.18.5.4.  The requestor's servicing PA office must perform a security and policy review of the final draft video, make a public release determination, sign the video production request form or an attesting memorandum, and forward both the PA and legal memorandums to the video production center. **(T-1).** The public release determination includes one of the following:

7.18.5.4.1.  It is free of all encumbrances and is cleared for public release.

7.18.5.4.2.  Some public clearance restrictions exist and list of restrictions.

7.18.5.4.3.  It is not cleared for public release and list reasons for non-release.

7.18.5.5.  DoD organizations requesting Department of the Air Force video production support will coordinate with AFPAA. **(T-1).**

7.18.6.  Accessibility. Through DVIDS accessioning, video productions are made accessible to individuals with disabilities in accordance with DoDI 5040.02, DoDI 5040.07, and Section 508 of the 29 USC § 794. DVIDS provides closed captioning on all submitted video products. Transcriptions for Section 508 compliance must be checked for accuracy by the accession unit or individual. **(T-1).**

7.18.7.  Video Production Restrictions. Units are to ensure all productions are consistent with Department of the Air Force core values of integrity first, service before self, and excellence in all we do.

7.18.7.1.  In addition to items listed in DoDI 5040.02 and DoDI 5040.07, VI productions must not contain material that:

7.18.7.1.1.  Shows DoD personnel in an unfavorable or undignified situation unless doing so is essential to the production's message. **(T-1).**

7.18.7.1.2.  Is inaccurate or incompatible with Department of the Air Force policy or doctrine. **(T-1).**

7.18.7.1.3.  Is inconsistent with the Department of the Air Force's alcohol deglamorization program.  **(T-0).** See AFI 34-219, *Alcoholic Beverage Program*, for more information.

7.18.7.1.4.  Shows imagery inconsistent with the Department of the Air Force's tobacco/nicotine/vaping use policy.  **(T-0).** See AFI 48-104, *Tobacco Free Living*, for more information.

7.18.7.1.5.  Copyrighted, trademarked or intellectual property without official consent from the property owner. **(T-0).**

7.18.7.2.  No entity will cut, re-edit, or otherwise alter or reproduce copies of video productions without permission of the video production center.  Requests for segments of video productions for briefings or other productions must be coordinated through AFPAA, the requestor's MAJCOM or Field Command, and the video production center. **(T-1).** This procedure minimizes inadvertent violation of copyright or legal restrictions.

7.18.7.3.  Proprietary Production. DVIAN-authorized production centers creating video productions must coordinate and obtain content review and approval from the functional office of primary responsibility. **(T-1).** This may include, but is not limited to:

7.18.7.3.1.  Security.

7.18.7.3.2.  Safety.

7.18.7.3.3.  Equal opportunity.

7.18.7.3.4.  Manpower, Personnel and Services.

7.18.7.3.5.  Chaplain.

7.18.7.3.6.  Security Forces.

7.18.7.3.7.  Judge Advocate.

7.18.7.3.8.  Aerospace Medicine.

7.18.7.3.9.  Fire protection.

7.18.7.3.10.  Survival, Evasion, Resistance, and Escape.

7.18.7.3.11.  Contracting

7.18.8.  Contracted Video Productions.

7.18.8.1.  No contracts for video productions will be requested or awarded without MAJCOM or Field Command coordination and AFPAA approval. **(T-1).** AFPAA is the final approval authority for all Department of the Air Force contracted video productions. **(T-1).** It is the responsibility of the servicing installation contracting offices to ensure all customers are aware of this requirement. **(T-1).** All efforts must be made to attempt to create the video production with in-house video production centers before considering creating it by means of a contract with a commercial video production business. **(T-1).**

7.18.8.2.  Video production contracts funded by the Air Force or Space Force should state that the materials final VI products and video productions are to be assigned to the Air Force or Space Force.  The Department of the Air Force owns the copyright and maintains authority over materials.  Contracts will include unrestricted rights for the government to copy and distribute any portion or all of the production. **(T-1).**

7.18.9.  Copyright Licenses or Trademark Rights. Using copyrighted or trademarked media requires a separate license or explicit permission. Generally, both music and programs recorded from broadcasts are copyrighted. Having the source recording or music score does not confer any right to reproduce, transfer, or otherwise use or perform the recorded material, either as a whole or in part. The installation PA office must discuss with the installation legal office when use of copyrighted or trademarked material is in question and receive specific clearance for each use from the copyright or trademark owner. **(T-1).**

7.18.9.1.  A clearance may give the government the perpetual right to duplicate, distribute, publish, exhibit, use, or transmit all or any part of the copyrighted material in the production that the Department of the Air Force received license to use or any future use incorporating part or all of the production. However, do not assume perpetual rights.

7.18.9.2.  Consult with the installation legal office before invoking the fair use provision of the copyright law. **(T-1).**

7.18.9.3.  A clearance may state that the conveyed license to use benefits the U.S. government and its officers, agents, servants, and employees acting in their official capacities and any other persons lawfully reproducing, distributing, exhibiting, or using a part or all of the production that the Department of the Air Force received the license to use.

7.18.10.  Legal Release in Department of the Air Force Productions. DoDI 5040.02 and DoDI 5040.07 lists the mandatory use of DD Form 2830, DD Form 2831, DD Form 2832,

*Release Granting the U.S. Government Permission to Photograph or Otherwise Record the Visual Image or Sound of Private Property*, and DD Form 2833, *Release Granting the U.S. Government Permission to Record and Reproduce Program Material Transmitted by Educational or Commercial Broadcast Stations,* when applicable.

7.18.10.1.  The requestor, in coordination with the video production center, must obtain signed releases from personnel:

7.18.10.1.1.  Who either appear in or whose voices are used in a production, or whose minor children appear in any production. **(T-1).**

7.18.10.1.2.  No release is required from active-duty military personnel, including cadets or midshipmen of the United States military academies, or DoD civilians performing official duties, unless the person is under age 18.

7.18.10.1.3.  Whose personal property, real estate, copyrighted material (trademarks, labels, trade or brand names), business proprietary, intellectual or other private property appear in a production. **(T-1)**

7.18.10.1.4.  Who have an expectation of privacy, such as:

7.18.10.1.4.1.  People shown in secluded situations rendering them readily identifiable, as opposed to being presented as members of a large crowd. **(T-1)**

7.18.10.1.4.2.  Central figures in a scene regardless of its brevity. **(T-1)**

7.18.10.2.  A release is not needed from:

7.18.10.2.1.  People involved in newsworthy and public events, where it is deemed plausible that anyone could record them there.

7.18.10.2.2.  People who are presented as members of a large crowd.

7.18.10.3.  The intent of the use of public release forms and processes is to protect the privacy and security of subject individuals, and to protect the legal interests of the government.

**7.19.  Visual Information Records and Life-Cycle Management.**  Since VI products portray a valuable and irreplaceable account of Department of the Air Force activities, personnel shall properly archive and preserve these records. **(T-0).** Consider still and motion camera originals or designated masters on subjects as records materials. Submit all graphics products having universal interest (such as, approved unit emblems and shields, or freehand artwork) to DVIDS.

7.19.1. National Archives and Records Administration Mandates. National Archives and Records Administration is responsible for overseeing federal agencies' adequacy of documentation and records disposition programs and practices. The General Services Administration, National Archives and Records Administration is also responsible for overseeing economy and efficiency in records management. Specifically, National Archives and Records Administration requires agencies to "make and preserve audio and visual records including motion-picture films, still photographs, and sound recordings, in analog, digital, or any other form, pertaining to and illustrative of the historical development of the U.S. government and its activities" and that services "use only industrial or professional video and audio recording equipment."  Reference Title 36, Code of Federal Regulations,

Subchapter B–*Records Management*, § 1220-1239, for further guidance.  Also use AFI 33-322 and DAFI 33-360, to archive records, and dispose of records.

7.19.2. DoD Mandates. DoD requires the military services to use VI imagery as the official visual record of the activities of the Services in accordance with the DoD VI records schedule (that is Records Schedule Number DAA-0330-2013-0014). DoD also requires VI imagery to be centrally managed in each of the services. Official DoD imagery should conform to DoD-wide technical criteria, be fully captioned and assigned a DoD-standard record identification number in accordance with DoDI 5040.02 and DoDI 5040.07.

7.19.3. MAJCOM and Field Command Life-Cycle Management Responsibilities. The MAJCOM or Field Command VI Manager ensures VI materials with record value produced within the command are identified, collected, and submitted according to this instruction. This includes in-house or contractor activities. **(T-1).**

7.19.3.1. See the DoD VI Records Schedule for more information on determining what has record value.

7.19.3.2. The MAJCOM or Field Command VI manager ensures installation PA offices create local procedures to identify, gather, and submit significant VI material that may have record value. **(T-1).** The installation PA office works with representatives from operations, history, and other units to identify these materials.

7.19.4. Local Collections of VI Material.

7.19.4.1. Units will manage administrative and visual records according to instructions on the Department of the Air Force Records Information Management System, series 33 and 35, located at **https://www.my.af.mil/afrims/afrims/afrims/rims.cfm**. **(T-1).**

7.19.4.2. The installation PA office may maintain a collection of official Department of the Air Force VI records, according to AFI 33-322.

7.19.4.3. Local collections will not substitute for archived records. **(T-1).**

7.19.5. Submitting VI Record Materials.

7.19.5.1. Each Department of the Air Force activity originating VI material, either in-house or by contract, is responsible for initially identifying, transmitting or shipping records material to the Defense Imagery Management Operations Center through DVIDS. **(T-0).**

7.19.5.1.1. AFPAA oversees these efforts for all PA units.

7.19.5.1.2. The installation PA office manages this effort at the base level.

7.19.5.1.3. MAJCOM, Field Command and installation PA offices will transmit electronic photographs and graphic media at least monthly to DVIDS, or more frequently. **(T-1).**

7.19.5.2. Units completing official Department of the Air Force video productions will upload completed publicly released productions to DVIDS as Video Productions. **(T-1)** CUI restricted productions require annotation as to why restricted and are sent directly to Defense Imagery Management Operations Center Customer Service Division-

Tobyhanna, Building 3, Room 101 Bay 3, 11 Hap Arnold Blvd, Tobyhanna Army Depot, Tobyhanna, PA 18466-5102 after AFPAA approval. **(T-1).**

7.19.6.  Official VI Product and Material Loans. Individuals or organizations requesting VI products or material loans should contact the installation PA office for assistance. Request unclassified and classified copies of current Department of the Air Force productions and loans of DoD and other federal productions from Defense Imagery Management Operations Center Customer Service Division-Tobyhanna, Building 3, Room 101 Bay 3, 11 Hap Arnold Blvd, Tobyhanna Army Depot, Tobyhanna, PA 18466-5102.

## 7.20.  Managing Contracted Visual Information Facilities.

7.20.1.  Managing Contracted Facilities**.** Some PA offices have contracted VI operations. New contract startups must be coordinated with the host installation's MAJCOM/PA or Field Command PA office. **(T-1).**

7.20.2.  VI Manager and or QAE. PA oversees and facilitates contracted VI centers. QAEs evaluate contract support and are functionally qualified technical experts in AFSCs 35PX, 3N0XX, or civilian personnel in GS 1000 series. QAE missions are inherently governmental and must not be performed by contracted employees, because of the need to make resource management and allocation decisions. The QAE must meet all training requirements prior to performing duties and will be appointed in writing by the local contracting office. **(T-1)** QAEs must:

7.20.2.1.  Be knowledgeable of the statement of work's primary and secondary requirements. Secondary requirements are such things as records, equipment and information technology equipment custodian management, facility management if applicable, operations security, emission security, etc. **(T-1).**

7.20.2.2.  Develop a plan for providing prioritized services in case of contract termination for any reason. **(T-1).**

7.20.2.3.  Begin the statement of work development process with enough lead time for coordination through MAJCOM or Field Command functional representatives. **(T-1).**

7.20.2.4.  Conduct wing- or garrison-wide research soliciting inputs for services or products needed but not available through the current contract. **(T-1).** Review and evaluate inputs for authorization, feasibility and affordability. Strict attention should be given to define "need" versus "want."  What PA provides through the statement of work should be based on what base customers need, not what PA wants to provide.

7.20.2.5.  Develop a plan to identify contract surveillance methods that will ensure the contractors meet statement of work requirements. **(T-1).**

7.20.2.6.  Provide annual contract assessments in the contractor performance assessment reporting system. **(T-1).**

7.20.2.7.  Secure and provide the appropriate funding documents to the local contracting office. Additionally, submit monthly payments through Wide Area Workflow.

## 7.21.  Combat Camera.

7.21.1.  Combat Camera Roles. COMCAM is an essential battlefield information resource that supports strategic, tactical and operational mission objectives. It is a deployable force

multiplier for information as a joint function for commanders. These combat-trained visual documentation teams are the primary suppliers of operational imagery to support battlefield information superiority. COMCAM imagery serves as a visual record of operations and is of immeasurable value to decision makers in the Office of the Secretary of Defense, Joint Staff, and Combatant Commands. COMCAM units are trained in tactical combat movements and possess fully certified, aircrew-qualified members for aerial documentation. See Chairman of the Joint Chiefs of Staff Instruction 3205.01D, *Joint Combat Camera (COMCAM)*, and DoDI 5040.02 for more instructions.

7.21.1.1. COMCAM's primary role is to provide cradle-to-grave aerial and ground VIDOC of joint and Department of the Air Force combat and contingency operations as tasked by the Joint Task Force Commander, Commander of the Air Force Forces or Chief of Staff of the Air Force.

7.21.1.2. COMCAM's secondary role is the centralized collection, management and distribution of imagery for operational use by theater commanders, President of the United States, Secretary of Defense, Secretary of the Air Force, Chief of Staff of the Air Force, Chief of Space Operations, National Command Authorities, State Department, and other government agencies.

7.21.1.3. COMCAM UTC-tasked forces reside within AFPAA and are distributed over one Regular Component COMCAM squadron and one AFR Command-owned COMCAM squadron.

7.21.2. Combat Camera Mission.

7.21.2.1. The mission of Combat Camera is to provide the National Command Authority, the Chairman of the Joint Chiefs of Staff, the military departments and the unified combatant commands with a directed imagery capability in support of information as a joint function in operational and planning requirements during worldwide crises, contingencies, exercises and wartime operations.

7.21.2.2. When assigned to a supported unified command or JTF commander, Air Force COMCAM forces fall under administrative control of the air component commander. The combatant commander will identify a COMCAM POC in J-39 division to serve as Joint Staff liaison and Joint Combat Camera Team tasking authority is to plan for and task COMCAM assets per the Combatant Commander's requirements for wartime operations, worldwide crises, contingencies, joint exercises, and other events involving DoD Components. The air component commander will establish COMCAM POCs in the appropriate directorate.

7.21.2.3. COMCAM imagery supports Department of the Air Force and DoD collateral documentation requirements enabling information as a joint function. COMCAM documentation supports operational briefings, situation or status reports, tactics, techniques and procedure review, information operations, command and training objectives, presentations, public release requirements as needed, and provides a comprehensive historical record of Department of the Air Force and DoD humanitarian and war- and peace-time operations.

7.21.2.4. The COMCAM mission supports, but is independent from, unique imagery operations and systems designed to meet specific VI mission requirements, such as PA,

intelligence, surveillance, and reconnaissance, operational test and evaluation, and certain DoD functions.

7.21.2.5.  For missions requiring airlift, COMCAM airflow for Department of the Air Force airframes is coordinated directly between the COMCAM squadron and the flying unit. **(T-3)** For international and non-Department of the Air Force airframes, coordination must occur between AFPAA and the non-Department of the Air Force unit. **(T-3).**

7.21.2.6.  In order to provide cradle-to-grave aerial and ground operational documentation, COMCAM capability must be planned for in operations plans and operations orders, and as a capability separate from PA. **(T-2).** COMCAM operations are often outlined in Annex C of operations orders. COMCAM forces should be planned for movement on advanced echelon aircraft or first available airflow.

7.21.2.7.  Requirements for COMCAM include imagery to counter misinformation, legal and evidentiary documentation, imagery for battlefield and environmental assessments, intel collection, psychological operations and Civil Affairs support, in addition to media requirements and historical documentation. COMCAM also supports Department of the Air Force and joint exercises to test tactics, techniques and procedures and overall readiness, as mandated in CJCSI 3205.01D.

7.21.3.  SAF/PA establishes Department of the Air Force COMCAM policy and coordinates with Department of the Air Force Training and Readiness to establish aerial program policies and aerial photography and videographer positions, as well as revalidate existing aircrew positions annually.

7.21.4.  AFPAA will:

7.21.4.1.  Ensure training of COMCAM forces to document war, contingencies, weapons tests, humanitarian operations, major events, and Department of the Air Force and joint exercises, as appropriate.

7.21.4.2.  Fund COMCAM personnel, equipment, and supplies for contingency or wartime deployments. The requester funds deployments, temporary duty and supply costs for planned events, such as non-Joint Chiefs of Staff exercises and competitions.

7.21.4.3.  Coordinate with appropriate MAJCOM and air component leaders in order to meet COMCAM documentation needs in war, operations, and concept plans.

7.21.4.4.  Set combat training standards and develop programs for all Department of the Air Force regular component and reserve component COMCAM personnel (includes both formal classroom and field readiness training). Publish specific COMCAM Job Qualification Standards that are used as the basis for training at subordinate squadrons and certified through evaluation and exercises.

7.21.4.5.  Provide the Air Force's COMCAM capability and assist Air and Space Forces components and joint commands with deliberate and crisis action planning for Air Force COMCAM assets.

7.21.4.6.  Coordinate COMCAM requirements under the Air Expeditionary Force.

7.21.4.7.  Establish readily deployable and adaptive COMCAM force packages that may operate as independent units or be integrated into a JTF.

7.21.4.8. Ensure, in coordination with SAF/PAR, that COMCAM force packages have UTCs registered in the Department of the Air Force Worldwide UTC Availability System to meet the full spectrum of requirements of the unified combatant commands during exercises, contingencies, and wartime operations.

7.21.4.9. Ensure COMCAM participates in joint actions by coordinating with the Office of the Secretary of Defense staff, Joint Chiefs of Staff, other appropriate U.S. government offices and organizations.

7.21.4.10. Provide component and theater commands COMCAM planning assistance and expertise for contingencies, humanitarian actions, exercises, and combat operations.

7.21.5.  Air and Space Forces Component and intended unit:

7.21.5.1. Request, through the J3 or A3 (or delegate this task to, but not limited to, the information operations planner, COMCAM planner or PA planner) the employment of COMCAM forces to document the entire scope of military operations during joint and combined exercises and operations, based on the JTF commander's priorities. Plan to employ COMCAM forces during the beginning stages of any operation to ensure comprehensive mission documentation. Ensure that COMCAM forces have full mission access during each phase of the operation in order to satisfy the use of information as a joint function across a mission and or organization.

7.21.5.2. Manage COMCAM support within their areas of responsibility. Ensure appropriate documentation of significant events and operations for theater- and national-level use. During both planned and contingency operations, identify COMCAM objectives, priorities, and chain of command. Develop staffing solutions enabling a mix of deployed officer and enlisted COMCAM forces to effectively fulfill assignments in-theater.

7.21.5.3. Coordinate and set requirements for COMCAM support to the full spectrum of imagery requirement. Include requirements in operations plans, concept plans, operations orders, and similar documents.

7.21.5.4. Coordinate with SAF/PAR Force Management, supported combatant command, MAJCOM/PA planners and AFPAA Readiness Branch to plan and source COMCAM forces for the full spectrum of military operations. Assist in coordinating facilities, transportation, communication, and logistical assets to support and sustain deployed COMCAM forces.

7.21.5.5. Coordinate with AFPAA Operations Division (**afpaa.aox@us.af.mil**) as required to develop the annual COMCAM Exercise Support Plan. Include requirements to exercise COMCAM forces to refine operational procedures and meet defined objectives.

**7.22. Aerial Photographic and Video Documentation Operations.** There are two different programs available that provide PA personnel different levels of training and capabilities. One is the non-career enlisted aviator aircrew, and the other is operational support. AFPAA manages this activity for all PA Airmen.

7.22.1. Non-Career Enlisted Aircrew Flyer Status Code 9D. The purpose of aircrew-qualified positions is to provide COMCAM aerial photographers with qualifications

consistent with other non-career enlisted aircrew members. AFPAA will ensure training and qualification in accordance with appropriate aerial photography AFMAN 11-2AP-series (AFMAN 11-2AP, Vo1, *Flight Test Aircrew Training*, AFMAN 11-2AP, Vol 2, *Flight Test Aircrew Evaluation Criteria* AFMAN 11-2AP, Vol 3, *Flight Test Operations Procedures* AFMAN 11-2FT, Vol 1 *Combat Camera Aircrew Training*, AFMAN 11-2FT, Vol 2, *Combat Camera Evaluation Criteria* and AFI 11-2FT, Vol 3, *Combat Camera Operational Procedures*. **(T-1).** Aerial Photographers assigned to flight test squadrons are governed by the AFMAN 11-2FT series.

7.22.2. Operational Support Flyer Status Code 9C. This program provides leadership an aerial photography mission capability to support noncombat or nonhazardous missions of the host wing. **(T-1)** For combat and hazardous missions, host wings will utilize COMCAM Airmen. The 9C program uses man-month authorizations provided by HQ USAF to MAJCOMs and distributed to host aviation resource management offices. Wing PA leadership should contact the local host aviation resource management office to establish a 9C program.

7.22.3. Only PA military (35P, 3N0X2, or 3N0X5) or civilians serving in a PA office and identified by their host aviation resource management office as meeting mission requirements can participate in aerial documentation operations. **(T-1) Exception**: Aerial-qualified photography or videography contractors required to perform photography or videography duties aboard Department of the Air Force aircraft will comply with AFI 11-401, *Aviation Management*. **(T-1)**

7.22.4. The BVIM should ensure certification of imagery equipment for use aboard military aircraft, according to AFMAN 11-202, Volume 3, *Flight Operations.* A list of equipment certified and approved for use aboard military aircraft is available from AFPAA**.**

**7.23.  Small Unmanned Aircraft Systems**

7.23.1. Procurement of commercial off-the-shelf (COTS) small unmanned aircraft systems (sUAS). DoD categorizes unmanned aircraft systems into groups based on the attributes of weight, altitude and speed. All units should refer to AFMAN 11-502, Small Unmanned Aircraft Systems, for guidance. **(T-1)**. Units must adhere to all applicable policy restrictions and approval authorities prior to pro- of COTS.  Use of COTS sUASs may be authorized outside the continental United States when approved by the respective combatant commander and coordinated with the respective host nation. **(T-1).**

7.23.2.  Units will not use privately-owned COTS small unmanned aircraft systems. **(T-1).**

## Chapter 8

## TRAVEL FOR PUBLIC AFFAIRS PURPOSES

*Section 8A—General Guidelines*

**8.1. Purpose of Public Affairs Travel.** The purpose of PA travel is to further public understanding of Air and Space Forces missions, people, and weapons systems. PA develops Air Force and Space Force advocates who deliver the Air and Space Forces story. In accordance with DoDI 4515.13, and DoDI 5122.08, the use of DoD assets for PA purposes may be provided when travel is determined to be in the best interest of the DoD and commercial transportation is not available or is otherwise inadequate to fulfill mission objectives. Additionally, travel on DoD transportation assets should be on a space-available, non-interference basis on previously scheduled flights unless otherwise authorized and approved. **(T-0).** With proper advance approval military carriers may be used to support travel of the public, American or foreign, in support of approved PA programs, including news media in connection with coverage of military operations; community engagement programs, tours, or conferences in which a DoD component is either a sponsor or a participant; in cases where local commanders believe it furthers their PA program to approve travel; when the transportation is filmed as part of a DoD-sponsored entertainment media production; or for tours or other PA programs arranged jointly with another federal department or agency or foreign government. Travel authorized for PA purposes reflects the following considerations:

8.1.1. Commanders will ensure PA travel does not compete with commercial sea, land, or air transportation when that capability exists, is adequate, and when PA objectives may be achieved through use of commercial transportation. **(T-0).**

8.1.2. Travel or transportation for PA purposes is determined to be primarily in the interest of the DoD, the MAJCOM or the unit.

8.1.3. Travel designed solely to increase goodwill, or serve humanitarian purposes does not meet the criteria for PA travel.

8.1.4. A PA escort is required to accompany all PA travel. For PA flights in fighter or trainer aircraft, PA will be planeside for pre-flight and post-flight. **(T-1).**

**8.2. Eligibility.** Depending on the circumstances, and upon receipt of advance approval from appropriate authority in accordance with DoD 4515.13 (the primary guidance for determining PA air travel eligibility) and Department of the Air Force guidance, both U.S. citizens and foreign nationals are eligible for PA travel. Eligibility includes individuals traveling on invitational or authorized travel in support of approved PA activities, including guests of the Secretary of Defense participating in the Joint Civilian Orientation Conference, the National Civic Leader Tour program, civic leader tours, PA Flights, or tours and activities arranged jointly with other federal government departments or agencies or with a foreign government, and individuals who, because of their position and contacts with various public organizations, can make positive contributions to public understanding of the roles and missions of the DoD. It also includes representatives of information news media individually, or in groups, in connection with assignments to cover military events, press tours, visits to military installations, military

exercises, or military operations, or other PA objectives that add to the public understanding of DoD activities.

8.2.1. Flights involving foreign nationals must be reviewed for foreign disclosure requirements and political concerns. **(T-2).** Ensure foreign disclosure requirements and base visit requests are satisfied according to AFI 16-201, *Department of the Air Force Foreign Disclosure and Technology Transfer Program*. **(T-2).**

8.2.2. For media requests involving foreign nationals and depending on the type of travel involved, the appropriate approving official should consult with SAF/PAO before acting on foreign national media members for PA travel. SAF/PAO will coordinate with the country director in the appropriate Secretary of the Air Force International Affairs regional division to ensure no political concerns exist that would prevent media from being on the flight. SAF/PAO will contact the U.S. State Department, Washington Foreign Press Center, and or DoD Press Liaison for any relevant information on the news media representative.

**8.3. Public Affairs Travel General Approval Authority.**

8.3.1. The Assistant to the Secretary of Defense for Public Affairs must approve the use of military carriers for PA purposes with delegations of authority as outlined in DoDI 5122.08. This authority is delegated to PA directors at all echelons who are authorized to grant participation approval (see **Tables 8.1 and 8.2**) only for local travel or transportation for PA purposes wholly within the scope of the mission and responsibilities of their respective command subject to the following conditions:

8.3.1.1. The PA activity is not the responsibility of a higher command. **(T-0).**

8.3.1.2. The public interest in the PA activity is confined primarily to the mission and vicinity of that command. **(T-0).**

8.3.1.3. Transportation is provided for non-government personnel who are a part of an approved local PA activity that is in the primary interest of the DoD. **(T-0).**

8.3.2. Command Structure. It is important to distinguish travel between and within theaters. PA travel is governed by a different set of guidelines depending upon which commanders have operational control (OPCON) of the assets in use or the geographic theater of operations. Once PA travel leaves the CONUS, it becomes subject to the warfighting structure of command, and is no longer governed solely by the Department of the Air Force chain of command (or its policies and procedures). For example, the distinction between "local" and "non-local" airlift may be meaningless under the command of an external unified or combatant commander. Outside the CONUS, command extends across the services, defined either by function (as with United States Transportation Command) or by geographic AOR (as with United States European Command, United States Space Command or United States Central Command). Below the theater level, forces are broken down again by function. For example, under the warfighting command structure, all Air Force personnel – regardless of service origination – fall under the Joint or Combined Forces Air Component Commander, with few exceptions.

8.3.2.1. Intertheater Travel. ASD(PA) [The appropriate DoD level component] approves intertheater media travel in accordance with DoDI5122.08. **(T-0).** This is achieved as

**App. 185**

part of the theater clearance process. See AFMAN 35-101, **Chapter 3**, for additional guidance on responsibilities.

8.3.2.2.  Intratheater Travel. Guidelines for intratheater travel may differ greatly from HAF guidelines for CONUS local and non-local travel, becoming either more or less restrictive. In such cases, commanders must communicate with the appropriate theater-specific PA staff to obtain current guidance. **(T-0).** In most cases, the theater commander's PA staff will coordinate approvals and airlift requirements within the commander's purview. **(T-0).**

8.3.2.3.  Understanding who has OPCON over Air Assets in Theater. Although the Joint or Combined Forces Air Component Commander will set guidelines for PA (including media and community engagement) airlift within the specified theater of operations, he or she may not have OPCON of all air assets transiting the theater. Strategic airlift assets, such as C-5s and C-17s, generally remain under the OPCON of the AMC commander and not the Joint or Combined Forces Air Component Commander. Therefore, prior to offering PA airlift on strategic assets, commanders must obtain operational approval from the AMC commander, coordinating with AMC/PA. **(T-1).** This happens primarily when news media request airlift to cover a story only after arriving in the theater of operations via commercial airline. If media arrived via strategic airlift as part of an already approved, Department of the Air Force-sponsored media trip, this coordination has already occurred and does not need to be re-accomplished. Tactical airlift assets, such as C-130s, generally fall under the OPCON of the Joint or Combined Forces Air Component Commander and only meet those approval requirements set within the theater of operations.

**8.4. Tactical Waiver.** Touch-and-go landings, multiple practice approaches, doors open in flight, practice emergency separations, and airdrops are prohibited with non-aircrew members onboard without a tactical waiver. Tactical waivers must be requested and routed through the requesting unit's operations group. **(T-1).** Initiating tactical waivers is the responsibility of the owning wing operations group. Tactical waivers typically require a 12- to 14-day lead time. PA should ask the operations group to route requests with sufficient lead time and check the status of the request frequently to ensure a waiver is granted prior to the date of the flight.

*Section 8B—Community Engagement Public Affairs Travel*

**8.5. Public Affairs Flights.** The Department of the Air Force conducts PA flights to increase public understanding and support of a particular weapon system, its mission, and its role in national defense. They are defined as flights in DoD-owned aircraft performed within the local flying area and terminating at the point of origin. Refer to DoDI 4515.13 and AFI 11-401.

8.5.1.  Participants on PA flights may include: local and state government leaders and officials, local, national or regional civic leaders; celebrities, national sports figures, or those individuals with whom engagement is in the best interest of the Department of the Air Force. Members of Congress, their staffs, and other elected federal officials, such as judges, are not permitted to be flown under PA travel, per AFI 90-401.  SAF/PAY approves participants for all PA flights unless delegated in writing to the MAJCOM/PA or Field Command PA.

8.5.2.  Participants should not have flown on Department of the Air Force aircraft previously.

8.5.3. PA flights will not be used as a reward for supporting a local installation. Proper justification is required for all proposed passengers.

**8.6. Community Engagement Travel Approval Authority.** Authority for PA travel is contained in DoDI 5122.08 and DoDI 4515.13. See **Table 8.1** for specific approval authority for civilian non-media travel in support of PA programs. In accordance with OASD(PA), Employer Support for the Guard and Reserve Bosslift programs are not considered PA travel and should be coordinated with Employer Support for the Guard and Reserve state representatives.

**Table 8.1.  Specific Approval Authority for Civilian Non-Media Travel in Support of PA Programs.**

| Events | Participants | Approval Level | |
|---|---|---|---|
| | | Participation | Operational |
| PA Flights[3] | Individuals who can have a positive impact on the public understanding of the roles and missions of the DoD and Department of the Air Force. This includes national, regional, local civic leaders, celebrities, and national sports figures. | SAF/PAY[3,9] | MAJCOM/CC[1] |
| Local Travel[4] | Individuals participating in approved PA activities (such as civic leader flights) | SAF/PAY[3,9] | MAJCOM/CC[1] |
| Non-Local Travel | Individuals participating in approved PA activities (such as civic leader tours) | SAF/PAY[3,5,6,7,9] | MAJCOM/CC[2] |
| CONUS Traveling to OCONUS | Invitational and other authorized PA travel | SAF/PAY[3,5,6,7,9] | MAJCOM/CC |
| Local and Non-Local[5] Travel for OCONUS locations | Non-local, invitational and other authorized PA travel | SAF/PAY[3,7,9] | MAJCOM/CC |
| **Notes:** | | | |

1. MAJCOM/CC may delegate operational approval authority to MAJCOM/A3 or Wing/CC via delegation memorandum.

2. MAJCOM/CC may delegate operational approval authority to MAJCOM/CD or MAJCOM/A3 via delegation memorandum.

3. MAJCOM/PA will coordinate with SAF/PAY 30 days in advance or as soon as details are available.

4. See **paragraph 8.3.3.**

5. Is flown as a funded Special Assignment Airlift Missions in accordance with AFI 24-602v1.

6. Transportation in support of approved PA activities.

7. If non-local travel involves stopping at a base owned by a different MAJCOM, MAJCOM/PA of requesting MAJCOM will inform owning MAJCOM/CC.

