**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

**Dallas Division**

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 3:22-cv-00706 (E) |
| | * | |
| DEPARTMENT OF DEFENSE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HIS MOTION TO AUTHORIZE HIS**
**COUNSEL TO ACCESS HIS INTENDED EVIDENCE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

ARGUMENT ..... 1

I. THE PRESUMPTION OF ACCESS APPLIES ..... 1

II. THE DRAFT RESPONSE IS NOT PROTECTABLE ..... 4

III. DOD'S INITIAL ARGUMENTS ARE WITHOUT MERIT ..... 8

CERTIFICATE OF CONFERENCE ..... 15

CONCLUSION ..... 16

CERTIFICATE OF COMPLIANCE ..... 17

# TABLE OF AUTHORITIES

**Cases:** **Pages**

*Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362 (4th Cir. 1975) ........................13, 14

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021).....................4

*Brown & Williamson Tobacco v. FTC*, 710 F.2d 1165 (6th Cir. 1983)............3

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990)..........................................9

*IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402 (5th Cir. 2023) ......................................................................4

*June Med. Servs., LLC v. Phillips*, 22 F.4th 512 (5th Cir. 2022) .....................4

*Lawless v. DOD*, No. 21-2859, slip op. (D.D.C. Mar. 6, 2023) .......................14

*Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003) ........................................1

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) ......................................*passim*

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) .................................3

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991) ..............................................................................3

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) ...............................3

*Shaffer v. DIA*, 102 F. Supp. 3d 1 (D.D.C. 2015) ...........................................8

*Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003)..............................................7

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995)...................................2

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) ...................................1

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972).............................7

## ARGUMENT

As an initial matter, Hopkins respectfully apologizes for the occasionally duplicative nature of this brief; the Court will undoubtedly recognize arguments and citations from other filings from earlier in this case. As will become self-evident, however, those arguments were made in different contexts than the one facing the Court now, and so it is in the interest of judicial economy and clarity to raise them herein in their totality rather than asking the Court to piece together the full argument from a patchwork of other filings. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Similarly, due to the peculiar way in which DOD responded to Hopkins's motion to stay the briefing of its dispositive motion, in which it attempted to argue against *this* Motion before the Motion was even filed, Hopkins will spend some of this brief addressing the arguments raised in DOD's preemptive effort. The Court should not, however, treat any arguments raised in Defendant's opposition to *that* motion as properly before the Court unless DOD raises them in this context of *this* Motion.

### I.   THE PRESUMPTION OF ACCESS APPLIES

While Hopkins has understandably not filed the Draft Response yet, it is undisputed that he intends to do so, or at the very least to file a final version with

his opposition once his undersigned counsel has reviewed it. Moreover, DOD acknowledges that a version of the Draft Response will be part of the record, although it proposes that it should be allowed to provide the Draft Response to the Court instead of Hopkins being allowed to provide the final document intended to be used as evidence. (Def.'s Comb. Opp'n Pl.'s Mot. Stay Summ. J. Briefing & Mot. Part. Unseal Class. App'x, Dkt. #39, at 9 (filed Jan. 24, 2024) [hereinafter DOD's Stay Opp'n].) While Hopkins contends that he and not DOD should provide his own evidence to the Court in the form he believes appropriate when he files his opposition to DOD's dispositive motion, he does request that the Court order DOD to provide the Draft Response to it *in camera* and *ex parte* for the purposes of adjudicating *this* Motion, so that the Court can confirm for itself the allegations made herein.[1]

Therefore, even though Hopkins at this point does not seek to have the Draft Response as it now exists filed on the public record, the fact that a final version of it will be offered as material evidence to oppose summary judgment heavily supports the unsealing of this information. *See*, *e.g.*, *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (identifying "role of the material at issue in the

[1] To be clear, once the Court has resolved this Motion, it should not rely on the Draft Response in the context of future disputes, since it is a mere draft written for the purposes of assisting Hopkins's undersigned counsel in his prosecution of this case (Hopkins Decl. ¶ 3, attached as Ex. A) and would under any other circumstances be squarely protected by the attorney-client privilege and never seen by the Court but for DOD's unjustified censorship.

