IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT HOPKINS, III,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF DEFENSE,<br><br>*Defendant*. | No. 3:22-CV-00706-E |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AUTHORIZE HIS COUNSEL TO ACCESS HIS INTENDED EVIDENCE**

Plaintiff Dr. Robert Hopkins's motion to force Defendant the Department of Defense to allow him to disclose a document—the "Draft Response"—to his counsel that the Department has determined contains and would further expose classified information is simply his latest effort to stay, modify, or otherwise disrupt the orderly course of these prepublication review proceedings. *See generally* Def.'s Combined Opp. to Pl.'s Mot. to Stay Summ. J. Br. & Mot. to Partially Unseal Classified App., ECF No. 39 at 2-5.

As the Department has explained, time and again, courts in prepublication review cases "first inspect the manuscript and consider any pleadings and declarations filed by the Government, as well as any materials filed by [the plaintiff]" before determining whether it can "resolve the classification issue

1

without the assistance of plaintiff's counsel." *Stillman v. CIA*, 319 F.3d 546, 548-49 (D.C. Cir. 2003). "Only then should it decide whether to enter an order granting [plaintiff's counsel] access to the manuscript and, if similarly necessary, to the Government's classified pleadings and affidavits." *Id.* at 549. Indeed, that is why the Court has repeatedly stated that it will "consider Defendant's motion for summary judgment before determining how to proceed with this case." Order, ECF No. 28; *see also* Order, ECF No. 24. The Court should deny Dr. Hopkins's latest motion and set a deadline by which he must respond to the Department's motion for summary judgment.

The arguments presented in Dr. Hopkins's latest motion either reprise contentions the Court has already rejected or are otherwise meritless.

***First***, Dr. Hopkins is incorrect that the presumption of access to judicial records applies to the Draft Response, *see* Pl.'s Mem. of P. & A. in Supp. of His Mot. to Authorize his Couns. to Access His Intended Evid. at 1-4, ECF No. 42-1 ("Mot."), which has not yet even been filed with the Court. *See, e.g.*, *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (explaining that presumption only applies to documents "which may properly be considered public or judicial records"). More fundamentally, the Department has concluded that the Draft Response contains and would further expose classified information, and so cannot be released in any form. Under his non-disclosure agreement, Dr.

2

Hopkins is therefore *prohibited* from filing the Draft Response on the public record (and from providing it to his counsel). Nevertheless, as stated in its previous opposition, the Department will transmit the Draft Response (and/or any other materials Dr. Hopkins wishes to submit) to the Court for its *ex parte*, *in camera* consideration, along with an accompanying classified declaration justifying the Department's objections to the document's release. At that point, the Court will be well-positioned to determine whether the document should be provided to counsel or otherwise unsealed for public access, bearing in mind that there is no presumption of public access to "traditionally nonpublic government information." *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983).

**Second**, Dr. Hopkins asserts that the Draft Response is not protectable. Again, the Department will explain why Dr. Hopkins is wrong when it submits the document and accompanying classified declaration to the Court. But certain assertions presented in Dr. Hopkins's motion are either incorrect or highly misleading. To start, far from consisting solely of summaries "generally only a few words long," Mot. at 5, the Draft Response often contains redacted sections of text from Dr. Hopkins's manuscript in full. To release the Draft Response would, in many cases, directly expose the very material the Department has determined is classified.

Moreover, the images from what Dr. Hopkins characterizes as "publicly available source[s,]" *id.* at 6, generally do not constitute official releases of the information at issue, and so either contain classified information themselves that he cannot republish, or would, in context, serve to inform an astute reader of the content of the redacted text in his manuscripts. For example, if the purportedly public source image states that "the sky is blue," one would be able to deduce that the redacted text contains a similar statement—and thereby understand that Dr. Hopkins's manuscript serves to confirm that fact. That is, in part, why the Department has concluded that the Draft Response, *taken as a whole*, would reveal classified information and so cannot be released. "[E]ach individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C. Cir. 1982) (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980)).

Dr. Hopkins is also incorrect that he may disclose information simply by claiming to have compiled it from public sources. While "republication by strangers" may "lend[] no additional credence" to unauthorized disclosures, former government employees "are quite different, for their republication of the material would lend credence to it, and, unlike strangers referring to earlier unattributed reports, they are bound by formal agreements not to disclose such information."

4

*Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975). No matter how "widely circulated" the information is, "[a]s long as it remains classified," "there should be no further judicial inquiry." *Id.* at 1370-71; *see also Shaffer v. Def. Intel. Agency*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015) ("[T]he fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations.") (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990)).

**Third**, Dr. Hopkins argues that counsel in other prepublication review cases have been able to access classified information, and that his counsel needs access to the Draft Response to oppose the Department's motion for summary judgment. Mot. at 12-14. But those arguments simply seek to relitigate the question of whether his counsel is entitled to access classified information. As *Stillman* instructs, the Court should consider whether to provide counsel with access to classified information only *after* it has inspected the parties' submissions and determined whether it can "resolve the classification issue without the assistance of plaintiff's counsel." 319 F.3d at 548-49. If the Court concludes that it needs the assistance of counsel to assess the official disclosure issue, then it will be able to consider whether to grant counsel access to that Draft Response at that time.

For these reasons, the Court should deny Dr. Hopkins's motion to grant his counsel access to the Draft Response and set a deadline by which Dr. Hopkins must oppose the Department's motion for summary judgment.

Dated: March 4, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ John T. Lewis*
JOHN T. LEWIS (TX Bar No. 24095074)
LISA NEWMAN (TX Bar. No. 24107878)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 353-0533
Fax: (202) 616-8460
E-mail: john.t.lewis.iii@usdoj.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ John T. Lewis*
John T. Lewis
