# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

## Dallas Division

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 3:22-cv-00706 (E) |
| DEPARTMENT OF DEFENSE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO AUTHORIZE HIS COUNSEL TO ACCESS HIS INTENDED EVIDENCE**

Plaintiff Robert Hopkins, III ("Hopkins") filed a reasonable motion requesting specific, reasonable relief: permission to give his lawyer a document comprised primarily of screenshots of publicly available—and often officially declassified—documents ("Draft Response"), so that his undersigned counsel can incorporate that evidence into his argument that Defendant Department of Defense ("DOD") has improperly censored his manuscripts in violation of his First Amendment rights. He does not ask the Court to authorize his counsel to read the allegedly classified manuscripts themselves, out of recognition that the Court has held that he cannot do so until after it adjudicates DOD's pending motion for summary judgment. However, finding that a particular paragraph drafted by

Hopkins using his own creative abilities may be properly censored is a far cry from finding that actual screenshots of publicly available documents—many bearing official declassification markings—may be properly censored, but that is exactly what DOD is asking this Court to do. This Court should deny the invitation.

The most telling feature of DOD's argument, however, is not simply that it is arguing that Hopkins's Draft Response is properly protected.[1] It is the way in which DOD makes the argument. If DOD wished to prove to this Court that the Draft Response was properly protected, it needed to file actual evidence supporting that contention *in opposition to this Motion*. Instead, it insists that the Court must deny Hopkins's Motion for reasons *it will explain later*. (DOD's Opp'n at 3 ("[T]he Department will explain why Dr. Hopkins is wrong when it submits the document and accompanying classified declaration to the Court.").) As Hopkins pointed out in his initial brief, however, DOD does not get to unilaterally choose when it will produce evidence, and it may not simply ask the Court to "trust" that the information is properly protected and deny Hopkins's procedurally proper

---

[1] To be clear, DOD does not argue that everything in the Draft Response is properly *classified*. It *implies* classification, but beyond offering no evidence *at all* to support the argument that the information is classified, DOD actually admits that only some of the images contain allegedly classified information. (Def.'s Opp'n Pl.'s Mot. Auth. His Counsel to Access His Intended Evid., Dkt. #43, at 4 (filed Mar. 4, 2024) (claiming that "the images . . . *either* contain classified information themselves that he cannot republish, *or* would, in context, serve to inform an astute reader of the content of the redacted text in his manuscripts" (emphasis added)) [hereinafter DOD's Opp'n].) The use of the disjunctive "either…or" means that at least some of the images contain no classified information whatsoever. *Cf. Wilcox v. Leapley*, 488 N.W.2d 654, 661 (S.D. 1992) (Sabers, J., concurring) ("I may need more lessons in logic but words like 'disjunctive,' 'either,' and 'alternative' imply one or the other but not both.").

2

Motion. DOD's purpose for taking this approach is transparently to obtain an improper litigation advantage, since if the Court later decides that the Draft Response does *not* include classified information, that decision will come too late for Hopkins's undersigned counsel to take advantage of it, since *his brief will already have been filed*.

In anticipation of the Court's concern that this might be a distinction without a difference, it is important to note that the Court could well decide that an image from the Draft Response may be viewed by Hopkins's counsel while still deciding that the corresponding text in Hopkins's manuscript may be properly censored. The two questions are not identical, notwithstanding DOD's attempts to conflate them, and so a decision that the undersigned can review the Draft Response is still distinct from a decision that Hopkins may publish a manuscript. It is for this reason that the Court cannot wait until after briefing is complete on DOD's dispositive motion to determine if the undersigned should have been able to review the Draft Response. Doing so would rob Hopkins of the ability to make his best arguments and would—at a minimum—deprive him of the option of *editing the Draft Response* based on his counsel's critiques. As long as DOD's counsel is allowed to provide input into the declarations filed in support of its dispositive motion, it cannot reasonably complain about Hopkins's counsel doing the same.

DOD's primary argument against Hopkins's Motion is nothing more than an attempt to mislead the Court by citing *Stillman v. CIA*, the primary case in its favor, to support something that it did not. When the D.C. Circuit stated that a court should "'first inspect the manuscript and consider any pleadings and declarations filed by the Government, as well as any materials filed by [the plaintiff]' before determining whether it can 'resolve the classification issue without the assistance of plaintiff's counsel'" (*Id.* at 1-2 (quoting 319 F.3d 546, 548-49 (D.C. Cir. 2003))), it meant exactly what it said, which is *not* what DOD now claims it meant. The D.C. Circuit did not state that the Court should only consider "materials filed by the plaintiff *without his attorney*"; it only referred to materials filed by the plaintiff, *period*. This obviously includes any unclassified evidence the plaintiff's attorney files on the plaintiff's behalf, as in any other case. And allowing the plaintiff's counsel to provide unclassified evidence is well within the normal process for "resolv[ing] the classification issue without the assistance of plaintiff's counsel."

