IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT HOPKINS, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-00706-E |
| | § | |
| DEPARTMENT OF DEFENSE, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Department of Defense's (the "DOD") Motion to Dismiss and for Summary Judgment seeking dismissal or judgment on all of Plaintiff Robert Hopkins III's ("Hopkins") claims. (ECF No. 32). After reviewing the Parties' briefing, appendices, and applicable law, the Court **GRANTS** the DOD's Motion and **dismisses with prejudice** all of Hopkins' claims.

### I. BACKGROUND

#### A. Statutory and Regulatory Background

This case concerns an ex-Air Force Officer, Hopkins, who is attempting to publish certain manuscripts containing allegedly classified information pertinent to the DOD. In order to understand the facts of this case, it is first necessary to give a general overview of the prepublication review process of such manuscripts.

> Any person who possesses a security clearance to access classified national security information must sign a Non-Disclosure Agreement ("NDA") agreeing, *inter alia*, to submit any documents related to his/her national security employment for prepublication review before publishing them. The two most common NDAs for classified information are the SF-312 (governing all classified information) and Form 4414 (governing a subset known as Sensitive Compartmented

Information). An author generally submits a document to the agency which sponsors (or sponsored) his/her security clearance. Each agency generally has a specific office responsible for conducting prepublication review, although prepublication review is often not the sole responsibility of such an office. For example, DOPSR [the Defense Office of Prepublication and Security Review (hereinafter "DOPSR")] is responsible for coordinating prepublication review across DOD, but it does not perform any review itself. The DOD prepublication review system is primarily governed by DOD Instruction ("DODI") 5230.09, *Clearance of DoD Information for Public Release*, and DODI 5230.29, *Security and Policy Review of DoD Information for Public Release*. SAF/PA [United States Air Force Office of Public Affairs (hereinafter "SAF/PA")] is responsible for conducting prepublication review for the United States Air Force ("Air Force"). In addition to the DOD authorities listed above, the Air Force prepublication review system is primarily governed by Air Force Instruction ("AFI") 35-101, *Public Affairs Operations*, Chapter 9; AFI 35-102, *Security and Policy Review Process*; and Air Force Manual ("AFMAN") 35-101, *Public Affairs Procedures*, Chapter 8. The standard operating procedure for current and former Air Force personnel is to submit manuscripts to SAF/PA, which will usually complete its prepublication review within approximately two weeks. If SAF/PA determines that the manuscript requires coordination with other DOD components or other agencies, it may refer the manuscript to DOPSR after completing its review. Otherwise it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information. SAF/PA will also refer a manuscript to DOPSR if it: "a. Originates or is proposed for release in the National Capital Region by senior personnel (e.g., general or flag officers and Senior Executive Service) on sensitive political or military topics; b. Is or has the potential to become an item of national or international interest; c. Affects national security policy, foreign relations, or ongoing negotiations; d. Concerns a subject of potential controversy among the DoD Components or with other federal agencies; e. Is presented by a DoD employee who, by virtue of rank, position, or expertise, would be considered an official DoD spokesperson; or f. Contains technical data" ("3-1 Criteria"). If an author knows in advance that a manuscript will require coordination with several DOD components or meets one of the 3-1 Criteria, the author may submit the manuscript directly to DOPSR. DOPSR will not complete its prepublication review in fewer than sixty days, and it maintains that it is not required to complete its review within any set time limit. After DOPSR completes its coordination with any DOD components that it deems relevant to a manuscript, it will issue a response to the author granting permission to publish all or part of the manuscript or denying permission to publish any information. Manuscript submissions to SAF/PA must be accompanied by a standardized form. Manuscript submissions to DOPSR must be accompanied by a cover letter, although there is no standardized format. Both SAF/PA and DOPSR perform a two-step review of submitted manuscripts— identified as "security review" and "policy review"— although the scope of review differs subtly between the components. According to SAF/PA, "The purpose of the security review is to protect classified information, controlled unclassified sensitive information, or unclassified information that may

