**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| ROBERT HOPKINS, III, | |
| *Plaintiff,* | |
| v. | No. 3:22-CV-00706-C |
| DEPARTMENT OF DEFENSE, | |
| *Defendant.* | |

**DEFENDANT'S COMBINED REPLY IN SUPPORT OF MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

I.    Dr. Hopkins must show good cause to amend his complaint more than two years after the scheduled deadline, but he cannot do so, nor has he even tried. ...............................................................................................................2

II.   Dr. Hopkins's challenges to the procedures used to review his manuscripts are non-justiciable now that the review is complete. .....................................4

    A.    Dr. Hopkins's procedural claims regarding his past submissions are moot, and the proposed amendment would not save them. ..................4

    B.    Dr. Hopkins lacks standing to assert his unripe procedural claims regarding future submissions, and the proposed amendment would not save them. ..............................................................................................8

III.  Dr. Hopkins's procedural claims fail on the merits.......................................11

    A.    The Department reasonably processed Dr. Hopkins's manuscripts. ..12

    B.    Dr. Hopkins's First Amendment claims fail. .....................................13

IV.   Dr. Hopkins's APA claims fail.....................................................................16

V.    Dr. Hopkins's challenges to the Department's prepublication decisions fail because the redacted information is properly classified................................17

    A.    Classified information is in the public domain only if the information has been officially disclosed. ...........................................................18

    B.    Dr. Hopkins has not shown that any of the remaining redacted information has been officially disclosed. ..........................................23

CONCLUSION .................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983)............................................................................22

*Am. C.L. Union v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013)............................................................................19

*Am. C.L. Union v. Dep't of Def.*,
  492 F. Supp. 3d 250 (S.D.N.Y. 2020)................................................................22

*Am. C.L. Union v. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011)....................................................................... 18, 19

*Am. C.L. Union v. Dep't of Def.*,
  664 F. Supp. 2d 72 (D.D.C. 2009)......................................................................18

*Bauer v. Texas*,
  341 F.3d 352 (5th Cir. 2003) ...............................................................................5

*Boening v. CIA*,
  579 F. Supp. 2d 166 (D.D.C. 2008) ...................................................................20

*Calderon v. Moore*,
  518 U.S. 149 (1996) .............................................................................................7

*California v. Texas*,
  593 U.S. 659 (2021) .............................................................................................5

*Clapper v. Am. Realty Investors, Inc.*,
  2019 WL 317118 (N.D. Tex. Jan. 23, 2019)........................................................3

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..................................................................................... 11, 13

*Colson v. Grohman*,
  174 F.3d 498 (5th Cir. 1999) .............................................................................15

*Competitive Enter. Inst. v. NSA*,
  78 F. Supp. 3d 45 (D.D.C. 2015)........................................................................21

*Doe v. Doe Agency*,
608 F. Supp. 2d, 68 (D.D.C. 2009)..........................................................................9

*Edmonds v. DOJ*,
405 F. Supp. 2d 23 (D.D.C. 2005)..........................................................................22

*EEOC v. Service Temps Inc.*,
679 F.3d 323 (5th Cir. 2012) ...................................................................................2

*Fahim v. Marriott Hotel Servs., Inc.*,
551 F.3d 344 (5th Cir. 2008) ...............................................................................2, 3

*Frugone v. CIA*,
169 F.3d 772 (D.C. Cir. 1999)...............................................................................21

*Jud. Watch, Inc. v. DOJ*,
898 F. Supp. 2d 93 (D.D.C. 2012).........................................................................21

*Keenan v. Tejada*,
290 F.3d 252 (5th Cir. 2002) .......................................................................... 14, 15

*Knight First Amend. Inst. at Columbia Univ. v. CIA*,
11 F.4th 810 (D.C. Cir. 2021) ...............................................................................21

*Kovac v. Wray*,
No. 3:18-CV-00110-X, 2022 WL 717260 & n.12 (N.D. Tex. Mar. 10, 2022)....18

*Lawless v. Dep't of Def.*,
No. CV 21-2859 (TJK), 2024 WL 4263851 (D.D.C. Sept. 23, 2024)................24

*Leopold v. CIA*,
380 F. Supp. 3d 14 (D.D.C. 2019).........................................................................20

*Lesar v. DOJ*,
636 F.2d 472 (D.C. Cir. 1980)...............................................................................22

*McGehee v. Casey*,
718 F.2d 1137 (D.C. Cir. 1983).............................................................................20

*McMahan v. U.S. Bank Nat'l Ass'n*,
2024 WL 2242687 (S.D. Tex. Feb. 9, 2024).........................................................3

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015)..................................................................22

*Moore v. CIA*,
    666 F.3d 1330 (D.C. Cir. 2011).................................................................19

*Motient Corp. v. Dondero*,
    529 F.3d 532 (5th Cir. 2008) .....................................................................7

*Phillippi v. CIA*,
    655 F.2d 1325 (D.C. Cir. 1981)..................................................................22

