ORIGINAL

1

vea

JH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

DANNY STILLMAN,

Plaintiff,

v.

DEPARTMENT OF DEFENSE, ET AL,

Defendant.

- - - - - - - - - - - - - - - - x

C.A. 01-1342

FILED

MAY - 9 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Washington, D.C.
April 26, 2002
10:27 a.m.

Transcript of Motion Hearing
Before the Honorable Emmet G. Sullivan
United States District Judge

APPEARANCES:

For the Plaintiff: MARK S. ZAID, ESQ.
MARK H. LYNCH, ACLU

For the Defendants: GAIL WALKER, ESQ.
VINCENT M. GARVEY, ESQ.

Court Reporter: JON HUNDLEY
Miller Reporting Company
735 Eighth Street, S.E.
Washington, D.C. 20003
(202) 546-6666



56

Ex. C

And he relied on his Article II powers. He relied on his authority as commander in chief, and President Truman was in a very tight spot in those days.

But the Supreme Court said you can't do that. Article II doesn't give you that kind of unreviewable authority. Article II responsibilities are exercised in subordination to constitutional commands, to congressional restraints. The government here is propounding a theory of separation of powers that assumes that the three branches of government are separate silos: one, two, three, and they never interact. If something comes with an Article II under the government's submission, the court can't review it. That is, with all respect, nonsense.

The court, in reviewing one of these national security determinations, of course, gives deference to the government. I think Judge--the court's opinion in McGehee explains how that process works very well.

THE COURT: Were you the attorney in McGehee?

MR. LYNCH: I wasn't the attorney in McGehee, and, by the way, in McGehee the way that

worked I had access to the manuscript that was in dispute. I went out to the CIA with my client, I read the affidavits that the CIA filed. My client and I drafted counter-affidavits. A secretary at the CIA typed them up. I delivered them to somebody in the General Counsel's office, and after that, the lawyer got them filed with the court. Our notes and everything were kept out there.

Another piece of history that the court may be interested in, in the Progressive case, the second major pre-public- --the second prior restraint case after the Pentagon case, Pentagon Papers case, the government there was a fellow who was going to publish an article in the Progressive magazine that explained how the hydrogen bomb worked. At that time, that was considered to be just colossally secret, and the government brought an action to enjoin it.

The lawyers who worked on that case--I was one of them-- had access to all of the affidavits that were in the file by the government to support the position that the article should be enjoined. We certainly had access to the article itself. And, interestingly, the government went to enormous effort. It was the