8. MAJCOM/PA will inform MAJCOM/CC and SAF/PAY.

9. SAF/PAY may delegate to the MAJCOM/PA but not lower. National-level civic leaders, sports figures and celebrities must be approved at SAF/PAY.  This authority will not be delegated lower.

**8.7. Civilian Travel Procedures and Guidelines.** See AFMAN 35-101, **Chapter 7**, for detailed information on how to facilitate civilian travel for PA purposes.

**8.8. Non-Local PA Travel Funding.**  In accordance with  AFI 24-602v1, non-local PA travel is supported as a Special Assignment Airlift Mission. Units are responsible for funding their civic leader tours in accordance with MAJCOM/PA procedures. Fiscal year funds should be requested through the normal MAJCOM or wing budgeting processes. ANG units will process tour requests in accordance with National Guard (NG) Pamphlet (PAM) 360-5/ANG PAM 35-1, *National Guard Public Affairs Guidelines*. **T-1).**

**8.9. Airlift Request Requirements.**

8.9.1.  MAJCOM and/or base requests must be submitted to U.S. Transportation Command no later than 60 days prior to the event, or 30 days if request includes contact information for a unit willing to volunteer to support, including owning wing support. **(T-0).**

8.9.2.  Requests should identify any special requirements such as airline-style seating, comfort pallets, etc. **Note**:  Not all aircraft can accommodate comfort pallets, and not all units can provide sufficient airline-style seating for all passengers.

8.9.3.  Although sponsors may request passenger-configured aircraft, the participants experience a more meaningful view of Department of the Air Force crewmember travel if they fly on cargo-configured aircraft.

8.9.4.  Sponsors are encouraged to request a refueling mission on one leg of the trip. Air refueling is a unique Department of the Air Force operation demonstrating the capabilities of our systems and the professionalism of our people.

**App. 188**

*Section 8C—Media Operations Public Affairs Travel*

**8.10.  Media Travel Objectives.**  Media travel is one of the Department of the Air Force's most credible PA tools. Properly planned and coordinated, media travel can dramatically expand a media representative's understanding of the Air Force and Space Force missions, equipment, and people. Most media travel requests are for air transportation. This section only addresses policies and procedures related to air transportation. DoDI 4515.13 outlines the authorities that may approve media travel aboard DoD-owned aircraft. Commanders will not commit Department of the Air Force transportation prior to obtaining approval from proper authorities. **(T-1).**

**8.11.  Media Operations Travel Approval Authority.**

**Table 8.2.  Specific Approval Authority for Media Travel**

| Event | Participants | Participation Approval | Operational Approval |
|---|---|---|---|
| Local Travel[7]<br><br>(CONUS or OCONUS) | Local and Regional-level News Media | MAJCOM/PA [1,3] | MAJCOM/CC[1] |
| Local Travel[7]<br><br>(CONUS or OCONUS) | National and International-level News Media | MAJCOM/PA[3]<br><br>Inform: SAF/PAO | MAJCOM/CC[1] |
| Local Travel[7]<br><br>(CONUS or OCONUS) | Foreign National News Media | Consult SAF/PAO for current procedures.[8] | MAJCOM/CC[1] |
| Non-Local Travel<br><br>(CONUS) | Local and Regional-level News Media | MAJCOM/PA[3] | MAJCOM/CC[2] |
| Non-Local Travel<br><br>(CONUS) | National and International-level News Media | MAJCOM/PA[3]<br><br>Inform: SAF/PAO | MAJCOM/CC[2] |
| Non-Local Travel | Foreign National | Consult SAF/PAO for current procedures.[8] | MAJCOM/CC[2] |

| (CONUS) | News Media | | |
|---|---|---|---|
| Intertheater Travel<br><br>(CONUS to OCONUS) | News Media | OSD/PA[4], Affected Theater Air Component PAs[5] (for example, Department of the Air Forces Central Command/PA) | The CC with air asset OPCON.<br><br>Contact theater PA and AMC/PA for guidance. |
| Intertheater Travel<br><br>(OCONUS to OCONUS) | News Media | OSD/PA[6], Affected Theater Air Component PAs[5] | The CC with air asset OPCON, most likely AMC commander.<br><br>Contact theater PA and AMC/PA for guidance. |
| Intratheater Travel<br><br>(OCONUS) | News Media | Theater Air Component PA (for example, U.S. Central Command/PA or Department of the Air Forces Central Command/PA) | The CC with air asset OPCON, (for example, C/ Joint Forces Air Component Commanders for tactical airlifters, AMC commander for strategic airlifters, C/JSOACC for special operations aircraft).<br><br>Contact theater PA and AMC/PA for guidance. |

**Notes:**

1. MAJCOM/CC may delegate operational approval authority to Wing/CC via delegation memorandum.

2. MAJCOM/CC may delegate operational approval authority to MAJCOM/CD or MAJCOM/A3 via delegation memorandum.

3. MAJCOM/PA will inform HHQ.

4. OSD/PA approval portion may be delegated to Service PA (for example, SAF/PAO). Approval must still be obtained from air component PA in affected theaters of operation.

5. Theater Air Component approval is obtained through the theater or country clearance process initiated during the Aircraft and Personnel Automated Clearance System process.

6. May be delegated to theater air component PA offices

7. See **paragraph 8.3.4.1.**

> 8. See **paragraph 8.2.1.2.** Established approval levels based on type of travel still apply, but hosting units should contact SAF/PAO (via chain of command) for additional information.

**8.12. Submission Guidelines.** For submission guidelines for hosting intertheater media travel, see AFMAN 35-101, **Chapter 7**.

**8.13. Special Considerations for Media Travel.**

8.13.1. Emergencies, Natural Disasters. Consider providing transportation for news coverage of an emergency or natural disaster, where coverage would be impaired or delayed to the serious detriment of the Department of the Air Force unless transportation by DoD-owned or controlled aircraft is provided. SAF/PA is the approval authority, unless otherwise specified.

8.13.2. Aeromedical Evacuation Flights. Media requests to travel aboard aeromedical evacuation flights are considered on a case-by-case basis. Since these flights involve injured service members from all branches of the DoD, requests are coordinated with the Surgeon General Public Affairs for each branch represented. Air Mobility Command normally has OPCON of aeromedical evacuation missions; therefore AMC/PA is the point of contact for all services' Surgeon General Public Affairs coordination. Contact AMC/PA, Media Operations Division, to route requests. AMC requires a minimum 30-day notice for required aeromedical evacuation coverage approvals. A qualified PA escort is required for all media travel aboard aeromedical evacuation flights. Patients are not to be photographed or interviewed without a signed authorization. A signed authorization is also required for medical staff to release information about patients. See **Chapter 7, Visual Information**, for additional details on imagery release procedures. Current consent forms may be obtained from AMC/PA prior to departure.

8.13.3. Deployments and Major Exercises. Instead of processing numerous individual requests for overseas travel for media covering deployments and major exercises, sponsoring MAJCOMs may request one-time blanket participation approval from OSD/PA (unless delegated) through SAF/PA for media travel supporting coverage of the exercise or deployment. The appropriate MAJCOM approval authority approves the use of air assets supporting media travel in conjunction with a deployment or exercise. The use of the air assets is coordinated with the gaining Combatant Command.

# Chapter 9

## SECURITY AND POLICY REVIEW PROCESS

**9.1. Purpose of Security and Policy Review.**  Security and policy review represents an ongoing effort to inform and increase public understanding of the mission, operations, and programs of the Department of the Air Force. The purpose of the security review is to protect classified information, controlled unclassified sensitive information, unclassified information that may individually, or in aggregate, lead to an unauthorized disclosure, or controlled unclassified information that could adversely impact national and operational security. The purpose of policy review is to ensure no conflict exists with established Department of the Air Force, DoD, or other U.S. government agency policies. The PA officer at the lowest level, where approval authority exists, oversees all aspects of the security and policy review coordination process.

9.1.1.  PA offices must ensure the security and policy review process includes coordination with operations security offices, and any other person engaged in security of classified or controlled unclassified information, to ensure security and policy reviews are properly processed for release. **(T-1).**

9.1.2.  PA offices that suspect unauthorized disclosures of classified and controlled unclassified information will report the occurrence to the Wing or installation Information Protection Office in accordance with AFI 16-1404. **(T-1).**

9.1.3.  All Department of the Air Force military and civilian personnel, including ANG and AFR personnel, retired military members, and former military and Department of the Air Force civilian employees will use this review process to ensure DoD-related information released to the public is consistent with their requirement to safeguard classified material. **(T-0).**

9.1.3.1.  Commanders and directors will ensure all active duty military, civilian, and contractor personnel assigned to their organization are briefed on this requirement annually. **(T-1).**

9.1.3.2.  PA-produced products are reviewed by PA professionals for security, accuracy, propriety, and policy to determine releasability.

**9.2. General Guidelines.**

9.2.1. Maximum Disclosure. The Department of the Air Force supports the policy of maximum public release disclosure related to Air and Space Forces operations and activities. Air Force and Space Force PA offices will clear the maximum amount of information at the lowest competent review level. **(T-0).**

9.2.2. Clearance Authority. Authority and direction for conducting security and policy review are derived from AFI 16-1404 and DoDI 5230.29.

9.2.2.1.  Clearance versus release. The security and policy review process determines the suitability for public release of information. A clearance does not grant an approval to release the information. Release of information is the decision of the originator of the document, often reached through coordination with the chain of command. While the

security portion of the security and policy process identifies classified or sensitive information, it does not classify or declassify information.

9.2.2.2.  Department of the Air Force material may be released to the public domain only after it has been reviewed for security and policy consistency and cleared by an appropriate authority in PA.

9.2.2.3.  Originators must not release copies of any material outside official channels until the security and policy review authority determines the document is cleared for the public domain. **(T-0).** To protect against inadvertent public release, distribution of documents under review should be limited until the review is complete.

9.2.2.4.  Disclosure of administrative errors, differences of opinions, or ineptitude are not grounds for denial of public release.

9.2.2.5.  Department of the Air Force offices and functional elements are expected to render expert opinion during the review process and must provide prompt response, guidance, and assistance to the security and policy review authority. **(T-2).**

9.2.2.6.  Department of the Air Force personnel should make no commitments, including date of delivery, or furnish abstracts or manuscripts to non-military publications, until cleared through security and policy review channels.

9.2.2.7.  PA offices should be active in educating Airmen and Space professionals about information that must be cleared, regardless of the medium used. Commanders or their designated representatives must approve information for release about an installation's activities. **(T-1).**

9.2.2.8.  Clearance authority must be delegated to the PA organization at the lowest echelon qualified to evaluate the contents and implications of the subject. **(T-1).**

9.2.2.9.  The PA organization with security and policy review authority will clear unclassified information of local or regional interest. **(T-1).**

**9.3.  Air Force Installation and Mission Support Center.** The AFIMSC/PA office will serve as the single intermediate headquarters for information originating at the wing-level that requires HHQ review by all MAJCOMs and Field Commands except AFR Command and ANG. Regular component wing level PA offices that require higher echelon security and policy review of information proposed for release will forward the material to AFIMSC/PA. **(T-2).** A change to this process at the MAJCOM, Field Command, or installation/wing level requires submission of a written waiver to AFIMSC/PA, which must also be approved by SAF/PA. See the **AFIMSC Security and Policy Review SharePoint** ™ site for more information. (**https://org2.eis.af.mil/sites/13948/spr/SitePages/Home.aspx**).

9.3.1.  AFIMSC/PA will develop and distribute guidance to MAJCOM/PA offices that details the process for submitting cases for security and policy review to AFIMSC. Contact AFIMSC at **afimsc.pa.workflow@us.af.mil** for additional guidance.

9.3.2.  AFIMSC/PA will coordinate clearance with the appropriate MAJCOMs, Field Commands, or AFIMSC subject matter experts, as required, and elevate material that cannot be cleared at the intermediate level to SAF/PA.

**9.4.  Material that Requires Submission.** DoDI 5230.09, *Clearance of DoD Information for Public Release*, requires that information proposed for public release relating to the plans, policies, programs, or operations of DoD or U.S. government be sent through PA channels to the appropriate echelon for review. Whether information is prepared as an official release or a personal enterprise, it must be reviewed and cleared before release. **(T-0).** Originators must ensure disclaimers accompany all documents they authorize in a private capacity. **(T-0).** An appropriate disclaimer is: "The views expressed are those of the author and do not necessarily reflect the official policy or position of the Department of the Air Force, the Department of Defense, or the U.S. government."

9.4.1.  Contractors. Contractors must submit material proposed for public release for review according to valid contract requirements as specified in DD Form 254, *Department of Defense Contract Security Classification Specification*, DoD 5220.22-R, and DoD 5220.22-M, *National Industrial Security Program Operating Manual*. **(T-0).**

9.4.2. Academic Public Release Policy. DoD gives its personnel assigned in an academic environment the widest latitude to express personal views. To ensure a climate of academic freedom and to encourage intellectual expression, students and faculty members assigned or attached to a military academy, college, university, or DoD leadership school are not required to submit papers or material prepared for internal use in response to academic requirements. If the papers or material are intended for public release, to include public library availability, databases, and websites, they must be submitted for security and policy review. **(T-1).**

9.4.3.  A full list of products that require review can be found on the SAF/PA Public Affairs Information Release System site at **https://www.pairs.hq.af.mil/**. Some of these include speeches, presentations, papers, posters, technical reports, multimedia and VI material, and information proposed for release to publicly accessible websites. See **Chapter 5**, *Command Information and Distribution*, for official PA website management guidance.

**9.5.  Secretary of the Air Force Office of Public Affairs (SAF/PA) and/or Defense Office of Prepublication and Security Review (DOPSR) Clearances.** Originators must receive SAF/PA or DOPSR approval for the following types of material requesting public release:

9.5.1.  Originates, or is proposed for release, in the Washington D.C. metropolitan area. This policy does not apply to technical papers intended for presentation at conferences or meetings that do not fall under other categories of required submission. When in doubt, submit. **(T-0).**

9.5.2.  Has the potential to become an item of national or international interest. All three- and four-star general officers and their civilian equivalents' written and oral public presentations are considered to be "of national and international interest." **(T-0).**

9.5.3.  References President and Secretary of Defense authority. **(T-0).**

9.5.4.  Affects national security policy or foreign relations. **(T-0).**

9.5.5.  Concerns subjects of potential controversy among DoD components or with other federal agencies. **(T-0).**

9.5.6. Information presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson. This information requires DOPSR approval. All three- and four-star generals and their civilian equivalents are

considered DoD representatives as are HAF 2-letter GOs and civilian equivalents (including those below three star). Information presented by general officers and civilian equivalents that contains only information that has been previously cleared or released by the Department of the Air Force, such as Department of the Air Force messages or restatements of the Department of the Air Force policies, may be cleared locally. **(T-0).**

9.5.7.  Contains technical data, including data developed under contract or independently developed and controlled by the International Traffic in Arms Regulations that may be militarily critical, but on which a distribution determination has not been made. **(T-0).**

9.5.8.  New weapons or weapon systems, significant modifications or improvements to existing weapons or weapon systems, equipment, or techniques. **(T-0).**

9.5.9.  Military operations, significant exercises, and operations security. **(T-0).**

9.5.10.  Military activities or applications in space; nuclear weapons, including weapon-effects research; chemical and biological warfare issues; biological and toxin research; high-energy lasers and particle beam technology; and arms control treaty implementation. **(T-0).**

9.5.11.  Any other contemporary topic that is designated by DOPSR or SAF/PA. **(T-0).**

9.5.12.  Any former active-duty, Reserve, Guard, DoD civil servant employee not assigned and or attached to a military facility near a Department of the Air Force military installation. **(T-0).**

9.5.13.  **See Attachment 3** , *Triggers for Potential Elevation of Security and Policy Review Cases*, for "trigger" words and topics that signal the potential need to elevate a security and policy review case. If in doubt, contact AFIMSC/PA or SAF/PA for guidance.

**9.6.  Information Not Requiring Review.**

9.6.1.  Information not involving DoD operations, installations, or personnel.

9.6.2.  Personal letters to the editor, book or theatrical reviews when expressing a personal opinion, and works of fiction (short stories, novels, and plays) that are not derived from DoD experience. However, such information must not imply Department of the Air Force or DoD participation or sanction. When there is doubt as to the sensitivity of the information, submit it for review.

9.6.3.  Department of the Air Force publications. Department of the Air Force publications are not submitted for security and policy review. It is incumbent upon the office of primary responsibility to ensure the content is unclassified and suitable for public release and posting to a public website. Detailed instructions for all facets of publications and forms management can be found in DAFI 33-360.

**9.7.  Content Restrictions.** Department of the Air Force military and civilian personnel may write articles for open publication, unless such activity:

9.7.1.  Conflicts with the public receiving prompt and complete information on government activities through the media.

9.7.2.  Violates laws or policies.

9.7.3.  Violates ethical standards or does not comply with DoD 5500.07-R.

9.7.4.  Uses official DoD information generally not available to the public, and that would not be released under DoDM 5400.07_AFMAN 33-302.

**9.8. Submission of Material.** For planning purposes, submitters should normally allow a minimum of 10 work days for security and policy review. The 10-day clock begins when the receiving approval authority receives all required documents. Some complex documents, dissertations, manuscripts, theses, videos, etc., may require HHQ review, including SAF/PA, DOPSR, and other federal agencies, and can take an additional 45-60 days to process. Work days required does not include the date of submission. For guidelines on how to submit material for security and policy review, see AFMAN 35-101, **Chapter 8,** *Security and Policy Review Process*.

**9.9. Recommended Program Guidelines.** PA offices will have a security and policy review program. **(T-0).** The appointment security and policy review program coordinator must thoroughly understand the purpose of, and their responsibility for, the coordination of security and policy review. **(T-1).** For guidelines on how to run a security and policy review program at an installation, including specific review considerations, see AFMAN 35-101, **Chapter 8,** as well as the AFIMSC/PA and SAF/PA SharePoint ™ sites.

**9.10. Security and Policy Review Process Requirements.** Security and policy review programs should all follow the same procedures. See AFMAN 35-101, **Chapter 8,** for step-by-step instructions on how to perform security and policy review for any submitted material.

**9.11. Appeal Procedures.** All amendments or "not cleared" determinations may be appealed in writing by the requester within 60 days. Appeals must provide strong supporting rationale and authoritative evidence. Review authorities evaluate and decide appeals based only on the additional evidence or reasoning provided. All appeals will be resolved at the next echelon level. When necessary, AFIMSC will elevate active-duty wing-level appeals to SAF/PA. SAF/PA will arrange for the appeal to be considered. The Administrative Assistant to the Secretary of the Air Force, will act as the appellate authority for the Department of the Air Force security and policy review process.

PATRICK S. RYDER, Brigadier General,
USAF
Director of Public Affairs

**Attachment 1**

**GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**

*References*

AFH 35-115, *Visual Information,* [DATE]

AFI 1-1, *Air Force Standards*, 7 August 2012

AFI 1-2, *Commander's Responsibilities*, 8 May 2014

AFI 10-403*, Deployment Planning and Execution,* 17 April 2020

AFI 10-2501, *Emergency Management Program*, 10 March 2020

AFI 10-701*, Operations Security (OPSEC),* 24 July 2019

AFMAN 11-202 V3, *Flight Operations*, 10 June 2020

AFI 11-209, *Participation in Aerial Events*, 22 May 2018

AFI 11-401, *Aviation Management*, 10 December 2010

AFI 13-1AOC, V3, *Operational Procedures-Air Operations Center (AOC),* 1 August 2005

AFI 13-103, *AFFOR Staff Operations, Readiness and Structures*, 19 August 2014

AFI 16-201, *Air Force Foreign Disclosure and Technology Transfer Program*, 2 June 2015

AFI 16-1404, *Air Force Information Security Program*, 25 May 2015

AFI 23-111*, Management of Government Property in Possession of the Air Force*, 19 November 2018

AFI 24-301, *Ground Transportation,* 22 October 2019

AFI 24-602 Volume 1, *Passenger Movement*, 28 April 2017

AFI 25-201, *Intra-Service, Intra-Agency, And Inter-Agency Support Agreements Procedures*, 18 October 2013

AFI 33-322, *Records Management and Information Governance Program*, 23 March 2020

AFI 33-332*, Records Management and Information Governance Program, 10 March 2020*

AFI 34-108, *Commercial Sponsorship and Sale of Advertising,* 21 August 2018

AFI 34-219, *Alcoholic Beverage Program*, 30 April 2019

AFI 34-501, *Mortuary Affairs Program,* 16 April 2019

AFI 35-109, *Visual Information*, 1 June 2017

AFI 35-110, US *Air Force Bands*, 12 September 2017

AFI 35-114, *Department of the Air Force Branding and Trademark Licensing Program*, 26 March 2015

AFI 36-809, *Civilian Survivor Assistance*, 20 March 2019

AFI 36-2608, *Military Personnel Records System*, 26 October 2015

AFI 36-2629, *Individual Reservist (IR) Management*, 5 July 2018

AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel*, 7 February 2020

AFI 38-101, *Manpower and Organization,* 29 August 2019

AFI 41-200, *Health Insurance Portability and Accountability Act (HIPAA), 25 July 2017*

AFI 48-104, *Tobacco Free Living,* 11 July 2019

AFI 51-301, *Civil Litigation*, 2 October 2018

AFI 51-303*, Intellectual Property-Patents,* 22 June 2018

AFI 51-307, *Aerospace and Ground Accident Investigations*, 18 March 19

AFI 51-506, *Gifts to the Department of the Air Force from Domestic and Foreign Sources*, 16 April 2019

AFI 51-508, *Political Activities, Free Speech and Freedom of Assembly of Air Force Personnel*, 12 October 2018

AFI 52-101, *Planning and Organizing,* 15 July 2019

AFI 61-201*, Management of Scientific and Technical Information (STINFO)*, 29 January 2016

AFI 63-138, *Acquisition of Services,* 30 September 2019

AFI 64-117, *Government Purchase Card Program,* 22 June 2018

AFI 65-106, *Appropriated Fund Support of Morale, Welfare, and Recreation (MWR) and Other Nonappropriated Fund Instrumentalities (NAFIS)*, 15 January 2019

AFI 65-603, *Emergency and Extraordinary Expense Authorit*y, 29 April 2020

AFI 71-101V1, *Criminal Investigations Program*, 1 July 2019

AFI 71-101V2, *Protective Service Matters*, 21 May 2019

AFI 71-101V4, *Counterintelligence,* 2 July 2019

AFI 90-201, *The Air Force Inspection System*, 20 November 2018

AFI 91-204, *Safety Investigation and Hazard Reporting*, 27 April 2018

AFI 90-301, *Inspector General Complaints Resolution*, 28 December 2018

AFI 90-401, *Air Force Relations with Congress*, 15 September 2020

AFMAN 10-206, *Operational Reporting*, 18 June 2018

AFMAN 10-1004, *Conducting Air Force Open Houses*, 23 August 2018

AFMAN 11-2FT V1, *Flight Test Aircrew Training*, 26 February 2019

AFMAN 11-2FT V2, *Flight Test Aircrew Evaluation Criteria*, 21 March 2019

AFMAN 11-2AP, V1, *Combat Camera Aircrew Training*, 12 July 2018

AFMAN 11-2AP, V2, *Combat Camera Evaluation Criteria*, 12 July 2018

AFMAN 11-2AP, V3, *Combat Camera Operational Procedures*, 12 July 2018

AFMAN 11-202 V3, *Flight Operations*, 10 June 2020

AFMAN 11-502, *Small Unmanned Aircraft Systems,* 29 July 2019

AFMAN 13-204, V2, *Airfield Operations Standardization and Evaluations*, 22 July 2020

AFMAN 17-2101, *Long-haul Communications Management*, 22 May 2018

AFMAN 31-115 *Air Force Corrections System,* 28 August 2019

AFMAN 33-326, *Preparing Official Communications*, 31 July 2019

AFMAN 34-201, *Use of Nonappropriated Funds (NAFS)*, 28 Sep 2018

AFMAN 35-101, *Public Affairs Procedures*, 2020

AFMAN 36-2032, *Military Recruiting and Accessions,* 27 September 2019

AFMAN 36-2806, *Awards and Memorialization Program,* 10 June 2019

AFMAN 41-210, *Tricare Operations and Patient Administration*, 10 September 2019

*Allowance Standard 629*

*Ast SecDef for PA Memo, Determination of Military Band Participation in Certain Military Relief Activities*

HAFMD 1-28, *Director of Public Affairs*, 10 December 2015

CJCSI 3205.01D, *Joint Combat Camera (COMCAM)*, 20 October 2014

Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 1980

DAFI 33-360, *Publications and Forms Management*, 21 October 2020

DAFPD 35-1, *Public Affairs Management*, 8 March 2018

DAFPD 65-6, *Budget*, 27 September 2019

DAFPD 71-1, *Criminal Investigations and Counterintelligence*, 1 July 2019

DHA PI 5400.01, *Public Affairs and Strategic Communications,* 15 July 2019

*DoD PA Guidance on Political Campaigns and Elections*

*DoD Visual Information Style Guide*

DoD 5220.22-M, *National Industrial Security Program Operating Manual*, 28 February 2006

DoD 5220.22-R, *Industrial Security Regulation*, 4 December 1985

DoD 5400.11-R, *Department of Defense Privacy Program*, 14 May 2007

DoDD 5122.05, *Assistant to the Secretary of Defense for Public Affairs (ATSD(PA))*, 7 August 2017

DoDD 5410.18, *Public Affairs Community Relations Policy*, 20 November 2001

DoD 5500.07-R, *Joint Ethics Regulation,* August 1993

DoDI 5160.48, *DoD Public Affairs and Visual Information (PA&VI) Education and Training (E&T)*, 21 March 2011

**App. 199**

DoDI 5230.09, *Clearance of DoD Information for Public Release*, 25 January 2019

DoDI 1300.18, *Department of Defense (DoD) Personnel Casualty Matters, Policies, and Procedures*, 8 January 2008

DoDI 1304.28, *Guidance for the Appointment of Chaplains for the Military Departments,* 11 June 2004

DoDI 1325.07, *Administration of Military Correctional Facilities and Clemency and Parole Authority*, 11 March 2013

DoDI 4515.13, *Air Transportation Eligibility*, 22 January 2016

DoDI 4515.14, *Washington Local Commuting Area,* 28 June 2013

DoDI 5040.02, *Visual Information (VI)*, 27 October 2011

DoDI 5040.07, *Visual Information (VI) Productions*, 21 February 2013

DoDI 5120.04, *DoD Newspapers, Magazines, Guides, and Installation Maps*, 17 March 2015

DoDI 5122.08, *Use of DoD Transportation Assets for Public Affairs Purposes*, 17 December 2014

DoDI 5230.09, *Clearance of DoD Information for Public Release*, 25 January 2019

DoDI 5230.16, *Nuclear-Radiological Incident Public Affairs (PA) Guidance*, 6 October 2015

DoDI 5230.29, *Security and Policy Review of DoD Information for Public Release*, 13 August 2014

DoDI 5405.03, *Development, Submission, and Approval of Proposed Public Affairs Guidance (PPAG)*, 18 February 2016

DoDI 5410.15, *DoD Public Affairs Assistance to Non-Government, Non-Entertainment-Oriented Print and Electronic Media*, 28 March 1989

DoDI 5410.16, *DoD Assistance to Non-Government, Entertainment-Oriented Media Productions*, 31 July 2015

DoDI 5410.19, *Public Affairs Community Relations Policy Implementation*, 13 November 2001

DoDI 7750.07, *DoD Forms Management Program*, 10 October 2014

DoDI 8010.01, *Department of Defense Information Network Transport (DoDIN)*, 10 September 2018

DoDI 8170.01, *Online Information Management and Electronic Messaging*, 2 January 2019

DoDM 5400.07_AFMAN 33-302, *Freedom of Information Act Program*, 27 April 2018

**(HIPAA)** *Privacy Rule in DoD Health Care Programs,* 13 March 2019

DoDM 6025.18, *Implementation of the Health Insurance Portability and Accountability Act (HIPPA) Privacy Rule in DoD Health Care Programs*, 13 March 2019

EO 12356, *National Security Information*, 2 April 1982

Freedom of Information Act, *Section 508*, 1978

**App. 200**

JDN 2-13, *Commander's Communication Synchronization*, 16 December 2013

Joint Ethics Regulation, DoD 5500.07-R

National Environmental Policy Act (NEPA), 1969

NG Pam360-5/ANGP 35-1, *National Guard Public Affairs Guidelines*, 6 June 2008

OMB Memo 05-04, *Policies for Federal Agency Public Websites, 17 December 2004*

OMB Memo 17-06, *Policies for Federal Agency Public Websites and Digital Services*, 8 November 2016

OSD Memo 17746-05, *Withholding of Information that Personally Identifies DoD Personnel*, 1 September 2005

Title 50 USC § 3002 et seq., *National Security Act of 1947*, 1947

PL 104-191, *Health Insurance Portability and Accountability Act of 1996,* 1996

PL 107-174, *The Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002*, 2002

Public Law 107-198, *Small Business Paperwork Relief Act of 2002*

PL 113-101, *Digital Accountability and Transparency Act,* 9 May 2014

Resource Conservation Recovery Act (RCRA), 1976

Section 508, *Rehabilitation Act*, 18 January 1998

-5 CFR § 2635.203, *Standards of Ethical Conduct for Employees of the Executive Branch; Amendment to the Standards Governing Solicitation and Acceptance of Gifts from Outside Sources*

-5 CFR § 2635.204, *Standards of Ethical Conduct for Employees of the Executive Branch*

-5 CFR § 2635.807, *Teaching, Speaking and Writing*

-5 CFR § 2635.808, *Fundraising Activities*

-5 USC § 102, *Government Organization and Employees Military Departments*

-5 USC § 105, *Government Organization and Employees*, *Executive A*gency

-5 USC § 552, *Freedom of Information Act*

-5 USC § 552a, *The Privacy Act*

-5 USC § 7323, *Political Activity Authorized; Prohibited*

-10 USC § 2566, *Space and Services*

-10 USC § 9013, *Secretary of the Air Force*

-17 USC § 101, C*opyrig*hts

-17 USC § 102(a), *Subject Matter of Copyright: In General*

-17 USC § 105, *Subject Matter of Copyright: United States Government Works*

-29 USC § 794, *Nondiscrimination under Federal Grants and Programs*

-42 USC § 4321et seq., *National Environment Policy*

-42 USC § 4334, *National Environmental Policy*

-42 USC Chapter 103, *Comprehensive Environmental Response Compensation and Liability*

-42 USC Chapter 116, *Emergency Planning and Community Right-To-Know*

-42 USC § 6901 et seq., *Resources Conservation and Recovery Act*

-44 USC § 3501-3521, *Paperwork Reduction Act*

-50 USC, § 797, *Penalty for Violation of Security Regulations and Order*

-50 USC § 3002 et seq., *National Security Act of 1947*

### Adopted Forms

AF Form 3902, *Application and Approval for Off-Duty Employment*

AF Form 601, *Authorization Change Request*

AF Form 847, *Recommendation for Change of Publication*

AF Form 9, *Request for Purchase*

DD Form 254, *Department of Defense Contract Security Classification Specification*

DD Form 553, *Deserter/Absentee Wanted by the Armed Forces*

DD Form 2535, *Request for Military Aerial Support*

DD Form 2536, *Request for Armed Forces Participation in Public Events (Non-Aviation)*

DD Form 2830, *General Talent Release*

DD Form 2831, *General Release Where Talent Fee or Other Remuneration or Recompense Accrues to the Participant*

DD Form 2832, *Release Granting the U.S. Government Permission to Photograph or Otherwise Record the Visual Image or Sound of Private Property*

DD Form 2833, *Release Granting the U.S. Government Permission to Record and Reproduce Program Material Transmitted by Educational or Commercial Broadcast Stations*

DD Form 2870, *Authorization for Disclosure of Medical or Dental Information*

### Prescribed Forms

AF Form 833, *Multimedia Work Order*

### Abbreviations and Acronyms

**ACC**—Air Combat Command

**AFH**—Department of the Air Force Handbook

**AFI**—Department of the Air Force Instruction

**AFIMSC**—Air Force Installation and Mission Support Center

**App. 202**

**AFMAN**—Air Force Manual

**AFPAA**—Air Force Public Affairs Agency

**AFPIMS**—American Forces Public Information Management System

**AFR**—Air Force Reserve

**AFSC**—Air Force Specialty Code

**AIB**—Accident Investigation Board

**AMC**—Air Mobility Command

**AMC/PA**—Air Mobility Command Public Affairs

**ANG**—Air National Guard

**AOR**—Area of Responsibility

**AS**—Allowance Standard

**BVIM**—Base Visual Information Manager

**CFETP**—Career Field Education and Training Plan

**CFR**—Code of Federal Regulations

**Combatant Command**—Combatant Command

**COMCAM**—Combat Camera

**CONUS**—Continental United States

**COTS**—Commercial Off The Shelf

**CUI**—Controlled Unclassified Information

**C-ISP**—Commercial Internet Service Provider

**DMA**—Defense Media Activity

**DoD**—Department of Defense

**DoDD**—Department of Defense Directive

**DoDI**—Department of Defense Instruction

**DOPSR**—Defense Office of Prepublication and Security Review

**DRU**—Direct Reporting Unit

**DVIAN**—Defense Visual Information Activity Number

**DVIDS**—Defense Visual Information Distribution Service

**EIAP**—Environmental Impact Analysis Process

**ESOH**—Environment, Safety and Occupational Health

**FAA**—Federal Aviation Administration

**FOA**—Field Operating Agency

**FOIA**—Freedom of Information Act

**GS**—General Schedule

**HHQ**—Higher Headquarters

**HIPAA**—Health Insurance Portability and Accountability Act

**HQ**—Headquarters

**IG**—Inspector General

**JIC**—Joint Information Center

**JTF**—Joint Task Force

**MAJCOM**—Major Command

**MDRB**—Multidisciplinary Review Board Quality Assurance

**MIA**—Missing in Action

**NCO**—Non-commissioned officer in charge

**NCR**—National Capital Region

**NOK**—Next of Kin

**NAF**—Numbered Department of the Air Force

**OCONUS**—Outside of Continental United States

**OMB**—Office of Management and Budget

**OPCON**—Operational Control

**OPR**—Office of Primary Responsibility

**OPSEC**—Operations Security

**OSC**—On-site Commander

**OSD**—Office of the Secretary of Defense

**PA**—Public Affairs

**PAO**—Public Affairs Officer

**PFAS**—Perfuoroalkyl Substance

**PFOA**—Perflurooctanoic Acid

**PFOS**—Perfoluorooctane Sulfonate

**PHI**—Protected Health Information

**PII**—Personally Identifiable Information

**POW**—Prisoner of WAR

**PPAG**—Proposed Public Affairs Guidance

**QAE**—Quality Assurance Evaluator

**SJA**—Staff Judge Advocate

**SNCO**—Senior noncommissioned officer

**ToS**—Terms of Service

**URL**—Uniform Resource Locator (also known as a web address)

**U.S.**—United States

**USAF**—United States Air Force

**USAFA**—U.S. Air Force Academy

**USSF**—United States Space Force

**UTC**—Unit Type Code

**VI**—Visual Information

**VIDOC**—Visual Information Documentation

*Terms*

**Agency**—Any "Executive agency," as defined in Title 5 United States Code Section 105; any "military department" as defined in Title 5 United States Code Section 102; and any other entity within the Executive Branch that comes into the possession of classified information.