exercise of Article III judicial power" as a key consideration). This presumption in favor of disclosure can be found in both common law and First Amendment jurisprudence. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). The Third Circuit summarized the existing case law thusly:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system . . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness. Access to civil proceedings and records promotes public respect for the judicial process and helps to assure that judges perform their duties in an honest and informed manner. Accordingly, we have applied the presumption of public access to a variety of civil hearings and records, including the transcript of a civil trial and exhibits admitted at trial; settlement documents filed with the district court as well as post-settlement motions; and a civil hearing for a preliminary injunction and transcripts of that hearing.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991) (quotations and citations omitted). *See also Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("historically both civil and criminal trials have been presumptively open"); *Brown & Williamson Tobacco v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983) ("The Supreme Court's analysis of the justifications for access to the criminal courtroom apply as well to the civil trial . . . . The concern of

Justice Brennan that secrecy eliminates one of the important checks on the integrity of the system applies no differently in a civil setting.”).

By the same token, the Court should not be swayed by the fact that parts of this case allegedly involve classified information, because there is no reason to believe that *the Draft Response* contains classified information. Accordingly, without any evidence to the contrary, the presumption in favor of disclosure cannot be rebutted, since “[t]he government has no legitimate interest in censoring unclassified materials.” *McGehee v. Casey*, 718 F.2d 1137, 1141 (D.C. Cir. 1983).

Just four months ago, the Fifth Circuit explained, “We recently instructed that ‘courts should be ungenerous with their discretion to seal judicial records’ and warned that ‘we heavily disfavor sealing information placed in the judicial record.’” *IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 411 (5th Cir. 2023) (citations omitted) (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021), and *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519-20 (5th Cir. 2022)). DOD cannot overcome this presumption with respect to the Draft Response.

## II. THE DRAFT RESPONSE IS NOT PROTECTABLE

As Hopkins testifies, he followed a straightforward pattern when writing the Draft Response so as to make it easy for DOPSR to match the text redacted from

his manuscripts with his publicly available, unclassified source for that specific information. He describes this pattern thusly:

> First I would indicate the piece of information DOPSR had redacted from a manuscript. Then I would attach an image of the relevant portion of the unclassified and/or officially released document from which I sourced the information. Then I would give a full citation to the source document.
>
> For example, if I had written the sentence "The case was first assigned to Judge Cummings before it was reassigned twice: once to Judge Fitzwater and finally to Judge Brown" on page 25 of one of my manuscripts, and DOPSR had redacted the names of the judges assigned to the case, the relevant section of my response document would have looked like this:
>
> **P. 25 Judges' Names**
>
> This case was originally before United States District Court Senior Judge Sam R. Cummings. On June 2, 2023, this case was reassigned to United States District Court Senior Judge Sidney A Fitzwater pursuant to Special Order 3-348. (Doc. 19). On June 6, 2023, this case then reassigned to United States District Court Judge Ada E. Brown pursuant to Special Order 3-249. (Doc. 21).
>
> 6/13/23 Order, Hopkins v. DOD, No. 3:22-CV-00706-E (N.D. Tex.)

(Hopkins Decl. ¶¶ 5-6.)

By writing the Draft Response in this fashion, he avoided many of the thornier issues which face the Court in its consideration of the manuscripts themselves. First, the description of the redacted text is generally only a few words long, so as to make it generic enough to be unclassified even if the Court ends up crediting DOD's assertion that the actual corresponding manuscript redaction is

classified (which, to be clear, it should not). Using Hopkins's example, it is one thing to argue that the specific names "Sam R. Cummings," "Sidney A. Fitzwater," and "Ada E. Brown" as they are placed in the specific paragraph are properly classified pieces of information, but it is something totally different to argue that the phrase "Judges' Names" is a properly classified piece of information.