This is because "the classification issue" is understood to be the issue of the classification *of the manuscript in question*, which Hopkins's is not asking for his counsel to be able to read. DOD, on the other hand, is asking this Court to effectively hold that there is *no* role for the undersigned to play in the decisionmaking process, because it understandably does not want its conclusory

4

declarations to be refuted with countervailing evidence. This is why DOD quotes *Stillman*'s warning about prematurely "granting [plaintiff's counsel] access to the manuscript and, if similarly necessary, to the Government's classified pleadings and affidavits," then does not explain the relevance any further. (DOD's Opp'n at 2 (quoting 319 F.3d at 549).) *Stillman* warned about prematurely granting a plaintiff's counsel access to *the manuscript* and *the Government's classified filings*. The D.C. Circuit did *not* warn about prematurely granting a plaintiff's counsel access to *the plaintiff's unclassified evidence*.[2]

DOD then pivots to the frivolous argument that the presumption of access to judicial records does not apply because the Draft Response "has not yet even been filed with the Court." (DOD's Opp'n at 2.) Hopkins already addressed this argument in his initial brief, but to reiterate, it is disingenuous for DOD to make this argument while at the same time promising to file the document itself *in the same paragraph*. (*Id.* at 3 ("Nevertheless, as stated in its previous opposition, the Department will transmit the Draft Response (and/or any other materials Dr. Hopkins wishes to submit) to the Court for its *ex parte*, *in camera*

---

[2] Again, if DOD wished to argue that the Draft Response was classified, it could have offered a scintilla of admissible evidence with its opposition. It did not, and the unsupported claims of its counsel cannot be considered by the Court. *Jeon v. Holder*, 354 F. App'x 50, 53 (5th Cir. 2009) (statements of counsel are not evidence); *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980) (same). The Court should accordingly hold that DOD has conceded this argument by deliberately failing—by choice—to offer any evidence in support of its claims. *Cepeda v. City of Rockwall*, No. 23-2234, 2024 WL 264688, at *2 n.2 (N.D. Tex. Jan. 24, 2024) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (quoting *Kellam v. Metrocare Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd*, 560 F. App'x 360 (5th Cir. 2014)).

consideration.").) In other words, according to DOD the Draft Response *will* be a judicial record *after* it is filed, but *before* it is filed it has absolutely no relevance to the judicial process and Hopkins's counsel is not even entitled to read it. This is an absurd argument.

At this point, it is important to point out the narrow issue on which the parties actually agree. The parties agree that the Court should review the Draft Response itself "to determine whether the document should be provided to counsel or otherwise unsealed for public access." (*Id.*) The point of disagreement is *when*. DOD argues that the Court should wait until briefing is complete on its dispositive motion to review the Draft Response and make this determination, while Hopkins argues that the Court should review the Draft Response and make this determination *now*. DOD has not provided any reason why the Court cannot review the Draft Response on its own and decide for itself whether "certain assertions presented to Dr. Hopkins's motion are either incorrect or highly misleading" (*id.*) in light of the plain text of the Draft Response. DOD has not explained why the Court cannot review the Draft Response and decide if Hopkins's description of the summaries as "generally only a few words long" is fair, even if some "contain[] redacted sections of text from Dr. Hopkins's manuscript in full." (*Id.*) DOD has not explained why the Court cannot review the Draft Response and decide if some of those summaries should be redacted so that

6

the rest of the document can be provided to the undersigned. In short, DOD has not explained *anything* about why the Court should not rule on this question *now*; it has only insisted that it *wait*.

The remainder of DOD's Opposition consists largely of unsupported arguments about the allegedly classified information in the Draft Response and misplaced arguments about the purpose to which the Draft Response will be put. For instance, DOD spends a page arguing about the prior official disclosure doctrine, while the only actual admissible evidence before the Court is Hopkins's testimony that the information was previously officially disclosed. Then DOD complains about how former government employees face restrictions on their "republication of . . . material" compiled from public sources because it "would lend credence to it" (*id.* at 4), carefully implying that an order granting Hopkins's Motion would result in public inferences about classified information in public records, when in fact it would result in *his undersigned counsel*—and *only* his undersigned counsel—potentially being able to draw such inferences. DOD carefully omits Hopkins's counsel's experience handling classified information or the number of instances in which he has been granted access by various agencies to do so for purposes of representing a client, and it also omits the fact that it is standard practice in such cases for the private counsel to agree to be "bound by formal agreements not to disclose such information." (*Id.* at 4.) It omits these facts

7

because they undermine the implication that national security would be at risk if the Court granted Hopkins's Motion—an implication that DOD has offered no evidence to support.

In the final analysis, the Court should order DOD to provide it with a copy of the Draft Response—*without* an accompanying declaration—and decide for itself whether Hopkins can share all or part of it with his undersigned counsel. If the Court agrees that the information is from public sources, it should authorize its release to the undersigned. If the Court agrees that the information is not from public sources, it should not. And if the Court finds that the question is close, it should authorize its limited release to the undersigned on the condition that the undersigned sign a non-disclosure agreement prohibiting further disclosure without the leave of the Court or DOD.

Date: March 25, 2024

                                               Respectfully submitted,

                                               /s/ Kelly B. McClanahan  
                                               Kelly B. McClanahan, Esq.  
                                               N.D. Tex. Bar #984704DC  
                                               National Security Counselors  
                                               4702 Levada Terrace  
                                               Rockville, MD 20853  
                                               301-728-5908  
                                               240-681-2189 fax  
                                               Kel@NationalSecurityLaw.org

                                               *Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing filing contains 2060 words.

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