individually or in aggregate lead to an unauthorized disclosure or controlled unclassified information which can adversely impact national and operational security. The purpose of the policy review is to ensure no conflict exists with established AF, DoD, or other U.S. Government agency policies." Upon information and belief, SAF/PA conducts both types of review of all submitted manuscripts. According to DOPSR, "The security review protects classified information, controlled unclassified information, or unclassified information that may individually or in aggregate lead to the compromise of classified information or disclosure of operations security. The policy review ensures that no conflict exists with established policies or programs of the DoD or the U.S. Government." Upon information and belief, DOPSR conducts both types of review of manuscripts submitted by current DOD employees, but only conducts a security review of manuscripts submitted by former DOD employees. It is not uncommon for authors to be represented by counsel during the prepublication review process, both in DOD and across the Executive Branch. It is common for such counsel to submit their clients' manuscripts for prepublication review and correspond with the respective prepublication review offices on their clients' behalf, especially if the client has no reason to believe the manuscript contains any classified information. The undersigned and other private attorneys who represent authors have submitted clients' manuscripts for prepublication review to various agencies and represented those clients in the prepublication review process without objections from the agencies.

(ECF No. 1 at 2-5).

B. **Factual Background**

Hopkins brings this action against the DOD pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; and the First Amendment of the Constitution of the United States. (ECF No. 1). From 1983-1991, Hopkins served in the Air Force. (ECF No. 1 at 5). At the time of his honorable discharge in 1991 with the rank of Captain, Hopkins had a Top Secret security clearance with access to Sensitive Compartmented Information ("TS/SCI"). (ECF No. 1 at 5). This case involves seven manuscripts Hopkins submitted to SAF/PA or DOPSR for prepublication review: (1) *Klaxon! Strategic Air Command Alert During the Cold War* ("*Klaxon!*"); (2) "Searching for Mobile ICBMS"; (3) *Crowded Skies: Cold War Reconnaissance Over the Baltic* ("*Crowded Skies*"); (4) "Bring Back the Looking Glass? Do We Need 24/7 Airborne Command Posts?"

("Bring Back the Looking Glass"); (5) "Effectiveness of the Air Force"; (6) "Why 15 Minutes Is Irrelevant"; and (7) "DoD Prepublication Review: A Broken, Arbitrary System Predisposed to Rejection" ("DoD Prepublication Review").

On December 14, 2020, Hopkins personally submitted the manuscript for *Klaxon!* to SAF/PA for prepublication review. (ECF No. 1 at 7). As alleged, *Klaxon!* did not require coordination with other DOD components or meet any of the 3-1 Criteria. (ECF No. 1 at 7). After receiving no response from SAF/PA for over six months, Hopkins contacted them on July 8, 2021, the same day SAF/PA acknowledged the submission of *Klaxon!*. (ECF No. 1 at 7-8). SAF/PA stated that "due to the content of his manuscript, it will also need to be reviewed by [DOPSR]." (ECF No. 1 at 8). On July 26, 2021, SAF/PA completed its review of *Klaxon!* and referred the manuscript to DOPSR. (ECF No. 1 at 8). DOPSR then referred *Klaxon!* to three DOD components. (ECF No. 1 at 8). Allegedly, Hopkins emailed DOPSR multiple times about *Klaxon!* in the months following the referral and never received a response. (ECF No. 1 at 9).

On October 6, 2021, Hopkins submitted through counsel the manuscript for *Crowded Skies* to DOPSR for prepublication review. (ECF No. 1 at 11). On October 18, 2021, DOPSR replied to Hopkins acknowledging receipt of the submission of *Crowded Skies* and stating that DOPSR does not work with an author's legal counsel, and that Hopkins would need to contact DOPSR directly. (ECF No. 1 at 11-12). The email also provided that "[f]ailure to provide this information will result in the denial of Security Review of this manuscript and administrative closure of this case." (ECF No. 1 at 12). After receiving no response from Hopkins, DOPSR emailed Hopkins' counsel on November 23, 2021, stating that DOPSR was closing the case based on the failure to respond. (ECF No. 1 at 12).