*S&W Enters., LLC v. Southtrust Bank of Ala., NA*,
    315 F.3d 533 (5th Cir. 2003) .....................................................................2

*Shaffer v. Def. Intel. Agency*,
    102 F. Supp. 3d 1 (D.D.C. 2015)................................................................19

*Shahrashoob v. Texas A&M Univ.*,
    125 F.4th 641 (5th Cir. 2025)....................................................................19

*Smith v. U.S. Nat'l Archives & Recs. Admin.*,
    415 F. Supp. 3d 85 (D.D.C. 2019)........................................................ 20, 21

*Snepp v. United States*,
    444 U.S. 507 (1980) ................................................................................15

*Southwestern Bell Tel. Co. v. City of El Paso*,
    346 F.3d 541 (5th Cir. 2003) ................................................................2, 3

*Transparency Project v. DOJ*,
    No. 4:20-cv-467, 2022 WL 18776191 (E.D. Tex. Sept. 9, 2022).......................19

*United States v. Progressive, Inc.*,
    486 F. Supp. 5 (W.D. Wis. 1979)...............................................................22

*Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*,
    134 F. Supp. 3d 263 (D.D.C. 2015) ...........................................................20

*Wilson v. First Gibraltar Bank*,
    1994 WL 199108 (5th Cir. May 12, 1994).....................................................8

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007)........................................................................ 19, 20

*Xtria, LLC v. Int'l Ins. Alliance Inc.*,
    2010 WL 1644895 (N.D. Tex. Apr. 22, 2010).......................................................6

**Other Authorities**

Executive Order 13,526 .................................................................................. 17, 24

Federal Rule of Civil Procedure 16(b)........................................................................1

## INTRODUCTION

The core question in this case is whether the Department of Defense ("the Department"), which has completed its prepublication review, is now prohibiting Dr. Hopkins from publishing information that is not properly classified. It is not, as demonstrated via both classified and unclassified filings, and therefore the Department is entitled to summary judgment on the substance of its prepublication review determinations.

Dr. Hopkins also raises a number of other ancillary issues, none of which have merit. First, he seeks to amend his complaint. Amended pleadings were due almost three years ago under this Court's scheduling order, and Dr. Hopkins must therefore show good cause under Federal Rule of Civil Procedure 16(b). Because he has not and could not, his motion for leave to amend should be denied. And even applying the more lenient standards of Rule 15(a), the proposed amendment is futile: it would not save Dr. Hopkins's procedural claims, nor alter this Court's substantive assessment of the Department's prepublication review. For that reason as well, leave to amend should be denied.

Dr. Hopkins has also attempted to raise a number of procedural objections to the process by which the Department conducted its now-completed prepublication review. Those procedural claims are beyond the jurisdiction of this Court: most of them are moot, and Dr. Hopkins lacks standing to bring the remainder (which are

also unripe, for similar reasons).  And, in any event, Dr. Hopkins's procedural claims

fail on their merits: the Department reasonably processed his manuscripts, and did

not violate the First Amendment or the Administrative Procedure Act ("APA") in

doing so.

## I.    Dr. Hopkins must show good cause to amend his complaint more than two years after the scheduled deadline, but he cannot do so, nor has he even tried.

Under this Court's scheduling order, amended pleadings were due by October

17, 2022.[1]  "Federal Rule of Civil Procedure 16(b) governs amendment of pleadings

after a scheduling order's deadline to amend has expired."  *Fahim v. Marriott Hotel*

*Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *accord EEOC v. Service Temps Inc.*,

679 F.3d 323, 333–34 (5th Cir. 2012); *S&W Enters., LLC v. Southtrust Bank of Ala.,*

*NA*, 315 F.3d 533, 535 (5th Cir. 2003).  "Rule 16(b) provides that once a scheduling

order has been entered, it 'may be modified only for good cause and with the judge's

consent.'"  *Fahim*, 551 F.3d at 348.  A party seeking leave for a "post-deadline

amendment . . . 'must show good cause for not meeting the deadline before the more

liberal standard of Rule 15(a) will apply to the district court's denial of leave to

amend.'"  *Id.* (quoting *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541,

546 (5th Cir. 2003)).  "Four factors are relevant to good cause: '(1) the explanation

---

[1] *See* Scheduling Order, ECF No. 12.  On June 13, 2023, almost eight months after the deadline for amended pleadings had passed, the Court stayed the scheduling order pending its adjudication of the Department's forthcoming motion for summary judgment.  ECF No. 24.

for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* (quoting *Southwestern Bell*, 346 F.3d at 546).

The moving party has the "burden under Rule 16(b)(4) to establish good cause." *Clapper v. Am. Realty Investors, Inc.*, 2019 WL 317118, at *7 (N.D. Tex. Jan. 23, 2019); *accord McMahan v. U.S. Bank Nat'l Ass'n*, 2024 WL 2242687, at *10 (S.D. Tex. Feb. 9, 2024). Dr. Hopkins has not even acknowledged that burden, much less attempted to carry it. *See* Pl.'s Mot. to Am., ECF No. 71. For that reason alone, his motion for leave to amend should be denied.