**Air Staff**—Primarily composed of uniformed U.S. Air Force officials who assist the Chief of Staff in carrying out his dual-hatted role.

**Appeals**—All amendments or "not cleared" determinations may be appealed in writing by the requester within 60 days to DOPSR.

**Blog**—A social media site used to convey a message through writers' own experiences, thoughts, opinions, etc. Similar to a commentary, this platform is more informal in nature and can be used to communicate more personably.

**Career Field Education and Training Plan (CFETP)**—A CFETP is a comprehensive core training document that identifies life-cycle education and training requirements, training support resources, and minimum core task requirements for a specialty. The CFETP establishes a clear career field training path.

**Commander's Communication Synchronization (CCS)**—A commander's planning process that implements higher-level communication guidance by facilitating coordination and synchronization of themes, messages, images, actions, and operations. The process ensures communication integrity and consistency to the lowest tactical level across relevant communication activities. It is described in JDN 2-13.

**Commercial Enterprise**—A business that engages in buying and selling activities on a large scale for the purposes of making a profit.

**Content Management System**—The software application used to upload, edit, and manage content displayed on a website.

**Department of the Air Force**—Is one of the three military departments within the Department of Defense of the United States of America.  The Department of the Air Force was formed on

**App. 205**

September 18, 1947, per the National Security Act of 1947 and it includes all elements and units of the United States Air Force (USAF) and the United States Space Force (USSF).

**Document**—Any recorded information, regardless of the nature of the medium or the method or circumstances of recording.

**Ex-officio**—Local commanders are able and often invited to attend local community organizational meetings "by virtue" of their position on the installation. However, they may only attend in a representative capacity on behalf of the Department of the Air Force and cannot participate in any voting functions or official committee decisions.

**Garrison**—A permanent military installation.

**Information**—Any knowledge that can be communicated or documentary material, regardless of its physical form or characteristics, which is owned by, produced by or for, or is under the control of the U.S. government. Control means the authority of the agency that originates information, or its successor in function, to regulate access to the information.

**Intratheater airlift**—Airlift conducted within a theater of operations.

**Intertheater airlift**—Travel conducted between one or more theaters of operation.

**Local Travel**—Travel is local with respect to each MAJCOM or Field Command and the Air Force or Space Force installation involved. Travel is local when an air asset takes off and lands at the same location on the same day, regardless of where the air asset is stationed. Local travel is within the scope of interest in the PA program hosting the travel. Local travel may be defined differently in an OCONUS AOR; consult the theater PA for guidance. Local travel may include an intermediate stop at a locally owned and operated but geographically separated training area and flight is accomplished within allocated flying hour funding (for example, training flights authorized).

**Manpower Authorization**—A funded manpower requirement with detail that defines the position in terms of its function, organization, location, skill, grade, and other appropriate characteristics, which commands use to extend end strength resources to units.

**Mobile App**—App is short for "application," which is the same thing as a software program. Unlike applications for traditional computers, which are normally website-based applications, mobile apps can only be obtained by downloading them from an online app store. Most devices automatically install apps when downloaded, which creates a seamless installation process for the user.

**Non-Local Travel**—Travel that lasts more than one day and concludes at the point of origin. Travel conducted in support of a PA program that affects more than one military department; OCONUS geographic regions or AOR; MAJCOMs, Field Commands or combatant commands. The travel scope of interest is of concern to a HHQ more than the military headquarters and or installation requesting the travel.

**Non-organic**—In terms of aviation support for public events (both on- and off-base, non-organic refers to aircraft that are not assigned to requesting installation).

**Operational Approval Authority**—Official representative authorized to approve operational use of a military carrier. The operational approval authority is designated based on OPCON of the air asset in use. If the operational approval authority is the MAJCOM/CC, it applies to the

MAJCOM having OPCON of the air asset. In some instances, operational approval authority may be delegated to the wing commander. See **Table 8.1 and Table 8.2** for specific guidelines.

**Official Information**—All information that is in the custody and control of the Department of Defense, relates to information in the custody and control of the Department, or was acquired by DoD employees as part of their official duties or because of their official status within the Department.

**Official Use**—For the purposes of this Instruction, includes authorized communication or activities conducted as an assigned DoD employee function.

**Open Publication**—The release or dissemination of information outside official government channels.

**Operations Security (OPSEC)**—A process of collecting, identifying, and analyzing information on friendly military operations and other activities to identify and minimize actions which inadvertently provide an adversary timely indication of military action or access to critical information. By identifying and denying this information, operational success and force protection are enhanced.

**Originator**—Creator of the document (for example, article, presentation, manuscript.)

**PA Participation Approval Authority**—Official PA representative authorized to confirm eligibility of passengers participating in PA travel and evaluate tour and travel plans to ensure they meet criteria. In some instances, participation approval authority may be delegated to the MAJCOM/PA or Field Command PA. See **Table 8.1 and Table 8.2** for specific guidelines.

**PA Travel**—Any travel that is part of an approved PA program and is in the interest of adding to the public understanding of military activities. It includes travel involving military or civilian, government or non-government, U.S. or foreign nationals, and requests may come from any level. It can be local or non-local.

**Personally Identifiable Information (PII)**—Information about an individual that identifies, links, relates, or is unique to, or describes him or her (such as, a social security number; age; military rank; civilian grade; marital status; race; salary; home or office phone numbers; other demographic, biometric, personnel, medical and financial information, etc.). Such information can be used to distinguish or trace an individual's identity, such as his or her name; social security number; date and place of birth; mother's maiden name; and biometric records, including any other personal information which is linked or linkable to a specified individual.

**Point-to-Point Travel**—Travel from one location to another, terminating at somewhere other than the departure location. Can be local (within non-local travel) or non-local.

**Program Objective Memorandum**—OSD directed, service developed document identifying money, people, and equipment requirements and allocations over a specified period of time, covering a five-year period. Program Objective Memorandum funding baselines are used to develop budget level detail for distribution of resources during budget execution years. The Program Objective Memorandum is developed by individual services to set objectives for their forces, weapon systems, and logistical support within the fiscal limits assigned to them by the Secretary of Defense.

**Protected Health Information (PHI)**—Individually identifiable health information that is transmitted or maintained by electronic or any other form or medium.  PHI excludes individually

identifiable health information in employment records held by a DoD covered entity in its role as employer.  Individually identifiable health information is protected under HIPAA when it is held by a covered entity or a business associate of a covered entity.

**Public Domain**—That area owned by the public. Information is in the public domain when it has been made available to the public.

**Public Web**—A U.S. Department of the Air Force Internet service on the world wide web used to disseminate, store or otherwise process information that has been cleared and authorized for release to the public.

**Security Review**—The security review protects classified information, controlled unclassified information, or unclassified information that may individually or in aggregate lead to the compromise of classified information or disclosure of operations security.

**Sensitive Information**—Unclassified information requiring special protection from disclosure that could cause compromise or threat to our national security, an Department of the Air Force organization, activity, military member, Department of the Air Force civilian, DoD contractor, or family member.

**Social Media Sites**—Any online social platform used to communicate a message, share information, or build relationships. These platforms include, but are not limited to, Facebook™, Myspace™, Flickr™, YouTube™, Instagram™, Pinterest™ and Twitter™.

**Social Media**—Any online social platforms or sites used to share information, communicate, and build relationships with the public.

**Space Force**—A new branch of the Armed Forces.  It was established on December 20, 2019 with enactment of the Fiscal Year 2020 National Defense Authorization Act.  It was established within the Department of the Air Force, meaning the Secretary of the Air Force has overall responsibility for the USSF, under the guidance and direction of the Secretary of Defense.

**Terms of Service (ToS)**—An agreement between DoD and an internet-based capabilities provider establishing the rights and responsibilities of the parties which covered the Department of the Air Force as a DoD entity with respect to the official use of the internet-based capabilities by DoD authorized users. ToS agreements do not include procurement contracts and may not create financial obligations or liabilities on behalf of the U.S. government.

**Unauthorized Disclosure**—A communication or physical transfer of classified information to an unauthorized recipient.

**Attachment 2**

**MULTIDISCIPLINARY REVIEW BOARD QUALITY ASSURANCE CHECKLIST**

**A2.1.** *Air Force Public Affairs Agency*

**A2.2.** Webpages must comply with the following requirements to meet Multidisciplinary Review Board Quality Assurance (MDRB-QA) standards. If not in compliance, explain on reverse or additional pages.

**Table A2.1.  Multidisciplinary Review Board Quality Assurance Checklist**

| | DEPARTMENT OF THE AIR FORCE PUBLIC WEB | | |
|---|---|---|---|
| # | CHECKLIST ITEMS | YES | NO |
| 1. | Memorandum of understanding submitted to Department of the Air Force Public Web is available in AFPIMS. | | |
| 2. | Site is listed on the **Department of the Air Force website** at https://www.af.mil/publicwebsites/index.asp. | | |
| 3. | Site has required link to Freedom of Information Act page (in footer). | | |
| 4. | Site is appropriate for the general public; content is suitable for global consumption; no content, links or promotion of obscene or offensive material. | | |
| 5. | Site complies with copyright restrictions, laws. Copyrighted material is only used with written permission from the owner. | | |
| 6. | Content and elements are not used to promote personal or commercial gain and do not endorse commercial products or services. | | |
| 7. | Site provides a feedback or request for further information mechanism (email or form). Organizational or generic email addresses are used. | | |
| 8. | Site does not encourage users to choose a specific browser. | | |
| 9. | The website is in compliance with AFI 35-101, *Public Affairs Operations*. | | |
| | **Links** | | |
| 10. | Links are recently validated. Pages do not display incomplete paths, blank pages, broken links or "under construction" pages. | | |
| 11. | Site does not contain links to information unrelated to the mission. Pages do not contain links or references to private-access websites. | | |

| | | | |
|---|---|---|---|
| 12. | Site contains links to higher headquarters sites. | | |
| 13. | Site does not link to CAC-enabled, protected pages because those appear as a broken links to users outside the US government. Link to a visible log-in page is permitted. | | |
| 14. | Links to non-government sites contain the appropriate disclaimer. | | |
| | **Section 508 / Accessibility** A text equivalent for all non-text items is provided using alternative text tags ("alt text"). | | |
| 16. | All video files have subtitles or a transcript. | | |
| 17. | All audio/ and sound files have a transcript. | | |
| 18. | Website complies with **29 USC § 794, Rehabilitation Act of 1998**. (https://www.section508.gov.) | | |
| | **Operational Security (OPSEC)** Site does not include detailed maps or aerial photography of installation(s). | | |
| 20. | Pages do not store or process classified material or critical indicators on non-approved systems. | | |
| 21. | Site contains no confidential commercial, contractor or proprietary information. | | |
| 22. | Pages do not contain unclassified information requiring special handling according to AFMAN 330-152 33-113, *Managing Department of the Air Force Messaging Centers*. Pages do not contain any classified information or markings. | | |
| 23. | Pages do not contain Controlled Unclassified Information (information exempt from release under FOIA according to DoDM 5400.07_AFMAN 33-302, *Freedom of Information Act Program*. | | |
| 24. | Pages do not contain critical information (sensitive mission data by itself is unclassified, but when combined with other available data, may reveal classified information). | | |
| 25. | The website is in compliance with AFI 35-101, *Public Affairs Operations*. | | |
| | **Personally Identifiable Information (PII)** Biographies do not reveal names, addresses or other personally identifying information of family members of U.S. Department of the Air Force employees or members. | | |

| 27. | Directories, rosters and telephone listings indicate offices or organizations or duty titles of personnel <u>only</u>. No names. (Names of flag/ or general officers, PA officers or official command spokespersons may be published.) | | |
| 28. | Site does not contain personal information on DoD personnel, including personal email addresses, personal phone numbers, social security numbers, birthdates, etc. | | |
| 29. | Pages comply with the Privacy Act and include Privacy Act statements and advisories if soliciting information from individuals. Public pages do not contain PII unless clearly authorized by law and AFI 33-332, *Department of the Air Force Privacy and Civil Liberties Program*. | | |
| | | | |

**A2.3. This section certifies the applicable representatives have reviewed the Multidisciplinary Review Board standards. Each representative must print, sign and date in the appropriate section below.**

**Table A2.2.  Certified Applicable Representatives Review**

| UNIT | NAME (Print) | SIGNATURE | DATE |
|------|--------------|-----------|------|
| Public Affairs | | | |
| Communications | | | |
| Privacy Act | | | |
| | | | |

| | | | |
|---|---|---|---|
| Legal | | | |
| Contracting | | | |
| OPSEC | | | |
| Other (as needed) | | | |
| Other (as needed) | | | |
| Other (as needed) | | | |

**Figure A2.1.  Website Multidisciplinary Review Board Certification**

> **SECTION III.**
>
> This section certifies the website is in compliance per the Multidisciplinary Review Board.
>
> Website name:
>
> _____
>
> Website URL:
>
> _____
>
> Commander's printed name:

_____

Commander's signature:

_____

Date signed:

_____

**Attachment 3**

**TRIGGERS FOR POTENTIAL ELEVATION OF SECURITY AND REVIEW CASES**

**Figure A3.1.  Triggers for Potential Elevation of Security and Review Cases**

*This list is not all-inclusive and is subject to change. Contact AFIMSC/PA for more information.

Animal testing

Directed energy

New weapons or weapon systems, significant modifications or improvements to existing weapons or weapon systems, equipment, or techniques

Unmanned aerial system/unmanned aerial vehicle/remotely piloted aircraft (drones and remotely piloted aircraft)

Cyber warfare, cyber vulnerabilities, cyber research

F22/F35

Unexplained physiologic events/on-board oxygen generating system/hypobaria / hypoxia (unexplained physiological events, white brain matter, etc.)

High-energy lasers and particle beam technology; and arms control treaty implementation

Military activities or applications in space, nuclear weapons, including weapon-effects research

Military operations, significant exercises, and operations security

Chemical and biological warfare issues; biological and toxin research

Information related to current operations, readiness or posture for future operations

Vulnerabilities that could impact the readiness of units or operations involving other countries

Details of number, location, and capabilities of operational assets

Detailed descriptions of a sequence of events in an operational or training scenario, or exercise to include major exercises such as readiness assessment/evaluations or Flag/major training exercises

Detailed descriptions that reveal capability of unique command and control node (Space Operations Centers, Air Operations Centers, etc.)

Information that reveals tactics, techniques and procedures

Deployment schedules or locations

Originates, or is proposed for release, in the Washington D.C. metropolitan area

Is, or has the potential to become, an item of national or international interest

References President and Secretary of Defense authority

Affects national security policy or foreign relations

Concerns subjects of potential controversy among DoD components or with other federal agencies

Is information that is presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson

Contains technical data, including data developed under contract or independently developed and controlled by the International Traffic in Arms Regulations

Any other contemporary topic that is designated by the Defense Office of Prepublication and Security Review (DOPSR) (such as personnel readiness)

Work in conjunction with a sister service or other DoD component that has had no coordination documented when we receive materials

Work with another Department of the Air Force installation or wing that has had no coordination documented when we receive materials

Information on unit's critical information list

Sensitive space information

Materials reporting the release of, or Department of the Air Force response to, the release of, compounds containing Perfuoroalkyl substances (PFAS), including Perflurooctanoic acid (PFOA) or Perfoluorooctane sulfonate (PFOS).

# Exhibit 5

*BY ORDER OF THE*
*SECRETARY OF THE AIR FORCE*



*AIR FORCE MANUAL*

*35-101*

*7 DECEMBER 2020*

*Public Affairs*

*PUBLIC AFFAIRS PROCEDURES*

**COMPLIANCE WITH THIS PUBLICATION IS MANDATORY**

---

**ACCESSIBILITY:** Publications and forms are available on the e-Publishing web site at **www.e-publishing.af.mil/** for downloading or ordering.

**RELEASABILITY:** There are no releasability restrictions on this publication.

---

OPR:  SAF/PA

Certified by: SAF/PA
(Colonel Mark Sotallaro)
Pages: 79

---

This manual implements Air Force Policy Directive (AFPD) 35-1, *Public Affairs Management*, and Department of the Air Force Instruction (DAFI) 35-101, *Public Affairs Operations*, AFI 35-102, *Security and Policy Reviews*, AFI 35-105, *Community Engagement*, AFI 35-108, Environmental Public Affairs and provides guidance pertaining to general Public Affairs duties, responsibilities, and organization. It also provides guidance pertaining to: the release of an accurate and continuous flow of information to the public and the media that does not contain classified information; procedures for planning and executing community relations and civic outreach programs; establishing responsibilities and procedures for organizing and administering an effective and legally sufficient environmental Public Affairs program; and travel for public affairs purposes. This manual applies to all civilian employees and uniformed members of the Regular Air Force (RegAF), Air Force Reserve (AFR), and Air National Guard (ANG) as well as public affairs personnel assigned to the Space Force as well as contractor employees supporting PA functions. Ensure all records created as a result of processes prescribed in this publication are maintained in accordance with in accordance with AFI 33-322, *Records Management and Information Governance Program*, and disposed of in accordance with the Air Force Records Disposition Schedule located in the Air Force Records Information Management System. Refer recommended changes and questions about this publication to the office of primary responsibility (OPR) using AF Form 847, *Recommendation for Change of Publication*; route AF Forms 847 from the field through the appropriate functional chain of command. This publication may be supplemented at any level, but all direct supplements are routed to Secretary of the Air Force, Public Affairs (SAF/PA) for coordination prior to certification and approval. The authorities to waive wing- or unit-level requirements are identified with a tier number ("T-0, T-1,

**App. 217**

T-2, T-3") following the compliance statement. See DAFI (Department of the Air Force Instruction) 33-360, *Publications and Forms Management*, for a description of the authorities associated with tier numbers. Submit requests for waivers through the chain of command to the appropriate tier waiver approval authority, or to the requestor's commander for non-tiered compliance items. The use of the name or mark of any specific manufacturer, commercial product, commodity, or service in this publication does not imply endorsement by the Air Force or Space Force.  This Instruction requires the collection and or maintenance of information protected by the Privacy Act of 1974 authorized by protected by Department of Defense Directive (DoDD) 5400.11, DoD Privacy Program.  The applicable SORN(s) [number and title] is (are) available at: **http://dpclo.defense.gov/Privacy/SORNs.aspx**. Compliance with **attachments 1** and **4** in this publication is mandatory.

**Chapter 1—PUBLIC AFFAIRS MANAGEMENT RESPONSIBILITIES**                6

Section 1A—Resource Management                                         6

    1.1.   Resources Management Purpose. ............................................................  6

    1.2.   Budget. ...............................................................................................  6

Section 1B—Manpower Management                                         7

    1.3.   Manpower Overview. .........................................................................  7

    1.4.   Positions..............................................................................................  7

    1.5.   Military Grades. .................................................................................  7

    1.6.   Unit Manpower Document. .................................................................  8

Table   1.1.   Public Affairs and Band AFSCs. .......................................................  8

Table   1.2.   Public Affairs FACs...........................................................................  9

    1.7.   Office Symbol Code (OSC). ...............................................................  10

Table   1.3.   Public Affairs OSCs...........................................................................  11

    1.8.   Authorization Change Request. ..........................................................  11

    1.9.   Military Manpower. ...........................................................................  11

Section 1C—Wing and Garrison Employment/Prioritization Plan         13

    1.10.   In order to maximize both resources and manpower, installation-level public affairs will develop an employment/prioritization plan, signed by the commander, to prioritize office communication activities and workflow focusing on the commander's priorities, operational core tasks, urgency, mission impact, agencies supported, and resources available...........................................................  13

**App. 218**

Section 1D—Workload Documentation                                                              13

  1.11.  PA manpower is earned, in part, based on an evaluation of workload. ................... 13

**Chapter 2—COMMUNICATION PLANNING**                                                           **14**

  2.1.  Purpose. ................................................................................................... 14

  2.2.  Research. ................................................................................................. 14

  2.3.  Plan. ........................................................................................................ 15

  2.4.  Execute. ................................................................................................... 18

  2.5.  Assess. .................................................................................................... 18

  2.6.  Plan Formats. .......................................................................................... 19

**Chapter 3—MEDIA OPERATIONS PROCEDURES**                                                      **20**

Section 3A—General Purpose and Guidelines                                                      20

  3.1.  Purpose. ................................................................................................... 20

Section 3B—Working with the Media                                                              20

  3.2.  General. .................................................................................................... 20

  3.3.  Access to Sensitive Information .............................................................. 20

  3.4.  Exclusive Requests. ................................................................................. 20

  3.5.  Air Force and Space Force Reports on News Programs. .......................... 21

  3.6.  Review of Material. ................................................................................ 21

  3.7.  Duty Officer. ........................................................................................... 21

  3.8.  News Releases. ........................................................................................ 21

  3.9.  Classified Answers. ................................................................................. 21

  3.10.  Pooling Media. ........................................................................................ 21

  3.11.  Air Force Visual Information (VI) Support for Media. ............................ 21

Section 3C—Support Procedures for Non-Government, Non-Entertainment VI Productions Other
  Than News                                                                             22

  3.12.  General. .................................................................................................... 22

**Chapter 4—CRISIS COMMUNICATION PROCEDURES**                                                  **23**

  4.1.  Purpose. ................................................................................................... 23

  4.2.  Considerations. ........................................................................................ 23

**App. 219**

4.3.    Crisis Procedures. ................................................................................    23

4.4.    Controlling Photography on U.S. Military Installations During Crisis. .................    25

4.5.    Control of Photography at an Off-Base Location in the United States and its
        Territories..........................................................................................    26

4.6.    Control of Photography Off-Base in a Foreign Country............................................    27

**Chapter 5—COMMUNITY ENGAGEMENT PROCEDURES**                                          **28**

Section 5A—Purpose                                                                        28

5.1.    Purpose.................................................................................................    28

5.2.    Civic Leader Tour Guidance.......................................................................    28

5.3.    Civic Leader Program Execution. ..............................................................    30

5.4.    Choosing Civic Leaders............................................................................    30

Section 5C—Air Force Band Engagements                                                    31

5.5.    Air Force Band Engagements. ....................................................................    31

Section 5D—Information Requests and General Inquiries                                     32

5.6.    Responding to Information Requests and General Inquiries. .................................    32

Section 5E—Support for Non-Government, Entertainment-Oriented Productions                 33

5.7.    Production Companies.............................................................................    33

**Chapter 6—ENVIRONMENTAL PUBLIC AFFAIRS RESPONSIBILITIES**                              **35**

6.1.    Purpose.................................................................................................    35

6.2.    Public Affairs Responsibilities. ..............................................................    35

6.3.    Environmental Impact Analysis Process (EIAP). ...........................................    35

Table   6.1.    Public Affairs Activities for EIAP Actions.............................................    36

6.4.    Environmental Restoration Program Cleanup. ...........................................    38

**Chapter 7—TRAVEL PROCEDURES FOR PUBLIC AFFAIRS PURPOSES**                              **40**

Section 7A—General                                                                        40

7.1.    Purpose.................................................................................................    40

Section 7B—Guidelines for Hosting Civilian, Non-Media Travel                              40

7.2.    Civilian Travel Procedures and Guidelines. ..............................................    40

Section 7C—Submission Guidelines for Hosting Intertheater Media Travel ................... 40

    7.3.   General. ............................................................................................. 40

    7.4.   Responsibilities. ............................................................................... 41

    7.5.   Request Procedures. ......................................................................... 41

**Chapter 8—SECURITY AND POLICY REVIEW PROCEDURES**     **43**

    8.1.   Purpose of Security and Policy Review Programs. .......................... 43

    8.2.   Submitting Material for Review. ...................................................... 43

    8.3.   Recommended Program Guidelines. ................................................ 45

    8.4.   Security and Policy Review Process Requirements. ........................ 46

    8.5.   Review Considerations. ................................................................... 47

    8.6.   Subject Matter Expert (SME) Review Marking. ............................. 49

**Attachment 1—GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**     **51**

**Attachment 2—SAMPLE INSTALLATION-LEVEL PA EXECUTION PLAN DEVELOPMENT CYCLE**     **58**

**Attachment 3—SAMPLE PUBLIC AFFAIRS BUDGET**     **60**

**Attachment 4—SAMPLE INSTALLATION-LEVEL PA EMPLOYMENT/PRIORITIZATION PLAN**     **62**

**Attachment 5—SAMPLE SECURITY AND GUIDANCE REVIEW MEMORANDUM FORMAT**     **76**

**Attachment 6—PUBLIC AFFAIRS SECURITY AND POLICY REVIEW WORKSHEET**     **78**

# Chapter 1

# PUBLIC AFFAIRS MANAGEMENT RESPONSIBILITIES

*Section 1A—Resource Management*

**1.1.  Resources Management Purpose.**  PA requires funding, manpower, training, supplies, and equipment to effectively support the Air Force and Space Force missions. Resource management is the process of determining requirements, and obtaining and allocating resources to meet the direct mission and support duties.

**1.2.  Budget.**  In coordination with the unit resource advisor (RA), Public Affairs must actively monitor execution year expenditures, plan for known requirements in the next Fiscal Year (FY), and project requirements for future years (see **Attachment 2** for a sample execution plan development cycle and **Attachment 3** for a sample budget). **(T-1).** Working closely with the unit RA throughout the year ensures PA understands the resource request and allocation process, and helps the RA understand PA resource requirements.

1.2.1.  Planning. Planning the next FY's budget includes reviewing past expenditures (equipment, training, travel, subscriptions, supplies, etc.) and forecasting future expenses. Research expected changes in PA programs, identify the cost of those changes, annotate them, and justify projections. Include any new activities and annual cost increases. Plan for both peacetime and wartime requirements, with wartime requirements as the highest priority. Major Command Public Affairs (MAJCOM/PA) and/or Field Command PA offices can assist with identifying likely forward-area wartime taskings and the local logistics plans office can assist with identifying associated equipment requirements. Wing or garrison PA budget forecasts are typically forwarded to the unit RA or comptroller for consolidation and approval at the wing or garrison prior to being submitted to the Major Command (MAJCOM) or Field Command. MAJCOM/PA or Field Command PA offices may ask wing or garrison PA offices to forecast equipment needs, which MAJCOMs or Field Commands may be able to help purchase.

1.2.2.  Execution. PA's budget forecast is compared against the execution plan to identify any unfunded requirements. Any identified shortfalls should be submitted to the unit RA during initial funds distribution (October-December) and budget reviews. By July 30, offices should have spent at least 80 percent of the budget. PA resource managers must provide input to the wing comptroller for periodic budget reviews and any calls for end-of-year requirements. **(T-1).** End-of-year requirement calls inform the wing or garrison commander's unfunded priority execution list, if funding becomes available, and are an excellent opportunity for PA offices to refresh supplies and equipment.

1.2.3.  Operations and Maintenance Funds. The majority of PA activities are Operations and Maintenance funded and PA should work with the unit RA to become familiar with PA-specific program elements, responsibility center/cost center codes, and budget program activity codes.

1.2.4.  Environmental Funds. Resourcing related to environmental management is distributed through the civil engineer, and supports strategic and tactical planning of environmental

**App. 222**

issues and community involvement. For more information on the role of PA in the environmental planning process, refer to **Chapter 6**, and DAFI 35-101.

1.2.5.  Budget Training. The PA chief, in close coordination with the PA superintendent, manages and controls the resources allocated to the PA office by the unit commander. Required skills include effectively identifying and justifying requirements, obtaining timely obligation records from the unit RA, analyzing expenditures, and projecting excess or shortages. The wing or garrison comptroller can provide additional resource management training.

1.2.6.  Equipment. PA equipment management requires a budget built from deployment requirements (unit type codes), the mission description (including designated production studios), and the unit manpower document (UMD), while also incorporating lifecycle replacement of high-value items, such as cameras. Accounting for equipment also requires considerations such as vehicle needs, office operating costs for expendables, and other supporting equipment, to include computers and phones.

1.2.7.  Vehicles. Most installation PA offices require access to a government vehicle to fulfill the legal visual information (VI) documentation requirement, especially for access to restricted areas, including airfields. PA should coordinate with the local vehicle operations unit to ensure immediate access to a government vehicle if needed, and submit new vehicle requests in accordance with AFI 24-302, *Vehicle Management*.