Second, and most importantly, virtually everything else in the Draft Response is "a pasted image from an unclassified publicly available source and a citation to that source." (*Id.* ¶ 7.) There is no recontextualizing of the information which might expose classified information, and there is no rephrasing or summarizing of the information which would change its meaning. Each item is the equivalent of an accurate photograph of a document that has been officially determined to be unclassified or at least was located in a public source, along with a citation that allows any readers to confirm that fact for themselves. Accordingly, even assuming *arguendo* that the Court *were* to find that the summaries of redacted information warrant continued protection, it could still not find that the photographs *themselves* do. (*See id.* ¶ 8.) The D.C. Circuit explained this as follows:

> We note, to begin with, that [the author]'s secrecy agreement applies only when he seeks to publish "classified information" that "has come or shall come to [his] attention by virtue of [his] connection with the [Government]." The agreement does not extend to unclassified materials or to information obtained from public sources. The government may not censor such material, "contractually or

> otherwise." The government has no legitimate interest in censoring unclassified materials. Moreover, when the information at issue derives from public sources, the agent's special relationship of trust with the government is greatly diminished if not wholly vitiated.

*McGehee*, 718 F.2d at 1141 (quoting *United States v. Marchetti*, 466 F.2d 1309, 1313 (4th Cir. 1972)).

Of particular relevance to the Court is the fact that *McGehee* identifies two *separate* exceptions to the secrecy agreement. The first pertains to unclassified information and does not need to be discussed further, except to say that DOD must still meet the burden of demonstrating that these images and citations are properly classified. The second exception, however, only requires that the information "has come or shall come to [his] attention by virtue of [his] connection with the [Government]," singling out "information . . . derive[d] from public sources" as not generally warranting protection. *Id.* This second exception critically does not require that the information *be unclassified.* It is virtually impossible to imagine a more crystal clear example of "information derived from public sources" than an actual image of a public source complete with a citation to that source. Therefore, while Hopkins continues to maintain that all of the information in both his Draft Response and his manuscripts is unclassified, the Court does not need to reach that question because the information in his Draft Response is undeniably derived from public sources. *See Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003) ("If, on the other hand, the information was not

classified properly, then Stillman may publish the manuscript."); *Shaffer v. DIA*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015) ("Nonetheless, when a manuscript contains information that is unclassified, wrongly-classified, or derived from public sources, the Government may not censor such material.").

## III. DOD'S INITIAL ARGUMENTS ARE WITHOUT MERIT

In an attempt to persuade this Court to require Hopkins to oppose its dispositive motion before the Court rules on this Motion, DOD made several arguments about the propriety of granting the relief Hopkins was allegedly requesting, which do not bear close scrutiny either because they misrepresent the facts or the law or because they simply are not applicable. Hopkins will briefly address them in roughly the order in which they were raised.

First, as noted above, DOD encourages the Court to wait until after Hopkins has already filed his opposition to its dispositive motion to consider whether the information in the Draft Response can be withheld from his counsel, but in doing so it demonstrates why the question of whether the *manuscripts* may be censored is separate and distinct from the immediate question of whether the *Draft Response* may be censored. DOD states that, when it files its reply brief to its dispositive motion, "[i]t will also explain in classified declarations why the sources in Hopkins's alleged public sourcing document do not constitute an official acknowledgement." (DOD's Stay Opp'n at 5.) It later elaborates that it "will

explain to the Court in its classified declarations why sources Hopkins identified do not constitute official disclosures or why the redacted information in the manuscripts has not been declassified." (*Id.* at 9.) However, it does *not* claim that it will explain to the Court in its classified declarations why *the Draft Response is not derived from public sources*. Nor can it, since, as noted above, the Draft Response is literally comprised of direct images of text that Hopkins obtained from public sources.

This is a critical distinction. As DOD has already argued in the brief filed with its dispositive motion, the test it cites for "official disclosure" is a highly particular one, in which the author must show that the information being withheld is as specific as the previously released information, that it matches it precisely, and that, most importantly, the information "must already have been made public through an official and documented disclosure." (Def.'s Br. Supp. Mot. Dismiss & Summ. J., Dkt. #32-1, at 47-48 (filed Oct. 4, 2023) [hereinafter DOD's Disp. Mem.] (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).) DOD stated that it intends to argue that "Dr. Hopkins has failed to identify *official disclosures* of the *specific information* included with his manuscripts, instead asserting that information contained in other sources is generally similar to what he intends to disclose." (*Id.* at 48 (emphasis added).) Put another way, DOD intends to argue that even if the Court accepts that Hopkins's manuscript was entirely derived

from public sources, it must still rule in DOD's favor if he cannot show that *those public sources* got the information from "an official and documented disclosure," because it is only applying the "official disclosure" test and not the "derived from public sources" test.