On January 6, 2022, Hopkins submitted through counsel a blog article titled "Searching for

Mobile ICBMs" for prepublication review. (ECF No. 1 at 10). On January 14, 2022, Hopkins' counsel submitted the following four articles: "Bring Back the Looking Glass?"; "Effectiveness of the Air Force"; "Why 15 Minutes Is Irrelevant"; and "DoD Prepublication Review" to DPOSR and informed DPOSR that "all correspondence regarding these submissions must be directed to me." (ECF No. 1 at 12). As alleged, none of these manuscripts required coordination with other DOD components or meet any of the 3-1 Criteria. (ECF No. 1 at 10-17). DPOSR replied on January 14, 2022, asking for cover letters for all submissions, which Hopkins' counsel promptly submitted. (ECF No. 1 at 13). In the cover letter for *Crowded Skies*, Hopkins' counsel contended that DPOSR's action was unreasonable and advised "that we [Hopkins] would seek judicial review of DOPSR's denial if DPOSR did not expeditiously conduct a prepublication review of *Crowded Skies*." (ECF No. 1 at 13). Further, on January 21, 2022, Hopkins' counsel emailed SAF/PA to confirm receipt of "Searching for Mobile ICBMs." (ECF No. 1 at 10). SAF/PA replied that same day stating that the article was forwarded to DOPSR for processing and that all of Hopkins' future submission requests should be forwarded directly to DOPSR for security and policy review processing. (ECF No. 1 at 10).

On February 28, 2022, DOPSR Chief George Sturgis ("Sturgis") sent the following email ("Sturgis Email") to Hopkins' counsel:

> We note that you have submitted several prepublication review requests on behalf of your client, Dr. Hopkins, most recently on January 14, 2022. An Action Officer emailed you last fall regarding Dr. Hopkins' second book submission [*Crowded Skies*] informing you that DOPSR needed the author's contact info, and that DOPSR could not start the review without his information. As you did not respond to multiple requests, DOPSR closed Dr. Hopkins' book submission on November 24, 2021. You have indicated that you are the sole correspondent for Dr. Hopkins' submissions, and that DOPSR is not right to administratively close any of the submissions. This is incorrect. As Dr. Hopkins is the author, held a security clearance, and has the prepublication obligation, he has the institutional responsibility and legal requirement to ensure that there is no non-public DoD information in the submissions. DoD's relationship is with the author, not his

> legal representative. Failure of the author to correspond with the DoD evades the intent of the prepublication review process to not disclose non-public DoD Information. Our insistence on this process is standard DoD policy. To underscore the seriousness of this matter, reviewing components have identified instances of non-public information in Dr. Hopkins' first book submission, and based on the subject of the submissions, there is a likelihood that the second book and articles contain non-public DoD information. Providing this material to you is a violation of Dr. Hopkins' non-disclosure agreement. This violation could result in an Unauthorized Disclosure investigation by the Defense Counterintelligence and Security Agency. DoD's continued engagement with you perpetuates and endorses this unauthorized disclosure of DoD information by sanctioning your unauthorized access to the author's submissions. Hence, we are closing all of Dr. Hopkins' requests until he contacts our office.

(ECF No. 1 at 14-15). Thus, pursuant to the Sturgis Email, DPOSR administratively closed all of Hopkins' submissions because counsel did not provide contact information for Hopkins.

At some point after the Sturgis Email, DOPSR obtained the requisite contact information for Hopkins and completed the review of his manuscripts. (ECF No. 32-3 at 14).

### C.   Procedural Framework

Hopkins initiated this lawsuit on March 27, 2022, asserting eleven causes of action against the DOD under the First Amendment and the APA: (1) SAF/PA's referral of *Klaxon!* to DOPSR; (2) SAF/PA's referral of "Searching for Mobile ICBMS" to DOPSR; (3) SAF/PA's refusal to accept submissions; (4) DOPSR's administrative closure of *Klaxon!*; (5) DOPSR's administrative closure of "Searching for Mobile ICBMS; (6) DOPSR's administrative closure of *Crowded Skies*; (7) DOPSR's administrative closure of "Bring Back the Looking Glass?"; (8) DOPSR's administrative closure of "Effectiveness of the Alert Force"; (9) DOPSR's administrative closure of "Why 15 Minutes Is Irrelevant"; (10) DOPSR's administrative closure of "DOD Prepublication Review"; and (11) DOPSR's refusal to accept counsel's submissions. (ECF No. 1).