But even if the Court conducts its own inquiry into good cause, it should deny leave to amend. The Department presumes that Dr. Hopkins's "explanation for the failure to timely move for leave to amend," *Fahim*, 551 F.3d at 348, would be that he is seeking to introduce factual developments that post-date the filing of his original complaint. *See* Proposed 1st Am. Compl. at 23–27 ¶¶ 89–119, ECF No. 71-1 ("Proposed Am. Compl."). Those post-filing events concluded in October 2023. *Id.* Even if Dr. Hopkins could have been justified in seeking leave to amend shortly thereafter, he can offer no explanation of his decision to wait until April of this year to do so. And more fundamentally, Dr. Hopkins cannot demonstrate "the importance of the amendment." *Fahim*, 551 F.3d at 348. As he frankly acknowledges, "the

proposed changes [to the complaint] do not radically reshape the action," Mot. to Am. at 4, ECF No. 71, but "consist virtually entirely of additional facts regarding what has transpired in this case since the original Complaint was filed and occasional elaborations on the nature of the harm suffered by [Dr.] Hopkins and the nature of the relief he is requesting," *id.* at 3.

Because the Department has never disputed that the substance of its prepublication review decisions is properly before this Court, amendment is not necessary to bring those decisions into this case.  As for the remainder of the proposed amendment, far from being important, its additions and elaborations do not render Dr. Hopkins's procedural claims justiciable, nor would they alter the outcome of any claim, as explained at greater length below.  Amendment would therefore be futile under Rule 15(a), and it is certainly not justified under the heightened standard imposed by Rule 16(b).  Indeed, amendment would significantly delay resolution of this case.  Leave to amend should be denied.

## II.    Dr. Hopkins's challenges to the procedures used to review his manuscripts are non-justiciable now that the review is complete.

### A.    Dr. Hopkins's procedural claims regarding his past submissions are moot, and the proposed amendment would not save them.

In his complaint, Dr. Hopkins alleges that the Department made an improper internal referral of two manuscripts that he submitted for prepublication review (First and Second Causes of Action), improperly closed its review of those

4

manuscripts and several others (Fourth through Tenth Causes of Actions), and improperly refused to work with his attorney throughout the prepublication review process (Eleventh Cause of Action). The only relief he seeks for these claims is various orders that the Department complete its review (and do so under certain conditions, including on an expedited timeline and by "interfac[ing]" with counsel). *See* Compl. ¶¶ 95, 103, 123, 135, 147, 159, 171, 183, 195, 206, ECF No. 1.[2] That has already occurred: the Department has completed its review. Accordingly, all of those claims are moot because Dr. Hopkins's "manuscripts have now been reviewed, and the relief that he requests as to these claims—compelling [the Department] to expedite its review or issue a final determination as to these manuscripts—is relief he has now received." Def.'s Br. in Supp. of Mot. to Dismiss & for Summ. J. at 14–15, ECF No. 32-1 ("Def.'s Mot.") (citation omitted).

In his opposition brief, Dr. Hopkins offers no substantive response to the Department's argument. Instead, he suggests that the Department's motion has itself been mooted by his own motion for leave to file an amended complaint, ECF No. 71. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss & for Summ. J. at 15–16, ECF No. 73 ("Pl.'s Opp."). That is wrong as a matter of civil procedure: a mere request for leave

---

[2] Dr. Hopkins also seeks declaratory judgment pursuant to these claims, *see* Compl. ¶¶ 95, 103, 123, 135, 147, 159, 171, 183, 195, 206, but declaratory relief alone cannot sustain a claim that lacks actual controversy, as here, *see California v. Texas*, 593 U.S. 659, 672 (2021); *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003).

to amend the complaint does not moot a pending motion to dismiss, even if a successful amendment would do so. *See, e.g.*, *Xtria, LLC v. Int'l Ins. Alliance Inc.*, 2010 WL 1644895, at *2 (N.D. Tex. Apr. 22, 2010) ("Because [Plaintiff] has been granted leave to amend, [Defendant's] motion[] to dismiss . . . [is] denied without prejudice as moot.").

Nor would Dr. Hopkins's proposed amendment save his procedural claims. The proposed Amended Complaint, ECF No. 71-1, continues to allege the same procedural Causes of Action at issue now (Causes of Action 1–2, 4–11), without material alteration, and without seeking new forms of relief beyond completing the prepublication review. Those procedural claims are moot because the review process is complete, as the Department has explained above and in its opening brief, and thus beyond any judicial relief. Because the proposed amendment would not— and could not—cure this fundamental jurisdictional failing, amendment of those procedural claims would be futile.