### Section 1B—Manpower Management

**1.3. Manpower Overview.** Manpower and personnel are related, but the terms are not interchangeable. *Department of Defense Dictionary of Military and Associated Terms,* defines manpower requirements as the human resources needed to accomplish a specified job, workload, mission, or program, and personnel are the people who fill those positions. Manpower influences the amount and type of people assigned to an office to accomplish its mission; therefore, understanding and monitoring manpower is a primary management responsibility and should be done in accordance with AFI 38-101, *Manpower and Organization.*

**1.4. Positions.** An office's manpower positions are largely determined by independent processes. Periodically, manpower offices conduct studies to determine the number and grade of people required to perform the mission. The study results are published in a manpower standard which is available through wing manpower offices and on the Air Force Manpower Determinant and Air Force Manpower Standard Library on the Air Force Manpower Analysis Agency site on the Air Force Portal. Separately, Congress determines annually the maximum number of officer and enlisted authorizations for each military service. Requirements and authorizations do not always match, resulting in some requirements that remain unfunded. Funded positions are called authorizations and are the positions that Air Force Personnel Center assignment teams attempt to fill. For civilian positions, the budget and civilian work years determine which authorizations are funded and filled, and a position's core document determines its occupational series and grade.

**1.5. Military Grades.** Air Force headquarters allocates grades via a programming model to determine a fair share grades distribution. MAJCOMs and Field Commands distribute grades to their units, and the units, in turn, distribute them accordingly to their offices. A shortage of

available grades sometimes occurs, so the required grade is not always the authorized grade. Assignment teams attempt to fill positions at the authorized grade, not the required grade.

**1.6. Unit Manpower Document.** The UMD, a computer-generated report from the Manpower Programming and Execution System (MPES), lists the unit's positions, as well as the characteristics associated with each position such as grade and Air Force Specialty Code. Installation manpower points of contact provide UMDs to units periodically and can adjust the information in and format of the reports, as well as arrange automated delivery to suit a PA office's needs. UMD key terms include:

1.6.1. Air Force Specialty Code (AFSC). Represents a specific military occupational specialty, skill, or qualification. Civilian positions list the occupational series and the corresponding military AFSC on the UMD. Refer to the Air Force Enlisted Classification Directory and Air Force Officer Classification Directory available through myPers for further information to include specialty summaries, duties and responsibilities, and specialty qualifications. See **Table 1.1** for a list of Public Affairs and Band AFSCs.

**Table 1.1. Public Affairs and Band AFSCs.**

| AFSC | Utilization/Career Field |
|------|--------------------------|
| 35BX | Band Officer |
| 35PX | Public Affairs Officer |
| 3N000 | Public Affairs Chief Enlisted Manager |
| 3N090 | Public Affairs Superintendent |
| 3N0X6 | Public Affairs |
| 3N100 | Regional Band Chief Enlisted Manager |
| 3N1X1 | Regional Band |
| 3N300 | Premier Band Chief Enlisted Manager |
| 3N2X1 | Premier Band (The USAF Band) |
| 3N3X1 | Premier Band (The USAF Academy Band) |
| **Note:** "X" describes the command level for officers or the skill-level for enlisted personnel. | |

1.6.2. Authorized Grade. The grade personnel systems use to assign personnel. The authorized grade may be different from the required grade described in **paragraph 1.6.8** Civilian grades are determined by the grade classification assigned to a position's core personnel document, and it is this grade that is reflected on the UMD. If the position description changes and is classified at a different grade, the grade on the UMD changes accordingly. If a civilian grade has not yet been determined, it appears as to be determined.

**App. 224**

1.6.3.  Effective and Through Dates. These indicate when a change takes effect. The standard through date is 31 Dec 4712. Positions with pending changes are listed twice—once denoting the position's current elements and once denoting elements after the change takes effect.

1.6.4.  Functional Account Codes (FAC). This six-digit alphanumeric code identifies each function and facilitates the analysis and accounting of manpower requirements. It identifies the functions or activities performed by the position. Only PA manpower or PA offices will be associated with PA FACs.  See **Table 1.2** for a list of Public Affairs and Band FACs. Contact the installation manpower office, MAJCOM/PA, or Field Command PA for current PA FACs and guidance on their use.

**Table 1.2.  Public Affairs FACs.**

| FAC | Title | Description |
|---|---|---|
| 11D100 | Wing and garrison Public Affairs | Provides communication advice and counsel to host and tenant commanders, senior leaders and staff and serves as the focal point for releases of official Air Force and/or Space Force information. Plans, develops, coordinates, integrates, synchronizes, executes, supervises and assesses PA programs, products and activities, including communication planning, command information, community engagement, and media operations in order to achieve mission objectives. Achieves desired communication effects through the integration of all public affairs capabilities. This function intended for use at wing/base group level equivalents or below. |
| 11D200 | Air Force Bands | Responsible for a wide spectrum of musical support for events which enhance the morale, motivation, and esprit de corps of Airmen and Space Professionals, foster public trust and support, aid recruiting initiatives, and promote national interests at home and abroad. |

| 11D000 | Air Force Public Affairs Agency | Responsible for Air Force Combat Camera operational program management, including oversight of subordinate combat camera/audiovisual squadrons and operating locations as well as visual documentation of Air Force, Space Force and joint warfighter crisis and humanitarian relief missions. Responsible for Air Force and Space Force audiovisual production, visual information equipment lifecycle, public web, and intellectual property (branding, trademarking and licensing program management/support). |
| | | Primary Air Force and Space Force liaison to Defense Media Activity for the Defense Video and Imagery Distribution System and the American Forces Public Information Management System. |

1.6.5.  Personnel Accounting Symbol. A unique eight-digit alphanumeric code that identifies a specific unit, owning command and servicing military personnel office.

1.6.6. Position Number (POS). The ten-digit number (also called the manpower position control number in personnel data systems) that identifies a particular position. A two-digit MAJCOM code is included at the end of each position number; therefore, all position numbers from the same unit end with the same alphanumeric code.

1.6.7. Program Element Code (PEC). Represents the budget source for the position. The PEC for PA positions are 91214.  Contact the MAJCOM/PA or Field Command PA office if there are any questions.

1.6.8. Required Grade. The grade for a particular position as earned by a manpower standard. Differences between the required grade and the authorized grade may be due to funding constraints, career progression grades, or grade ceiling limitations.

1.6.9. Security Access Requirement. Identifies the security clearance level required for the position. Refer to AFI 16-1404, *Air Force Information Security Program*, for a complete list of security access requirement codes.

**1.7. Office Symbol Code (OSC).**  This code indicates command structure of the unit. The fewer characters there are in an OSC, the higher the echelon placement in the unit (e.g., SAF/PAR is subordinate to SAF/PA). Table 1.3 provides a list of approved PA OSCs. The only approved office symbol for PA offices below MAJCOM or Field Command level is the two-letter PA.

With the exception of the Air Force Academy and Air Force Public Affairs Agency, only MAJCOM-level or Field Command-level and higher PA offices are authorized to add a third letter, such as PAO, PAR, PAX, or PAY, to denote a specific sub-section. BA is the traditional OSC for Air Force Bands (e.g., band units) while PAB is used to denote a Bands division on a headquarters staff (e.g., SAF/PAB is the Bands division subordinate to SAF/PA). MAJCOM-level or Field Command-level and higher PA offices may use command-unique OSCs in accordance with AFI 38-101.

**Table 1.3.  Public Affairs OSCs.**

| OSC | OSC Title | Notes |
|-----|-----------|-------|
| PA | Public Affairs | Available at all echelons |
| PAB | Bands | Restricted to MAJCOM-level or Field Command-level and above, with the exception of the Air Force Academy and Air Force Public Affairs Agency |
| PAI | Command Information | |
| PAO | Media Operations | |
| PAR | Requirements and Development | |
| PAX | Strategy and Assessments | |
| PAY | Community Engagement | |

**1.8.  Authorization Change Request.** It is used to request an addition, change, realignment, or deletion of an authorization on the UMD. PA offices requesting changes to manpower authorizations, such as AFSC, civilian occupational series, or grade or skill level adjustments, must coordinate with the local manpower and higher headquarters PA offices. **(T-2).** Format of an authorization change request varies by base. The installation manpower point(s) of contact can provide examples.

1.8.1.  Wing or garrison PA will coordinate proposed manpower changes with the installation manpower point(s) of contact and MAJCOM/PA or Field Command PA. **(T-2).**

1.8.2.  MAJCOM or Field Command, Field Operating Agency and Direct Reporting Unit PAs will coordinate proposed manpower changes with the Air Force Installation and Mission Support Center, Major Command Manpower, Personnel and Services and SAF/PAR. **(T-2).1.9 Types of Manpower**. The Department of the Air Force uses three types of manpower to perform required work: military (e.g., RegAF, AFR, ANG); civilian; and contractors.

**1.9.  Military Manpower.**

1.9.1.  In accordance with AFI 38-101, the services assign only military personnel to positions that:

1.9.1.1.  Require military-unique knowledge and skills needed for the performance of duties **(T-0)**

1.9.1.2.  Require military incumbency by operation of law **(T-0)**

1.9.1.3.  Require military performance for command and control, risk mitigation, or esprit de corps **(T-0)**

1.9.1.4.  Provide overseas rotation for career development **(T-0)**

1.9.1.5.  Are wartime assignments **(T-0)**

1.9.1.6.  Mitigate unusual working conditions or costs which are not conducive to civilian employment **(T-0)**

1.9.2.  Civilian Manpower. Civilian employees are hired to perform work in an occupational series at a specific level of expertise and responsibility. Civilian Personnel is responsible for the accurate classification of positions, including the establishment of title, series, and grade. PA should contact the PA career field team at the Air Force Personnel Center for information and guidance regarding hiring actions, developmental opportunities, and other civilian personnel actions.

1.9.2.1.  Standard Core Personnel Document (SCPD). SCPDs are a combination of what were once known as position descriptions and performance management plans. The use of SCPDs is mandatory for civilian positions when they apply to a position that is covered by one. Most PA SCPDs do not include specific duty titles, giving PA greater flexibility to realign qualified civilians. **(T-1)**.  The SCPD Library is located on the myPers website (**https://mypers.af.mil/app/login/redirect/home**)

1.9.2.2.  Core Personnel Document (CPD). If an SCPD does not apply, a CPD is used. CPDs are identical to SCPDs except they are used for one position only. Therefore, managers have less flexibility on project assignments, and periodic career field requirements and updates are not automatic.

1.9.2.3.  Connection to AFSC. Assigned duties generally conform to a corresponding AFSC on manpower documents. Civilian occupational series and AFSCs are assigned based on position duties and responsibilities.

1.9.2.4.  Centrally Managed Positions. The Department of the Air Force deliberately develops civilian employees for positions of increased responsibility through central management, in accordance with Air Force Manual (AFMAN 36-606), *Civilian Career Field Management and Force Development*. Generally, centrally managed positions are eligible to receive centrally funded moves (e.g., permanent change of station) and other developmental opportunities to include short-term management and leadership training, Civilian Developmental Education, and tuition assistance, when available. In addition to the civilian positions described in the Public Affairs chapter of AFMAN 36-606; the Air Force, through the PA career field team at Air Force Personnel Center, centrally manages:

1.9.2.4.1.  Career Broadening positions. The Career Broadening program provides unique developmental experiences at various levels of organization, to include overseas locations. These assignments typically last up to 36 months and require geographic mobility agreements.

1.9.2.4.2.  PALACE Acquire training positions. PALACE Acquire  interns complete a two- to three-year development program with a formal training plan that includes assignment at both wing and major command levels, in-residence completion of the

joint public affairs qualification course, and other training opportunities, with outplacement into a permanent position upon successful program completion.

1.9.3.  Contracted Services. At some locations, the office manpower mix includes contracted services which are referred to as contract full time equivalents. These earned manpower authorizations have been outsourced to accomplish specified workload associated with a manpower standard. Contract full time equivalent positions, tracked through the Enterprise-wide Contracting Manpower Reporting Application, are expressions of in-house manpower requirements at the same level of service specified in the contract.

*Section 1C—Wing and Garrison Employment/Prioritization Plan*

**1.10.  In order to maximize both resources and manpower, installation-level public affairs will develop an employment/prioritization plan, signed by the commander, to prioritize office communication activities and workflow focusing on the commander's priorities, operational core tasks, urgency, mission impact, agencies supported, and resources available.  (T-1).** The plan should account for recurring resource constraints, such as deployment vulnerability periods, and be signed by the commander within 90 days following a change in organizational leadership (e.g., change of command), as well as when factors such as manpower or mission requirements drive a change in activity prioritization. See **Attachment 4** for a sample employment/prioritization plan, which should be modified and/or expanded as necessary to meet local needs and priorities.

*Section 1D—Workload Documentation*

**1.11. PA manpower is earned, in part, based on an evaluation of workload.** As such, installation-level PA will record relevant workload data using the approved PA management tool in accordance with current guidance or playbook. Inaccurate data can understate PA workload, ultimately leading to potential manpower cuts. Conversely, accurate data supports MAJCOM and Field Command efforts to ensure sufficient manpower to meet requirements, to include growth. Finally, this data serves to assist PA leaders in understanding and adjusting their weight of effort to support commanders' objectives, defending resource requests, and aiding commanders in making risk assessments with respect to the PA program.

## Chapter 2

## COMMUNICATION PLANNING

**2.1. Purpose.** Communication planning is important to link unit priorities or objectives to the communication effects sought and achieved by PA operations. This chapter outlines the basic approach to communication planning that unit communication plans should reflect. PA should develop plans using all four phases of the communication planning process: research, plan, execute, and assess. While the design process for all communication plans is similar, the format and level of detail and background analysis varies across planning efforts and should be tailored to fit the organization and circumstances.

**2.2. Research.** The first phase of effective communication is research. The goal of this phase is a comprehensive list of factors that will inform and impact communication efforts. A strategic and analytic mindset is essential in this phase.

2.2.1. Intent. When developing a general communication plan, the research phase should start with identifying commander's intent for communication programs or priorities associated with unit mission accomplishment that require communication support.

2.2.2. Desired Outcomes. Planners should describe in the best detail possible what success in meeting intent looks like. In some cases, intent may equal outcome, as when a leader wants to generate sufficient political support for a specific piece of legislation to pass. In other cases, outcomes may need to be intuited from intent. For example, an expressed desire to host "the best open house ever" could be defined by outcomes such as attendance, the volume and reach of traditional and social media content generated by the event, new contacts or relationships made with influencers and decision-makers invited to the event, or a combination of these or several other things.

2.2.3. Environmental Scanning. Planners should determine communication opportunities and challenges by scanning the information environment. Consider the strengths, weaknesses, opportunities, and threats that ensure or inhibit successful communication toward desired outcomes. Identify key facts and points of agreement or contention on an issue that will help define the plan's messaging focus. Although a comprehensive environmental scan is necessary in the initial research phase, this is an on-going process that planners should revisit in subsequent phases to ensure plans stay relevant.

2.2.4. Information Sources. Planners must identify sources of information available for environmental scanning and the planning and assessment phases of the plan. **(T-1)**. There are two basic types of information sources: primary and secondary.

2.2.4.1. Primary research involves gathering new information firsthand for a specifically identified purpose. Time and resource constraints may limit a planner's ability to collect primary research. There are two broad categories of primary research: quantitative and qualitative.

2.2.4.1.1. Quantitative research, such as scientific surveys, relies on numerical assessment of hard data and requires specialized skills to perform and analyze correctly. The Air Force Survey Office is the point of contact for all attitude and opinion surveys, polls, questionnaires, and telephone interviews to Air Force and/or

Space Force members, according to AFMAN 36-2664, *Personnel Assessment Program*. A list of surveys currently approved by the Air Force Survey Office is on the AF Portal. Review AFMAN 36-2664 and coordinate with the Air Force Survey Office (**af.surveys@us.af.mil**) before conducting surveys. SAF/PA also sponsors periodic Air Force and/or Space Force surveys, which may be helpful in communication planning. SAF/PA survey and communication products are posted on the "Tell Our Story" page of the AF Portal. (**www.my.af.mil**)

2.2.4.1.2. Qualitative measures, such as personal interviews, focus groups, written comments, and observed behaviors, yield less statistical data but can provide a deeper understanding of a topic. Information gathered from qualitative research can help explain what stakeholders think. Qualitative measures also can be applied to the survey development process to improve the quantitative measures described above.

2.2.4.2. Secondary research uses outside information previously assembled by other organizations such as government agencies, industry and trade associations, educational institutions, and media sources. Typically, it is cheaper and faster to use secondary research. Online databases maintain a large amount of research information.

**2.3. Plan.** In the planning phase, the goal is to link desired outcomes to necessary changes in the awareness, knowledge, or behaviors of key population or stakeholders, then determine the sequence of activities (or set of continuous activities) required to produce the changes. At the end of this phase, the communication plan includes an engagement matrix that translates strategic intent to specific, scheduled events or products. The following steps contribute to effective planning.

2.3.1. Define Decision-Makers and Influencers. Planners should move through a process of identifying audiences, populations, and, when possible, individual stakeholders who can have a positive or negative impact on desired outcomes. Each type of group is defined below.

2.3.1.1. Audience. A broad, roughly defined group that gives a general concept of a population. Planners should avoid formulating a communication approach on an audience-level analysis. Instead, an audience definition is used to segment very large populations into smaller groups for further analysis. Examples of audience definitions include internal or external, domestic or international, friendly or adversary.

2.3.1.2. Population. A clearly defined group of people with common characteristics that the unit needs to listen to and communicate with. Populations can be segmented from audiences in a variety of ways, to include geography, demographics, psychographics, position, membership, role in decision making, etc. The more defined the public, the better PA can tailor communication plans and products. Examples of populations include first sergeants, maintenance squadron personnel, Air Force or Space Force spouses seeking employment, regional television reporters, or local small business owners.

2.3.1.3. Stakeholders. Individuals or groups within a public that are directly impacted by or have the ability to shape or determine the outcome of an Air Force or Space Force operation, activity, or decision. The prioritization of stakeholders for communication purposes can be determined by subjective evaluation or by a more structured process like influence mapping, which scores stakeholders based on their ability to affect an outcome or issue (low level of influence to needing their decision or active support to succeed) and

their position on the outcome or issue (positive, neutral, or negative). In some cases, small populations may be the same as stakeholders—for example, unit first sergeants. In other cases, stakeholders may be a relatively small group within a public—for example, individual business owners or educators who can set trends in local hiring practices or vocational training opportunities that the unit would like to see implemented across a larger group of regional businesses and educational institutions.

2.3.2. Define Public or Stakeholder Objectives. Objectives articulate what awareness, knowledge, or behavior changes units desire from a specific public or stakeholder group; the nature or magnitude of those changes in comparison to conditions at the start of the plan; and the timeframe in which units need to see the change take place. Objectives identify what needs to happen with each public or stakeholder group to meet the intent and desired outcome(s) identified in the research phase, but they do not describe how units will make that happen.

2.3.2.1. Management theories that still retain currency among leaders have strongly emphasized the need for quantifiable objectives—for example, so-called specific, measurable, attainable, relevant, and time bound objectives. Other theories have questioned the value of a predominantly quantitative approach, which ignores the qualitative context of complex situations.

2.3.2.2. In some cases, purely quantifiable objectives may be appropriate. For example, units establishing a new social media platform may want to benchmark the size of the populations in a certain age range or geographic area who are following similar accounts, and establish the objective of meeting or exceeding that number of followers within a certain number of years.

2.3.2.3. In other cases, more qualitative objectives are fine if planners have defined those objectives in a way that allows assessment against the same criteria each time. For example: "Consult Retiree Advisory Committee members in advance of all appropriate decisions affecting base community services and hours." This objective requires a relatively objective definition (is the upcoming decision one that affects base community services and hours?), a more subjective definition (is it appropriate to discuss this particular decision with retired advisors?), and a standard of performance (did we consult committee members on all appropriate decisions?) that can be applied against all future cases.

2.3.2.4. Whenever possible, planners should avoid using only pass/fail criteria that cannot be measured at various stages during the execution of the plan. For example, an objective associated with a particular initiative being funded does not provide any criteria to assess whether influencers or decision-makers are lining up in support of the initiative before the decision is made.

2.3.3. Identify Public or Stakeholder Communication Strategies. Although the word "strategy" is often used to mean the same thing as "plan," a communication strategy properly defined is a concept or theory about how engagements or products will achieve desired outcomes or maintain an advantage in an enduring situation. There are generally four types of communication strategies.

**App. 232**

2.3.3.1.  Linear strategies generally apply to a set number of activities or products that must be executed in a certain sequence over a limited period of time. The goal of communication strategy is to walk a public or stakeholder through a series of engagements that positively shape their reception of an outcome. For example, communication involving a particularly controversial decision might involve the following steps: bringing a stakeholder in for advice, explain a decision to them prior to an announcement, acknowledging their assistance or unanswered concerns during a public announcement, collect feedback from them at a later date on the impact of the decision and potential ways ahead.

2.3.3.2. Cumulative strategies generally apply to a larger number of communication activities or products relevant to stakeholders that take place over a longer period of time. The goal of a cumulative strategy is to have more positive or less negative reactions or interactions with stakeholders for the duration of communication. Social media campaigns often employ a cumulative strategy by seeking to maintain an average standard of audience reach or interactions across all posts.

2.3.3.3. Normative strategies set standards of performance or behavior toward populations or stakeholders in order to create or sustain a mutually beneficial relationship. For example, deciding to notify local elected officials or their staffs before implementing decisions that will generate feedback from their constituents sets a standard for information flow that sustains trust, since officials know they will not be surprised by unit activities in a way that makes them seem disconnected or unconcerned.

2.3.3.4. Hybrid strategies rely on some combination of the other three strategies. For example, a plan could be a two-phase linear strategy where planners employ a cumulative strategy in the first phase to grow the group of stakeholders receiving information, then sustains communication in the second stage by applying a normative standard to the quality or timeliness of information flow.

2.3.4.  Develop Tactics. Tactics are the actions units will implement to put the theory of strategy into practice. Communication tactics that derive from linear or hybrid strategies are typically presented as an engagement matrix that lists tactics in the order in which they will be executed. Communication tactics are defined by the following elements:

2.3.4.1.  A specific public or stakeholder.

2.3.4.2.  Spokespeople. To whom does the public or stakeholder listen? Who has the right knowledge, authority, and delivery style to effectively carry the message? Answers to these questions can provide planners with potential spokespersons. There can be more than one effective spokesperson on an issue, based on who they are talking or listening to. For example, the Air Force or Space Force may choose to send a senior leader to testify to Congress on an issue, while squadron commanders or first sergeants discuss it with Airmen or Space Professionals.

2.3.4.3. Themes and Messages. Develop logical, convincing, truthful statements and supporting information that increases the public's or stakeholder's ability to move toward the objective. Write themes and messages in clear and concise English. Avoid technical jargon, acronyms, or complicated wording. In many cases, themes and messages need to be specific to the group or individual, since those people are defined in part by their

**App. 233**

different interests in and perceptions of issues. However, themes and messages need to remain broadly consistent across audiences. Planners therefore may find it useful to develop strategic themes for an entire plan, supported by tactical messages for specific engagements.

2.3.4.3.1.  A theme is generally a short, memorable statement that encapsulates a core component or central feature of a more complex idea—e.g., the takeaway of any engagement or product. Examples: "We are the best in the world at this mission" or "We're committed to innovation."

2.3.4.3.2. Messages support themes by delivering more tailored and detailed information to a specific public. Examples: "In order to remain the best, we need to keep investing in our training ranges and simulators" or "By investing in our Airmen's ideas, we've been able to save more than $7 million and 40,000 hours of work per year across the base."

2.3.4.4. Channel or Format. To determine the best channel or format for facilitating conversations or delivering messages and supporting information, consider the following questions. Where or from whom do populations prefer to get their information? How can populations best receive and understand the message being conveyed? How can spokespeople best connect with stakeholders to provide information, gather feedback, or establish and maintain good relationships?

2.3.4.4.1.  Some common command (internal) communication channels and formats include commander's calls, leader speeches and briefings, official websites, email, and unit- or installation-specific social media.

2.3.4.4.2.  Some common external channels and formats include official websites, social media, engagements with traditional news media (e.g., interviews, media roundtables, press releases, press conferences), meetings, individual conversations, and public appearances, ceremonies, or events.

2.3.4.5.  Data Collection and Evaluation. Most plans will require interim evaluations, so whenever feasible, planners should identify what information needs to be collected during execution, and when units need assessments of that information in order to evaluate progress. Planned interim evaluations help ensure units devote the proper time, personnel, and resources to assessments that will keep the plan on track or identify necessary adjustments before it is too late.

**2.4. Execute.** The execution or implementation phase of communication planning involves completing the tactics in the plan. The communication plan and engagement matrix, when used, are dynamic documents. Individual elements, such as populations, objectives, or tactics, may be updated as needed. Communication documents should be distributed to all supporting units and personnel to ensure unity of effort and message synchronization.

**2.5. Assess.** Proper assessment considers the preparation, execution, and impact of communication efforts. It requires sustained efforts to monitor, measure, and analyze relevant information before, during, and after execution to evaluate the success of communication activities.

2.5.1.  Evaluating the preparation of the plan consists of assessing the quality and adequacy of the process and information used for determining intent and developing an audience analysis, objectives, strategies, tactics, and a method of data collection and evaluation.

2.5.2.  During the research or planning phase before execution, planners often need to conduct assessments to establish baseline measures that inform whether execution produces a change in the status quo. Planners may be able to save time and resources by drawing on assessments conducted after the execution of a previous plan. Use of previous results as baselines requires careful consideration of the similarity and differences between the two situations in order to avoid faulty assumptions or comparisons.

2.5.3.  During execution, monitoring progress of communication efforts assists communicators and leaders with decision-making that adjusts operations, if necessary, to achieve objectives.

2.5.4.  Analyzing the impact of communication efforts provides insights on how the communication plan was executed and whether or not communication tactics achieved objectives and met intent.

2.5.5.  Assessment methods and tools are similar to those used during initial research. Assessing communication effects can be extremely complex and may require skills or resources that units lack. Units should review resources available on the Tell the Air Force Story site (**www.my.af.mil**) and consult SAF/PAX or other experts if they require assistance with developing a good set of practical assessments.

2.5.6.  Sharing communication assessments with leaders and unit members is an important part of maintaining strong working relationships and closing the loop on the research-plan-execute-assess planning process.

**2.6. Plan Formats.** Communication plans contain all of the elements identified above, but formats can vary widely. Until assessments are in, the measures of a good plan are whether leaders understand and support the approach and whether those who execute the plan know what they need to do. Planners can access sample plans and templates that units have used successfully in the past through the Communication Planning link on the "Tell Our Story" (**www.my.af.mil**) section of the Air Force Portal.

## Chapter 3

## MEDIA OPERATIONS PROCEDURES

**Section 3A—General Purpose and Guidelines**

**3.1. Purpose.** All military and civilian personnel must comply with the Secretary of Defense's (SECDEF) *Principles of Information* mandate of "maximum disclosure, minimum delay." **(T-0).** The following are guidelines Air Force and Space Force PA offices can use to effectively implement this mandate:

   3.1.1. Present Air Force and Space Force information professionally, simply, and honestly.

   3.1.2. Be accurate, prompt, and factual.

   3.1.3. Confine the information to field of expertise.

   3.1.4. Avoid the hypothetical and speculative.

   3.1.5. Reflect Department of the Air Force policy.

**Section 3B—Working with the Media**

**3.2. General.** The media's need for rapid, accurate information requires immediate response by Air Force and/or Space Force officials. It is important to understand media capabilities, organization, technology, and deadlines. Competition between news media agencies is intense and may drive requests for detailed information to meet very short publication deadlines. PA should work to expeditiously respond to requests, while still taking proper staff actions to coordinate release of information with relevant agencies. This ensures accuracy and affords leaders an awareness of any impending coverage.

**3.3. Access to Sensitive Information** . If a unit commander determines coverage of a story is in the best interest of the commander despite exposure to sensitive or classified information, ground rules can be established to restrict publishing classified information.

   3.3.1. The primary safeguard is to brief the reporter in advance about what information is sensitive and what the parameters are for covering this type of information. The commander may grant access if the reporter agrees to a security and policy review of the communication product.

   3.3.2. Agreement to a security and policy review in exchange for this type of access is strictly voluntary; however, if a reporter does not agree, then access to sensitive information may be denied. If a reporter agrees to a security and policy review, it is conducted solely to ensure that sensitive or classified information is not included in the product.

**3.4. Exclusive Requests.** An exclusive is a reporter's request for information that no other reporter has previously sought. It can involve a minor or major news story. The Air Force and Space Force allows reporters to work on exclusives, but it is obligated to provide the same information to other reporters. Reporters should be made aware of this policy to avoid misunderstandings. Interviews, by their nature, are exclusive in terminology, e.g., quotes and statements, but not in subject if another reporter requests it.

**App. 236**

3.4.1. Minor News Story. This news is not particularly significant. Protect the reporter's story until a similar request comes from another reporter. If this happens, tell the second reporter that another media representative is already working on it. The second reporter probably won't press the issue. If pressed, provide the same material to the second reporter and inform the first reporter that another individual is also working the story.

3.4.2. Major News Story. Do not honor any request for exclusive information on a major story. Public Affairs must release information on major stories to all media equally. **(T-0).** The public's right to significant news transcends the right of a single reporter who first asked for the information. In-depth feature stories on major issues may be treated exclusively until similar queries come from other reporters or major developments require a general release.

**3.5. Air Force and Space Force Reports on News Programs.** Air Force and Space Force members may do regular reports of installation news on local radio or television stations, if the subject matter pertains exclusively to Air Force and/or Space Force life and activities. Members will coordinate with the local PA office prior to engaging with the media. **(T-1).**

**3.6. Review of Material.** Air Force and Space Force members will not ask a reporter to send material for review unless security considerations are involved. **(T-1)** The primary responsibility for protecting classified information lies with the Air Force and Space Force, not the reporter, and the reporter can justifiably refuse any requests for prior review. The primary safeguard should be to brief the reporter in advance about what information is sensitive and what the parameters are for covering this type of information.

**3.7. Duty Officer.** PA offices should brief security forces, operations centers, and telephone personnel on the procedures for contacting the off-duty PA representative, who is distinct from PA alert personnel. An instruction book should be prepared for the off-duty representative's use. At a minimum, it should contain emergency checklists and off-duty telephone numbers of PA staff members and key unit installation officials. Instruction books should be checked frequently to ensure instructions and officials' names and telephone numbers are current.

**3.8. News Releases.** News releases via email, social media, website or other form is the most common way to deliver information to the media. It may announce news or answer anticipated queries. The news release varies in length, but most often is a page of newsworthy information. However, news releases may not be the most effective mechanism for information release. The mechanism for any release of information should be based on specific objectives and key populations.

**3.9. Classified Answers.** If an answer is classified, tell the reporter PA cannot provide the information because it is classified. If possible, explain why it's classified.

**3.10. Pooling Media.** Consider pooling when circumstances such as limited space preclude accommodating all the media wanting to cover a story. Keep in mind most media dislike pool arrangements and prefer to do their own reporting. A news pool involves having a representative from the media (or one representative from the various media, such as print, television, and radio) cover the story and then feed reports to all media taking part in the pool. Use pools only when circumstances absolutely preclude accommodating all interested media. Always let media decide procedures on how representatives are selected and how stories are distributed.

**3.11. Air Force Visual Information (VI) Support for Media.** The Air Force supports all credentialed and/or authenticated print and electronic media (including traditional and

nontraditional media organizations and their accredited representatives) requests to release visual information (including combat camera) products when such release meets the responsibility to inform the public and it does not compromise national security. Releasable materials are equally available to all interested media. Previously cleared Air Force and Space Force stock audiovisual materials or location photography on Air Force and/or Space Force facilities are provided to media without charge (Defense Imagery Management Operations Center, Defense Visual Information Distribution Service, etc.) when used for news projects.