While Hopkins does intend to argue that his manuscripts satisfy the official disclosure test as well, his key argument for the purposes of *this* Motion is that *the Draft Response* clearly satisfies the "derived from public sources" test, and that DOD accordingly has no grounds to prevent him from providing it to his counsel. It may be that, after his counsel files his opposition, supported by the final version of the Draft Response, the Court still finds that Hopkins has not met his burden of demonstrating that the redacted portions of his manuscripts were officially disclosed, but that has no bearing on whether the Draft Response—i.e. *his evidence*—was itself exclusively derived from public sources. However, DOD has argued that, left to its own devices, it would only argue in its reply to its dispositive motion that the Draft Response "do not constitute an official acknowledgement," which is immaterial to question currently before the Court. As explained above, "when the information at issue derives from public sources, the agent's special relationship of trust with the government is greatly diminished if not wholly vitiated." *McGehee*, 718 F.2d at 1141. Regardless of whether this fact applies to

Hopkins's manuscripts, it cannot be denied that it applies to the Draft Response, and that is all that matters at this juncture.

DOD then pivots to its main contention that Hopkins is asking the Court to impermissibly "grant[] Hopkins's counsel access to classified information," which it equates to "[t]he granting of a security clearance for access to classified information." (DOD's Stay Opp'n at 6.) However, this is not what Hopkins is asking the Court to do. Hopkins is asking the Court to find that he may share information derived from public sources with his attorney. Hopkins could just as easily be asking the Court to find that he may share a newspaper article discussing a matter the Government considers to be classified with his attorney with the annotation, "this was one of my sources for my book." The fact that DOD claims that the information in the publicly available newspaper article is classified does not change the fact that it is a publicly available newspaper article, and DOD cannot prevent Hopkins from sharing that article with his undersigned counsel to allow him to prove that the book was improperly redacted. More importantly, a court order authorizing Hopkins to share the newspaper article with his counsel is not the same as granting his counsel a security clearance to view classified information.

DOD then renews an argument it made previously in this case, stating that its "approach to judicial review has been uniformly applied in prepublication

review cases." (*Id.* at 7; *see also* Def.'s Part. Opp'n Pl.'s Mot. Stay, Opposed Cross-Mot. Amend Sched. Order, & Unopposed Req. Expedited Consideration, Dkt. #17, at 5 (filed May 24, 2023) (same).) As Hopkins noted at the time, this is far from an accurate representation of the case law.

In *McGehee*, the plaintiff *and his counsel* were allowed to review both of the Central Intelligence Agency's ("CIA") classified *in camera* affidavits and draft and file classified *in camera* affidavits in response. Br. for Appellants at 6-7, *McGehee v. Casey*, No. 81-2233 (D.C. Cir.) (excerpt filed in this case as Dkt. #19-1). McGehee's attorney explained the procedure thusly:

> [I]n McGehee the way that worked I had access to the manuscript that was in dispute. I went out to the CIA with my client, I read the affidavits that the CIA filed. My client and I drafted counter-affidavits. A secretary at the CIA typed them up. I delivered them to somebody in the General Counsel's office, and after that, the lawyer got them filed with the court. Our notes and everything were kept out there.

Tr. of 4/26/02 Mot. Hrg. at 105:25-106:8, *Stillman v. DOD*, No. 01-1342 (D.D.C.) (excerpt filed in this case as Dkt. #19-2).[2] Furthermore, *McGehee* was not the only such case where a comparable process was followed. In *Alfred A. Knopf, Inc. v. Colby*, the author *and his counsel* directly participated in negotiations with the agency, after which the agency reversed its position on 114 out of 339 items. 509

[2] The line preceding this quote contains a scrivener's error when it states, "I wasn't the attorney in McGehee." *Id.* at 105:24. Mr. Lynch was clearly the attorney in that case. *See*, *e.g.*, Dkt. #19-1 at 1.