On October 4, 2023, the DOD filed its motion to dismiss and for summary judgment seeking dismissal or judgment on all of Hopkins' claims, (ECF No. 32), along with its brief in

support, (ECF No. 32-1), and unclassified appendix, (ECF No. 32-3). Hopkins filed a motion for extension of time to file response on October 23, 2023, (ECF No. 33), which the Court granted on October 24, 2023, (ECF No. 34), extending Hopkins' deadline to respond to January 5, 2024. However, instead of filing a response by this deadline, on January 3, 2024, Hopkins filed an unopposed motion to stay briefing of the DOD's motion to dismiss and for summary judgment pending the Court's resolution of Hopkins' forthcoming two procedural motions. (ECF No. 35). Later that same day, Hopkins filed a partially unopposed motion to stay briefing of the DOD's motion to dismiss and for summary judgment pending the Court's resolution of Hopkins' forthcoming two procedural motions, corrected to accurately reflect the DOD's position on the motion. (ECF No. 37). Thus, Hopkins' first motion to stay is **DENIED AS MOOT**. (ECF No. 35).

On January 5, 2024, Hopkins filed one of the aforementioned procedural motions: a motion to unseal the DOD's motion to dismiss for lack of jurisdiction or for summary judgment, (ECF No. 38). On January 24, 2024, the DOD responded to Hopkins' motion to stay briefing, (ECF No. 37), and Hopkins' motion to unseal, (ECF No. 38). (ECF No. 39). Hopkins replied in two separate filings on February 7, 2024. (ECF Nos. 40-41). Additionally, on February 12, 2024, Hopkins filed the second of the aforementioned motions: a motion to authorize his counsel to access his intended evidence. (ECF No. 42). The DOD responded to this motion on March 4, 2024. (ECF No. 43).

The Court gave Hopkins a lengthy extension to respond to the DOD's motion to dismiss and for summary judgment, and rather than file a response in this period of over two months, Hopkins waited until two days before the deadline to file a motion to stay. Not only is this motion to stay not a response, but the Court also **DENIES** Hopkins' motion to stay. (ECF No. 37). Thus, Hopkins motion to unseal, (ECF No. 38), and Hopkins' motion to authorize, (ECF No. 42), are **DENIED AS MOOT**. Further, since the deadline has passed to respond to the DOD's motion

to dismiss and for summary judgment, the Court must conclude that Hopkins has wholly failed to respond. Thus, the DOD's motion to dismiss and for summary judgment is ripe for consideration.

## II. LEGAL STANDARD

### A. 12(b)(1) Motion to Dismiss

A district court properly dismisses a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 191 (5th Cir. 2001). A court may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).

### B. Summary Judgment

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) *submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense*, or (2) *arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense*. *Celotex*, 477 U.S. at 322–25 (emphasis added). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see generally Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194) (discussing affirmative defenses).

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual

controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). When a plaintiff fails to defend a claim in response to a summary judgment motion, the claim is deemed abandoned. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss).

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.... "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

> [i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

### III.  ANALYSIS

#### A.   Claim Abandonment

Northern District of Texas Local Civil Rule 7.1(e) instructs that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." N.D. Tex. Loc.

Civ. R. 7.1(e). A party who fails to pursue a claim beyond its initial pleading may waive or abandon the claim. *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."). Thus, a party's failure to defend a claim in her response to a motion to dismiss constitutes abandonment. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment) (citing *Black*, 461 F.3d at 588 n.1); *see, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001) (discussing abandonment of theories of recovery and defenses when such theories were not presented to the trial court).

Here, Hopkins failed to respond to the DOD's motion to dismiss and for summary judgment—the Court granted Hopkins a lengthy extension past 21 days to respond, and Hopkins failed to do so. *See* N.D. Tex. Loc. Civ. R. 7.1(e). Although Hopkins filed a motion for extension of time to file a response to the DOD's motion, which the Court granted and allowed Hopkins until January 5, 2024, to file his response, Hopkins instead filed only a last-ditch effort motion to stay briefing—which is not a response. Because Hopkins wholly failed to respond to the DOD's challenge to subject-matter jurisdiction on all his claims, the Court concludes Hopkins has abandoned all his claims. *See Black*, 461 F.3d at 588 n.1; *Matter of DallasRoadster, Ltd.*, 846 F.3d at 126; *Vela*, 276 F.3d at 678-79.[1] Thus, the Court GRANTS the DOD's motion to dismiss and for

---

[1] *See also, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)) (citations omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

summary judgment. (ECF No. 32).