In other places, Dr. Hopkins seems to misunderstand the Department's argument that his procedural claims are moot. The Department does not contend "that all [Dr.] Hopkins asked the Court to do was make [the Department] review his manuscripts." Pl.'s Opp. at 21. The Department understands that Dr. Hopkins is also mounting a substantive challenge to the outcome of its review, which is why the Department has offered a defense of its classification decision on the merits, in

both its public filings and classified *ex parte* submissions.  The Department does not contend that the case is entirely moot, but only that Dr. Hopkins' procedural claims—which seek to attack the way in which the Department conducted reviews that it has now concluded—are moot, because the Court cannot now offer procedural relief.

Finally, Dr. Hopkins contends that the Department violated this Court's Standing Order by raising the issue of mootness in its dispositive motion without conferring with opposing counsel.  Dr. Hopkins points to Section II(C) of the Standing Order, *see* Opp. at 15, which establishes a procedure that "must be followed before any party files a Motion to Dismiss under Federal Rule 12(b)(6)," Procedures for Cases Assigned to Dist. J. Ada Brown & Standing Order § II(C)(1).  Because the Department raised the issue of mootness under Rule 12(b)(1), and not Rule 12(b)(6), its motion was not subject to the conferral procedure set out in the Standing Order.  And even if it were, mootness is a jurisdictional issue which is appropriately raised at summary judgment, because "[a]n actual case or controversy must exist at every stage in the judicial process" and "federal courts cannot give opinions on 'moot questions or abstract propositions.'"  *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996)).  Although the Department presented the issue of mootness under Rule 12(b)(1), it could just as appropriately have presented the question under Rule 56—or Rule 12(h)(3)—which

does not give rise to any conferral obligation under the Standing Order.  *See, e.g.*, *Wilson v. First Gibraltar Bank*, 1994 WL 199108, at \*4–5 (5th Cir. May 12, 1994) (unpublished per curiam opinion) (affirming district court grant of summary judgment on grounds of mootness).

### B.    Dr. Hopkins lacks standing to assert his unripe procedural claims regarding future submissions, and the proposed amendment would not save them.

As the Department explained in its opening brief, "[t]o the extent Dr. Hopkins seeks to challenge the procedures that the Department might use to review any hypothetical future publications he might submit, those claims fail on standing and ripeness grounds."  Def.'s Mot. at 17.  Dr. Hopkins's Third Cause of Action alleges that the Department has "directed him to submit all future manuscripts, regardless of subject matter, to [the Defense Office of Prepublication and Security Review (DOPSR] directly," and not to the United States Secretary of the Air Force Office of Public Affairs (SAF/PA).  Compl. at 20–21 ¶ 105.  His Eleventh Cause of Action asserts that the Department has "an official policy of administratively closing any requests for prepublication review submitted by an attorney on behalf of an author," *id.* ¶ 197, and that "[a]s a well-respected author of military history books and articles with a continuing duty to submit materials for prepublication review, [Dr. Hopkins] will continue to be harmed by [the administrative closure] policy in the future," *id.* ¶ 205.

The Department has explained that these allegations offer "no basis for concluding that Dr. Hopkins will be imminently required to submit a manuscript to DOPSR directly, or that any such submissions would be subjected to DOPSR's purported policy of closing all requests for prepublication review submitted by an attorney (even if such a policy existed)." Def.'s Mot. at 19. Dr. Hopkins lacks standing to press these claims because his alleged injuries are not certainly impending, *id.* at 18–19, and his "speculative claims regarding hypothetical future violations are not ripe" for similar reasons, *id.* at 20 (quoting *Doe v. Doe Agency*, 608 F. Supp. 2d, 68, 72 (D.D.C. 2009)).   In sum, "Dr. Hopkins will not suffer any hardship by waiting to challenge any such policies governing referral or administrative closure until he actually submits a manuscript and it is referred or administratively closed." *Id.* at 21.

In his opposition brief, Dr. Hopkins again fails to offer a substantive response to these arguments.  Beyond a passing and irrelevant assertion that "the complaint does not need to be amended to survive a motion to dismiss," Pl.'s Opp. at 16 (emphasis omitted), he does not even contend that his Complaint plausibly alleges ripe claims that he has standing to press regarding the Department's procedures for submitting or reviewing future manuscripts.  And although Dr. Hopkins continues to insist that the Court's Standing Order requires conferral before a party can raise jurisdictional issues under Rule 12(b)(1) that could just as easily have been presented

9

under Rule 12(h)(3) or Rule 56, it does not for the reasons set forth above.  *See supra* at 7–8.  Nor does a mere request for leave to amend the complaint moot a motion to dismiss.  *See supra* at 5–6.

Finally, in his opposition brief and proposed Amended Complaint, Dr. Hopkins suggests that he "has submitted additional manuscripts directly to DOPSR since this litigation has commenced which should have . . . been reviewed by SAF/PA," and has "submitted . . . manuscripts directly to DOPSR since this litigation commenced which he should have been able to submit through counsel." Pl.'s Opp. at 13–14; *see* Proposed Am. Compl. at 33, 49 ¶¶ 145, 235.  But these allegations would not confer standing on Dr. Hopkins, nor ripen any of his procedural claims.