**Section 3C—Support Procedures for Non-Government, Non-Entertainment VI Productions Other Than News**

**3.12. General.** Non-government, non-entertainment VI productions other than news are productions done by organizations outside the federal government which are primarily intended to inform.  SAF/PA approves support to national-level, non-government, and non-entertainment visual information productions other than news media. MAJCOMs and/or Field Commands approve support on the local and regional level. Requesters should submit requests in writing as outlined below:

3.12.1.  Include detailed description of the desired material stock footage or photography (footage format, amount, etc.) and desired receipt date (two to four weeks is normal processing time).

3.12.2.  If production support is requested, include anticipated specific support requirements, such as military manpower and equipment and projected production schedule, including filming dates and proposed filming locations.

3.12.3.  Provide a synopsis or explanation of the product in which the Air Force VI material is going to be used. Include a treatment, outline, script, or storyboard for the project.

3.12.4.  Describe the use of the product to include distribution mode and target audience (e.g., national TV advertisement; 30-minute TV documentary to air nationally on PBS™; etc.).

3.12.5.  Include a statement that the requested VI support cannot be reasonably obtained from commercial or private sources.

3.12.6.  Provide a statement that the finished product does not imply Air Force or DoD sponsorship, approval, or endorsement of the organization or company, its products or services, nor does it state or imply Air Force or DoD support of any viewpoint expressed in the product.

3.12.7.  Ensure that SAF/PA (or appropriate level) is given the opportunity to review the final product before release.

**App. 238**

# Chapter 4

## CRISIS COMMUNICATION PROCEDURES

**4.1. Purpose.** Clear, concise, accurate and timely communication is critical during a crisis. A crisis is a rapidly developing situation ranging from natural disasters and aircraft accidents, to hostile activities posing a threat to U.S. interests. PA requires its trained professionals to have the skills to engage the media and to keep a wide range of populations informed during crises.

**4.2. Considerations.** It is essential that planning for crisis communication begins well before an actual crisis. See DAFI 35-101, Chapter 3, for specific considerations in event of a crisis. Many of the requirements outlined there are intertwined as part of the procedures listed in **paragraph 4.3** of this manual, and guidance is provided to ensure units plan effectively.

**4.3. Crisis Procedures.** A crisis situation may range from a significant weapon system mishap or ground accident, to an active-shooter or on-base protest. Regardless of the nature of a crisis, commanders and PA personnel need to be able to provide relevant audiences with accurate, timely, and essential information.

4.3.1. Commanders will:

4.3.1.1. Adequately resource the PA office to provide required support during a crisis, including authorizing augmentation when needed. **(T-3).**

4.3.1.2. Engage with internal and external media as needed, to ensure accurate, timely, and essential information is provided to affected or interested populations. **(T-3).**

4.3.1.3. Approve a message to be used for organizational social media accounts and the public web, as applicable. **(T-3).**

4.3.1.4. Participate in a command information effort to help stabilize the situation and address the fears and concerns of relevant audiences. **(T-3).**

4.3.2. Public Affairs will:

4.3.2.1. Ensure there is a PA presence at the public affairs office, the incident scene, and the installation command post. **(T-3).** PA may also be required to provide support to the crisis action team, incident and emergency operations center, as needed.

4.3.2.2. Deploy with the incident response force and provide support to the incident commander, while ensuring PA maintains continual situational awareness in order to coordinate timely release of information. **(T-3).** This includes ensuring the alert photographer is notified and able to deploy on-scene.

4.3.2.3. Transportation. Mobility is vital during an incident. The PA office must request sufficient number of government vehicles and land mobile radios for on-base command information program support, as well as for media escort and support. **(T- 1).** PA must ensure unit contingency plans include transportation to the incident site. **(T-3).**

4.3.2.4. Regardless of location, immediately establish communication between the on-scene PA representative and public affairs office at the installation. **(T-3).** This permits PA at the site and those at the PA office to coordinate information for release on a timely basis.

4.3.2.5.  The installation PA office must establish procedures to notify a tenant unit commander of any follow-on PA actions in incidents involving that commander's resources. **(T-1).**

4.3.2.6.  In incidents likely to require PA support for extended periods of time, or likely to exceed the capabilities of the responsible PA office, PA will:

4.3.2.6.1.  Ask the next higher PA echelon for additional personnel and equipment, if needed. **(T-1).**

4.3.2.6.2.  Set up a 24-hour news Media Operations Center, in coordination with representatives from all relevant federal, state, and local offices. **(T-1).** The Media Operations Center should have the appropriate infrastructure to support anticipated media representatives, including commercial internet and at least one commercial telephone line for PA personnel only. Consider having an additional telephone line to accommodate media requirements in the event cell phone use is limited.

4.3.2.6.3.  Provide Air Force or Space Force news releases about the incident to state, local, or other officials responsible for informing the public and media, or who need the releases for any other purpose. **(T-1).**

4.3.2.6.3.1.  See DAFI 35-101, Chapter 3, for information that should be included in the initial news release.

4.3.2.6.3.2.  Ensure the relevant MAJCOM/PA or Field Command PA and the Defense Media Activity are included as addressees on initial information release and other publicly releasable information and images. **(T-1).**

4.3.2.6.4.  Anticipate public concerns and issues and produce news releases before such concerns distort public perceptions. **(T-1).**

4.3.2.6.5.  Will record media and public queries as they are received. **(T-1).** Use AF Form 39, *Response to Query*, as time permits.

4.3.2.6.6.  Use a central events log to record: Time of incident, important developments, time of releases, guidance received from higher PA echelons and how or when it was implemented, and thumbnail sketches of most significant queries and events. **(T-1).**

4.3.2.6.7.  Alert base telephone operators to direct all news media and public calls to the installation PA phone line in the media operations center. **(T-1).**

4.3.2.6.8.  Escort media, as needed.

4.3.2.6.8.1.  Before taking media representatives to the incident area, brief them on the current situation, base organizations involved, and any possible risks of personal harm.

4.3.2.6.8.2.  Issue a Media Badge. Coordinate with the security forces to ensure they recognize the badge. Note that media representatives are not allowed beyond the incident cordon perimeter, if established, or the edge of the incident.

4.3.2.7.  Activate, operate and update organizational social media accounts, mobile apps, and official public websites, as applicable.

4.3.2.7.1.  Social Media, Mobile Apps, and Official Websites. Organizational social media platforms (such as Twitter™, Facebook™, Instagram™, or any applicable mobile apps) simultaneously provide base personnel and media representatives with an authoritative point of contact for current, accurate information about the status of any incident, and the command's actions. Utilizing these platforms allows PA offices to more effectively manage resources when time is limited. Consider using the installation public website to communicate lengthier messages. Prepare messages for commander's approval that can be released on all available platforms.

4.3.2.7.2.  The PA office should publicize the existence of organizational social media accounts and mobile apps both before and during an on-base incident through the command information program. These accounts should be promoted as sources of credible information during a crisis.

4.3.2.8.  Develop situation reports (SITREPs), if the crisis warrants. **(T-3).** See AFMAN 10-206, *Operational Reporting (OPREP)*, for more information about SITREPs. Especially consider using these during an on-base incident. Send SITREPs to MAJCOM/PA and/or Field Command PA as required. MAJCOM/PAs and Field Command PAs must forward to Higher Headquarters. PA will continue reporting during emergency conditions using priority precedence. **(T-3).** SITREPs include:

4.3.2.8.1.  Base facilities involved and how affected.

4.3.2.8.2.  Number of military personnel involved, both as participants in the incident and as members of the control force or in support of the control forces.

4.3.2.8.3.  Number of PA augmentation personnel requested or in place.

4.3.2.8.4.  Assessment of impact to on-base personnel, including information about previous similar incidents.

4.3.2.8.5.  PA actions already taken, and known or anticipated media interest.

4.3.2.9.  After-Action Report. Provide an after-action report to MAJCOM/PA or Field Command PA within 7 days after the end of an incident. **(T-3).** Report should contain a chronology of PA actions, problems encountered, community and media relations activities, and lessons learned.

## 4.4.  Controlling Photography on U.S. Military Installations During Crisis.

4.4.1.  If classified material is exposed, the incident commander and PA will not allow media or visitors to photograph or record in the area. **(T-2).** PA will not release official Air Force or Space Force incident photographs that show classified information, human remains, or blood. **(T-1).**  See AFI 51-307, *Aerospace and Ground Accident Investigations*, for guidance on release of official Air Force photographs prior to release of the investigation report. It does not mean the presence of humans or blood is in itself a reason to prohibit all media photography.

4.4.2.  Classified Material. If classified information or materials are exposed and cannot be covered or removed immediately, media or visitors are not allowed to photograph or record in the area. As soon as reasonably possible, the appropriate agency will cover exposed classified objects and information in order to allow escorted media to photograph or record the site. **(T-1).** The commander and PA will:

**App. 241**

4.4.2.1.  Notify media or visitors of any restrictions with regard to what can and cannot be filmed in a given area or activity. **(T-1)**.  The commander and PA will bar or restrict media and visitors from sensitive sites or activities. **(T-1).**

4.4.2.2.  Immediately notify Security Forces of suspected photography of classified material by media or visitors. **(T-2).** Security Forces will most likely confiscate the equipment, complete an AF Form 52, *Evidence Tag*, and relinquish to Air Force Office of Special Investigations (AFOSI) for further processing. PA should not hold  the media or visitor, unless directed to by SFS for safety reasons. Security Forces should coordinate closely with command officials to confirm the existence of classified information on the seized materials, review the coverage, and return all portions that do not contain classified information.

4.4.2.3.  Immediately notify the local AFOSI for its determination as to whether an AFOSI investigation is warranted if it is determined that:

4.4.2.3.1.  The coverage contains classified information and in some cases, AFOSI should develop and review the content and will handle further necessary coordination on processing classified information.  AFOSI will most likely review and electronically edit classified information from the media coverage.

4.4.2.3.2.  If it appears there was intent to deliberately obtain coverage of classified information for purposes of profit, espionage or to have any other significant adverse impact on national security, the Air Force, base, or command, officials must immediately report the above actions through command channels as well as to Office of the Secretary of Defense, Public Affairs (OSD/PA) through PA channels.

**4.5. Control of Photography at an Off-Base Location in the United States and its Territories.**  The authority of PA personnel, incident commanders, incident boards, and security forces is limited in dealing with media, particularly at an accident site outside an installation, unless it is declared a national defense area (NDA).  In order to control the scene, the following must occur:

4.5.1.  The senior Air Force or Space Force representative at the scene finds out, as soon as possible, if there is any identifiable classified information present. **(T-1)**

4.5.2.  If no classified information is exposed, or if it has been covered or removed, the senior Air Force or Space Force representative authorizes media photography. PA representatives will use identified safe routes to escort media to a safe viewpoint of the scene, allow photography, provide statements to media from cleared press releases, and coordinate all media queries, to include interview requests. **(T-1).** If photography of the incident scene is not initially an option, consider as an interim solution allowing media to photograph and report from a checkpoint where emergency responders are entering.

4.5.3.  If undetermined whether classified information is exposed, explain that fact to any media photographers at the scene and advise them no photography is authorized. Warn that taking pictures without permission may violate federal law, and if they persist, may identify them for future investigative purposes.

4.5.4.  If classified information is exposed and cannot be covered or removed, the senior Air Force representative must:

4.5.4.1.  Explain the situation and ask the media to cooperate. **(T-1).**

4.5.4.2.  Explain federal law prohibits photography when official permission is expressly withheld (Title 18, United States Code (U.S.C.), § 795 and § 797). **(T-0).**

4.5.4.3.  Not use force if media representatives refuse to cooperate unless declared an NDA. **(T-1).** If photographs are taken after a warning is issued, Air Force officials ask civilian law enforcement authorities to stop further photography of the exposed classified information and to collect all materials with that coverage.

4.5.4.3.1.  If no civilian law enforcement authorities are on the scene and media representatives take unauthorized pictures, do not seize the materials or hold the photographer. Instead, the senior Air Force or Space Force official at the scene or the responsible Air Force or Space Force installation commander must:

4.5.4.3.1.1.  Immediately contact the managing editor or news director of the newspaper, magazine, or television station employing the photographer. **(T-2).**

4.5.4.3.1.2.  Explain the situation. **(T-2).**

4.5.4.3.1.3.  Request the return of media coverage having suspected classified information. **(T-1).**

4.5.4.3.1.4.  Explain failure to return the material to military authorities violates federal law (Title 18, U.S.C., § 793(e), § 795 and § 797). **(T-0).**

4.5.4.3.1.5.  Review media coverage turned over to the Air Force **(T-1).**

4.5.4.3.1.6.  Report the action by telephone and follow-up message, when such contact is made, through PA channels to OSD/PA. **(T-1).**

4.5.5.  Liaison with Media. Incident occurring off an installation are under state and local authorities' control. Officials often rope off an area to protect the public from injury or to protect government property from further incident. When this is done, the on-site commander must coordinate media access to the accident site with civilian officials. **(T-2).** If possible, brief the media on safety hazards in the area and the need for preserving the site for investigation and consider escorting media representatives. Air Force and Space Force personnel do not have authority to physically restrict movement of media representatives.

**4.6. Control of Photography Off-Base in a Foreign Country.** Air Force and Space Force officials at the scene must comply with status of forces agreements, the laws of the host nation, and other instructions of the combatant commander responsible for that area. **(T-0).** Overseas MAJCOM commanders publish supplements to this manual that state guidance on relations with media at incident sites.

**App. 243**

## Chapter 5

## COMMUNITY ENGAGEMENT PROCEDURES

*Section 5A—Purpose*

**5.1. Purpose.** Community engagement encompasses activities of interest to the general public, businesses, academia, veterans, service organizations, military-related associations, and other non-news media entities. Targeted engagements with and through various groups enhance mutual understanding, cooperation, and support necessary to create desired effects that support the Air Force's communications objectives.

**Sections 5B—***Civic Leader Tours, Program Execution, and Selection*

**5.2. Civic Leader Tour Guidance.** The target audience is stakeholders connected to a local issue or where general civic education can be justified. Civic Leader Tours are more than one day and involve travel away from the local installation. The following guidance will be implemented when planning any Civic Leader Tour.

5.2.1. For all tours, specific communication objectives are developed by the unit and forwarded for approval via the tour plan to the MAJCOM/PA or Field Command PA and SAF/PAY. Consider theme-based tours, such as environmental, small business, personnel, education, warrior care and others.

5.2.2. The PA sponsor must indicate special aircraft configuration, including seating, comfort pallets, etc., with the appropriate supporting airlift unit scheduler when arranging airlift support. **(T-1).**

5.2.3. All group lodging reservations are made through the base lodging office. Under no circumstances may government credit cards, personal credit cards, or personal checking accounts be used to hold group reservations. If only off-base non-contract lodging is available, recommend the fund established for collectively managing guests' expenses be used for any lodging deposit normally associated with commercial hotels, or work with the hotel to waive the requirement.

5.2.4. Continental United States (CONUS) units must conduct tours within the CONUS. **(T-1).** Exceptions will be rare. Visits to Alaska bases are considered for CONUS unit tour requests on a case-by-case basis by SAF/PAY.

5.2.5. Group should be composed of no more than 40 participants and should not be less than 25, including escorts. Include a senior Air Force representative and a public affairs officer at the point of origin as military escorts on flight. Air Force escorts, including the host and executive officers, should not exceed 20 percent of the total number of guests.

5.2.6. SAF/PAY will be the approving authority for waivers to the above requirements. Prior to delivering invitations, submit requests for waivers to SAF/PAY through the MAJCOM/PA or Field Command PA and include an itinerary and letter of justification. Due to the longer flying times for Pacific Air Force (PACAF) and United States Air Force in Europe (USAFE) tours, PACAF is allowed four-day tours and USAFE three-day tours, if approved by MAJCOM/PA. **(T-1).** SAF/PAY must approve waivers for tour durations that exceed any of

these limits.**(T-1**) SAF/PAY must approve waivers for tour durations that exceed any of these limits for both CONUS or Outside of the Continental United States (OCONUS). **(T-1).**

5.2.7.  Local PA offices are responsible for ensuring that all briefings, demonstrations, and orientations are cleared for presentation to the general public. See DAFI 35-101, Chapter 9, for more information. Local PA will schedule orientations, demonstrations, and briefings during normal duty hours. **(T-3).**

5.2.8.  Limit time spent in briefings and increase contact with Airmen, Space Professionals and operations. Present a balanced view of conditions and issues, including areas for improvement as well as successes.

5.2.9.  Retain emergency information on each participant until the end of the tour.

5.2.10.  Tours will not be composed of members from predominantly one organization (e.g., military affairs committee, or base support team).

5.2.11.  Include participants from a cross-section of the community or business leadership (consider age, gender, race, ethnic, and occupational backgrounds). Opinion leaders who can influence public opinion for the theme/objective selected for the tour, or inform and educate their communities and peers should be considered.  Flights involving foreign nationals must be reviewed for foreign disclosure requirements and political concerns, to include compliance with AFI 16-201, *Air Force Foreign Disclosure and Technology Transfer Program* and must include Deputy Undersecretary of the Air Force for International Affairs (SAF/IA) regional division coordination. **(T-1).**

5.2.12.  Invitations should only be issued on a by-name, by-tour basis with last-minute fills for cancellations done in the same manner. Do not send tour invitations prior to MAJCOM/PA or Field Command PA and SAF/PA approval. **(T-1).**

5.2.13.  Provide tour participants with biographies of tour senior hosts/escorts, fact sheets, and other materials on units to be visited, pertinent weapons systems, force modernization programs, Department of the Air Force Core Values and Competencies, and current Air and Space Forces themes and messages.

5.2.14.  Photography on board the aircraft is allowed if cleared by the aircraft commander.

5.2.15.  Tours to the Pentagon or the National Capital Region are not authorized.

5.2.16.  Tours do not include peripheral activities (such as sight-seeing, golfing, or other athletic events).

5.2.17.  Do not provide alcoholic beverages to guests aboard aircraft and buses, or during any business briefings. **(T-1)**. Alcohol may be served at Official Representation Funds-sponsored evening receptions or dinners, in accordance with AFI 65-603, *Emergency and Extraordinary Expense Authority*.

5.2.18.  Do not include spouses or retired military members unless they qualify as opinion leaders in their own right. **(T-1)**.

5.2.19.  Evening activities should be an integral part of the education process, not purely a social event. Use the time for appropriate speakers and interaction with leadership. If available, include a performance by an element of an Air Force Band.

5.2.20. Limit repeat participants to no more than 20 percent of the group total. Repeat participants are those who have gone on one or more past civic leader tours with the host unit. If repeat participants are included, assign them mentorship responsibilities for new attendees.

**5.3. Civic Leader Program Execution.** Commanders are encouraged to have civic leader/honorary commander programs. These programs increase the bond between local civic leaders, the Air Force and the Space Force. The following guidance will be implemented when executing installation, MAJCOM or Field Command civic leader programs.

5.3.1. Generally, neither appropriated nor non-appropriated funds are available to fund civic leader programs. Base events for civic leaders, such as luncheons, should be "pay-as-you-go" or funded with official representation funds (ORF) in accordance with AFI 65-603.  This type of event should be held only once a year at locations within the U.S. and its territories. Official representation funds may be used to host distinguished foreign nationals in accordance with AFI 65-103, *Temporary Duty/Special Orders*. Consult the installation legal office before making plans.

5.3.2. Guidelines for event participation and gifts apply to civic leader and advisory group programs. Event participation cannot violate DoD 5500.07-R, *Joint Ethics Regulation* **(T-0).** Avoid anything that could be perceived as impermissible preferential treatment, fraud, waste or abuse. **(T-0).**

5.3.3. When practical, term limits should generally be no more than three years to enhance the program's reach and effectiveness and to avoid program stagnation. If commanders deem longer terms are necessary, extreme care should be taken to avoid the perception that civic leader representation is a closed or stagnant group. If requested, a current civic leader may terminate their term early. Should a civic leader not fulfill their responsibilities (e.g., recurring non-participation) the installation commander may terminate their term early.

5.3.4. Base access for civic leaders is an installation commander's decision and should be worked with guidance provided in Department of Defense Manual (DoDM) 5200.08V3_AFMAN 31-101V3, *Installation Perimeter Access Control (FOUO)*, and local security forces offices.

**5.4. Choosing Civic Leaders.** The intent of a civic leader program is to educate and increase the knowledge and understanding of key civic leaders about the Air Force and Space Force. Civilian participants are selected from among non-federally elected or appointed officials, mayors, chamber of commerce-type group members, principals of local schools, Military Affairs Committee members and others who, because of their position or influence in the community, can positively impact public support for the base. Public Affairs offices should nominate civic leaders from a diverse cross-section of the entire community and nominees should be approved though local legal offices prior to sending to leadership.

5.4.1. Civic Leaders should:

5.4.1.1. Be a United States citizen of outstanding character, integrity and patriotism.

5.4.1.2. Be a leader in local/regional/national community affairs.

5.4.1.3. Be in a position to provide individual perspectives to senior Air Force and Space Force leaders on Air and Space Forces initiatives, issues and other matters of interest.

5.4.1.4.  Be in a position to disseminate information about the Air Force and Space Force to a broad cross section of the public and to other prominent citizens in their area.

5.4.1.5.  Be able to interpret and affect public attitude toward the Air Force and Space Force.

5.4.1.6.  Be able and willing to devote a reasonable amount of time as a civic leader for the installation.

5.4.2.  Civic Leaders will not:

5.4.2.1.  Be an employee of the federal government. **(T-0).**

5.4.2.2.  Be a federally elected or appointed official. **(T-0).**  Locally elected or appointed officials will be considered on a case-by-case basis.

5.4.2.3.  Be an active member of the National Guard or a member of the Ready Reserve (Selected), Individual Ready Reserve, or Standby Reserve. **(T-1).**

5.4.2.4.  Be a retired military member of any service. **(T-0).**  Exceptions will be rare and approved at the MAJCOM/PA or Field Command PA level when there is significant justification for inclusion.

5.4.2.5.  Be a paid employee of any political party or candidate. **(T-0).**

5.4.2.6.  Hold financial interests that conflict with their role as a civic leader, or those who have current, or are bidding on, contracts with the DoD. **(T-0).**

5.4.3.  Selection of civic leaders should target engagement of a broad cross-section of area community leaders. Where possible, a single representative to the program from organizations is desirable (for example, from a school or business), taking into account the fact that heavily engaged civic leaders may be members of or participate in multiple local groups or organizations.

5.4.4.  Nominees can work in a media-related field, but should not be a newspaper, TV, professional blogger/vlogger, or radio reporter, due to the inherent conflicts of interest that could arise if allowed unescorted access to the installation and/or access to base leadership in situations not intended to be public or to be publicized. Consult with MAJCOM/PA or Field Command PA on establishing guidelines to mitigate potential conflict.

5.4.5.  Individuals employed by DoD contractors cannot be nominated, nor may nominees otherwise occupy a position that may create a perception of a conflict of interest between program participation, their private or organizational interests (for example, financial interests in DoD contracts). **(T-0).** The local legal office should be contacted for assistance in addressing questions in this regard.

*Section 5C—Air Force Band Engagements*

**5.5. Air Force Band Engagements.**  Air Force bands offer commanders powerful engagement opportunities for connecting and messaging in their local communities. Bands can be used to specifically target a key audience or stakeholders that are important to installation commanders, or can be used as a general opportunity to engage with a collected audience. As a byproduct of the nature of music, bands have the ability to unify a group of disparate people into a similar

state of mind to receive messages about the Air Force and Space Force. Different musical products focus attention of specific audiences. As an Air Force rock band might play better at a motor-racing event, a jazz or concert ensemble might better attract an older influencer audience.

5.5.1.  Establish a communication schedule with the nearest band commander to identify local strategies/initiatives including open houses, airshows, community relations events, significant celebrations, and prioritized community involvement.

5.5.2.  Incorporate possible band participation in the initial planning. Although an occasional short-notice event can be supported, AF Bands schedule tours and temporary duties 6-12 months from event dates.

5.5.3.  Air Force bands provide musical products that can improve messaging to a specific audience type.

5.5.4.  Air Force bands are given an area of responsibility for outreach and engagement of the public as well as support for bases located within their area of responsibility, in accordance with AFI 35-110, *U.S. Air Force Bands* , **Chapter 4**.

5.5.5.  Rules for AF Band participation, as well as how to request a performance, can be found in in AFI 35-110, Chapter 5.

### Section 5D—Information Requests and General Inquiries

**5.6. Responding to Information Requests and General Inquiries.** Responding promptly, accurately, and completely to requests for information or complaints is an important part of Public Affairs. People often develop lasting impressions of the Air Force or Space Force and the professionalism of their members based on the quality and timeliness of replies to queries, requests and comments.

5.6.1.  General Guidance. Many times, correspondence is the only direct contact a person or organization has with the Air Force or Space Force. To that end, use the following guidelines when responding to requests for information and general inquiries:

5.6.1.1.  Responses should be written in a clear, concise style. Avoid Air Force and/or Space Force jargon, technical language, and acronyms.

5.6.1.2.  Whenever possible, any current, previously cleared information should be used in responding. However, when requests require more detail or involve sensitive subjects, proper coordination is essential.

5.6.1.3.  When appropriate, refer requesters to **www.af.mil/Questions.aspx** or **www.spaceforce.mil/Contact/**, the installation home page or to official social media channels.

5.6.2.  Public Inquiries. Refer public inquiries to **www.af.mil/Questions.aspx** or **www.spaceforce.mil/Contact/**.  Public Affairs is not expected to invest excessive time and resources to research and develop materials for student research papers. Provide readily available materials, politely advise requesters their request goes beyond PA's research capability and refer them for further information to other appropriate sources of information, such as specific magazines, books, public or university libraries, industry, or other Air Force units.

5.6.3.  Congressional Requests and Inquiries. Handle guidance according to AFI 90-401, *Air Force Relations with Congress*.

5.6.4.  Regional, State, and Local Government Officials and Special Interest Group Requests. Special care is taken to get a fully coordinated staff response and concurrence by the commander, and higher headquarters when appropriate, before answering these requests. Coordinate with the legislative liaison representative at the appropriate level in the commander's action group or elsewhere on the commander's staff.

5.6.5.  Foreign National Requests. Public Affairs must respond directly to all foreign national requests for unclassified information approved for public release. **(T-1).** All other requests should be sent to the local AFOSI detachment and to the MAJCOM or Field Command foreign disclosure offices for release determination. If release determination cannot be made at MAJCOM or Field Command level, the request is sent to SAF/IA.

5.6.6.  Media Queries. Requests for information from members of the news media should be responded to in accordance with DAFI 35-101, Chapter 2, as well as **Chapter 3** of this manual.

*Section 5E—Support for Non-Government, Entertainment-Oriented Productions*

**5.7.  Production Companies.**  The Entertainment Liaison division of SAF/PA (Secretary of the Air Force, Public Affairs, Air Force Entertainment Liaison Office (SAF/PAYL) collaborates and coordinates with production companies to develop a project that will qualify for DoD-approved assistance. See DAFI 35-101, Chapter 1, for more information about SAF/PAYL. Before a production company officially submits a project to Office of Assistance Secretary of Defense, Public Affairs (OASD/PA) for support consideration, SAF/PAYL may provide courtesy assistance, as in project research and development, thereby helping the production company to develop a script that might ultimately qualify for DoD assistance. The following process is recommended to increase chances of support.

5.7.1.  The production company submits to OASD/PA, via SAF/PAYL, a formal request for production assistance. To begin the process, refer the production company to the SAF/PAYL office website: **www.airforcehollywood.af.mil**. On this website, the production company will need to complete a "Production Support Request Form." Once completed, the website instructs the production company to email the form to the organizational email box. SAF/PAYL will review the request and coordinate appropriately. **(T-0).**

5.7.2.  Production companies will be required to provide complete scripts for review and evaluation upon request of SAF/PAYL. All information provided is considered proprietary and is treated accordingly.

5.7.3.  SAF/PAYL reviews the request and determines initial support feasibility and, when necessary, coordinates with appropriate Headquarters Air Force agencies, MAJCOMs and Field Commands. Any comments, changes, or problems are resolved by SAF/PAYL, and recommendation for approval or disapproval is sent to OASD/PA.

5.7.4.  Once support approval is granted, if the original request submitted was not complete as far as final scripting or specific support requirements, these are coordinated and approved by SAF/PAYL and OASD/PA as soon as possible thereafter. Support approval or disapproval gets communicated to the producer by OASD/PA or SAF/PAYL.

5.7.5.  Once a project is granted OASD/PA approval, SAF/PAYL is authorized to provide official production support through an assigned project officer. SAF/PAYL assists with script review and rewrite, filming location arrangements, stock footage research and acquisition, on-site technical advice, handling of insurance and reimbursement arrangements, and review of completed projects.

5.7.6.  On occasion, local PA units will be asked to assist with on-ground support if it's determined to be in the best interests of the Air Force and/or Space Force. A representative from SAF/PAYL will always be on-site. **(T-1).**

## Chapter 6

## ENVIRONMENTAL PUBLIC AFFAIRS RESPONSIBILITIES

**6.1. Purpose.** The Department of the Air Force develops and executes public engagement programs to build sustained public understanding, trust and support for Air Force and Space Force people and missions. The focus of PA activities is to inform and involve audiences during critical decision-making windows in various Department of the Air Force Environment, Safety, and Occupational Health programs.

**6.2. Public Affairs Responsibilities.**

6.2.1. PA will ensure news releases, newspaper display ads, social media material, and media and public responses to queries are properly coordinated with the Environment, Safety and Occupational Health management team and, as needed, operations, legal, security, medical, safety, logistics, and other appropriate agencies or organizations before releasing environmental information. **(T-3).**

6.2.2. Installation PA will prepare public releases regarding local mishaps or negative impacts in coordination with appropriate agencies, such as safety, environmental, legal, civil engineering and installation commanders. **(T-3).** Installation PA will prepare public releases regarding local mishaps or negative impacts in coordination with appropriate agencies, such as safety, environmental, legal, civil engineering and installation commanders. **(T-3).** In additional, installation PA will appoint a representative to the Installation's Cross Functional Team in accordance with AFI 32-7001, *Environmental Management*.

6.2.3. SAF/PAO is the central point for coordinating and communicating environmental successes to national and international audiences, and works with Air Force Installation and Mission Support Center, Public Affairs (AFIMSC/PA) to communicate overarching environmental information for centrally-managed Air Force Installation and Mission Support Center (AFISMC) programs.

6.2.3.1. Installation, MAJCOM/PA, and Field Command PA offices communicate environmental successes to local, state, and regional audiences and forward local news releases and news clippings to SAF/PAO for consideration in the national program.

6.2.4. Air Force Installation and Mission Support Center Public Affairs. AFIMSC/PA can provide technical assistance, training, guidance, products and resources, up to and including PA representation, depending on the scope and duration of the environmental action. See the environmental public affairs page of the Department of the Air Force PA SharePoint® site for more information.  AFIMSC/PA can coordinate PA activities and release of information with appropriate subject matter experts, including National Environmental Protection Act (NEPA), Air Installation Compatible Use Zone, tribal relations, natural and cultural resources, wildland fire management, environmental restoration, and other programs.

**6.3. Environmental Impact Analysis Process (EIAP).** Community involvement is central to meet federal requirements outlined in both National Environmental Protection Act and the President's Council on Environmental Quality regulations. EIAP is the Department of the Air Force's NEPA compliance program, codified in Title32, Code of Federal Regulations, **Part 989**, *Environmental Impact Analysis Process (EIAP),* current edition.

**App. 251**

6.3.1.  PA Responsibilities. See **Table 6.1**, Public Affairs Activities for EIAP Actions, for guidelines on how to provide specific PA support during each phase of the EIAP.