F.2d 1362, 1365 (4th Cir. 1975). It is telling that DOD is attempting to persuade this Court to ignore two of the seminal cases in this field, all for the purpose of preventing Hopkins's counsel from effectively arguing that DOD is misapplying the law and using its unjustified classification decisions to obtain a litigation advantage.

On that note, the Court should consider the magnitude of Hopkins's interest in providing the Draft Response to his undersigned counsel. DOD argues "no harm, no foul" because "the Court will have access to the alleged public sourcing document *in camera*, [so] there is no need for Hopkins's counsel to use that evidence to prove as much to the Court." (DOD's Stay Opp'n at 9 (quotations omitted).) However, this minimizes the harm that being required to meet his burden without the effective assistance of counsel will impose on Hopkins. DOD has already telegraphed that it intends to argue that the exact phrasing and formatting of Hopkins's response means that he has not met the high standard of proving that "*equally specific* information *exactly matching* the information at issue was made public through an official and documented disclosure." (*Id.* at 8.) DOD, after reviewing the Draft Response internally for three months, explained that its argument is that Hopkins is merely "asserting that information contained in other sources is generally similar to what he intends to disclose." (DOD's Disp. Mem. at 48.) Despite this admission that it intends to hold Hopkins to a highly

particular evidentiary standard, DOD nonetheless argues that he will not be harmed if his undersigned counsel is unable to help him meet that standard, because "the Court will have access to" the evidence that DOD maintains does not meet its exacting standards. (DOD's Stay Opp'n at 9.)

DOD concludes its discussion of this issue as it began it: with a patently false misrepresentation. DOD cites to an order from another case, describing it as "in prepublication review case, denying the plaintiff's motion to compel the government to provide access to classified information in the middle of summary judgment briefing." (*Id.* (citing *Lawless v. DOD*, No. 21-2859, slip op. (D.D.C. Mar. 6, 2023) [hereinafter *Lawless* Order]).) Contrary to DOD's creative description, that decision bore no resemblance to this description. In *Lawless*, the plaintiff requested access to a "secure stand-alone computer" that that he could "draft a declaration that would specifically refute DoD's classification arguments, while protecting against even the inadvertent disclosure of classified information." *Lawless* Order at 2 (cleaned up), attached as Ex. B. The district court held that because, in part, the plaintiff stated that he could "take steps to carefully craft a more cryptic declaration that is unclassified," the plaintiff "demonstrated no need for access to a secure computer for now." *Id.* at 4. In other words, the entire question before the *Lawless* court was whether or not the plaintiff could access a secure computer *which contained no classified information* for the purposes of

*securely protecting classified information he intended to give to the Court*. This is fundamentally different from DOD's description of "the plaintiff's motion to compel the government to provide access to classified information" (DOD's Stay Opp'n at 9), and the fact that DOD attempted to transparently mischaracterize it as such to preempt Hopkins from presenting a complete case demonstrates DOD's lack of good faith in this litigation.

**CERTIFICATE OF CONFERENCE**

The undersigned conferred with DOD's counsel John Lewis and Lisa Newman conferred regarding the relief requested in this Motion on 23 October 2023. DOD's counsel responded, in pertinent part, "[T]he Department of Defense has decided that it cannot approve the release of his rebuttal submission in any form. . . . [T]he document essentially consists of the redactions from *Klaxon* and two pages of *Crowded Skies* paired side-by-side with excerpts from purportedly public sources that Dr. Hopkins characterizes as official disclosures of the redacted information, without significant argument or analysis. To disclose even those purportedly public excerpts in this context would provide information concerning the substance of the redacted material. We therefore believe that this document should be for the Court's eyes only, and forwarded to the Court directly along with any other materials your client wishes to submit. To be clear, we dispute Dr. Hopkins's assertion that this material is sufficient to demonstrate that the redacted

information has been officially disclosed, and will respond in connection with our reply brief." Accordingly, the parties were unable to reach agreement.

**CONCLUSION**

The Court should grant this Motion and authorize Hopkins to provide a copy of his Draft Response to his undersigned counsel. A proposed Order has been included with this Motion.

Date: February 12, 2024

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
N.D. Tex. Bar #984704DC
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing filing contains 3838 words.

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.