B.  **Lack of Subject-Matter Jurisdiction**

Notwithstanding Hopkins' abandonment discussed above, the DOD argues that Hopkins lacks subject-matter jurisdiction because his claims are nonjusticiable. (ECF No. 32-1). Specifically, the DOD asserts that Hopkins' "claims are moot as to the manuscripts listed in the Complaint, which have already completed prepublication review." (ECF No. 32-1 at 24). Thus, the DOD asserts that all of Hopkins' causes of action except for the third, are moot. (ECF No. 32-1 at 24). Additionally, the DOD argues that "to the extent he [Hopkins] intends to challenge the procedures that may be used to review other, hypothetical manuscripts in the future, he lacks standing to do so, and his claims are not ripe." (ECF No. 32-1 at 24). Thus, the DOD asserts that Hopkins lacks standing to assert his third and eleventh causes of action, and such challenges are unripe. (ECF No. 32-1 at 27).

"The justiciability of an issue [] is determined by the doctrines of standing, mootness, and ripeness." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998). "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues it presents—the court lacks subject-matter jurisdiction. *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004). Thus, before considering any other matters raised in the case, the court is obligated to "resolve the standing question as a threshold matter of jurisdiction." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007).

"As a general rule, any set of circumstances that eliminates actual controversy after the

commencement of a lawsuit renders that action moot." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008). "As long as the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation"—the case should not be declared moot. *Dailey*, 141 F.3d at 227. But a case will become moot where "there are no longer adverse parties with sufficient legal interests to maintain the litigation" or "when the parties lack a legally cognizable interest in the outcome" of the litigation. *In re Scruggs*, 392 F.3d at 128. "As the Supreme Court has noted, 'it is not enough that a dispute was very much alive when the suit was filed; ... [t]he parties must continue to have a personal stake in the outcome of the lawsuit.'" *Env't Conservation Org.*, 529 F.3d at 527 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

The essence of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing under Article III of the Constitution, a plaintiff must demonstrate: "(1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007). The injury-in-fact element requires a plaintiff show that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (emphasis omitted).

Additionally, a plaintiff's claims must be ripe for adjudication. *Roark & Hardee LP*, 522 F.3d at 544. As stated by the Supreme Court, the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."

*Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993). To assess whether a case is ripe, the Supreme Court has stated that the key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Monk v. Houston*, 340 F.3d 279, 282 (5th Cir. 2003). "A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Monk*, 340 F.3d at 282.

As to the DOD's assertion that Hopkins' procedural claims—causes of action one, two, and four through eleven[2]—are moot to the extent they challenge the manner in which the DOD reviewed his manuscripts and seek only relief that is unavailable or has already been granted, the Court agrees. The relief that Hopkins requests as to these claims is to compel SAF/PA or DOPSR to expedite its review or issue a final determination as to these manuscripts. Specifically, as to counts one and two Hopkins requests relief in the form of: "(a) a declaratory judgment that SAF/PA violated Air Force and DOD regulations and the First Amendment by referring" *Klaxon!* and "Searching for Mobile ICBMs" to DOPSR; and (b) an injunction compelling SAF/PA to immediately issues its determinations as final responses to Hopkins. (ECF No. 1 at 19-20). Additionally, as to counts four through ten alleging administrative closure of multiple of Hopkins' manuscripts, Hopkins again requests: (a) a declaratory judgment that DOPSR violated DOD regulations and the First Amendment by administratively closing the manuscripts, and (b) multiple types of injunctive relief compelling DOPSR to issue final responses as to Hopkins' manuscripts. (ECF No. 1 at 23-34). And lastly, as to count eleven, Hopkins requests: (a) a declaratory judgment that DOPSR's alleged policy violates DOD regulations and the First Amendment, and (b) an injunction prohibiting any DOD component from administratively closing a request for

---

[2] The DOD argues that Hopkins' eleventh cause of action is moot, unripe, and Hopkins lacks standing to bring it. Thus, it will be analyzed under all three elements of justiciability.