If amended, the Third Cause of Action would challenge the supposedly "categorical" nature of the instruction that Dr. Hopkins "submit manuscripts directly to DOPSR even if they do not require coordination with other DOD components and do not meet any of the" relevant criteria for DOPSR review.  Proposed Am. Compl. ¶ 140.  But the Amended Complaint would not allege that Dr. Hopkins has actually submitted to DOPSR, under protest, a manuscript that does not require coordination with other Department components, nor that he has submitted such a publication to SAF/PA and had it rejected as a result.  Absent such allegations, Dr. Hopkins does not have standing to press a claim (nor any ripe claim) that the Department is

improperly requiring the submission to DOPSR of manuscripts that do not require its review.

For similar reasons, amendment of the Eleventh Cause of Action would also be futile. The Amended Complaint would challenge the alleged requirement that Dr. Hopkins submit manuscripts to the Department directly, and not through counsel. *Id.* ¶¶ 225–36. But it would not allege that Dr. Hopkins has manuscripts under submission that do not—and *might not*—contain classified information. Absent such allegations, Dr. Hopkins does not have standing to press a claim (nor any ripe claim) that the Department is improperly requiring submission of plainly unclassified information through counsel.

Leave to amend the complaint should be denied. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient.").

## III.    Dr. Hopkins's procedural claims fail on the merits.

As the Department explained in its opening brief, even if Dr. Hopkins's procedural claims were justiciable, they would fail to establish a violation of the First Amendment or the APA. And Dr. Hopkins's proposed amendments would not save any of his procedural claims on their merits. The Court should therefore enter

11

judgment for the Department on any procedural claim that it has jurisdiction to hear, and deny leave to amend.

### A.    The Department reasonably processed Dr. Hopkins's manuscripts.

In its opening brief, the Department explained the statutory and regulatory basis of its system of prepublication review of manuscripts written by employees (or former employees) who agreed not to disclose classified information, as a condition of their access to that information. *See* Def.'s Mot. at 4–7.  All former Department employees covered by such an agreement may submit their manuscripts to DOPSR; former Air Force employees may also submit manuscripts to SAF/PA. *Id.* at 6–7. When a manuscript submitted to SAF/PA concerns Department entities that are not under Air Force control, or meets other specified criteria, SAF/PA may refer it to DOPSR for review. *Id.* at 24, 37.  And because these nondisclosure agreements do not permit the disclosure of classified information to private counsel, the Department requires authors to submit manuscripts directly, and not through counsel. *See id.* at 23–24.

The Department further explained that its processing of Dr. Hopkins's manuscripts was reasonable in light of these procedures.  In brief, SAF/PA referred certain manuscripts to DOPSR for review, and DOPSR temporarily closed its review of Dr. Hopkins's manuscripts until it could correspond with him directly, so that

potentially classified information would not be shared with Dr. Hopkins's counsel in the course of prepublication review.  *Id.* at 22–25.

Dr. Hopkins does not does not meaningfully contest those events,[3] aside from falsely insinuating that DOPSR would not have completed its review in the absence of this litigation.  Pl.'s Opp. at 20.  The Department therefore turns to the merits of his procedural claims.

**B.    Dr. Hopkins's First Amendment claims fail.**

As the Department has explained, all of Dr. Hopkins's First Amendment claims fail on the merits.  *See* Def.'s Mot. at 25–35.

**1.    *The Department did not violate the First Amendment by requiring Dr. Hopkins to comply with the prepublication review process.***

In its opening brief, the Department reviewed the precedents upholding, against First Amendment challenges, the constitutionality of prepublication review requirements for government employees with access to classified information.  The Department explained that because 1) in those circumstances, prepublication review does not violate the First Amendment, and 2) Dr. Hopkins does not deny that he is subject to a prepublication review requirement, 3) it does not violate his First

---

[3] In opposing the Department's dispositive motion, Dr. Hopkins makes much of the fact that his counsel at one point demanded that "all correspondence regarding these submissions must be directed to me."  Pl.'s Opp. at 19 (quoting App. at 301).  Dr. Hopkins suggests this shows that his counsel did not "insist on discussing classified information with DOPSR, but only arranging the logistics" of its communications with Dr. Hopkins.  *Id.*  To the contrary, the email from Dr. Hopkins's counsel plainly attempts to direct any "correspondence" about the substance of the manuscript submissions to counsel rather than directly to Dr. Hopkins.

Amendment rights to force him to comply with the prepublication review process. *Id.* at 25–30. Dr. Hopkins does not argue to the contrary.