6.3.2.  PA must notify the public on the availability of a Finding of No Significant Impact (FONSI), or with a record of decision for an Environmental Impact Statement (EIS), via display advertisement (not a legal ad) in a local, state, or regional general circulation newspaper. **(T-0).**

6.3.2.1.  The ad should be at least one sixteenth of a page (approximately 4x5 inches in size).

6.3.2.2.  The display ad is a paid newspaper advertisement, funded by the project's proponent, typically the MAJCOM or Field Command. It should appear in a prominent section of general circulation newspapers rather than legal columns of papers. If there is a specific state requirement to use a legal advertisement for public notification of NEPA activities, then the legal advertisement should be used in conjunction with, not instead of, a public notice display advertisement. When determining how much public information is appropriate (how many news releases, display ads, or meetings should be completed), PA should consider the following:

6.3.2.2.1.  The size of the proposal and the degree to which the public may be affected by the action.

6.3.2.3.  The anticipated level of public interest or controversy.

6.3.2.4.  The size of the area affected (geography and population).

6.3.2.5.  Past controversy associated with similar activities (e.g., airspace reconfiguration, forestry management plans or timber cuts, and increased night operations or training).

6.3.2.6.  Whether the proposed action is one of national concern, is unprecedented, or normally requires an EIS.

6.3.2.7.  The degree of any associated environmental controversy.

**Table 6.1.  Public Affairs Activities for EIAP Actions.**

| ENVIRONMENTAL ACTION | PUBLIC AFFAIRS ACTIVITIES |
|---|---|
| Categorical Exclusion | No PA coordination required. |
| Environmental Assessment (EA) | PA coordination of publicly releasable information, drafting/sending of news releases, support for briefings and/or public meetings (where applicable, such as serving as interface with community, providing media escort and arranging interviews, and helping develop handout and/or display materials). |
| FONSI and Final EA | PA coordination of publicly releasable information, review of display ad, and drafting/sending of news release. |

| Environmental Impact Statements | |
|---|---|
| Notice of Intent | PA coordination includes assistance with preparation of Q&As; review of notice of intent published in the Federal Register; review of display advertisement announcing notice of intent; support of public meetings (see EA section above for potential activities) and drafting/sending news release. |
| Scoping | PA coordination of publicly releasable information, review of display ad, support of public scoping meeting(s) (see EA section above for potential activities), and drafting/sending news release. |
| Draft EIS | PA coordination on information submitted to Federal Register, preparation of Q&As, review of display ad announcing notice of availability, support of public hearing(s) (see EA section above for potential activities and Appendix C of 32 C.F.R. Part 989, and drafting/sending news release). |
| Final EIS | PA coordination of publicly releasable information, review of display ad, and drafting/sending news release. |
| Record of Decision | PA coordination of publicly releasable information, review of display ad, and drafting/sending of news release. |
| Public Records | PA provides security and policy review of publicly releasable documentation. |
| Community Relations Plan Development | PA coordination of development of community relations plans to support environmental restoration activities with Air Force Civil Engineer Center Environment Directorate (AFCEC/CZ) (installation restoration project manager). |
| Public Meeting | PA coordination of public meetings to provide information on environmental projects with appropriate agencies, including Air Force Civil Engineer Center (AFCEC); |

**App. 253**

| | advertises meetings via press release, social media, and/or display advertising; supports Air Force subject matter experts and other personnel when engaging media; engages AFIMSC/PA and AFCEC/CZ to develop messaging and guidance. |
|---|---|

**6.4. Environmental Restoration Program Cleanup.** The Environmental Restoration Program (ERP) is a comprehensive effort to identify, investigate, evaluate, and restore contaminated areas (hazardous disposal sites, landfills, storage facilities, and operational areas) on property owned by, leased to, or otherwise possessed by the Air Force within the United States, including sites where contamination has migrated off such property. AFCEC/CZ manages and executes Air Force restoration projects through regional installation support sections and installation restoration project managers.

6.4.1. General ERP Public Affairs Responsibilities. In cases where there may be no PA assigned to an installation, such as a government-owned, contractor-operated (GOCO) facility, the responsible command should provide a PA specialist, or appropriate on-site representative, to support the relevant public participation activities. AFIMSC/PA is available for support in such instances. MAJCOM/PA and Field Command PA should also maintain copies of documents and materials accomplished by the installation-level public affairs officer (or selected on-site representative) in support of the ERP, such as community relations plans, environmental updates, mailing lists, Information Repository indexes, news releases, and fact sheets. As a minimum, PA should:

6.4.1.1. Coordinate, or assist in the coordination of, Restoration Advisory Board (RAB) activities, including the initial community-interest assessment process. Advise the base commander and/or RAB co-chairperson of PA objectives pertaining to development, participation, and support of the Restoration Advisory Board and other required public information activities.

6.4.1.2. The RAB is a community-based advisory body designed to act as a focal point for the exchange of information between the Air Force and/or Space Force and the community regarding environmental restoration (clean-up) activities. Board members include representatives from the community; interest groups; local, state, and federal regulatory agencies; and the Air Force and/or Space Force. RAB meetings are open to the public. **(T-0).**

6.4.1.3. At GOCO facilities, the assigned PA specialist will work with government contracted personnel, regulatory agencies for that region, and community members to support RAB activities and implement PA operations as appropriate and applicable to that community and situation.

6.4.1.4. Establish and maintain liaison with higher headquarters PA offices and concerned base agencies on all ERP PA and/or community involvement matters. Depending on the action itself or the stage of the ERP, PA may elect to coordinate with other agencies, local governments, or special interest groups on news releases, responses to media queries, or briefings. Since demographic conditions vary widely, PA should

fully evaluate their local situations (to include stakeholders surrounding GOCO facilities) to ensure all concerned entities are in the communication channel.

6.4.1.5. Assist restoration personnel in creating a Community Relations Plan. Community Relations Plan goals include identifying issues of possible community concern, providing a basis for communication between the facility and the community, outlining how the public can participate in the decision-making process, and serving as a public record of community involvement during the investigative and remedial programs.

6.4.1.6. Review all ERP reports and other environmental documents intended for public release for effective risk communication language and possible community concerns.

6.4.1.7. Develop products that provide regular updates on ERP activities. These products may include, but are not limited to, progress reports, fact sheets, news releases, and public notices designed to increase the community's understanding and involvement in the ERP.

6.4.1.8. Announce the availability of appropriate documents by display advertisement when they are placed in the Information Repository or Administrative Record. See **paragraph 6.3.1.1** for further guidelines on the advertisement. More than one event can be included in the advertisement. For example, the same advertisement can discuss the contents of the proposed plan, public comment period, and public meeting information. Ads are funded through the Environmental Restoration Account.

6.4.1.9. Support restoration personnel communications to ensure internal/installation audiences are fully informed of IRP progress through websites, social media, commander's calls, staff meetings, town hall meetings, emails, etc.

6.4.1.10. Assist restoration personnel in satisfying Preliminary Investigation guidelines for removal actions. Such actions generally fall within three categories: emergency, time-critical, or non-time-critical, which have different Preliminary Investigation activities.

6.4.1.11. Help program personnel prepare for any public meetings throughout the IRP. Also assist program personnel in obtaining public comments when desired at other stages of the cleanup process. This could involve helping gather comment cards at public meetings, providing an area on the public website that links to the comment page or email, and sending out press releases seeking public comment (or including information in related releases about how the public can comment).

6.4.1.12. Assist in preparing and editing restoration success stories in support of the Defense Environmental Program Annual Report to Congress or any other communications intended for release to the public or to agencies outside of the DoD that is in line with current Public Affairs guidance. This may, at times, include coverage of mishaps or negative indications. PA must disclose issues truthfully and with transparency in accordance with current PA guidance. **T-0** Public responses to potentially negative elements must also be prepared and coordinated through appropriate channels. **T-0**

## Chapter 7

## TRAVEL PROCEDURES FOR PUBLIC AFFAIRS PURPOSES

*Section 7A—General*

**7.1. Purpose.** The purpose of PA travel is to further public understanding of Department of the Air Force missions, people, and weapons systems and to develop Air Force and Space Force advocates to carry the Air and Space Forces story to non-traditional as well as traditional audiences. In accordance with Department of Defense Instruction (DoDI) 4515.13, *Air Transportation Eligibility*, and DoDI 5122.08, *Use of DoD Transportation Assets for Public Affairs Purposes,* the use of DoD assets for public affairs purposes may be provided when travel is determined to be in the best interest of the DoD, and commercial transportation is not available or is otherwise inadequate to fulfill mission objectives. **T-0 D**AFI 35-101, Chapter 8, *Travel for Public Affairs Purposes*, outlines general guidelines, eligibility, and approval level for any PA travel. It is critical to follow the correct procedures when traveling for PA purposes. Contact higher headquarters PA if there are questions.

*Section 7B—Guidelines for Hosting Civilian, Non-Media Travel*

**7.2. Civilian Travel Procedures and Guidelines.**

7.2.1. Selecting Invitees. Participants should be selected and invited as part of an overall PA strategy to increase public understanding and support of the roles and missions of the DoD, Department of the Air Force, or a local installation.

7.2.2. Installation PAs will provide a comprehensive list of proposed invitees and submitting it to the wing or garrison commander, MAJCOM/PA or Field Command PA, and SAF/PAY for final approval prior to sending invitations. **(T-1).**

7.2.3. Invitational Travel Orders and Passenger Manifests. When traveling on a local flight, there is no requirement for invitational travel orders; however, installation PAs are responsible for providing required information for the manifest. When the travel is non-local, civilian participants must travel on invitational travel orders but at no cost to the government (no line of accounting required on the orders), unless it is a Civic Leader Tour-funded Special Assignment Airlift Mission.

7.2.4. Reporting Requirements. Installation PAs will provide an after-action report within 30 days of completion to owning MAJCOM/PA or Field Command PA to include date, type of aircraft, itinerary, resulting media and/or follow-on activity and names of participants. **(T-2).**

*Section 7C—Submission Guidelines for Hosting Intertheater Media Travel*

**7.3. General.** In accordance with Department of Defense Directive (DoDD) 4500.54E, *DoD Foreign Clearance Program (FCP)* and the DoD Foreign Clearance Guide (FCG) located at **www.fcg.pentagon.mil**, country/theater clearance is needed from and granted by the host nation and the U.S. embassy of the country to be visited. **(T-0).** Theater clearance is needed for visits to overseas military activities on matters pertaining to the mission of the regional/geographic combatant command, and is granted by the regional/geographic combatant command. It

generally requires at least 30 days of advance notice, and travel to some countries may require more time due to host nation process requirements. Many organizations associated with the embassy and combatant command have a vested interest in media travel and will provide clearance input based on real-world events and activities.

**7.4. Responsibilities.**

7.4.1. Country/theater clearance requirements are defined in the FCG: **www.fcg.pentagon.mil**. Prior to requesting clearances, the requester should check the FCG for the latest requirements, procedures and travel restrictions in effect for the location to be visited, as well as those for transiting locations. The requesting organization will submit a formal request for country/theater clearance through its MAJCOM/PA or Field Command PA using the Aircraft and Personnel Automated Clearance System (APACS) at **https://apacs.milcloud.mil/apacs/**. APACS is mandatory for processing DoD-sponsored official foreign travel in all overseas combatant commands. **(T-0).**

7.4.2. Once final operational and participation approval is received, the organization with operational approval authority will provide invitational travel orders/authorization for media members. **(T-0).**

7.4.3. The requesting organization should obtain current guidance on media ground rules from the destination theater PA.

7.4.4. The requesting organization will ensure travelers obtain passports and visas and sign ground rules and a hold harmless agreement prior to departure. **(T-0).** Media members must travel with the protective equipment required for the destination theater of operations. Protective equipment is NOT provided to news media representatives by the deployed unit once they arrive in theater. Media members are responsible for carrying their own personal, professional and protective equipment.

7.4.5. Failure to have the required documentation or any violation of the ground rules may be a basis for terminating a media representative's travel status.

7.4.6. The unit requesting travel will need to arrange for and fund the PA escort, unless otherwise funded by contingency funds such as those for Overseas Contingency Operations. **(T-1).** Once assigned, the escort serves as the primary liaison between the media representatives and the Air Force for purposes of the travel. Contact theater PA staff for guidance on escort requirements and any training needed before travel. Escorts are normally required on all intertheater media flights by Air Mobility Command aircraft. The destination theater may require that escorts follow certain theater reporting procedures, and can advise escorts on the minimum protective gear required for both the escort and media representatives.

**7.5. Request Procedures.**

7.5.1. The requesting organization should gather the following information required for the travel request: reason for media travel; names, media affiliations, social security numbers, and passport numbers of each media representative; Personnel Accounting Symbol Code and security clearance level of PA escort; and a proposed itinerary for coverage of theater of operations. Ensure that all personally identifiable information is protected in accordance with

AFI 33-332, *Air Force Privacy and Civil Liberties Program*. The requesting organization forwards this required information to MAJCOM/PA or Field Command PA.

7.5.2.  The MAJCOM/PA or Field Command PA of the requesting/hosting unit reviews and submits the country/theater clearance request through the Aircraft and Personnel Automated Clearance System (APACS) in guidance with the DoD *Foreign Clearance Guide*. **T-0**

7.5.3.  The MAJCOM/PA or Field Command PA of the requesting/hosting unit submits the participation approval request to OSD/PA (unless delegated) with an information copy to SAF/PAO.

7.5.4.  The MAJCOM/PA or Field Command PA of the requesting/hosting unit submits the operational approval request to the MAJCOM or Field Command with Operating Condition of air assets. A copy of OSD/PA participation approval is necessary to accompany all AMC operational approval requests for non-local media travel.

7.5.5.  The requester (generally the person on the MAJCOM/PA or Field Command PA staff and APACS account holder who entered the request) monitors the country/theater clearance status in APACS until approved.

## Chapter 8

## SECURITY AND POLICY REVIEW PROCEDURES

**8.1.  Purpose of Security and Policy Review Programs.**  Security and policy review programs enable communicators to inform and increase public understanding of the mission, operations, and programs of the Department of the Air Force, while safeguarding classified and sensitive information and maintaining consistency with Air Force, Space Force, DoD, and U.S. government policy. The Public Affairs officer at the lowest level, where approval authority exists, oversees all aspects of the security and policy review coordination process.

**8.2. Submitting Material for Review.** For planning purposes, submitters should normally allow a minimum of 10 work days for security and policy review. The 10-day clock begins when the receiving approval authority receives all required documents. Some complex documents, dissertations, manuscripts, theses, videos, etc., may require higher headquarters review, including SAF/PA, Defense Office of Prepublication and Security Review (DOPSR), and other federal agencies, and can take an additional 45-60 days to process. Work days required does not include the date of submission. The length, complexity, and content shall determine the number of reviewing agencies and, consequently, the time required for the complete review process. Drafts, notes, outlines, briefing charts, etc., may not be submitted as a substitute for a complete text. If a submission requires DOPSR clearance, SAF/PA will submit it. **(T-1).**

8.2.1. Submission to SAF/PA. Documents sent directly to SAF/PA should be submitted electronically. All electronically submitted requests must also include a memorandum indicating the submitters name, office symbol (if applicable), type of document, date required, and brief description. See **Attachment 5** for an example memorandum. The document and the memorandum should be submitted via email to: **usaf.pentagon.saf-pa.mbx.saf-pa-security-and-policy-review@mail.mil**.

8.2.1.1. To expedite review and clearance to SAF/PA, each electronically submitted package must include a memo or if elevating from the wing to AFIMSC for review and potentially up to SAF/PA, the AFIMSC Security and Policy Review Worksheet. **(T-1).** The memo must include:

8.2.1.2. Name, title, telephone number, email address and organization of originating unit, author, or speaker. **(T-1).**

8.2.1.3.  Title of article or presentation. **(T-1).**

8.2.1.4. Statement on where, when, and how the information is to be released and the sponsoring organization, if appropriate. **(T-1).**

8.2.1.4.1.  Required suspense date for release determination. If suspense date is earlier than date of presentation or publication, give reason. **(T-1).**

8.2.1.5. Statement that the information has been reviewed at the appropriate lower level and is recommended for public release. **(T-1).**

8.2.1.6.  Signed or initialed notation by author or speaker indicating approval of the text. **(T-1).**

8.2.1.7. When applicable, include a statement on technical material that outlines restrictions and militarily critical technologies as well as a statement that current Air Force and DoD policies have been considered. **(T-1).** Must provide all relevant comments from field unit technical coordinators and attach contractor transmittal letter, if it contains pertinent data. **(T-1).**

8.2.2. Submission to AFIMSC/PA. Material and or cases from installation/unit level that have been elevated to AFIMSC/PA for review, as well as any material and or cases originating at the AFIMSC/PA level, must be uploaded to the AFIMSC/PA Security and Policy Review SharePoint® site. **(T-1).** Any material/case submitted via the SharePoint® site must include the AFIMSC Security and Policy Review worksheet. The submitter/PA representative will complete the SharePoint® online form and upload any relevant material and the worksheet at **https://org2.eis.af.mil/sites/13948/spr/SitePages/Home.aspx**. If documents are too large for SharePoint®, submitters/PA representatives may send the documents via DoD SAFE (Secure Access File Exchange) at **https://safe.apps.mil**. This is the preferred platform for files too large for SharePoint® or email. See **Attachment 6**, *Public Affairs Security and Policy Review Worksheet*, for the worksheet template. The worksheet can be accessed online at: **https://org2.eis.af.mil/sites/13948/spr/Shared%20Documents/PA%20SECURITY%20AND%20POLICY%20REVIEW%20WORKSHEET.pdf**.

8.2.3. Technical Materials. For technical papers, include an abstract in layman's terms and, if appropriate, tell why releasing the information is important to DoD. An abstract that will be published in advance must also be reviewed for clearance. Clearance of an abstract does not fulfill the requirement to submit the full text for clearance before its publication. If an abstract is cleared in advance, always state the previously cleared abstract case number when requesting review of the full text.

8.2.4. Classified references are not authorized because they provide intelligence "shopping lists".

8.2.5. Generally, previously cleared information does not need to be submitted for review unless it contains substantial changes or it is used in conjunction with other unclassified material. Previously cleared unclassified information may inadvertently be combined in such a manner that, together, the new product becomes classified or raises policy concerns.

8.2.6. Speeches and presentations. Speeches and presentations can be submitted in bullet format if the essence of the information is apparent to the reviewer, (e.g., PowerPoint notes sheet) can be considered. The clearance of bullet- format material will, however, cover only that information presented for review and does not include extemporaneous remarks made during the presentation. Full text and proposed narrative is strongly recommended.

8.2.7. Website publication. Information intended for placement on websites, or other publicly accessible computer servers that are available to anyone, requires review and clearance for public release. Review and clearance for public release is not required for information to be placed on DoD-controlled websites or computer servers that restrict access to authorized users. Ensure all official websites are registered. See DAFI 35-101, Chapter 5, *"Command Information and Distribution"*, for information on the registration process.

8.2.8. Submission of mishap reports or excepts require coordination with the MAJCOM convening authority PA office in accordance with AFI 91-204, Safety Investigations and Reports.

8.2.9. Submission of Government-Produced Videos. Videos that incorporate music, narration, graphics, scripts, special effects, etc., must comply with all regulatory requirements for production videos as outlined in DoDI 5040.02, Visual Information (VI), DoDI 5040.07, *Visual Information (VI) Productions*, and DAFI 35-101, Chapter 7, *Visual Information* (**T-0**). Video productions that meet the above criteria, but have not been coordinated with or produced by PA personnel, shall be returned with no action taken until all required coordination has been completed (**T-0**). Videos that document experiments, lectures, briefings, etc., do not require adherence to the above procedures and can be submitted via normal procedures.

**8.3. Recommended Program Guidelines.** All PA offices will have a security and policy review program, and appoint one security and policy review authority, and at least one alternate, to operate it. PA offices should keep potential submitters informed about review requirements and procedures, and establish working relationships with staff agencies assisting in the review process.

8.3.1. The following are recommended program guidelines at the installation, AFIMSC, NonAppropriated Funds (NAF) and MAJCOM or Field Command level:

8.3.1.1. Keep a status log on information being reviewed consisting of case number, title of product, PA coordination, date completed, Subject Matter Expert (SME) and office review, date of reviews to include Operation Security (OPSEC), disposition designation (cleared, not cleared, etc.) with date, and any issues or required changes. The system of choice is the Public Affairs Information Release System (PAIRS); AFIMSC/PA requires use of PAIRS by units elevating cases to higher headquarters. Units using PAIRS are able to create logs through the report function. SAF/PA and AFIMSC/PA can provide access, guidance and training on PAIRS.

8.3.1.2. Maintain an effective suspense system. Allow a minimum of 10 work days for normal coordination of cases through the organization. Coordination time increases if material must be coordinated with MAJCOMs or Field Commands and similar-level organizations, or elevated to AFIMSC, SAF/PA, or DOPSR for processing. Use a standardized form or format to transmit cases to coordinating agencies. AFIMSC requires use of the AFIMSC Security and Policy Review Worksheet for any elevated cases. The worksheet requires those reviewing the product to digitally sign and provide any comments in the notes section.

8.3.1.3. Do not release cases outside official review channels during the security and policy review process. This includes abstracts or draft copies to publishers or those outside DoD prior to submission of cleared documents.

8.3.1.4. Make inquiries concerning cases being reviewed at higher levels of command through PA channels.

8.3.1.5. Use all reasonable measures to expedite staffing at all levels to make sure publication deadlines, speaking dates, and other valid deadlines are met. When other units from SAF-level or higher-headquarters on down request a SME review from the

**App. 261**

unit-, MAJCOM-, or Field Command-level, provide the same support and acknowledgement of the review request. Assist those units in completing coordination to meet their deadlines.

8.3.1.6.  Be sure to check release guidance in other regulations, such as AFI 91-204 and AFI 90-301, *Inspector General Complaints Resolution*.

8.3.1.7.  See **paragraph 8.4** for mandatory step-by-step instructions.

**8.4. Security and Policy Review Process Requirements.**  The following steps are mandatory at all levels:

8.4.1.  Originators submit required information through appropriate channels to the local PA office. **(T-1).** See **paragraph 8.2** for guidance on how to submit material for review. Units, NAFs, AFIMSC, and MAJCOMs or Field Commands may recommend that submitters pre-coordinate material using the AFIMSC worksheet (**Attachment 6**) which includes unit leadership, program managers, technical and OPSEC review. This coordination reduces risk to PA systems when electronically received either through email or SharePoint® sites.

8.4.2.  At SAF/PA, the security and policy review authority logs material requiring a security and policy review, determines which SME needs to review the document, establishes a suspense date, and dispatches the case for review. For an audiovisual product, the security and policy review authority reviews the video and script before scheduling a coordination viewing to evaluate the product.

8.4.3.  At the unit, AFIMSC, MAJCOM or Field Command level, the submitter provides the worksheet or similar product showing pre-coordination to the PA representative who logs the material in, or uses PAIRS to automatically create a case number. PA then conducts a PA-specific review and further coordination at their level if necessary, before providing a disposition designation closing the case out, or elevating to higher headquarters. Submitters should not submit multiple documents with one submission form or memorandum. Each security and policy review request must have a separate memorandum or AFIMSC worksheet.

8.4.4.  Coordinating agencies identify either classified information or information not consistent with official policy. Information apportioned for deletion should be enclosed in brackets. Mark classified documents in accordance with DoDM 5200.01, Volume 2, *DoD Information Security Program: Marking of Information*, and AFI 16-1404 **(T-0)**. If suspected classified information is found, immediately notify the local Information Protection Office. **(T-1).** For specific guidelines on how to mark information submitted for security and policy review, see **paragraph 8.6**

8.4.5.  The security and policy review authority determines the releasability of the material after receiving agency subject matter expert inputs, evaluating subject matter expert comments thoroughly, and contacting subject matter experts to resolve issues or concerns, if applicable. **(T-1).** Once final disposition is determined, the submitter, author, and/or organizational box will be notified via email. The dispositions for security and policy review are: Cleared for Public Release; Cleared "with Recommendation" for Public Release; Cleared "As Amended" for Public Release; or Objection–Not Cleared for Public Release. A determination of "AF–No Objection" may be made when the Department of the Air Force is not the final release authority, as in certain Joint or federal agency programs. For more

information, see DoDI 5230.29, Security and Policy Review of DoD Information for Public Release, Enclosure 3, section 4.

8.4.6. After the security and policy review authority determines a clearance position and assigns a disposition, the review action is complete. If higher-echelon level review is required, the case will be elevated to the next review echelon. **(T-1).**

8.4.7. Once cases have been returned from higher-echelon review (AFIMSC, SAF/PA, or DOPSR), the security and policy review authority retains one file copy showing final clearance and any changes and markings to the material, plus confirmation of each reviewing organization's signed remarks. **(T-1).**

8.4.8. The originator will receive notification of the final disposition of the material, generated by an email if the PAIRS system has been used. If public release approval is denied, originator will receive correspondence explaining reason for denial. **(T-1).**

**8.5. Review Considerations.** When reviewing material proposed for release, keep the following information in mind:

8.5.1. Operations Security (OPSEC) considerations. OPSEC is a process of identifying critical information and analyzing friendly actions attendant to military operations and other activities to: identify those actions that can be observed by adversary intelligence systems; determine indicators and vulnerabilities that adversary intelligence systems might obtain that could be interpreted or pieced together to derive critical information in time to be useful to adversaries, and determine which of these represent an unacceptable risk; then select and execute countermeasures that eliminate the risk to friendly actions and operations or reduce it to an acceptable level. DoDD 5205.02E, DoD *Operations Security Program*. By identifying and denying this information, operational success and force protection are enhanced. The OPSEC analysis examines the planning, preparation, execution, and post-execution phases of any activity across the entire spectrum of military activity and in any operational environment. The submitter should coordinate OPSEC review by their OPSEC representatives, program managers, and technical reviewers prior to submission to the Public Affairs security and policy review representative.

8.5.2. Scientific and Technical Information (STINFO). The STINFO program has maximum impact on the development of Air Force technology, and STINFO generated under Air Force and/or Space Force contracts and programs make significant contributions to the national economy.

8.5.2.1. American technology is a valuable commodity and is greatly sought. Technology for application to a military weapon system may be considered sensitive as it may disclose too much about that potential system.

8.5.2.2. STINFO offices are responsible for reviewing reports and determining which distribution statements should appear on the data. Only reports marked "Distribution A" can be forwarded for security and policy review and then considered for release to the public. This is the only technical information that should be considered for a public web page. For more information, refer to AFI 61-201, *Management of Scientific and Technical Information.*

**App. 263**

8.5.3. Technology transfer is the process by which knowledge, facilities, or capabilities developed in one place or for one purpose are transferred and used in another place for another purpose to fulfill actual or potential public or domestic needs. The Air Force Technology Transfer Program was created to ensure all Air and Space Forces science and engineering activities promote the transfer or exchange of technology with state and local governments and the private sector. Technology transfers shall comply with AFI 61-301, *The Domestic Technology Transfer Process and the Offices of Research and Technology Applications Cooperative Research and Development Agreements*. These activities enhance the economic competitiveness of industry and promote the productivity of state and local governments while leveraging the DoD research and development investment. It is important to ensure that any critical data be reviewed prior to release to the public so that the U.S. does not lose its critical edge in that particular area. DoD and other agencies of the federal government have created a series of controls that are in use throughout the review process.

8.5.4. The Military Critical Technologies List is published by DoD and used as a reference document, not a strict regulation or decision tool. It is a guideline listing of those technologies that are critical to the security of our nation.

8.5.5. International Traffic-in-Arms Regulations (ITARs) are a series of Department of State regulations that list technical data about arms and munitions prohibited from export. It includes any unclassified information that can be used, or be adapted for use, in the design, production, manufacture, repair, overhaul, processing, engineering, development, operations, maintenance, or reconstruction of arms, ammunition, and implements of war contained in the U.S. munitions list.

8.5.6. Export Control Laws are the responsibility of the Department of Commerce and are established to provide export control policies and practices. A validated license is required from the Department of Commerce for the export of all technical data listed on the Commodities Control List.

8.5.7. Freedom of Information Act. The Department of the Air Force supplement to DoDM 5400.07_AFMAN 33-302, *Freedom of Information Act Program*, states the public will be allowed to inspect, review, and receive copies of Air Force records. This applies to all Department of the Air Force records except for those exempt from release under the Act. The exemptions under the Freedom of Information Act, applicable to Department of the Air Force records, are generally:

8.5.7.1.  Classified records.

8.5.7.2.  Internal personnel rules and procedures.

8.5.7.3.  Records exempt from release by other statutes.

8.5.7.4.  Records containing confidential commercial information.

8.5.7.5.  Records otherwise privileged in civil litigation.

8.5.7.6.  Records related to open investigations.

8.5.8. Originators must not release information outside official channels until the security and policy review confirms clearance. **(T-1).** PA will not perform after-the-fact review of materials that have already been publicly released or posted to publicly accessible websites.

**App. 264**

(**T-1**).  Materials submitted after the "date needed" or "event date" will be returned without action.

## 8.6. Subject Matter Expert (SME) Review Marking.

8.6.1.  Marking. Identify the non-releasable information and signal a mandatory amendment. Non-releasable material must be removed before publication of the document. (**T-1**). Annotate substitute language above the non-releasable material. For editorial changes, line through once and provide changes as necessary. Reviewers may also utilize a standard comment resolution matrix to annotate recommendations or required changes. Submitter must make required changes and provide final copy to the PA Security and Policy Review approval authority/office. (**T-1**).

8.6.2.  Amending. Amendments require specific source citations and rationale. The SME must provide sufficient information and justification to enable the security and policy review authority to sustain an amendment. (**T-1**).  Such documentation eliminates ambiguity and provides the submitter with appropriate sources to substantiate the required change/amendment. If a SME determines a document to be classified, he/she must supply three essential pieces of information: classification authority, level of classification, and downgrading instructions.  (**T-1**).

8.6.3.  Source Citations:

8.6.3.1.  Classification authority sources most frequently cited are the security classification guides, provisions of classified contracts (DD Form 254, *Department of Defense Contract Security Classification Specification*). When classified material is identified in a security and policy review case, advise everyone possessing the document at once to protect it as classified.

8.6.3.2.  Documentation sources can be presidential pronouncements; DoD and Air Force and/or Space Force official statements; and Department of the Air Force policy directives, manuals, or guidance memoranda.

8.6.3.3.  Source citations must be provided for all imagery used to assist PA in ensuring copyright restrictions have not been violated. (**T-1**).  Imagery used via a Creative Commons or other license must provide a link to the appropriate license.  A copy of a unit-purchased license for imagery must be provided with each submission where such imagery is used. (**T-1**).  Use of material or imagery protected by copyright will not be cleared by PA. Claims for Fair Use, in accordance with the recommendation of the U.S. Copyright Office, must be accompanied by a legal review from the submitting organization's serving legal office. (**T-1**).  Application of Fair Use Doctrine in one document does not authorize use in other documents, derivative, expanded, or otherwise. Each case must stand on its own merits and be reviewed by the submitting organization's servicing legal office to make this determination. (**T-1**).

8.6.4.  Objection. A coordinator may make an overall objection to clearing a case for public release. An objection does not require marking on the document, but it does require detailed supporting justification. A SME may make a total objection to the public release if a case requires extensive amendments or rewrites for security or guidance concerns.

8.6.5.  Editorial review. Editorial review is the originator's responsibility, not a responsibility of the security and guidance review authority. Security and guidance review by PA does not include review for style, but PA and other coordinators may annotate obvious typographical or grammatical errors and recommend edits for clarity or accuracy.

8.6.6.  Other coordination. If an agency SME thinks the case should be reviewed by another agency, he/she should advise the security and guidance review authority. An early call can save several days in the review process. The submitter should pre-coordinate with organizations that have sponsored material and/or participated in the activity/research/program, and provide proof from those organizations that they have reviewed and concur with information/wording included in material.

8.6.7. Timeliness. Major security and guidance review time-savers include timely coordination, proper marking, and accurate citing of classification sources.