prepublication review solely due to the fact that a document was submitted by an author client's counsel. (ECF No. 1 at 25-36). However, all such relief has already been received—the prepublication review of all of Hopkins' manuscripts has been completed. The fact that Hopkins disagrees with the final determinations rendered—that his manuscripts were administratively closed; or which department rendered such determinations—SAF/PA's referral of Hopkins' manuscripts to DOPSR—does not mean an actual controversy still exists. *See Env't Conservation Org.*, 529 F.3d at 527. Moreover, as effective relief is no longer available to remedy the effect of the violation, causes of action one, two, four, five, six, seven, eight, nine, ten, and eleven must be declared moot. *See Dailey,* 141 F.3d at 227 (stating that a case will become moot if no effective relief is available to remedy the effect of the violation).

The DOD also asserts that Hopkins does not have standing to pursue his third and eleventh causes of actions, arguing there is no "impending injury." (ECF No. 32-1 at 29). First, the DOD argues that Hopkins does not present any evidence as to additional manuscripts he has submitted or intends to submit in the future. Thus, Hopkins' third cause of action alleging that Hopkins is required to submit all future manuscripts directly to DOPSR instead of SAF/PA which will "deprive[] him of numerous benefits to which he is entitled, including, but not limited, a prompt review process which respects publishers' deadlines," is unfounded. (ECF No. 1 at 21). The manuscripts that were already referred to the DOPSR have now been decided by the DOPSR, thus there is no relief left to receive, and the future manuscripts alluded to by Hopkins do not constitute a concrete and particularized injury-in-fact. *See Roark & Hardee LP*, 522 F.3d at 542 (the injury-in-fact element requires a plaintiff "show that he or she has sustained or *is immediately in danger*

*of sustaining* some direct injury").[3] As to Hopkins' eleventh claim, he asserts:

> DOD has an official policy of administratively closing any requests for prepublication review submitted by an attorney on behalf of an author . . . [and] [a]s a well-respected author of military history books and articles with a continuing duty to submit materials for prepublication review, Hopkins will continue to be harmed by this policy in the future.

(ECF No. 1 at 34-35). Even if Hopkins presented evidence that such policy exists, the injury he alludes to is "conjectural or hypothetical," not real and immediate. *See Roark & Hardee LP*, 522 F.3d at 542 (concluding that "the injury or threat of injury must be both real and immediate"). Thus, Hopkins lacks standing to bring his third and eleventh causes of action, and these claims must be dismissed. Further, for these same reasons that Hopkins lacks standing to assert his third and eleventh causes of action, these claims are also unripe. Because the claims are "abstract or hypothetical," they must be dismissed for lack of ripeness. *See Monk*, 340 F.3d at 282; *see also Neresova v. Suntrust Mortg., Inc.*, No. 3:11-CV-976-BH, 2011 WL 13127891, at *3 (N.D. Tex. Nov. 16, 2011) (Dismissal on grounds of ripeness is appropriate when "no irremediabl[y] adverse consequences flow from requiring a later challenge.")

In sum, the Court concludes it lacks subject-matter jurisdiction to adjudicate all of Hopkins' claims, and thus, all of his claims must be dismissed.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the DOD's motion to dismiss or for summary judgment, (ECF No. 32), and all of Hopkins' claims are hereby **dismissed with prejudice**. Further, Hopkins' unopposed motion to stay is **DENIED AS MOOT**, (ECF No. 35); Hopkins' partially unopposed motion to stay, (ECF No. 37), is **DENIED**, and thus, Hopkins'

---

[3] *See also Sullo & Bobbit P.L.L.C. v. Abbot*, 536 F. App'x 473, 477 (5th Cir. 2013) ("A plaintiff in a declaratory action may establish injury in fact by establishing actual present harm or a significant possibility of future harm, and if he relies on future harm he must be *immediately in danger of sustaining* some direct injury.")

motion to unseal, (ECF No. 38), and Hopkins' motion to authorize, (ECF No. 42), are **DENIED AS MOOT**.

      **SO ORDERED:** March 25, 2024.

*Ada E. Brown*
Ada E. Brown
UNITED STATES DISTRICT JUDGE