### 2. *The Department did not unconstitutionally retaliate against Dr. Hopkins.*

Dr. Hopkins's retaliation claim also fails because, at a minimum, 1) his conduct has not been chilled, and 2) he cannot show that the Department's actions were substantially motivated against his exercise of constitutional rights. *See Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002).

On the first point, since the Department temporarily closed its review of several of Dr. Hopkins's manuscripts, he has submitted an article critical of the prepublication review process, as well as other manuscripts for review, and remains free to submit manuscripts to SAF/PA with the assistance of counsel, so long as he does not reveal classified information to his counsel in doing so. *See* Def.'s Mot. at 31. Dr. Hopkins's speech plainly has not been curtailed, and he does not contend otherwise. *See* Pl.'s Opp. at 30; *cf. Keenan*, 290 F.3d at 259 ("[A] retaliation claim requires some showing that the plaintiffs' exercise of free speech has been curtailed."). Instead, Dr. Hopkins suggests that he is a person of more than "ordinary firmness," *Keenan*, 290 F.3d at 258, and that others would have been chilled in his circumstances. But he offers no reason to conclude that a reasonable person would have been dissuaded from submitting manuscripts by having an earlier review delayed before it was ultimately completed, nor that the temporary closure of the

14

Department's administrative review led to any "tangible adverse action."  Def.'s Mot. at 32 (quoting *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999)).  For that reason alone, his retaliation claim fails as a matter of law.

It also fails because he cannot show that the Department's actions were "substantially motivated" by a retaliatory intent.  *Keenan*, 290 F.3d at 258.  The Department referred and administratively closed some of Dr. Hopkins's prepublication review requests *before* he submitted his manuscript criticizing the review process, and had obvious non-retaliatory motives for doing so.  *See* Def.'s Mot. at 32–33.  Dr. Hopkins offers testimony from an attorney who says that "it is not uncommon for lawyers to correspond with prepublication review offices on their clients' behalf," Pl.'s Opp. at 30, but even if that were so, an author who is unavailable or unwilling to engage in direct correspondence about the substance of a prepublication review presents a significantly different situation than a lawyer who wishes to arrange logistics.  *See supra* at 13 n.3.  Nor does the fact that some of Dr. Hopkins's manuscripts were found to be free of classified information demonstrate that the Department's insistence on compliance with its mandated prepublication review process had a retaliatory motive.  *Cf.* Pl.'s Opp. at 19–20.  As the Supreme Court has held, an author's obligation to comply with the prepublication review process does "not depend upon whether his book actually contain[s] classified information."  *Snepp v. United States*, 444 U.S. 507, 511 (1980).

15

### 3.    *Dr. Hopkins's counsel is not entitled to access classified information.*

Finally, in its opening brief the Department showed that "[n]either the First Amendment, nor any other constitutional requirement, compels the government to discuss classified information with Dr. Hopkins's counsel."  Def.'s Mot. at 33.  Dr. Hopkins does not contest this point in his opposition, and instead denies that his counsel ever "insist[ed] on discussing classified information."  Pl.'s Opp. at 19.

\*    \*    \*

The Department is entitled to summary judgment on Dr. Hopkins's First Amendment claims for the reasons set forth above and in its opening brief.

## IV.    Dr. Hopkins's APA claims fail.

Dr. Hopkins's complaint alleges, in the alternative, that the Department's conduct with which he takes issue—referring manuscripts to DOPSR, and administratively closing prepublication reviews until Dr. Hopkins made himself available for direct correspondence—violated the APA.

In its opening brief, the Department explained that it had a reasoned basis for referring the manuscripts in question to DOPSR: their "contents included subject matter of interest to multiple other Department components."  Pl.'s Mot. at 36.  Dr. Hopkins does not contest the point in his opposition.

The Department also explained that its temporary closure of several manuscript reviews "because Dr. Hopkins's counsel refused to provide Dr.

Hopkins's contact information to DOPSR, forcing the Department to risk further exposures of classified information . . . by communicating directly with Dr. Hopkins's counsel about the substance of Dr. Hopkins's manuscripts" was reasonable, and that Dr. Hopkins had not "identif[ied] a[ny] regulation that the Department's decision purportedly violated." Def.'s Mot. at 37. Nor does he attempt to do so in opposition, though he does take issue with the Department's description of its decision to temporarily close its review of several manuscripts. *See* Pl.'s Opp. at 18–19.

But in light of the reasoned basis for the Department's actions, and the significant deference owed to an agency's internal procedural decisions—especially where classified information is concerned—the Department is entitled to judgment on Dr. Hopkins's APA claims for the reasons set forth in its opening brief and summarized above.

## V. Dr. Hopkins's challenges to the Department's prepublication decisions fail because the redacted information is properly classified.

Dr. Hopkins concedes that he has no right to publish properly classified information. *See* Pl.'s Opp. at 22. As the Department has already explained through agency declarations contained in the Classified Appendix, the Department redacted material properly classified under Executive Order 13,526 and/or the Atomic Energy Act that, if disclosed, would harm national security. *See* Def.'s Mot. at 45–54. Dr. Hopkins protests that some of the redacted information is not properly classified—

17

and therefore not properly redacted—because the information is already in the public domain.  *See* Pl.'s Opp. at 22–23.