PATRICK S. RYDER, Brigadier General, USAF
Director of Public Affairs

**Attachment 1**

**GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**

*References*

Title 18, *U.S.C.* § 793(e), § 795 and § 797

32 CFR Part 989, *Environmental Impact Analysis Process (EIAP)*

DoD *Dictionary of Military and Associated Terms*, January 2020

DoDD 5500.07-R, *Joint Ethics Regulation (JER)*, 30 August 1993

DoDD 4500.54E, *DoD Foreign Clearance Program (FCP)*, 28 December 2009

DoDD 5122.05, *Assistant to the Secretary of Defense for Public Affairs (ATSD(PA))*, 7 August, 2017

DoDI 4515.13, *Air Transportation Eligibility*, 22 January 2016

DoDI 5040.07, *Visual Information (VI)*, 27 October 2011

DoDI 5040.07, *Visual Information (VI) Productions*, 21 February 2013

DoDI 5122.08, *Use of DoD Transportation Assets for Public Affairs Purposes*, 17 December 2014

DoDI 5230.29, *Security and Policy Review of DoD Information for Public Release*, 13 August 2014

DoDI 8170.0, *Online Information Management and Electronic Messaging*, 02 January 2019
DoDM 5200.01, Volume 2*, DoD Information Security Program: Marking of Information*, 24 February 2012

DoDM 5200.08, Volume 3*, AFMAN 31-101 Volume 3, Installation Perimeter Access Control (FOUO)*, 27 February 2020

DoDM 5400.07_AFMAN 33-302, *Freedom of Information Act Program*, 26 April 2018

*Air Force Enlisted Classification Directory, Current Edition*

*Air Force Officer Classification Directory, Current Edition*

*DoD Foreign Clearance Guide*

*Secretary of Defense's Principles of Information*

AFI 16-201 *Air Force Foreign Disclosure and Technology Transfer Program*, 2 June 2015

AFI 16-1404, *Air Force Information Security Program*, 29 May 2015

AFI 24-302, *Vehicle Management*, 21 February 2020

AFI 31-118, *Security Forces Standards and Procedures*, 18 August 2020

AFI 33-322, *Records Management and Information Governance Program*, 23 March 2020

AFI 33-332, *Air Force Privacy and Civil Liberties Program*, 10 March 2020

AFI 35-110, *U.S. Air Force Band*, 12 September 2017

AFI 38-101, *Manpower and Organization*, 29 August 2019

AFI 51-307, *Aerospace and Ground Accident Investigations*, 18 March 2019

AFI 61-201, *Management of Scientific and Technical Information (STINFO)*, 29 January 2016

AFI 61-301*, The Domestic Technology Transfer Process and the Offices of Research and Technology Applications Cooperative Research and Development Agreements*, 16 September 2019

AFI 65-103, *Temporary Duty Orders*, 15 August 2019

AFI 65-601, Volume 1, *Budget Guidance and Procedures*, 24 October 2018

AFI 65-603, *Emergency and Extraordinary Expense Authority*, 29 April 2020

AFI 90-301, *Inspector General Complaints Resolution*, 28 December 2018

AFI 90-401, *Relations with Congress*, 15 September 2020

AFI 91-204, *Safety Investigation and Reports*, 27 April 2018

AFMAN 10-206, *Operational Reporting (OPREP)*, 18 June 2018AFMAN 36-606, *Civilian Career Field Management and Force Development*, 14 November 2019

*AFMAN 36-2664, Personnel assessment Program, 16 May 2019*

AFPD 35-1, *Public Affairs Management*, 8 March 2018

DAFI 33-360, *Publications and Forms Management*, 1 December 2015

DAFI 35-101, *Public Affairs Operations*, 20 November 2020

**Prescribed Forms**

None

**Adopted Forms**

DD Form 254

AF Form 39

AF Form 52

AF Form 847

AF Form 1420

**Abbreviations and Acronyms**

**AFCEC**—Air Force Civil Engineer Center

**AFCEC/CZ**—Air Force Civil Engineer Center Environmental Directorate

**AFI**—Air Force Instruction

**AFIMSC**—Air Force Installation and Mission Support Center

**AFMAN**—Air Force Manual

**AFOSI**—Air Force Office of Special Investigations

**AFR**—Air Force Reserve

**AFSC**—Air Force Specialty Code

**ANG**—Air Force National Guard

**APACS**—Aircraft and Personnel Automated Clearance System

**CONUS**—Continental United States

**CPD**—Core Personnel Document

**DAF**—Department of the Air Force

**DAFI**—Department of the Air Force Instruction

**DSN**—Direct Switch Number

**DoD**—Department of Defense

**DoDD**—Department of Defense Directive

**DoDI**—Department of Defense Instruction

**DoDM**—Department of Defense Manual

**DOPSR**—Defense Office of Prepublication and Security Review

**EA**—Environmental Assessment

**EIAP**—Environmental Impact Analysis Process

**EIS**—Environmental Impact Statement

**ERP**—Environmental Restoration Program

**FAC**—Functional Account Code

**FCG**—Foreign Clearance Guide

**FY**—Fiscal Year

**GOCO**—Government-Owned Contractor-Operated

**ITAR**—International Traffic in Arms Regulation

**MAJCOM**—Major Command

**MPES**—Manpower Programming and Execution System

**NAF**—NonAppropriated Funds

**NDA**—National Defense Area

**NEPA**—National Environmental Protection Act

**OMB**—Office of Management and Budget

**OPR**—Office of Primary Responsibility

**OPREP**—Operational Reporting

**OPSEC**—Operations Security

**OPR**—Office of Primary Responsibility

**OSC**—Office Symbol Code

**OSD**—Office of the Secretary of Defense

**OSD/PA**—Office of the Secretary of Defense, Public Affairs

**PA**—Public Affairs

**PACAF**—Pacific Air Force

**PAO**—Media Operations

**PAX**—Strategy and Assessments

**PEC**—Program Element Code

**POM**—Program Objective Memorandum

**POS**—Position Number

**RA**—Resource Advisor

**RAB**—Restoration Advisory Board

**RegAF**—Regular Air Force

**SAF/IA**—Secretary of the Air Force for International Affairs

**SAF/PA**—Secretary of the Air Force Public Affairs

**SAF/PAB**—Secretary of the Air Force Band Division

**SAF/PAR**—Secretary of the Air Force Public Affairs Requirements and Development Division

**SAF/PAY**—Secretary of the Air Force Public Affairs Community Engagement Division

**SAF/PAYL**—Air Force Entertainment Liaison Office

**SCPD**—Standard Core Personnel Document

**SITREP**—Situational Report

**SME**—Subject Matter Expert

**STINFO**—Scientific and Technology Information

**UMD**—Unit Manpower Document

**U.S.**—United States

**USAFE**—United States Air Force In Europe

**U.S.C.**—United States Code

**USSF**—United States Space Force

**VI**—Visual Information

**WHS/ESD/OSR**—Washington Headquarters Service, Office of Security Review

*Terms*

**Access**—Ability or opportunity to gain knowledge of classified information.

**Agency**—Any "Executive agency," as defined in 5 U.S.C. 105; any "military department" as defined in 5 U.S.C. 102; and any other entity within the executive branch that comes into the possession of classified information.

**Audiovisual**—The use of sound and visual imagery displays to communicate information (motion pictures, television, still photographs, slides and film strips, radio, recordings, graphic illustration models, videos, and demonstrations).

**Budget Program Activity Code**—AF six-digit budget code with the first two-digits identifying the budget program. The last four identify the project number.

**Classification**—The determination that official information requires, in the interests of national security, a specific degree of protection against unauthorized disclosure, coupled with a designation signifying that such a determination has been made.

**Classified National Security Information or Classified Information**—Official information that has been determined to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form.

**Cleared for Public Release**—The information may be released without restriction by the originating DoD Component or its authorized official. DOPSR may require a disclaimer to accompany the information, as follows: "The views expressed are those of the author and do not reflect the official guidance or position of the Department of Defense or the United States (U.S.) Government."

**Cleared "With Recommendations" for Public Release**—Optional corrections, deletions, or additions are included. Although DOPSR has no responsibility for correcting errors of fact or making editorial changes, obvious errors may be identified in the text and noted as "recommended." These corrections are not binding on the author or originator.

**Cleared "As Amended" for Public Release**—Amendments, made in red, are binding on the originator. Red brackets identify information that must be deleted. If the amendments are not adopted, then the DoD clearance is void. When possible, alternative wording is provided to substitute for the deleted material. Occasionally, wording will be included that must be added to the text before public release. A disclaimer may also be required.

**Department of the Air Force**—Is one of the three military departments within the Department of Defense of the United States of America.  The Department of the Air Force was formed on September 18, 1947, per the National Security Act of 1947 and it includes all elements and units of the United States Air Force (USAF) and the United States Space Force (USSF).

**Document**—Any recorded information, regardless of the nature of the medium or the method or circumstances of recording.

**Downgrading**—Determination by a declassification authority that information classified and safeguarded at a specified level shall be classified and safeguarded at a lower level. Federally Funded Research and Engineering. Originators will comply with the DoD guidance in federally funded research and engineering in DoDI 3200.12 and DoDI 3200.1414, which requires

**App. 271**

originators to send the final published document or final author's referenced manuscript to the Defense Technical Information Center (**T-0**).

**Execution Year**—The current fiscal year.

**Future Years Defense Program**—Program and financial plan for the DoD as approved by the Secretary of Defense. The Future Years Defense Program arrays cost data, manpower, and force structure over a five-year period (force structure for an additional three years), portraying this data by major force program for DoD internal review for the program and budget review submission. It is also provided to Congress annually in conjunction with the President's Budget.

**Garrison**—A permanent military installation.

**Information**—Any knowledge that can be communicated or documentary material, regardless of its physical form or characteristics, which is owned by, produced by or for, or is under the control of the U.S. government.

**ITAR**—Information generated from independent research and development should first be checked against the State Department's International Traffic-In-Arms Regulations (ITAR). This is a document detailing the United States munitions and procedures for export of defense articles and defense services. If the information in the material to be released is specified in the ITAR, then it could be subject to Department of State licensing. Technical papers intended for public release may be submitted to the Washington Headquarters Service, Office of Security Review (WHS/ESD/OSR) located in the Pentagon. If cleared for release and placed in the public domain by the contractor, the technical paper is exempt from export licensing requirements. This review authority has not been delegated to the individual military services.

**Manpower Authorization**—A funded manpower requirement with detail that defines the position in terms of its function, organization, location, skill, grade, and other appropriate characteristics, which commands use to extend end strength resources to units.

**Manpower Programming and Execution System (MPES)**—Online management information system designed to collect and disseminate Total Force execution of programmed end strength. MPES executes the Program Objective Memorandum (POM) and the President's Budget (PB) allocated end strength by command (usually projected over seven years and reflects the manpower officer/enlisted/civilian requirements constrained by the manpower budget). MPES provides commands the capability to organize Air Force and Space Force end strength into units required to execute Department of the Air Force programs and accomplish unit missions.

**Manpower Standard**—The basic tool used to determine the most effective and efficient level of manpower required to support a function. It is a quantitative expression that represents a work center's man-hour requirements in response to varying levels of workload. Manpower requirements are based only on MAJCOM, Field Command or higher headquarters direction.

**Not Cleared for Public Release**—The information submitted for review may not be released.

**Operations Security**—OPSEC is a process of identifying critical information and analyzing friendly actions attendant to military operations and other activities to: identify those actions that can be observed by adversary intelligence systems; determine indicators and vulnerabilities that adversary intelligence systems might obtain that could be interpreted or pieced together to derive critical information in time to be useful to adversaries, and determine which of these represent an

unacceptable risk; then select and execute countermeasures that eliminate the risk to friendly actions and operations or reduce it to an acceptable level.

**Originator**—Creator of the document (e.g., article, presentation, manuscript).

**Program Element Code (PEC)**—A combination of forces, manpower, equipment, and facilities related to a mission capability or activity. The PEC is the basic building block of the Future Years Defense Program. The first five digits relate to an associated DoD code, while the sixth digit is coded with an "F" for Air Force funds.

**Responsibility Center/Cost Center Code (RC/CC)**—The RC is the specific organization or agency responsible for resource management decisions and actions within a functional area. A Cost Center is a subordinate area within a RC, such as an organization subsection, that represents the level in which costs are incurred.

**Security and Policy Review**—The security review protects classified information, controlled unclassified information, or unclassified information that may individually or in aggregate lead to the compromise of classified information or disclosure of operations security.

**Scientific and Technical Information (STINFO)**—The STINFO program ensures scientific and technical information make the maximum impact on the development of Air Force technology and ensures the scientific and technical information generated under Air Force contracts and programs make maximum contribution to the national economy.

**Space Force**—A new branch of the Armed Forces.  It was established on December 20, 2019 with enactment of the Fiscal Year 2020 National Defense Authorization Act.  It was established within the Department of the Air Force, meaning the Secretary of the Air Force has overall responsibility for the USSF, under the guidance and direction of the Secretary of Defense.

**Unauthorized Disclosure**—A communication or physical transfer of classified information to an unauthorized recipient.

**Violation**—(1) Any knowing, willful, or negligent action that could reasonably be expected to result in an unauthorized disclosure of classified information; (2) Any knowing, willful, or negligent action to classify or continue the classification of information contrary to the requirements of this order or its implementing directives; or (3) Any knowing, willful, or negligent action to create or continue a SAP contrary to the requirements of this order.

**Website Publication**—Information intended for placement on websites or other publicly accessible computer servers that are available to anyone requires review and clearance for public release. Website clearance questions should be directed to the Component's website manager. Review and clearance for public release is not required for information to be placed on DoD-controlled websites or computer servers that restrict access to authorized users.

**Attachment 2**

**SAMPLE INSTALLATION-LEVEL PA EXECUTION PLAN DEVELOPMENT CYCLE**

**A2.1. Overview. Figure A2.1.** provides a simplified overview of a traditional execution plan development cycle. Dates shown in the figure are subject to change. Unless otherwise noted in subsequent policy, Space Force Field Commands PA offices will conduct the roles outlined for MAJCOMs for units aligned under their command.

**Figure A2.1.  Sample Installation-Level PA Execution Plan Development Cycle, Part 1**

| October | November | December | January | February | March |
|---------|----------|----------|---------|----------|-------|
| 1 Oct – Start of FY | Identify unfunded requirements to RA | | Wing receives MAJCOM execution plan call | Develop PA execution plan | Wing execution plan due to MAJCOM |
| Identify and prioritize equipment needs in AIM2 NLT 1 Nov | | | | | |
| Provide MAJCOMs with production stats and total cost of operations for previous FY | | | | | |

FWG/FMB develop wing execution plan (includes PA)

PA chief/superintendent/RA monitor execution

President's Budget submitted for next FY (from previous POM)

Wing receives initial distribution of funds

**Figure A2.2.  Sample Installation-Level PA Execution Plan Development Cycle, Part 2**

| April | May | June | July | August | September |
|---|---|---|---|---|---|
| Identify and prioritize equipment needs in AIM2 NLT 1 May<br><br>Conduct midyear review of budget execution | | Prepare for year-end close out | Establish spending plan for fall-out money | Obligate funds for next several months to pay reoccurring expenses | 1 Sep – Comptroller takes control of funds for close out<br><br>30 Sep – End of FY/close out |
| PA chief/superintendent/RA monitor execution | | | | | |
| MAJCOM develops POM from PA inputs | | | | AF POM delivered to OSD | |

## Attachment 3

## SAMPLE PUBLIC AFFAIRS BUDGET

**A3.1. Overview. Figures A3.1** and **Figure A3.2** provide example budget and expenditure tracker formats installation PA offices can use to manage office expenditures.

**Figure A3.1.  Sample Wing-Level Public Affairs Budget.**

| BA | PE | RCCC | EEIC | Expense | Details | Cost per | How Many | Total Cost |
|----|----|------|------|---------|---------|----------|----------|------------|
|    |    |      |      | TDYs | Meetings/conferences |  |  |  |
|    |    |      |      | Quarterly supplies | Office supplies |  |  |  |
|    |    |      |      | Training | Unit funded training |  |  |  |
|    |    |      |      | Equipment refresh | Computers, photo/video, studio equipment, etc. |  |  |  |
|    |    |      |      | Reference | AP Style Guides |  |  |  |
|    |    |      |      | Software update | Creative Suite |  |  |  |
|    |    |      |      | Org membership dues | PRSA, Chamber of Commerce, etc. |  |  |  |
|    |    |      |      | Commercial ISP | Internet account |  |  |  |
|    |    |      |      | Commercial cable | Cable TV account |  |  |  |
|    |    |      |      | Copier machine | Monthly bill |  |  |  |

**Figure A3.2.  Sample Wing-Level Public Affairs Expenditure Tracker.**

| Month | PA Travel | GPC Expenses | Other Expenses | Total for Month | Cumulative Total |
|-------|-----------|--------------|----------------|-----------------|------------------|
| Oct-FY |  |  |  |  |  |
| Nov-FY |  |  |  |  |  |
| Dec-FY |  |  |  |  |  |
| Jan-FY |  |  |  |  |  |

| | | | | |
|---|---|---|---|---|
| **Feb-FY** | | | | |
| **Mar-FY** | | | | |
| **Apr-FY** | | | | |
| **May-FY** | | | | |
| **Jun-FY** | | | | |
| **Jul-FY** | | | | |
| **Aug-FY** | | | | |
| **Sep-FY** | | | | |
| **Year Total** | | | | |

**Attachment 4**

**SAMPLE INSTALLATION-LEVEL PA EMPLOYMENT/PRIORITIZATION PLAN**

**A4.1. Overview.** This attachment provides an example of the installation-level Public Affairs employment/prioritization plan. PA offices should modify and/or expand the plan and attachments as necessary to meet local needs and priorities. There are four parts to the sample plan beginning with the commander's memo, followed by three supporting attachments including an outline of PA services and employment guidelines, a sample PA prioritization matrix, and a sample editorial guidance.

**Figure A4.1.  Sample Installation-level PA Employment/Prioritization Plan–Commander's Memo.**

MEMORANDUM FOR [INSTALLATION] AIRMEN


FROM: [XX] WG/GARRISON CC


SUBJECT:  Installation Public Affairs (PA) Employment Plan


1. PA resources are critical to enhance Airmen morale and readiness, develop public trust and support, and support global influence and deterrence. It is imperative that these finite resources be applied toward activities which most directly support (XX unit (wing abbreviation)], [XX MAJCOM (MAJCOM abbreviation)] and Air Force priorities. Inappropriate use detracts from the ability to support these priorities.


2. This memorandum and associated attachments detail the [XX unit]/PA employment plan as required in Air Force Instruction (AFI) 35-101, *Public Affairs Operations*. The products and services detailed in the enclosed guidance are provided for official purposes consistent with AFIs governing PA activities; unofficial functions that are not related to military missions or activities will not be supported.


3. This memorandum and attachments supersede all previous guidance on the same subject and will be reviewed annually by the [XX unit]/PA chief. Please contact the PA staff with questions at DSN (XXX-XXXX).

JOHN A. DOE, Col, USAF

Commander

3 Attachments:

1. [XX unit]/PA Services and Employment Guidelines

2. [XX unit]/PA Prioritization Matrix

3. [XX unit]/PA Editorial Guidance

DISTRIBUTION:

[INSERT UNITS]

**Figure A4.2.  Sample Installation-level PA Employment/Prioritization Plan–PA Services and Employment Guidelines.**

**[XX unit]/PA Services and Employment Guidelines**

**1. Scope.** The following procedures govern the [XX unit]/PA office as the lead for host-installation PA activities and resources in support of units assigned to [INSTALLATION]. Individuals in units with organic PA capabilities should first coordinate requests through their unit PA office prior to contacting [XX unit]/PA.

**2. PA Mission.** Air Force PA advances Air Force priorities and achieves mission objectives through integrated planning, execution, and assessment of communication capabilities. Through strategic and responsive release of accurate and useful information and imagery to Air Force, domestic, and international audiences, PA puts operational actions into context; facilitates the development of informed perceptions about Air Force operations; helps undermine adversarial propaganda efforts; and contributes to the achievement of national, strategic, and operational objectives.

**3. [XX unit]/PA Services**. Services available from the [XX unit]/PA office are grouped into four categories:

**App. 279**

a. Communication Planning. Provides trusted counsel and communication advice to the commander and other staff members to enhance mission success. Communication planning is important to the creation of strategic, operational, and tactical effects in PA operations.

b. PA Engagement. Provides community engagement programs that aim to increase public awareness and understanding of the mission, policies, operations and programs of the AF; support AF recruiting; and maintain a reputation as a good neighbor. This includes receiving requests for base services from the community such as flyover support, public speakers, and base tours. Units who are asked for their services or personnel, or who receive offers of support from the community directly, must coordinate these with PA (and JA when applicable) prior to committing or accepting resources.

c. PA Operations. Provides programs that support Airman morale and readiness, public trust and support, and global influence and deterrence through the release of timely and accurate information to Airmen, their families, the public and the media.

(1) Command Information. Provides effective and efficient communication tools to link Airmen with their leaders. Command information helps Airmen and their families understand their purpose, role, and value to the Air Force. A free flow of information to Airmen and their families creates awareness of and support for the mission, increases their effectiveness as Air Force ambassadors, reduces the spread of rumors and misinformation, and provides avenues for feedback.

(2) Environmental. Supports environmental program objectives and requirements by facilitating public notification and involvement and communicating the Air Force's commitment to environmental excellence.

(3) Media Operations. Facilitates engagement and two-way communication with the media, which is often one of the most rapid and credible means of delivering the commander's message. Remaining open, honest, and accessible to the maximum extent possible normally results in greater accuracy, context, and timeliness in communicating with internal and external audiences. Personnel assigned to [installation and/or specific units] will coordinate all official media requests and queries through the [XX unit]/PA office.

(4) Security and Guidance Review. Ensures information intended for public release will

neither adversely affect national security nor threaten the safety, security, or privacy of Air Force personnel, while adhering to the guidance of "maximum disclosure, minimum delay." Personnel must obtain necessary security and guidance review before releasing official imagery, documents, information, or proposed statements outside the Air Force.

(5) Community Engagement. Encompasses activities of interest to the general public, businesses, academia, veterans, service organizations, military-related associations, and other community entities. Working collaboratively with and through these various groups enhances mutual understanding, cooperation, and support necessary for effective Air Force operations and recruitment and retention opportunities.

(6) Visual Information (VI). Provides programs that collect, preserve and accession VI products to meet operational, informational, training, research, legal, historical and administrative needs. Visual products, such as photos, video, and graphics, are catalysts for effective communication and document the Air Force's visual history, through the accessioning process, for future generations.

**5. Availability.** The PA office will be manned during normal duty hours. A PA representative will be on-call 24 hours a day, 7 days a week (including holidays), and will accomplish emergency services as required by security forces, the Air Force Office of Special Investigations, the safety office and/or wing leadership. During non-duty hours, the on-call PA representative can be contacted through the command post.

**6. Requesting Support.** Submit PA support requests to the [XX unit]/PA email account at [XX]@us.af.mil as far in advance as possible; requests for VI support should be submitted with a completed Air Force Form 833, *Multimedia Work Order* attached. Advance notice provides PA the ability to ensure the necessary equipment and personnel are available. Failure to coordinate in advance will reduce the likelihood that the event can receive PA support. Consumer-grade still and video equipment is available for self-help use on a first-come, first-served basis when the PA staff is already scheduled to support higher or equal priority tasks.

**7. Prioritized Employment Plan.** The [XX unit]/PA office provides support according to the following system focused on the commander's priorities, operational core tasks, urgency, mission impact, agencies supported, and resources available, particularly manpower during the office's primary deployment vulnerability period [XX]. This system helps control the flow of work and ensures all mission-critical needs are met. A detailed list of services and their associated priority level can be found at the enclosed prioritization/employment matrix

(Attachment 2):

a. Core services are services that directly support emergent or operational mission requirements.

(1) Priority one requests include support for time-critical official investigations, crisis response, and other requests directly impacting the ability of the installation to perform its operational mission. This includes alert documentation for evidentiary and decisional purposes, and assisting senior leaders with public and media interaction during emergencies and contingencies.

(2) Priority two requests include support for non-time-sensitive official investigations, combat readiness, critical items in direct support of priorities and initiatives of commanders at wing level or higher, operational test and evaluation missions, and MAJCOM-directed support. This priority also entails communication to stakeholders and key populations in support of official goals and objectives.

b. Non-core services are defined as services that do not directly affect an operational mission requirement.

(1) Priority three requests include routine support for education and training, unit-level command information, wing-level official recognition programs, and installation support. This generally includes routine communication with internal and external audiences.

(2) Priority four requests include all other production services not outlined above. It is possible requests in this priority level may need to be fulfilled through self-help services.

(3) Priority five requests are items that have been specifically designated as self-help services only.

**8. Restrictions.**

a. In accordance with DAFI 35-101, Chapter 7, government-funded PA and VI resources will not be used to:

(1) Provide souvenirs, personal gifts, mementos, or farewell gifts. Examples include "hero" shots in front of aircraft cockpits (unless provided as part of a Distinguished Visitor (DV) orientation flight), booster club promotional items, group photos intended to commemorate events such as golf tournaments or recreational gatherings, and sports team photos.

(2) Support or document farewell parties or social events unless certified as newsworthy or having historical significance by the unit historian or chief of PA. When an event is determined to be historically significant, PA resources may be provided to meet official news and documentation requirements only.

(3) Create products used primarily for entertainment during farewell parties or social events.

(4) Support MWR- or services-sponsored recognition programs.

b. Altering imagery. Air Force PA offices are trusted agents. Because PA professionals create products that can be used in legal proceedings and for critical decision-making, absolute trust and confidence in the truthfulness of products they create is essential. Official imagery may not be altered, unless it is specifically exempted by Department of Defense Instruction (DoDI) 5040.02, *Visual Information*. Examples of requests that will not be supported include changes to personal appearance in an official portrait and digitally adding or removing content to a photo or changing the photo in a way that misrepresented the facts or circumstances of the event captured.

c. Use of Copyrighted Materials. Using copyrighted media requires a separate license or explicit permission. Generally, both music and programs recorded from broadcasts are copyrighted. Having the source recording or music score does not confer any right to reproduce, transfer, or otherwise use or perform the recorded material, either as a whole or in part. Refer to AFI 51-303*, Intellectual Property--Patents, Patent Related Matters, Trademarks and Copyrights*, 22 June 2018 for guidance.

d. Morale, Welfare and Recreation (MWR) Support. MWR and Services activities are authorized support for Category A (Mission Sustaining) and Category B (Basic Community Support Activities). Category A programs are essential to the military mission and are authorized all support. Category B activities are closely related to Category A activities and are essentially community support programs. The PA office can furnish support to these

activities as long as the MWR activity does not generate revenue. For additional clarification of MWR activities, refer to AFI 65-106, *Appropriated Fund Support of Morale, Welfare, and Recreation (MWR) and Other Nonappropriated Fund Instrumentalities (AIS)*, 15 January 2019.

**9. Additional Considerations.**

a. Studio Photography. Studio photography is by appointment only and available for official portraits as required by AFI as well as applications for special duty assignments, official passports, and citizenship applications. Chain-of-command studio photography will be provided for leadership at the squadron-level and above (commander, deputy/vice commander, senior enlisted leader, and first sergeant) as well as quarterly and annual award winners at the group-level and above. Electronic copies and one hard copy up to size 8x10 will be provided to the requestor.

b. Group Photos. Units at the squadron level and above are authorized one group photo [timeframe] (e.g., annually).

c. VI Equipment Purchase Review. In accordance with DAFI 35-101, *Public Affairs Operations*, units wishing to purchase video or still cameras and photographic printers must receive approval from [XX unit]/PA to preclude duplication of effort and to ensure equipment, system, and data compatibility.

**Figure A4.3.  Sample Installation-level PA Employment/Prioritization Plan–Prioritization Matrix.**

| [XX unit]/PA Prioritization Matrix | | |
|---|---|---|
| **1. Communication Planning** | | |
| *Activity* | *Supporting Reference* | *Priority* |
| 1.1. Communication Planning | AFMAN 35-101, Chapter 2 | II |
| 1.2. PAG/Talking Point Development | DAFI 35-101, Chapter 2 | II |
| 1.3. Operational/Wing Plan Coordination | DAFI 35-101, Chapters 1 and 2 | III |

| **2. Public Affairs Engagement** | | |
|---|---|---|
| *Activity* | *Supporting Reference* | *Priority* |
| 2.1. Air Force Tour Program/ Base Tours | DAFI 35-101, Chapter 4 | IV |
| 2.2. Aviation Support | DAFI 35-101, Chapter 4 | IV |
| 2.3. Civic Leader Activity | DAFI 35-101, Chapter 4; AFMAN 35-101, Chapter 5 | III |
| 2.4. Community Complaint Response | AFMAN 35-101, Chapters 5 and 6 | III |
| 2.5. Honorary Commander Program | DAFI 35-101, Chapter 4; AFMAN 35-101, Chapter 5 | III |
| 2.6. Legislative Liaison Support | DAFI 35-101, Chapter 4 | II |
| 2.7. Military Participation in Off-Base Events | DAFI 35-101, Chapter 4 | III |
| 2.8. PA Representation (off-base) | DAFI 35-101, Chapter 4 | IV |
| 2.9. Request for Information (non-media) | AFMAN 35-101, Chapter 5 | III |
| 2.10. Speeches/ Speaker's Bureau | DAFI 35-101, Chapter 4 | IV |
| **3. Public Affairs Operations** | | |
| *Activity* | *Supporting Reference* | *Priority* |
| 3.1. Crisis Communication | DAFI 35-101, Chapter 3; AFMAN 35-101, Chapter 4 | I |
| 3.2. Command Information | DAFI 35-101, Chapter 5 | - |
| 3.2.1. Base Marquee | No specific reference | IV |
| 3.2.2. Commander's Access Channel | No specific reference | IV |
| 3.2.3. Official Web | DAFI 35-101, Chapter 5 | II |
| 3.2.3.1. Content Generation/Posting | DAFI 35-101, Chapter 5 | II |
| 3.2.3.2. Official Bios and Fact Sheets | DAFI 35-101, Chapter 5 | III |
| 3.2.3.3. Social Media Posting/Engagement | DAFI 35-101, Chapter 5 | III |
| 3.2.3.4. Web/Social Media Analysis | DAFI 35-101, Chapter 5; AFI 1-1, Air Force | IV |

**App. 285**

| | Standards, 7 August 2012 | |
|---|---|---|
| 3.3. Environmental PA | DAFI 35-101, Chapter 6 | III |
| 3.4. Joint Hometown News Service | DAFI 35-101, Chapter 5 | IV |
| 3.5. Media Operations | DAFI 35-101, Chapters 2 and 3 | - |
| 3.5.1. Media Analysis (news clips) | DAFI 35-101, Chapter 1 | II |
| 3.5.2. Media Engagement (pro-active) | DAFI 35-101, Chapter 2 | II |
| 3.5.3. Media Escort (non-crisis) | DAFI 35-101, Chapter 2; AFMAN 35-101, Chapter 3 | II |
| 3.5.4. Media Training (non-crisis) | DAFI 35-101, Chapters 1 and 2 | III |
| 3.5.5. News Conference (non-crisis) | DAFI 35-101, Chapter 2 | III |
| 3.5.6. News Release (non-crisis) | DAFI 35-101, Chapters 2 and 3 | III |
| 3.5.7. Response-to-Query (non-crisis) | DAFI 35-101, Chapters 2 and 3 | II |
| 3.6. PA Travel | DAFI 35-101, Chapter 8 | III |
| 3.7. Security and Policy Review | DAFI 35-101, Chapter 9 | III |
| **4. Visual Information** | | |
| *Activity* | *Supporting Reference* | *Priority* |
| 4.1. Accessioning Activity | DoDI 5040.02, AFH 35-115, Chapter 10 and Attachment 5 | II |
| 4.2. Graphics (if manned) | | - |
| 4.2.1. Animations | AFH 35-115, Chapter 9 | IV |
| 4.2.2. Command Support | AFH 35-115, Chapter 2 | II |
| 4.2.3. Illustrations (including photo illustration) | AFH 35-115, Chapter 2 | IV |
| 4.2.4. Infographics/ Pamphlets/ Posters | AFH 35-115, Chapter 2 and Attachment 2 | III |
| 4.3. Equipment Approval Requests | AFH 35-115, Chapter 6 | IV |

| 4.4. Photography | | - |
|---|---|---|
| 4.4.1. Alert Photo (accidents, crises, etc.) | AFH 35-115, Chapter 2 and Chapter 4 | I |
| 4.4.2. Awards (Wing/up) | AFH 35-115, Chapter 2 and Chapter 4 | IV |
| 4.4.3. Awards (Group/down) | AFH 35-115, Chapter 2 and Chapter 4 | V |
| 4.4.4. Ceremonies (0-6 and up, E-9) | AFH 35-115, Chapter 2 and Attachment 5 | IV |
| 4.4.5. Ceremonies (0-5 and below) | AFH 35-115, Chapter 2 and Attachment 5 | V |
| 4.4.6. Change of Command (Group/up) | AFH 35-115, Table A5.23. | IV |
| 4.4.7. Change of Command (Squadron/below) | AFH 35-115, Table A5.23. | V |
| 4.4.8. Documentation (mission) | AFH 35-115, Chapter 2 and Attachment 5 | III |
| 4.4.9. Historical Significance (e.g., VIP visit) | AFH 35-115, Chapter 2 | IV |
| 4.4.10. Official Passport Photos | AFH 35-115, Chapter 2 | II |
| 4.4.11. Studio (bio, award package photos) | AFH 35-115, Chapter 2, Chapter 4, Attachment 4 | IV |
| 4.5. Self-help Facilitation | AFH 35-115, Chapter 4 | IV |
| 4.6. Video & Audio Production | | - |
| 4.6.1. Alert Video (accidents, crises, etc.) | AFH 35-115, Chapter 2 and Chapter 4 | I |
| 4.6.2. Awards (Wing/up) | AFH 35-115, Chapter 2 and Chapter 4 | IV |
| 4.6.3. Awards (Group/down) | AFH 35-115, Chapter 2 and Chapter 4 | V |
| 4.6.4. Ceremonies (0-6 and up, E-9) | AFH 35-115, Chapter 2, Chapter 3, Chapter 4, and Attachment 5 | IV |

**App. 287**

| 4.6.5. Ceremonies (0-5 and below) | AFH 35-115, Chapter 2, Chapter 3, Chapter 4, and Attachment 5 | V |
|---|---|---|
| 4.6.6. Change of Command (Group/up) | AFH 35-115, Table A5.23. | IV |
| 4.6.7. Change of Command (Squadron/below) | AFH 35-115, Table A5.23. | V |
| 4.6.8. Documentation (mission, b-roll) | AFH 35-115, Chapter 2, Chapter 4, Chapter 7, Chapter 8, | III |
| 4.6.9. Historical Significance (e.g., VIP visit) | AFH 35-115, Chapter 2, Chapter 3, Chapter 4, Chapter 5, and Attachment 5 | IV |
| 4.6.10. Media Duplication | AFH 35-115, | V |
| 4.6.11. Video/Audio Production (training, senior leader) | AFH 35-115, Chapter 2, Chapter 9, and Attachment 5 | III |
| 4.6.12. Video/Audio Production (podcast, news) | AFH 35-115, Chapter 4, Chapter 9, and Chapter 10 | IV |

**Notes:**

1) This matrix serves as a guide for [XX unit]/PA's day-to-day activities. In some cases, an item that falls into one priority level (for example, priority level three) may receive support at a higher priority level (for example, priority level two) if deemed necessary by the [XX unit]/PA chief.