Upon further review, the Department has decided to lift certain redactions, as specified in the Department's classified supplemental memorandum.[4]    The Department is still considering whether to lift certain additional redactions (as also specified in the Department's classified supplemental memorandum) and intends to submit an update to this Court and to Dr. Hopkins within 14 days.  The remaining redactions, however, remain properly classified—and therefore remain properly redacted—because Dr. Hopkins has failed to show that the information is in the public domain.

### A.    Classified information is in the public domain only if the information has been officially disclosed.

Classified information is not in the public domain unless there has been "official disclosure" (also known as "official acknowledgement") of such information.  *See Am. C.L. Union v. Dep't of Def.*, 664 F. Supp. 2d 72, 77 (D.D.C. 2009), *aff'd*, 628 F.3d 612 (D.C. Cir. 2011) ("Without official disclosure, classified information is not considered to be public."); *see also, e.g.*, *Kovac v. Wray*, No. 3:18-CV-00110-X, 2022 WL 717260, at *3 & n.12 (N.D. Tex. Mar. 10, 2022) (rejecting argument that information was in the public domain based on allegedly leaked

---

[4] The Department intends to send Dr. Hopkins an updated manuscript with updated redactions within 21 days.

guidance); *Shaffer v. Def. Intel. Agency*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015) ("Merely pointing to public sources . . . is insufficient."). To establish that classified information has been officially disclosed, the party seeking the release of such information must satisfy three criteria: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Am. C.L. Union v. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011).[5]

The test for official disclosure is "strict." *Transparency Project v. DOJ*, No. 4:20-cv-467, 2022 WL 18776191, at *44 (E.D. Tex. Sept. 9, 2022); *see also Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011). This "exactitude" recognizes the government's "vital interest in information relating to national security and foreign affairs." *Am. C.L. Union*, 628 F.3d at 620–21 (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)). Thus, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in

_____

[5] The burden of proof in prepublication review cases lies with the party seeking the release of classified information—here, Dr. Hopkins. *See, e.g.*, *Transparency Project v. DOJ*, No. 4:20-cv-467, 2022 WL 18776191, at *44 (E.D. Tex. Sept. 9, 2022) ("A plaintiff mounting an official acknowledgment argument 'must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" (quoting *Am. C.L. Union v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013)). Contrary to Dr. Hopkins's suggestion, *see* Pl.'s Opp. at 24–25, raising an argument at the administrative stage does not suffice to carry a party's burden in district court, *see, e.g.*, *Shahrashoob v. Texas A&M Univ.*, 125 F.4th 641, 650 (5th Cir. 2025) (plaintiff forfeited a discrimination argument by failing to raise it in district court briefing, even though she raised the argument at the administrative stage). The Department thus properly declined to address official disclosure until after Dr. Hopkins first mounted his official-disclosure argument.

the public domain by official disclosure." *Id.*; *see, e.g.*, *Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 277 (D.D.C. 2015) (rejecting official-disclosure argument where "all of the public information to which [the movant] points is . . . only generally related to the responsive document"). Similarly, Dr. Hopkins cannot rely on mere assumptions or inferences derived from public official information. *See Leopold v. CIA*, 380 F. Supp. 3d 14, 24 (D.D.C. 2019); *see, e.g.*, *id.* at 25 (President's tweet not official disclosure of an alleged CIA covert payment program because the tweet did not mention the CIA and the court could not "assume the CIA is behind any covert payment program").

The requirement that the information be "specific" demands that the plaintiff provide, where necessary, adequate pincite citations. *See, e.g.*, *Boening v. CIA*, 579 F. Supp. 2d 166, 171 (D.D.C. 2008) ("Plaintiff has provided no adequate pinpoint citations, and has instead provided only lists of publications without providing authors, dates, or page numbers of specified articles."). In other words, neither the government nor the Court is expected to "bear the burden of conducting an exhaustive search to prove that a given piece of information is not published anywhere." *McGehee v. Casey*, 718 F.2d 1137, 1141 n.9 (D.C. Cir. 1983).