2) Items that fall into a category not listed in this matrix will be prioritized at the discretion of the [XX unit]/PA chief.

*PA NOTES (not for inclusion in finalized prioritization/employment plans):*

*1) This matrix and priority levels should be adjusted based on the local mission and resources, as well as the commander's intent. As a result, an item that is assigned a priority level three at one organization may be assigned a different priority level at a different organization.*

*2) The supporting references above include helpful sections of 35-series AFIs and AFMANs, when able. The list of supporting references may not be all-inclusive to the listed capability,*

*and PA offices are encouraged to supplement the matrix with other references and local operating instructions, as needed.*

**Figure A4.4.  Sample Wing Public Affairs Employment/Prioritization Plan–Editorial Guidance.**

**[XX unit]/PA Editorial Guidance for Official Print, Web and Social Media Publications**

1. **Delegation of Editorial Review.** The [XX unit]/CC exercises editorial control over official print, web, and social media publications for [INSTALLATION]. Day-to-day oversight and responsibility for these activities is delegated to the [XX unit]/PA chief. The determination on of an event's newsworthy value is at the discretion of the [XX unit]/PA chief based on an assessment of how well the proposed coverage supports the commander's communication priorities.

2. **Base Newspaper.** The [INSERT] newspaper is produced by an off-base civilian publisher at no cost to the government. While the publisher pulls coverage from the [INSTALLATION] website as well as other Air Force and DoD sources, the [XX unit] does not have authority over the publication, its layout, or advertising content.

3. **Base Website.** The official website for [INSTALLATION] is operated by the [XX unit]/PA staff and is located at www.[INSERT].af.mil. Only information cleared for public release in accordance with DAFI 35-101, Chapter 5, *Command Information and Distribution*, and other associated policies and instructions can be posted to the site.

a. Section 508 Compliance. In 1998, Congress amended the U.S. Rehabilitation Act of 1973 to require that federal agencies make their electronic and information technology accessible to people with disabilities. Section 508, 1194.22, Web-based Intranet and Internet Information and Applications, is of particular importance with regard to website management. This section outlines the requirements for federal websites, both internet and intranet. It states that federal websites must meet the needs of disabled employees and members of the public and allow them access to internet technology in a format understood by software readers/viewers.

4. **Content.** News, feature, and editorial material will conform to policies of the Air Force and the [XX unit]/CC. Coverage will be factual and objective and avoid morbid, sensational, or alarming details not essential to factual reporting. Accuracy is paramount. Individuals to be

interviewed and photographed must meet all requirements of AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel*, 7 February 2020 and must comply with current safety, security, and technical order requirements.

a. News Content. News content is based on local articles developed by the PA staff and releases by the Air Force News Service, MAJCOM news services, American Forces Press Service, and other agencies of the DoD and federal government.

b. Editorial and Opinion. Locally originated editorials (command position) and commentaries (personal opinions) will reflect the policies of the commander and will be in the interest of the Air Force. Editorials should help readers understand Air Force policies and programs. They must not imply criticism of other governmental agencies, nor advocate or dispute specific political, diplomatic, or legislative matters.

c. Articles of local interest produced outside official channels (e.g., stringers, local organizations) may be used if permission has been obtained, the source is credited, and they do not otherwise violate this manual. Articles for off-base, non-profit organizations, including non-profit military-affiliated organizations (e.g., Air Force Association, Air Force Sergeants Association, NCO Association) must be consistent in length and placement to avoid the appearance of favoritism or implied endorsement.

5. **Editing for Publication.** All materials submitted to the [XX unit]/PA office for publication will be reviewed and edited to conform to DoD newswriting guidelines. This includes conforming to the guidelines in the Associated Press Stylebook and Briefing on Media Law and Air Force Journalistic Style Guide.

6. **Awards Recognition.** Due to limited resources, PA coverage of award winners is generally limited to wing and higher-level echelons. However, customers are highly encouraged to use the Hometown News Release Program to obtain civilian coverage of any significant personal accomplishments such as awards, graduations and promotions. PA will help customers issue a hometown release upon request.

7. **Social Media.**

a. Official Use. The official social media sites for [INSTALLATION] are [INSERT].

These sites are operated by the [XX unit]/PA office using the same guidelines as the official website and print publications. Subordinate and tenant organizations, with the exception of units with their own PA office, are not authorized to operate official social media pages without the approval of the [XX unit]/PA chief. Unofficial pages (e.g., booster club pages, alumni pages, etc.) are not official Air Force social media sites and are encouraged to display a disclaimer that the page is not an official representation of the Air Force.

b. Personal Use. In general, the Air Force views personal websites, blogs, and social media sites positively, and it respects the right of Airmen to use them as a medium of self-expression. However, as members of the Air Force, Airmen must abide by certain restrictions to ensure good order and discipline. All Airmen are on duty 24 hours a day, 365 days a year, and their actions on and off duty are subject to the Uniform Code of Military Justice (UCMJ). See AFI 1-1, *Air Force Standards*, for more guidelines regarding personal social media use.

**Attachment 5**

**SAMPLE SECURITY AND GUIDANCE REVIEW MEMORANDUM FORMAT**

**Figure A5.1.  Sample Security and Guidance Review Memorandum Format**

Date _____

**MEMORANDUM FOR SAF/PA**

FROM: _____

**SUBJECT:**  Public Release Approval Request

1. The attached material, described below, is forwarded for security and guidance review in accordance with DAFI 35-101, Chapter 9, and AFMAN 35-101, Chapter 8:

TITLE:  _____

*(Please include page count)*

AUTHOR/ORGANIZATION: _____

PRESENTATION TO: *(if being presented, to whom; general public, conference, symposium, etc.)*

DATE: *(when will this document be published or presented)*

LOCATION: *(where will this document be published or presented; ex, state or N/A)*

PUBLICATION IN: *(or N/A)*

SUBMITTAL DEADLINE: *(or N/A)*

REQUEST REPLY BY: (*the date the member would like a response or normal review time (10*

*working days) [NO ASAP])*

2. ___*(member's chain of command)___* has no objection to public release of this document upon approval from SAF/PA.

3. (This line is for any comments or recommendation the member may have in reference to the document being submitted  for review; if prior coordination has been performed, please list POC, email addresss, and phone number.) If possible, please list one additional POC other than submitter. Please indicate if the member is a contractor.

**SIGNATURE** (*Gov't Employee*)

(*requester or submitter*)

*Attachment 5 Copies (required)*

**Attachment 6**

**PUBLIC AFFAIRS SECURITY AND POLICY REVIEW WORKSHEET**

**Figure A6.1.  Public Affairs Security and Policy Review Worksheet, Part 1**



AFIMSC PUBLIC AFFAIRS SECURITY AND POLICY REVIEW WORKSHEET, 10142020

**App. 294**

**Figure A6.2.  Public Affairs Security and Policy Review Worksheet, Part 2**

Block 11 - Explanation (Continued):

---

### INSTRUCTIONS FOR COMPLETING THE SECURITY AND POLICY REVIEW WORKSHEET

**NOTE: Items marked with an asterisk (*) and Blocks 12-14 are required. If all required information is not provided, case will be returned with no action taken and must be resubmitted.**

1. Date Needed: Allow at least 10 working days *(not including day of submission)* for local PA review. If a submission requires higher level review or coordination, processing time could take up to 45 working days.
   - Requests for less than 10 working days require a justification letter as to why the submission does not fall within the required time frame signed by a Directorate-Level Director or Commander. More information including a justification letter template is available on the S&PR SharePoint Site.
   - Depending on complexity or requirements for other coordination, items can take longer to process (i.e. Theses) You will be notified of any issues.
   - Items already publicly presented will not be reviewed.

2. Include your organizational reference/tracking number (optional). Tracking numbers will not be added by PA.

3. Submitter information: Self explanatory. *These e-mail addresses receive notification when case is assigned and completed.*

4. Author(s) information: List primary author's name, if multiple authors. *This e-mail address receives notification when case is assigned and completed.*

5. Document Title: Self-explanatory.

6. Conference/Event/Publication Name/Website URL. Identify date of event/name of publication where submission will be published, or web site where cleared material will be posted.

7. Event/Publication Date: Identify date of event or date of publication/posting to web site.

8. Document type: Indicate the type of information to be reviewed from the pull down menu, or choose Other and fill in that blank.

9. Identify the budget category or program element code associated with the weapon system from pull down menu, or choose NA.

10. National Security Statutes/Technology Issues:
   a. References:
      - Electronic Code of Federal Regulations
      - Export Administration Regulations Database
      - U.S. Munitions List (Part 121) and International Traffic In Arms Regulations
      - The Commerce Control List
   b. Materials that must be/are marked FOUO or Distribution B or higher will not be cleared.
   c. Identify whether classified references are used. Annotate in Block 11 (Explanation) exact references and why it is necessary to use them.

11. Explanation. Include additional comments from other blocks (list previous related cases), clearly identify coordination with agencies already accomplished. If additional coordination with other command agencies is required, provide POC information (use back of form, as necessary).

CERTIFICATION AND COORDINATION SIGNATURES. PER REGULATORY GUIDANCE, **CONTRACTORS MAY NOT SIGN IN BLOCKS 12-15**

12. Originator/Program Manager/Author Certification. Signature certifies that the U.S. Government originator, program manager, or author concurs that the information is appropriate for public release based on regulations, classification guides, and any other pertinent guidance.

13. Technical Review and Certification Signature. Signature certifies that the information has been reviewed by a U.S. Government superior/authorized peer reviewer/subject matter expert and is appropriate for public release based on regulations, classification guides, and any other pertinent guidance.

14. Security Manager Review. Signature certifies that the information contains no Operational Security issues. This can be signed by a U.S. Government OPSEC Officer, Security Manager (or Educational Department Head for theses, dissertations and abstracts).

15. Additional review. Used to document coordination with outside agencies/program offices, or organizations may have an internal process that requires an additional signature, such as director or commander. Required only when external coordination needs to be documented, or internal processes dictate additional review.

AFIMSC PUBLIC AFFAIRS SECURITY AND POLICY REVIEW WORKSHEET, 10142020

# Exhibit 6

**From:** Jacobsmeyer, Paul J CIV WHS ESD (USA)
**Sent:** Monday, October 18, 2021 12:58 PM
**To:** Kel McClanahan, Esq. <kel@nationalsecuritylaw.org>
**Subject:** Security Review of "Crowded Skies: Cold War Reconnaissance Over the Baltic", 22-SB-0002


Dear Mr. McClanahan, Esq.,

This responds to the subject manuscript submitted on 6 October, 2021.  DOPSR does not work with, or accommodate, publishers' timelines, nor do we work with an author's legal counsel or literary representative.  Please have the author contact us directly with appropriate contact information, and we will provide him/her with an acknowledgement of the manuscript.  Failure to provide this information will result in the denial of Security Review of this manuscript and administrative closure of this case.

VR, Paul

Paul J. Jacobsmeyer

1

Defense Office of Pre-Publication
  and Security Review (DOPSR)
2A534
703-614-4912/cell 703-209-0422

# Exhibit 7

**From:**          Jacobsmeyer, Paul J CIV WHS ESD (USA)
**Sent:**          Tuesday, November 23, 2021 10:35 AM
**To:**            Kel McClanahan, Esq.
**Cc:**            Kel@NationalSecurityLaw.org
**Subject:**       RE: Security Review of "Crowded Skies: Cold War Reconnaissance Over the Baltic", 22-SB-0002

Dear Mr. McClanahan, Esq.,

As we have received no response to our request below soliciting contact information with the author of the subject manuscript, DOPSR is closing the case and taking no further action.  Subsequent re-submission of the case will result in a new case number and position in the queue for the author.  Be advised that publication without a Security Review could result in an Unauthorized Disclosure investigation by the appropriate DoD Components.

VR, Paul

Paul J. Jacobsmeyer
Defense Office of Pre-Publication
  and Security Review (DOPSR)
2A534
703-614-4912/cell 703-209-0422

# Exhibit 8

| | |
|---|---|
| **From:** | Kel McClanahan, Esq. <kel@nationalsecuritylaw.org> |
| **Sent:** | Friday, January 14, 2022 4:21 AM |
| **To:** | WHS Pentagon ESD Mailbox SECREV |
| **Subject:** | [Non-DoD Source] Prepub review: Hopkins, 4 short pieces |
| **Attachments:** | Bring Back the Looking Glass.pdf; DoD Prepublication Review.pdf; Effectiveness of the Alert Force.pdf; Why 15 Minutes Is Irrelevant.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Please find attached 4 new short manuscripts by my client Robert Hopkins. The titles are as follows for your records:

- Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts?
- DoD Prepublication Review: A Broken, Arbitrary System Predisposed to Rejection
- Effectiveness of the Alert Force
- Why 15 Minutes Is Irrelevant

I am aware that Paul Jacobsmeyer has claimed that any submission not received directly from the author will be summarily denied. However, this policy--should it exist--is a violation of law, and if DOPSR chooses to deny clearance for these submissions based on the fact that my client has elected to have his lawyer handle the logistics of prepublication review for his fully unclassified manuscripts, please be aware that we will pursue all legal avenues at our disposal. Should you desire to meet with my client to discuss any concerns, I will be happy to facilitate such a discussion, but all correspondence regarding these submissions must be directed to me.

I similarly expect that DOPSR will reverse its denial of my client's 6 October 2021 submission, *Crowded Skies*, No. 22-SB-0002, and process it for release expeditiously, in light of the fact that your denial of that submission was exclusively based on the fact that I submitted the unclassified manuscript to DOPSR. Should you fail to do so, we will file a complaint in the appropriate federal district court.

We look forward to DOPSR's prompt clearance of the four attached manuscripts and *Crowded Skies*. If you have any questions, please do not hesitate to contact me.

Kel McClanahan

---
This electronic mail (email) transmission is meant solely for the person(s) to whom it is addressed. It contains confidential information that may also be legally privileged. Any copying, dissemination or distribution of the contents of this email by anyone other than the addressee or his or her agent for such purposes is strictly prohibited. If you have received this email in error, please notify me immediately by telephone or email and purge the original and all copies thereof. Thank you.

Kel McClanahan, Esq.
Executive Director
National Security Counselors
Kel@NationalSecurityLaw.Org
301-728-5908

"As a general rule, the most successful man in life is the man who has the best information."

**App. 301**

Benjamin Disraeli, 1880

"Quis custodiet ipsos custodes?" ("Who will watch the watchers?")
Juvenal, Satire VI

**App. 302**

# Exhibit 9

| From: | Sturgis, George R (Frosty) JR CIV WHS ESD (USA) |
|---|---|
| To: | kel@nationalsecuritylaw.org |
| Cc: | Ortiz-Ferrari, Alcides CIV OSD OGC (USA); Sturgis, George R (Frosty) JR CIV WHS ESD (USA) |
| Subject: | Prepublication Review: Reference Dr. Hopkins |
| Date: | Monday, February 28, 2022 9:17:03 AM |

Greetings Mr. McClanahan,

We note that you have submitted several prepublication review requests on behalf of your client, Dr. Hopkins, most recently on January 14, 2022.  An Action Officer emailed you last fall regarding Dr. Hopkins' second book submission informing you that DOPSR needed the author's contact info, and that DOPSR could not start the review without his information.  As you did not respond to multiple requests, DOPSR closed Dr. Hopkins' book submission on November 24, 2021.

You have indicated that you are the sole correspondent for Dr. Hopkins' submissions, and that DOPSR is not right to administratively close any of the submissions.  This is incorrect.  As Dr. Hopkins is the author, held a security clearance, and has the prepublication obligation, he has the institutional responsibility and legal requirement to ensure that there is no non-public DoD information in the submissions. DoD's relationship is with the author, not his legal representative. Failure of the author to correspond with the DoD evades the intent of the prepublication review process to not disclose non-public DoD information.

Our insistence on this process is standard DoD policy.  To underscore the seriousness of this matter, reviewing components have identified instances of non-public information in Dr. Hopkins' first book submission, and based on the subject of the submissions, there is a likelihood that the second book and articles contain non-public DoD information.  Providing this material to you is a violation of Dr. Hopkins' non-disclosure agreement. This violation could result in an Unauthorized Disclosure investigation by the Defense Counterintelligence and Security Agency.

DoD's continued engagement with you perpetuates and endorses this unauthorized disclosure of DoD information by sanctioning your unauthorized access to the author's submissions.  Hence, we are closing all of Dr. Hopkins' requests until he contacts our office.  Feel free to contact me at 703-614-4913 should you have any questions.

r/ Frosty
George Sturgis (aka: Frosty)
Chief, Defense Office of Prepublication
  and Security Review
Executive Services Directorate
Washington Headquarters Services
Pentagon 2A534
☎Office: (703) 614-4913
Work Cell: 571-329-9687
NIPR: george.r.sturgis.civ@mail.mil
SIPR: george.r.sturgis.civ@mail.smil.mil
JWICS: george.sturgis@osdj.ic.gov

How am I doing? Let me know at https://ice.disa.mil/index.cfm?
fa=card&sp=139133&s=110&dep=*DoD

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| ROBERT HOPKINS, III | |
| *Plaintiff*, | |
| v. | No. 3:22-CV-00706-E |
| DEPARTMENT OF DEFENSE, | |
| *Defendant*. | |

## (U) CLASSIFIED DECLARATION OF ANDREW T. WALTER

(U) I, Andrew T. Walter, hereby declare as follows:

1.    (U) This declaration is in support of the Department of Defense's

(DoD) motion for summary judgment in this proceeding. The statements contained

in this declaration are based upon my personal knowledge or information provided

to me through the exercise of my official duties.

2.    (U) I am currently the Deputy Assistant Secretary of Defense for

Nuclear Matters (DASD(NM)). I support the Under Secretary of Defense for

Acquisition and Sustainment (USD(A&S)) and the Assistant Secretary of Defense

for Nuclear, Chemical, and Biological Defense Programs (ASD(NCB)) in their

functions and responsibilities on all nuclear weapons issues, including

1

**App. 306**

classification. These responsibilities are detailed in Department of Defense Directive 5134.08 and Department of Defense Instruction 5210.02.

3.    (U) DoD Instruction 5210.02, *Access to and Dissemination of Restricted Data (RD) and Formerly Restricted Data (FRD)*, states that "the DASD(NM) in consultation with the Department of Energy (DOE) shall: (1) Develop classification guides for programs over which both DoD and DOE have cognizance. (2) Determine which information in the RD category relating primarily to the military utilization of nuclear weapons may be placed in the FRD category. (3) Prepare classification guides for FRD and RD relating primarily to the military's use of nuclear weapons." *See* Enclosure 2, at 5.

4.    (U) As the DASD for Nuclear Matters, I have original classification authority for Joint Department of Energy / Department of Defense Nuclear Weapons Security Classification Guidance (per the Under Secretary of Defense for Intelligence's March 14, 2008 Memorandum, "*Original Classification Authority Responsibility for Joint Department of Energy/Department of Defense Nuclear Weapons Security Classification Guidance*"). I also have delegated authority to make joint classification determinations about Atomic Energy Act (AEA) information.

5.    (U) In accordance with the aforementioned functions and authorities, I affirm that the redacted information, as marked by the Defense Office of

2

UNCLASSIFIED AS REDACTED

Prepublication and Security Review (DOPSR) in its September 29, 2022 communication to Plaintiff, remains properly and currently classified in accordance with the Joint Department of Energy / Department of Defense Topical Classification Guide for Weapon Production and Military Use (TCG-WPMU-3 with change 4), dated December 2013 (excerpts attached as Exhibit A).

6.　　(U) In the mid-summer of 2021, Plaintiff submitted his manuscript (entitled "Klaxon! Strategic Air Command Alert During the Cold War") to the Air Force, which provided the manuscript to DoD for its own classification review. In July 2021, DOPSR tasked the Office of the USD(A&S) with conducting a review of Plaintiff's manuscript, which in turn tasked my office with conducting the review. At that time, the Pentagon reservation was operating at an elevated Force Health Protection Condition, which limited staffing of offices and made the ability to conduct classified work more challenging, including conducting pre-publication reviews for classified information.

7.　　(U) My staff conducted a line-by-line review of the manuscript and identified the presence of classified information which was reported to DOPSR in July 2022.

8.

3

**I.   (U) Presence of U.S. Nuclear Weapons in a Location**

9.



10.

UNCLASSIFIED AS REDACTED



6

UNCLASSIFIED AS REDACTED



13.   (U) All locations, quantities, types, and details of the presence or absence of U.S. nuclear weapons both outside and inside of the United States remain classified in accordance with the TCG-WPMU-3. Only the following facts have been declassified by a joint DOE/DoD determination as authorized under the Atomic Energy Act: (1) that the United States had nuclear weapons in certain NATO (or other regional defense organization) partners such as Germany and the United Kingdom, and more generally in Europe, NATO as a whole, and the U.S. Indo-Pacific Command (with no elaboration about the specific locations and names of such weapons); and (2) that specified Atomic Demolition Munitions and specified Artillery Fired Atomic Projectiles were stored in Germany (without

7

███████████████████████████████████████

revealing any time periods, quantities, or specific sites at which these munitions and projectiles were stored). This information was declassified at a high level only after internal deliberations with the United States government and external deliberations with foreign government officials. At the end of the day, our allies and partners depend on the United States to guard their secrets with the same level of determination and commitment as we do our own. The United States is not authorized to officially disclose information about the presence of nuclear weapons in another country without that country's approval. Any unauthorized disclosure of the presence or absence of U.S. nuclear weapons in another country seriously threatens to damage not only our own national security, but the regional security of our partners and allies, as well as the credibility of the United States and the relationships with our allies and partners. For similar reasons, revealing the location of particular nuclear weapons within the United States could seriously endanger our national security by showing an adversary where to attack us or how to attempt to take measures to counter such a weapon.

14. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

8





16.

## II.    (U) U.S. Nuclear Weapon Yields

17.    (U) The Department of Defense has declassified the yields of only a

few specified nuclear weapons and has maintained the classification of yields of all

other U.S. nuclear weapons. A yield of a nuclear weapon is the amount of energy

released when that weapon is detonated. Any disclosure of the yield of a nuclear

weapon could cause serious damage to national security because it provides

adversaries and potential adversaries invaluable information for planning and

protecting against the effect of a particular nuclear weapon detonation, rendering

10

App. 315

UNCLASSIFIED AS REDACTED

the use of nuclear weapons less effective and eroding, the credibility and capability of the nation's nuclear deterrence. For example, if a nuclear weapon is more or less destructive than another weapon (to include their own weapons), an adversary could plan take countermeasures to neutralize the more destructive nuclear weapon or take advantage of the less destructive nuclear weapon. Information concerning U.S. nuclear weapon yields is classified as "Confidential - Formerly Restricted Data" under TCG-WMPU-3, section 206.9.1.2.7.

18.

11

19.

III.   (U) Any Subdivisions of the Total Weapon Stockpile

20.

12

UNCLASSIFIED AS REDACTED

21.    (U) In the wake of the Cold War, the United States committed to both reducing the number of its nuclear arms and promoting transparency in limiting the stockpile of nuclear arms around the world. Each year, the U.S. declassifies the total number of the U.S. nuclear stockpile on a delayed schedule (the most recent numbers released are the total U.S. nuclear stockpile for 2020). However, the U.S. maintains the classification of the subdivision or subcategories of U.S. nuclear weapons, such as quantities of the total active, or inactive stockpiles by type, purpose, deployment location, etc. In other words, although the total number of nuclear weapons in the U.S. may eventually be unclassified during specific years, any subdivision of the total number of nuclear weapons remains classified. If an adversary knew how many of each type of weapon the U.S. maintains, they could plan accordingly to counter our capabilities by, for example, planning to obtaining nuclear interceptors.

22.

13

**App. 318**



## IV.  (U) Specific Nuclear Weapons Involved in a Mishap

24.  (U) The United States occasionally has accidents or mishaps regarding nuclear weapons. After a nuclear accident happens, the Department of Energy may release an unclassified statement about the accident or mishap in order

14



to provide information to the public and provide assurances that the incident was

not perpetrated by an adversary.

25.

26.

15

UNCLASSIFIED AS REDACTED



27.

28.    (U) Although all of the information redacted from Klaxon is more than 25 years old, the information has not been automatically declassified, and is subject to continued classification under Executive Order 13,526, § 6.2(a); section 6.2(a) states that "nothing in this order shall supersede any requirement made by or under the Atomic Energy Act of 1954, as amended . . . and declassified in conformity with the provisions of the Atomic Energy Act of 1954."

29.    (U) The documents addressed herein have carefully been reviewed for reasonable segregation of unclassified information, and it has been determined by me that no further segregation of meaningful information in the redacted passages can be made without disclosing information warranting protection under the law.

16

Pursuant to 28 U.S.C. § 1746, I, Andrew T. Walter, declare under penalty of

perjury that the foregoing is true and correct.

Executed on this 27th day of September 2023.

Andrew T. Walter
Deputy Assistant Secretary of Defense
for Nuclear Matters

17

UNCLASSIFIED AS REDACTED

■

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ROBERT HOPKINS, III | |
| *Plaintiff,* | |
| v. | No. 3:22-CV-00706-E |
| DEPARTMENT OF DEFENSE, | |
| *Defendant.* | |

### (U) CLASSIFIED DECLARATION OF DOUGLAS A. SIMS II

(U) I, Douglas A. Sims II, hereby declare as follows:

1. (U) This declaration is in support of the Department of Defense's (DoD) motion for summary judgment in this proceeding. The statements contained in this declaration are based upon personal knowledge or information obtained through the exercise of my official duties.

2. (U) I am currently the Joint Staff Director for Operations, J-3 (DJ-3). In this capacity, I assist the Chairman of the Joint Chiefs of Staff (CJCS) in carrying out responsibilities as the principal military advisor to the President and Secretary of Defense, which includes leadership and oversight of the Nuclear Command, Control, and Communications (NC3) enterprise in conjunction with the Deputy Secretary of Defense, pursuant to DoD Directive S-3730.02, *The Nuclear*

■
1

**App. 323**

UNCLASSIFIED AS REDACTED

*Command, Control, and Communications Enterprise.* NC3 is the means through which the authority of the President is exercised for the operational command and control of U.S. nuclear forces. The Secretary of Defense, as the Executive Agent for the Nuclear Command and Control (NC2) System, is accountable to the President for NC3 capabilities to ensure the ability to execute NC2 authorities held solely by the President. As part of my duties, I am responsible for overseeing the development and implementation of U.S. NC2 procedures worldwide, on behalf of the CJCS.

3.      (U) As a result of the NC3 enterprise's mission, a significant number of records pertaining to NC2 are classified to prevent damage to national security, in accordance with Executive Order (E.O.) 13526, *Classified National Security Information.* E.O. 13526, § 1.2 authorizes agency heads (and/or delegated authorities) to classify information at three (3) levels: TOP SECRET, SECRET, and CONFIDENTIAL. The level of classification is based upon expected harm to national security which, if the information were released, would constitute: exceptionally grave damage to national security for TOP SECRET information; serious damage to national security for SECRET information; and damage to national security for CONFIDENTIAL information. As the Joint Staff DJ-3, I have original classification authority (OCA) up to the TOP SECRET level per the

■

January 9, 2020 memorandum of the Secretary of Defense, *Verification of Delegations of Original Classification Authority*.

4. (U) My staff within the J36 Nuclear Operations Division conducts security classification reviews for the Joint Staff when reviews are related to U.S. NC2. They do this based on security classification guides (SCG), which are implemented by an OCA to document and disseminate classification decisions under that OCA's jurisdiction. I am the cognizant OCA for two SCGs that were used as the basis for the Joint Staff redactions being challenged by the Plaintiff: (1) Chairman of the Joint Chiefs of Staff Manual (CJCSM) 5222.01E, *National Military Command System Security Classification Manual*, and (2) Emergency Action Procedures of the Chairman of the Joint Chiefs of Staff (EAP-CJCS) Volume I, *Appendix: Security Classification Guide (SCG)*.

5. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

6. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

3


**I.    (U) Redactions to the Text of *Klaxon!***

    **A.    (U) Information Pertaining to U.S. Nuclear Command and Control**

       8.



9.

10.

6

UNCLASSIFIED AS REDACTED



11.

12.

7



13.

8



**B.**     **(U) DEFCON Force Readiness and Generation Levels**

14.

9



15.



11



18.

19.

12



II.   (U) Redactions to *Klaxon!* Photographs and Captions

    20.

13

21.

III.   (U) Redactions to Articles

22.

23.

14

24.

A. (U) *Searching for Mobile ICBMs*

25.

26.

15

**B. (U)** *Why 15 Minutes is Irrelevant*

27.

28.

16

UNCLASSIFIED AS REDACTED



29.

C.    *(U) Bring Back the Looking Glass?*

30.

17



18



34.

35.   (U) The documents addressed herein have carefully been reviewed for reasonable segregation of unclassified information, and I have determined that no further segregation of meaningful information in the redacted passages can be made without disclosing information warranting protection under the law.

19

Pursuant to 28 U.S.C. § 1746, I, Douglas A. Sims II, declare under penalty

of perjury that the foregoing is true and correct.

Executed on this _5_ day of October 2023

Douglas A. Sims II
Lieutenant General, U.S. Army
Director for Operations, J-3, Joint Staff

20

App. 342