The test's exactitude also extends to the "official" nature of the disclosure. A "disclosure is not 'official' when it is 'made by someone other than the agency from which the information is being sought.'" *Smith v. U.S. Nat'l Archives & Recs.*

*Admin.*, 415 F. Supp. 3d 85, 97 (D.D.C. 2019) (quoting *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999)); *Jud. Watch, Inc. v. DOJ*, 898 F. Supp. 2d 93, 108 (D.D.C. 2012) ("Obviously, to qualify as an official acknowledgement, the acknowledgement must be 'official,' *i.e.,* authorized or approved by the agency in possession of the information being acknowledged."). For example, "[s]peculation by the press—no matter how widespread—and disclosures in the press from unnamed sources are not sufficient" to establish official disclosure. *Smith*, 415 F. Supp. 3d at 97 (quoting *Competitive Enter. Inst. v. NSA*, 78 F. Supp. 3d 45, 59 (D.D.C. 2015)). Similarly, the disclosure of classified information by one agency does not bind another agency. *See Knight First Amend. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 816 (D.C. Cir. 2021) (holding disclosure by the State Department did not bind FBI or NSA). Especially in the context of intelligence and foreign affairs, "[w]hile information from outside an agency may be viewed as 'possibly erroneous,' confirmation by the agency itself 'would remove any lingering doubts.'" *Id.* (quoting *Frugone*, 169 F.3d at 774–75).

For the same reasons, the disclosure of classified information by an agency's former employee does not constitute official disclosure. *See id.* ("We have also rejected attempts to establish an agency's official acknowledgement based on disclosures by . . . the agency's former employees . . . ."). This is true even where an agency's former employee published information that was submitted to and

subsequently approved by the agency for prepublication review. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1133–34 (D.C. Cir. 1983) (rejecting argument that "CIA's screening and approval of [various] books" written by former CIA agents and officials made them official disclosures because such books "are not generally treated as official disclosures by foreign governments or by the public"); *see also Phillippi v. CIA*, 655 F.2d 1325, 1330–31 (D.C. Cir. 1981) (rejecting argument that information had been disclosed by former CIA official's autobiography); *see also Mobley v. CIA*, 806 F.3d 568, 583–84 (D.C. Cir. 2015) (noting that "the disclosure of information by former CIA agents and officers acting with the blessing of that agency's pre-publication review process" is "insufficiently official to trigger" official disclosure).

Finally, courts have "suggested that the determination of whether a disclosure is official involves some analysis of whether the officials in question intended to disclose the information." *Am. C.L. Union v. Dep't of Def.*, 492 F. Supp. 3d 250, 265 (S.D.N.Y. 2020). Thus, for example, courts have found that inadvertent disclosure does not undermine classification. *See United States v. Progressive, Inc.*, 486 F. Supp. 5, 8 (W.D. Wis. 1979) (finding that information remained classified even where the information had been inadvertently declassified and subsequently reclassified); *Edmonds v. DOJ*, 405 F. Supp. 2d 23, 29 (D.D.C. 2005) ("[A]n agency's inadvertent disclosure does not undermine classification . . . ."); *Lesar v.*

*DOJ*, 636 F.2d 472, 484 (D.C. Cir. 1980) (holding that "the failure to classify a document at the time of origination" does not necessarily bar subsequent classification of the document).

### B.    Dr. Hopkins has not shown that any of the remaining redacted information has been officially disclosed.

As set forth in the Department's classified supplemental memorandum—submitted for the Court's *in camera* and *ex parte* use only—Dr. Hopkins fails to establish official disclosure of the information that remains redacted.  Indeed, while Dr. Hopkins provided screenshots of purported public disclosures in the Rebuttal, Dr. Hopkins' brief makes no attempt to discuss the substantive legal requirements for official disclosure.  *See generally* Pl.'s Opp. at 22–29 (providing no legal authority or discussion regarding the substantive requirements for official disclosure).

Dr. Hopkins's declaration from Steven Shirley, a former Department employee, is not relevant to this Court's inquiry.  *See* Pl.'s Opp. at 28; *see generally* Decl. of Steven J. Shirley, ECF No. 73-1 at 27.  As the Department has explained, a district court must first attempt to resolve a challenge to the propriety of classified redactions by inspecting the protected information *ex parte* and *in camera* alongside any agency declarations.  *See* Def.'s Mot. at 39–41.  Because the agency's classified declarations (and the Department's classified supplemental memorandum) establish that the redacted portions of Dr. Hopkins's manuscripts are currently and properly

classified, and would cause damage to national security if released, the Department properly classified this information under Executive Order 13,526 and/or the Atomic Energy Act and therefore properly redacted this information. *See, e.g.*, *Lawless v. Dep't of Def.*, No. CV 21-2859 (TJK), 2024 WL 4263851, at *11 (D.D.C. Sept. 23, 2024). Accordingly, the Court should grant judgment to the Department on Dr. Hopkins's classification challenges.

## CONCLUSION

For these reasons, the Court should grant the Department's motion, dismiss Dr. Hopkins's procedural claims as non-justiciable, and otherwise enter judgment for the Department.

Date: August 8, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Cassandra. M. Snyder*
JAMES BICKFORD
  N.Y. Bar No. 5163498
CASSANDRA M. SNYDER
  D.C. BAR NO. 1671667
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, NW

24

Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief contains 6,181 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates, but inclusive of footnotes, according to Microsoft Word's word-count register.

*/s/ Cassandra M. Snyder*
Cassandra M. Snyder

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Cassandra M. Snyder*
Cassandra M. Snyder